1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Nicole D. Sugnet (State Bar No. 246255)
    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA  94111
4   Telephone:  (415) 956-1000
    E-mail: msobol@lchb.com
5   nreynolds@lchb.com

6   Daniel M. Hattis (State Bar No. 232141)
    HATTIS LAW
7   1134 Crane Street, Suite 216
    Menlo Park, CA 94025
8   Telephone:  (650) 980-1990
    E-mail: dan@hattislaw.com

9   *Attorneys for Plaintiff*

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14

15   SAM WILLIAMSON, individually and on        Case No.  _____
     behalf of all others similarly situated,
16                                              **CLASS ACTION COMPLAINT**
                         Plaintiff,
17                                              **JURY TRIAL DEMANDED**
     v.
18
     MCAFEE, INC.,
19
                         Defendant.
20

21

22          Plaintiff, individually and on behalf of all others similarly situated, alleges on personal

23   knowledge, investigation of his counsel, and on information and belief, as follows:

24                          **NATURE OF THE ACTION**

25          1.       This proposed class action alleges that McAfee, Inc. ("McAfee") has

26   systematically charged customers enrolled in its software "auto-renewal" program (hereinafter

27   "Auto-Renewal") higher prices than it charges other customers for identical products, in violation

28

1    of its contractual obligations and contrary to its express representations concerning its Auto-

2    Renewal program.

3          2.      McAfee induces customers to enroll in its Auto-Renewal program by

4    representing that the cost to automatically renew their McAfee anti-virus software subscriptions

5    will be no more than McAfee's normal, then-current price charged to other customers for the

6    same products.  McAfee's representations include reassurances that its customers will not incur

7    any cost disadvantage by enrolling in Auto-Renewal, as compared to the alternative of purchasing

8    a software subscription outside of the Auto-Renewal program when their prior subscription

9    expires.  McAfee's promises in this regard, appearing in advertising and on its website, are also

10   memorialized in its standardized Consumer Agreement.

11         3.      Contrary to its representations and the Consumer Agreement, McAfee consistently

12   charges Auto-Renewal customers more than it charges other customers for the same products.

13         4.      As a result of McAfee's conduct and practices alleged herein, Plaintiff and the

14   Class members have been damaged.

15         5.      On behalf of himself and the proposed Class of McAfee Auto-Renewal customers

16   (the "Class"), Plaintiff brings this lawsuit against McAfee for breach of contract; breach of the

17   implied covenant of good faith and fair dealing; unjust enrichment; and violations of California

18   Business & Professions Code §§ 17200 *et seq*. ("UCL"), California Business & Professions Code

19   §§ 17500 *et seq*. ("FAL"), California Business & Professions Code § 17600 *et seq.*, California

20   Civil Code § 1750 *et seq* ("CLRA"), and, in the alternative for those Class members residing in

21   the State of New York, violations of New York General Business Code §§ 349 and 350.

**PARTIES**

23         6.      Plaintiff Sam Williamson is an individual residing in Garden Grove, California.

24   Plaintiff Williamson is a citizen of California.

25         7.      Defendant McAfee, Inc. ("McAfee") is a Delaware corporation, and is

26   headquartered in Santa Clara, California, which is McAfee's principle place of business.  McAfee

27   is a wholly-owned subsidiary of Intel Corporation.  McAfee is one of the largest computer

28

security software companies in the United States and the world. Its revenues from consumer sales in the United States, alone, are well in excess of $100 million annually.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) as there are numerous class members who are citizens of states other than McAfee's state of citizenship, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over McAfee because McAfee is headquartered in California; a substantial part of the wrongdoing alleged in this Complaint took place in California; McAfee is authorized to do business, and does a substantial portion of its business, in California; McAfee has sufficient minimum contacts with California; and McAfee intentionally avails itself of markets in California through the promotion, marketing and sale of its products and services in California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     McAfee is headquartered in California and, on information and belief, its operations relevant to the allegations and claims in this Complaint predominately emanate from California. On information and belief, the contracts, representations, policy and practice decisions, and misconduct at issue in this case predominately emanated from California.

11.     Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because McAfee is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

12.     **Intra-District Assignment**. Pursuant to the N.D. Cal. Civil Local Rules 3-2 and 3-5, Plaintiff requests assignment to the San Jose Division of the Northern District of California. Defendant McAfee, Inc. is headquartered in Santa Clara County and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County.

# COMMON FACTUAL ALLEGATIONS

A.      **McAfee Software**

13.      McAfee markets and sells subscriptions to its anti-virus computer software products.  Generally, the subscriptions are one year in length.  Three of the software products that McAfee has marketed and sold subscriptions to throughout the relevant time period are McAfee AntiVirus Plus, McAfee Internet Security, and McAfee Total Protection.  These three products are collectively referred to herein as the "McAfee Software."

14.      McAfee represents to consumers that subscribing to McAfee Software will help them protect their computers from hackers and other "online threats," computer viruses, and other computer problems.  For example, McAfee represents that its McAfee Total Protection software will help "Guard your PC, social network, identity, family, and home network with our ultimate protection against hackers, malware, thieves, phishing, and other online threats."  Similarly, McAfee represents that its McAfee AntiVirus Plus software will allow customers to "Confidently surf, shop, and socialize online as our essential antivirus, antimalware, and firewall protect your PC and data."

15.      Consumers can purchase McAfee Software directly from McAfee's website or from a retailer authorized to sell McAfee Software, such as Amazon.com, Wal-Mart, Target, Best Buy, or Office Depot.

16.      In addition, some consumers initially sign up for "free trial" subscriptions to McAfee Software (e.g., for a 30-day or 60-day "trial" period), after which McAfee aggressively encourages them, through expiration warning messages and other advertising and prompts, to purchase a one-year paid subscription to McAfee Software, which the customer can do via McAfee's website or by following a purchase path provided by McAfee in their McAfee Software.

B.      **The Auto-Renewal Program**

17.      For consumers who purchase a one-year subscription to McAfee Software through McAfee's website or through the McAfee Software itself, McAfee automatically enrolls them in

McAfee's Auto-Renewal program.  Under the Auto-Renewal program, upon the expiration of the customer's current McAfee Software subscription, McAfee automatically renews the subscription for a subsequent one-year period, charging the customer's credit card on file.  These annual renewals and charges continue from year-to-year so long as the customer remains enrolled in Auto-Renewal.

18.     Customers may also renew existing McAfee Software subscriptions manually, i.e., outside the Auto-Renewal program, through McAfee's website or the McAfee Software itself. McAfee promotes Auto-Renewal over these other forms of renewal in order to maximize renewal rates and as means to charge higher subscription rates to those customers who are subject to the Auto-Renewal program.

19.     McAfee has long been, and continues to be, heavily reliant upon the Auto-Renewal program and the massive amounts of revenue it receives from customers through the program.  In order to keep the steady stream of Auto-Renewal money flowing, McAfee's business model has been, and continues to be, deliberately designed and focused on maximizing enrollment in the Auto-Renewal program.

20.     One manifestation of McAfee's aggressive Auto-Renewal business model is its practice of automatically enrolling customers in the program, by default, as soon as McAfee has a credit card number for the customer on file.

21.     Another manifestation of McAfee's aggressive Auto-Renewal business model, are McAfee's pervasive representations to consumers that there is no cost disadvantage in having subscriptions automatically renewed pursuant to the Auto-Renewal program, as compared to manual renewals or separate additional purchases.  For years, McAfee has consistently promised and reassured customers that under Auto-Renewal, their subscriptions will be automatically renewed at a price no higher than the normal, then-current price that McAfee charges other customers for the same software.  These representations and promises, which are made expressly in McAfee's standardized Consumer Agreement and reinforced on McAfee's website and elsewhere, are specifically designed by McAfee to lull customers into enrolling and remaining enrolled in the Auto-Renewal program.  As described herein, these promises and representations

1    are false, because McAfee consistently charges Auto-Renewal customers more than it charges

2    other customers for identical products.

3        22.    Another manifestation of McAfee's aggressive Auto-Renewal business model is

4    its modification, in 2009, of the choice-of-law provision in its form Consumer Agreement.

5    Whereas the Consumer Agreement previously provided for the application of the laws of

6    California, where McAfee has its headquarters, in 2009 the clause was amended to provide for the

7    application of New York law, even though McAfee's operations have little or no direct

8    connection to New York.  On information and belief, McAfee made this modification in an

9    attempt to avoid the application of California consumer protection laws, including new California

10   laws which became effective in 2010, that were specifically designed to address misconduct

11   regarding automatic renewal services, such as those alleged herein.

12       23.    This lawsuit is not the first time McAfee has found itself in legal trouble for its

13   aggressive tactics regarding Auto-Renewal.  In 2009, McAfee was investigated by the New York

14   Attorney General's office after it received numerous complaints that McAfee was enrolling

15   customers in Auto-Renewal, and charging them for automatic renewals, with virtually no notice

16   whatsoever to the customer of their enrollment.[1]  That investigation resulted in a settlement, and

17   did not address the pricing schemes that are the subject of this Complaint.

18       **C.    The McAfee Consumer Agreement and Auto-Renewal Pricing**

19       24.    All customers who purchase McAfee Software subscriptions, including Plaintiff

20   and all Class members, enter into and are subject to the McAfee Consumer Products End User

21   License Agreement (hereinafter the "Consumer Agreement").  The Consumer Agreement is a

22   standardized, form contract of adhesion.  It is drafted by McAfee, the party with superior

23   bargaining power, and is presented to customers on a take-it-or-leave-it basis. The Consumer

24   Agreement states that it is "enforceable like any written contract," and by its terms it governs

25   numerous aspects of the relationship between McAfee and the customer.  An example of the

26

27

28   [1] *See* http://www.ag.ny.gov/press-release/cuomo-forges-settlement-symantec-and-mcafee-over-automatic-subscription-renewals.

Consumer Agreement (the iteration effective as of approximately February 2, 2013) is attached

hereto as **Exhibit A.**

25.     Customers are required by McAfee to click a button and/or check a box to signify

their "acceptance" of the terms and conditions of the Consumer Agreement.

26.     The Consumer Agreement contains terms and conditions about the Auto-Renewal

program, including regarding the prices that McAfee will charge customers under the Auto-

Renewal program.  At all relevant times, the Consumer Agreement has provided that customers

whose subscriptions are automatically renewed pursuant to the Auto-Renewal program will be

charged, at the time of renewal, a price that is no greater than the normal, then-current price that

McAfee charges other customers for the products in question.  For example, the iteration of the

Consumer Agreement that was in place as of February 2, 2013 provides:

> [T]his Agreement is effective for the term set forth in the Documentation.
> If no term is agreed to, the default term shall be one (1) year from the date
> of purchase….If You have provided McAfee with a valid credit card
> number or an alternative payment method, **Your subscription will be
> automatically renewed (and charged to the Account You have
> provided) for another term at the expiration of Your current term,
> whenever Your local regulations will allow, for a fee no greater than
> McAfee's then-current price, excluding promotional and discount
> pricing.**  The new term will be for the same duration as the expired term
> unless otherwise specified at the time of renewal…..

See **Exhibit A** at ¶ 14 (emphasis added).  All iterations of the Consumer Agreement during the

relevant time period have included similar terms regarding Auto-Renewal pricing.

27.     The provisions in the Consumer Agreement regarding Auto-Renewal pricing

constitute a binding contractual obligation.  Under the Consumer Agreement, McAfee was and is

obligated to charge Plaintiff and the Class members, at the time their subscriptions are

automatically renewed, prices that are no higher than the normal, then-current prices that McAfee

charges other customers for the products in question.

28.     The Consumer Agreement has created a reasonable expectation among Plaintiff

and the Class members that at the time their subscriptions are automatically renewed, they will be

charged a price that is no greater than the normal, then-current price that McAfee charges other

customers for the same software, and not some special, higher price that McAfee is only charging

to Auto-Renewal customers.  As described herein, this reasonable expectation is further

established and reinforced by McAfee's other representations, on its website and elsewhere,

regarding Auto-Renewal pricing.

**D.      Enrollment in Auto-Renewal and McAfee's Misrepresentations Regarding Auto-Renewal Pricing.**

29.      McAfee's misrepresentations regarding Auto-Renewal pricing are not only

expressly made in the Consumer Agreement, they have also been pervasive on McAfee's website,

in the McAfee Software itself, and elsewhere.  All enrollees in Auto-Renewal, including Plaintiff

and the Class members, have been exposed to McAfee's false promises and representations.

30.      McAfee has consistently promised and reassured customers that, under Auto-

Renewal, their subscriptions will be automatically renewed at a price no higher than the normal,

then-current price that McAfee charges other customers for the software in question.  These

representations are designed by McAfee to persuade and reassure customers that it is in their

interest to be enrolled and remain enrolled in Auto-Renewal, and that there is no cost

disadvantage of having their McAfee Software automatically renewed by McAfee as compared to

manually renewing their subscriptions or other options the customers might have to protect their

computers.

31.      These representations and promises are false and misleading because McAfee,

in fact, consistently charges Auto-Renewal customers prices that are higher than the normal, then-

current prices that McAfee charges other customers for the same products.

32.      There are three ways that customers become enrolled in the Auto-Renewal

program.  On information and belief, most of McAfee's Auto-Renewal customers are enrolled in

the program by McAfee under one of the first two scenarios described below.  In all three

scenarios, Auto-Renewal customers are exposed to McAfee's false promises and representations

regarding Auto-Renewal pricing.

**1.      Customers Enrolled When Purchasing or Manually Renewing Subscriptions On McAfee's Website.**

33.      Customers who purchase an initial McAfee Software subscription via McAfee's

website are automatically enrolled by McAfee in the Auto-Renewal program going forward, by

default.  Similarly, customers who manually renew an existing McAfee Software subscription via McAfee's website are automatically enrolled by McAfee in the Auto-Renewal program going forward, by default.  Such customers must take affirmative steps to un-enroll in Auto-Renewal.

34.    These customers are exposed to McAfee's false promises regarding Auto-Renewal pricing when they enter their credit card information and confirm their purchase on the "Checkout" web page of McAfee's website.  During this stage of the purchase process, to induce these customers to remain enrolled in Auto-Renewal, rather than follow the provided link where they can "turn [the Auto-Renewal program] off," McAfee reassures them that the price they will be charged when their subscription is automatically renewed will be "the rate that's current on your renewal date."   A screen shot of this portion of the "Checkout" web page is below:



**Choose Your Payment Method**                                  Edit

MasterCard ****-****-****-3532          Our auto-renew feature takes care of renewing your
4/2016                                  subscription for you. It's a great way for you and your
                                        family to enjoy uninterrupted protection. We'll use the
                                        payment information we have on file to renew your
                                        account, and we'll charge you the rate that's current on
                                        your renewal date. You'll receive an email four weeks
                                        before your renewal date so you'll always know what's
                                        going on with your subscription. Don't want to auto-
                                        renew? You can turn it off from your My Account page.

35.    For those customers who follow the link, provided on the "Checkout" page, whereby they can "turn [the program] off," they are again exposed to McAfee's false promises regarding Auto-Renewal pricing, as part of a McAfee video presentation that is automatically played.  In the video, McAfee urges customers to enroll and remain enrolled in Auto-Renewal.  In a segment of the video entitled "How Auto-Renewal Works," McAfee states that an enrolled customer's subscription "will be automatically renewed at the then-current annual subscription price for the service.  This renewal fee excludes promotion and/or discount pricing."  A screen shot from McAfee's Auto-Renewal video presentation is below:



## 2. Customers Enrolled When Purchasing or Manually Renewing Subscriptions Via Their McAfee Software.

36.     McAfee lures customers into its Auto-Renewal scheme who did not originally purchase their McAfee Software subscription directly from McAfee, by pressuring them to manually renew their subscription via a purchase path in the software itself.  McAfee targets such customers by bombarding them with ominous on-screen expiration warning messages which direct the customers to click a link to renew their subscriptions within the software.  Once the customers have manually renewed their subscriptions, they are automatically enrolled in the Auto-Renewal program going forward, by default.  McAfee uses similar tactics to urge customers who initially signed up for a "free trial" subscription (which is often pre-installed on new computers) to purchase a paid McAfee Software subscription through the software itself.  Again, once the customers have purchased their paid software subscriptions, they are automatically enrolled in the Auto-Renewal program going forward, by default.  Such customers must take affirmative steps to un-enroll in Auto-Renewal.  Below are some examples of the warning messages that McAfee displays on the computer desktops of these customers to create urgency and encourage them to renew their subscriptions and purchase paid subscriptions through their McAfee Software:

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22   37.    Like the Auto-Renewal customers who are enrolled in the program when they

23   purchase via McAfee's website, these customers who renew or purchase their subscriptions from

24   within the software are exposed to McAfee's false promises regarding Auto-Renewal pricing

25   when they enter their credit card information and confirm their purchase.  On the "Secure

26   Checkout" page, where these customers complete their purchases, McAfee states:  "To prevent a

27   lapse in protection, McAfee will automatically renew your subscription using your payment

28   information on file."  Under a "Learn More" icon on that page, McAfee states that under Auto-

1  Renewal, "We will charge you the product price current at the time of auto-renewal…."  McAfee

2  also provides a link that the customer can follow to "opt-out of auto-renewal."  This link takes the

3  customer to the same McAfee web page described above where the misleading McAfee Auto-

4  Renewal video presentation described above is automatically played.  A screen shot of the

5  "Secure Checkout" page is below:



### 3.   Customers Who Manually Enable Auto-Renewal.

21

22         38.       Those customers who are not already enrolled in the Auto-Renewal program can

23  manually enable Auto-Renewal by visiting the "My Auto-Renewal Settings" web page on

24  McAfee's website and logging into their account.  McAfee encourages customers who initially

25  purchased McAfee Software from a retailer to visit this web page to enable Auto-Renewal,

26  including through a prompt that appears when such customers are installing the software on their

27  computers.  For example, during the software installation process, customers receive a prompt

28  from McAfee, encouraging them to "**Stay Protected.**  Let Always On Protection automatically

renew your subscription when it expires to guarantee there is no protection gap from everyday new threats.  Sign Up Now."  The customer is then provided with a link, which takes the customer to the "My Auto-Renewal Settings" web page.

39.     Like the customers who are automatically enrolled by McAfee in Auto-Renewal, these customers are exposed to McAfee's false promises regarding Auto-Renewal pricing.  On the "My Auto-Renewal Settings" web page where the customer can manually enable Auto-Renewal, McAfee automatically plays the misleading Auto-Renewal video presentation described above.

40.     Similar false and misleading representations about Auto-Renewal pricing have appeared elsewhere on McAfee's website, including on portions of the website where McAfee answers "Frequently Asked Questions" about Auto-Renewal.

41.     McAfee's false representations and promises, described herein, have been pervasive throughout the Class period.  Plaintiff and the Class have been exposed to McAfee's false representations and promises.

42.     McAfee's false representations and promises, described herein, are material in that a reasonable consumer would attach importance to them in making purchase decisions.  It is McAfee's intention that customers will rely on these representations, and Plaintiff and the Class have reasonably relied on these representations to their detriment.

43.     McAfee's representations and promises alleged herein are false, have a tendency to deceive, and are likely to deceive reasonable consumers and members of the public.

44.     McAfee has failed to disclose to Plaintiff and the Class material information regarding the true nature of Auto-Renewal pricing.  These material omissions are particularly misleading given McAfee's affirmative false and deceptive promises and representations regarding Auto-Renewal pricing.

45.     For example, McAfee sends email notices to Auto-Renewal customers prior to the end of the customer's subscription term, and then emails them another notice informing them when their credit card has been charged for the renewed subscription.  Customers are not required to read or confirm receipt of, or otherwise respond to, these notices.  Neither these notices, nor

1   any other notice or information provided by McAfee, discloses that, contrary to McAfee's

2   contractual promises and pervasive representations, the prices that Auto-Renewal customers are

3   charged when their subscriptions are renewed by McAfee are actually higher than the normal,

4   then-current prices that McAfee charges other customers for the same products.

5       **E.      McAfee Consistently Charges Auto-Renewal Customers More Than Other
            Customers for the Same Products.**

6

7       46.     Contrary to its contractual obligations and representations, and unbeknownst to

8   Plaintiff and the Class, the prices that McAfee charges Auto-Renewal customers are consistently

9   higher than the normal, then-current prices that McAfee charges other customers for the same

10  products. In essence, McAfee consistently has a special, higher price for McAfee Software that it

11  imposes *only* on Auto-Renewal customers, and another, lower price that it offers to all other

12  customers for the same products.

13      47.     For example, customers who had their McAfee AntiVirus Plus subscriptions auto-

14  renewed by McAfee on January 1, 2014 would have been charged $49.99 by McAfee for their

15  renewed one-year subscription. To all other customers that day, McAfee offered the same one-

16  year McAfee AntiVirus Plus subscription for just $34.99, whether the customers were purchasing

17  an initial subscription or manually renewing an existing subscription, and whether they made

18  their purchase or manual renewal on McAfee's website or via their McAfee Software. In fact,

19  during the three months prior to January 1, 2014, McAfee's selling price for a one-year McAfee

20  AntiVirus Plus subscription was consistently $34.99. During the twelve months prior to January

21  1, 2014, McAfee never charged any customers as much as $49.99 for a one-year McAfee

22  AntiVirus Plus subscription, other than Auto-Renewal customers. The following chart shows the

23  higher prices that McAfee charged Auto-Renewal customers compared to the prices McAfee

24  offered and charged all other customers, for McAfee AntiVirus Plus:

25

26

27

28



48.     Similar disparities between the prices that McAfee charges Auto-Renewal customers and the prices it offers and charges other customers have been persistent for the McAfee Internet Security and McAfee Total Protection products as well, as shown in the following charts:







49.      The actual selling prices that McAfee offers to customers who are purchasing or manually renewing McAfee Software subscriptions are McAfee's normal, then-current prices, and are not discounted or promotional prices.  Those actual selling prices are the highest prices that McAfee should be charging Auto-Renewal customers for the products in question, under the terms of the Consumer Agreement and based on McAfee's pervasive representations regarding Auto-Renewal pricing.

50.      Based on information and belief, the prices that McAfee charges Auto-Renewal customers are not only higher than the prices that McAfee charges other customers, they are also higher than the suggested "list" prices that McAfee provides to retailers of McAfee Software.  As the chart below demonstrates, the Manufacturer's Suggested Retail Prices ("MSRPs") which McAfee sets for its retailers are lower than the prices that McAfee charges Auto-Renewal customers for the same products:

### McAfee MSRP vs. Auto-Renewal Price (2012 – 2013)

| Product | MSRP | Auto-Renewal Price |
|---|---|---|
| AntiVirus Plus | $39.99 | $49.99 |
| Internet Security | $69.99 | $79.99 |
| Total Protection | $79.99 | $89.99 |

51.      Notably, retailers of McAfee Software routinely discount the products far below the MSRPs that McAfee provides to them.  For example, Amazon.com regularly offers McAfee Software at over 70% off the MSRP.  Below is a screenshot from Amazon.com, taken January 5, 2014, showing Amazon.com offering McAfee Internet Security for $13.45, discounted from the "List Price" (i.e., the MSRP) of $69.99:



52.     On information and belief, in the relatively rare event that an Auto-Renewal customer discovers that McAfee has charged him or her more than McAfee should have for the customer's McAfee Software subscription renewal, and the customer calls McAfee to complain about it, McAfee has a policy and/or practice, not to disclose the truth about its Auto-Renewal pricing scheme, but instead to pacify such customers by offering them discounts and/or free months of McAfee Software subscriptions.

53.     McAfee's practice of charging Auto-Renewal customers prices that are higher than the normal, then-current prices that McAfee charges other customers for the same software constitutes a material change in the terms of the Auto-Renewal program, as such program was specified in the Consumer Agreement and represented by McAfee to its customers.  McAfee has failed to provide Plaintiff and the Class with clear and conspicuous notice of this material change, or an informed opportunity to opt-out of the change or the program, in violation of California Business & Professions Code § 17602(c)&(d)(2).

**PLAINTIFF'S FACTUAL ALLEGATIONS**

54.     On October 8, 2011, Plaintiff Sam Williamson purchased a desktop computer from a Micro Center retail store in Tustin, California.  The computer that Mr. Williamson purchased came pre-installed with a 60-day "free trial" subscription to McAfee AntiVirus Plus.  Later that day, Mr. Williamson activated the "free trial" subscription on his new computer by clicking an icon on the desktop and following instructions provided by McAfee.

55.     While Mr. Williamson was in the process of activating the "free trial" subscription, McAfee displayed advertising on his computer encouraging him to purchase a one-year paid subscription to the software.  McAfee's prompts and advertising promised Mr. Williamson that if he immediately purchased a one-year subscription, he would receive a discount from McAfee's purported regular selling price for the product.  McAfee offered to sell Mr. Williamson a one-year subscription to McAfee AntiVirus Plus for $29.99, at a promised discount of $20.00 from the purported regular price of $49.99.  McAfee prominently displayed both the purported "regular" price and the representation that Mr. Williamson would supposedly save $20.00 by making the purchase at that time.

56.     Relying on McAfee's representations, Mr. Williamson clicked on one of McAfee's advertising prompts, which took him to a page in the software where he could purchase a paid subscription to McAfee AntiVirus Plus.  On that page, McAfee again prominently represented to Mr. Williamson that its regular selling price for a one-year subscription to McAfee AntiVirus Plus was $49.99, and that the $29.99 price offered to Mr. Williamson that day reflected a discount of $20.00 from the purported regular price.  Relying on McAfee's representations, Mr. Williamson purchased a one-year subscription to McAfee Anti-Virus Plus for $29.99 by entering his credit card information as prompted by McAfee.

57.     The purported discount that McAfee represented to Mr. Williamson was false and misleading, because the purported regular price of $49.99 that McAfee represented was fabricated and failed to represent McAfee's true regular or former price for a one-year McAfee AntiVirus Plus subscription.  On information and belief, McAfee did not offer for sale, or make substantial sales of, McAfee AntiVirus Plus at a price of $49.99 within a reasonable period of time before

October 8, 2011.  On information and belief, for months prior to October 8, 2011, McAfee consistently offered the same one-year subscription to McAfee AntiVirus Plus at a selling price lower than $49.99.

58.     At the time Mr. Williamson made his one-year subscription purchase, McAfee automatically enrolled Mr. Williamson in the Auto-Renewal program.  McAfee represented, on the page where Mr. Williamson entered his credit card information to make his purchase, that when his subscription was automatically renewed pursuant to the Auto-Renewal program, McAfee would charge his credit card in an amount no greater than McAfee's normal, then-current price charged to other customers for McAfee Anti-Virus Plus.

59.     By virtue of his McAfee Software subscription purchase, Mr. Williamson entered into, and was subject to, McAfee's form Consumer Agreement, including the terms governing the Auto-Renewal program and Auto-Renewal pricing.

60.     On November 7, 2012, McAfee automatically renewed Mr. Williamson's McAfee AntiVirus Plus subscription for an additional one-year period.  McAfee charged Mr. Williamson $49.99 for the renewed subscription, even though McAfee's selling price for a one-year Anti-Virus Plus subscription that day, and the price that McAfee offered and charged all non-Auto Renewal customers that day for the same one-year AntiVirus Plus subscription, was just $34.95, whether the customers were purchasing an initial subscription or manually renewing an existing subscription, and whether they were doing so on McAfee's website or via the purchase path within the software.  In fact, as the chart below shows, with the exception of one approximately 13-day period, McAfee's selling price for McAfee AntiVirus Plus was consistently less than $49.99 for at least eight months prior to the automatic renewal of Mr. Williamson's subscription:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18      61.     As a result of McAfee's contractual breaches and misconduct alleged herein, Mr.

19  Williamson suffered damages, including by paying additional amounts for his renewed software

20  subscription, over and above what he should have been charged.  Had he known the truth about

21  Auto-Renewal pricing, Mr. Williamson would have un-enrolled in Auto-Renewal and/or

22  otherwise not allowed his subscription to be automatically renewed pursuant to Auto-Renewal.

23                          **CLASS ACTION ALLEGATIONS**

24      62.     Plaintiff brings this class-action lawsuit on behalf of himself and the proposed

25  members of the "Class" pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and on

26  behalf of himself and the proposed members of the "Reference Price Class" pursuant to Rule

27  23(b)(2) of the Federal Rules of Civil Procedure.

28      63.     Plaintiff seeks certification of the following "Class":

All persons in the United States who have incurred charges from McAfee for the automatic renewal of a subscription to the following McAfee-branded products during the following time periods:

| Product | Time Periods |
|---|---|
| McAfee AntiVirus Plus | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |
| McAfee Internet Security | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |
| McAfee Total Protection | Applicable statute of limitation through 9/5/2012; 9/18/2012 through 9/3/2013 |

64.     Plaintiff also seeks certification of the following "Reference Price Class":

All persons in the United States who purchased or manually renewed, on McAfee's website or via their McAfee Software, McAfee-branded software advertised as discounted from a represented former sales price as indicated and set forth in the chart immediately below:

| Product | Time Periods |
|---|---|
| McAfee AntiVirus Plus | Applicable statute of limitation through the present |
| McAfee Internet Security | Applicable statute of limitation through the present |
| McAfee Total Protection | Applicable statute of limitation through 9/3/2013 |

65.     Specifically excluded from the Class and Reference Price Class are McAfee and any entities in which McAfee has a controlling interest, McAfee's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

66.     ***Numerosity.***  Plaintiff does not know the exact number of Class members and Reference Price Class members but believes that the Class and Reference Price Class each comprise at least hundreds of thousands of consumers throughout the United States.  As such, Class members and Reference Price Class members are so numerous that joinder of all members is impracticable.

67.     ***Commonality and predominance.***  Well-defined, nearly identical legal or factual questions affect all Class members.  Similarly, well-defined, nearly identical legal or factual

questions affect all Reference Price Class members.  These questions predominate over questions that might affect individual Class members or Reference Price Class members.  With respect to the Class, these common questions include, but are not limited to, the following:

a.      Whether the Consumer Agreement required McAfee to charge Auto-Renewal customers prices that were no higher than the normal, then-current prices that McAfee charged other customers for the same products;

b.      Whether McAfee breached its contractual obligations to Plaintiff and the Class by charging them prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products;

c.      Whether McAfee acted inconsistently with the reasonable expectations of Plaintiff and the Class;

d.      Whether McAfee breached the implied covenant of good faith and fair dealing as to Plaintiff and the Class;

e.      Whether McAfee's representations to Plaintiff and the Class regarding Auto-Renewal pricing were objectively material;

f.      Whether McAfee failed to disclose objectively material information to Plaintiff and the Class regarding Auto-Renewal pricing;

g.      Whether McAfee's representations and omissions had a tendency to deceive consumers;

h.      Whether McAfee has been unjustly enriched;

i.      Whether McAfee's conduct alleged herein violated California Business & Professions Code § 17200 *et seq*, California Business & Professions Code § 17500 *et seq*, California Business & Professions Code § 17600 *et seq*, and/or California Civil Code § 1750 *et seq*.

j.      Whether Plaintiff and the Class are entitled to damages and/or restitution; and

k.      Whether McAfee should be enjoined from further engaging in the misconduct alleged herein.

68.     With respect to the Reference Price Class, the common questions include, but are not limited to, the following:

a.     Whether McAfee falsely advertises price discounts from regular sales prices;

b.     Whether McAfee's representations directed to members of the Reference Price Class contain false representations of material fact;

c.     Whether McAfee has made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;

d.     Whether McAfee's conduct alleged herein violated California Business & Professions Code § 17200 *et seq*, California Business & Professions Code § 17500 *et seq*, and/or California Civil Code § 1750 *et seq*.

e.     Whether McAfee should be enjoined from further engaging in the misconduct alleged herein.

69.     ***Typicality.***  Plaintiff's claims are typical of Class members' claims.  Plaintiff and the Class members were all subject to McAfee's misconduct alleged herein regarding Auto-Renewal pricing.  Plaintiff's claims are typical of Reference Price Class members' claims.  Plaintiff and Reference Price Class members were all subject to McAfee's false former price and false discount representations.

70.     ***Adequacy.***  Plaintiff will fairly and adequately protect Class members' and Reference Price Class members' interests.  Plaintiff has no interests antagonistic to Class members' or Reference Price Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

71.     ***Superiority.***  A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons without limitation:

a.     Class members' claims and Reference Price Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually,

1   so it would be impracticable for Class members or Reference Price Class members to seek

2   individual redress for McAfee's illegal and deceptive conduct;

3           b.      Even if Class members and Reference Price Class members could afford

4   individual litigation, the court system could not.  Individual litigation creates the potential for

5   inconsistent or contradictory judgments and increases the delay and expense to all parties and to

6   the court system.  By contrast, a class action presents far fewer management difficulties and

7   provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

8   a single court; and

9           c.      Plaintiff anticipates no unusual difficulties in managing this class action.

10  **CHOICE OF LAW/ MCAFEE'S ATTEMPT TO EVADE CALIFORNIA LAW**

11      72.     Even though it is headquartered in California and its operations predominately

12  emanate from California, McAfee's form Consumer Agreement currently contains a provision

13  providing for the application of New York law to certain claims, regardless of where in the

14  United States the consumer party resides.  Until approximately 2009, McAfee's Consumer

15  Agreement provided for the application of California law for all United States consumers

16  regardless of where in the United States they resided, presumably because McAfee is a

17  California-based company with its operations predominately emanating from California.

18      73.     On information and belief, McAfee modified the choice-of-law provision in the

19  Consumer Agreement, in or around 2009, in a deliberate attempt to evade California's consumer

20  protection laws, including: (a) California Business & Professions Code §§ 17600 *et seq*, which

21  was scheduled to take effect, and did take effect, beginning in 2010, and which was specifically

22  enacted by the California Legislature to address unfair, deceptive, and harmful practices

23  regarding automatic renewal services, such as McAfee's unfair and deceptive practices regarding

24  the Auto-Renewal program; (b) California Business & Professions Code § 17501, which requires

25  that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged

26  former price was the prevailing market price . . . within three months next immediately preceding

27  the publication of the advertisement."; (c) California Civil Code § 1770(a)(13), which prohibits

28  "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts

of price reductions."; and/or (d) generally, California's UCL, FAL, and CLRA, which generally provide for greater protection to consumers, including non-California consumers when a California company like McAfee is the alleged wrongdoer.

74. On information and belief, McAfee also modified the choice-of-law provision in the Consumer Agreement in an attempt to foreclose customers residing in states other than New York from being able to pursue claims under state consumer protection statutes.

75. To the extent the Consumer Agreement provides for the application of New York law, it is not applicable or enforceable as to the claims alleged herein under applicable choice-of-law principles. There is no substantial relationship between the contractual relationship, conduct, or claims alleged herein and New York, and there is no reasonable or legitimate basis for the choice or application of New York law. California has a materially greater interest than New York or any other state in having its laws apply, given that McAfee is a California company with operations predominately emanating from California, and the conduct alleged herein emanated predominately from California. Moreover, the application of New York law would violate fundamental policies of California, including, but not limited to, as follows: (a) Customers from states other than New York may be restricted in their ability pursue claims under New York General Business Law § 349 and § 350, whereas customers from all fifty states would be able to pursue claims against California-based McAfee under California's UCL, FAL, and CLRA, and thus the application of New York law would deprive California consumers and consumers from other states doing business with a California company, McAfee, of important rights and remedies, and would interfere with California's important interests in protecting consumers who conduct business in California and deterring California companies from engaging in unfair and deceptive business practices, such as those alleged herein; and (b) California law provides consumers with enhanced protection and relaxed pleading and evidentiary burdens, and thus the application of New York law would interfere with California's important interests in protecting consumers who conduct business in California and deterring California companies from engaging in unfair and deceptive business practices, such as those alleged herein.

76.     Application of New York law to the Class members' claims in this case would reward McAfee for its deliberate attempt to evade the application of California laws that are designed to protect consumers and deter California companies from engaging in unfair and deceptive business practices, such as those alleged herein.

77.     California law applies to the claims of all Class members under applicable choice-of-law principles and for the reasons set forth herein.  Alternatively, California law applies to all Class members residing in states other than New York, and New York law applies only to those Class members residing in New York.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

(On Behalf the Class)

78.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

79.     McAfee entered into valid contractual agreements with Plaintiff and all Class members.

80.     The material terms of McAfee's contracts with Plaintiff and the Class members included McAfee's obligation that, under the Auto-Renewal program, customers enrolled in the program would have their McAfee Software subscriptions renewed at a price no higher than the normal, then-current price that McAfee charged other customers for the same products.

81.     Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with McAfee.

82.     McAfee has breached its contracts with Plaintiff and the Class members by charging them prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products.

83.     By reason of McAfee's contractual breaches, Plaintiff and all Class members have suffered damages, in an amount to be proven at trial, including by paying additional amounts for their renewed McAfee Software subscriptions.

84.     McAfee's contractual breaches are ongoing.  Absent an order from the Court requiring McAfee to perform as it is required to do under its contracts with Plaintiff and the Class members, McAfee will continue to breach its contracts to the detriment of the Class.

**COUNT II**
**Breach of the Covenant of Good Faith and Fair Dealing**

(On Behalf of the Class)

85.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

86.     A covenant of good faith and fair dealing is implied in every contract, including in the contracts between McAfee and Plaintiff and the Class members.

87.     Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party.  A party may not perform an agreement in a manner that would frustrate the basic purpose of the agreement and/or deprive the other party of its rights and benefits under the agreement.

88.     It was objectively reasonable under the circumstances for Plaintiff and the Class to expect that, when their McAfee Software subscriptions were renewed by McAfee pursuant to the Auto-Renewal program, McAfee would charge them prices that were no higher than the normal, then-current prices that McAfee charged other customers for the same products, and not some special, higher price that was only charged to Auto-Renewal customers.

89.     McAfee has abused any and all power it has to impose the prices charged to Plaintiff and the Class.  Moreover, McAfee's conduct alleged herein is inconsistent with the reasonable expectations of Plaintiff and the Class, and is inconsistent with what an objectively reasonable consumer would have expected under the circumstances.

90.     McAfee has acted in a manner that frustrates a basic purpose of its contracts with Plaintiff and the Class, and has deprived Plaintiff and the Class of benefits and rights that they are entitled to under their contracts with McAfee.

91.     Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with McAfee.

92.     By reason of McAfee's breaches of the implied covenant of good faith and fair dealing, Plaintiff and all Class members suffered damages, in an amount to be proven at trial, including by paying additional amounts for their renewed McAfee Software subscriptions.

93.     McAfee's breaches of the implied covenant of good faith and fair dealing are ongoing.  Injunctive relief is required to prevent McAfee from further breaching the implied covenant to the detriment of the Class.

## COUNT III
## Unjust Enrichment

### (On Behalf of the Class)

94.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

95.     McAfee has knowingly been enriched, at the expense of Plaintiff and the Class members, as a result of its misconduct alleged herein.  Such enrichment includes substantial revenues that McAfee has received from Plaintiff and the Class members for additional amounts that McAfee charged them, over and above what McAfee should have charged them.

96.     Plaintiff's and the Class members' detriment, and McAfee's enrichment, are traceable to, and resulted directly and proximately from, the misconduct challenged in this Complaint.

97.     It would be inequitable for, and good conscience militates against permitting, McAfee to retain the amounts that it received as a result of its misconduct alleged herein.

98.     Plaintiff and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all amounts obtained by McAfee as a result of its misconduct alleged herein.

**COUNT IV**
**Violations of California Business & Professions Code § 17200, *et. seq.***

(On Behalf of the Class)

99.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

100.     McAfee's practices alleged herein constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq*.

101.     McAfee's misrepresentations and omissions, as alleged herein, constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq*.

102.     The misrepresentations and omissions by McAfee alleged herein were the type of representations and omissions that are regularly considered to be material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

103.     As a result of the foregoing, Plaintiff and each Class member have been injured and have lost money or property and are entitled to restitution and injunctive relief.

104.     Unless restrained by this Court, McAfee will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business & Professions Code § 17200 *et. seq.*

**COUNT V**
**Violations of California Business & Professions Code § 17500, *et. seq.***

(On Behalf of the Class)

105.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

106. McAfee has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 *et seq.*, including by: (a) falsely representing the nature of Auto-Renewal pricing to Plaintiff and the Class; and (b) failing to disclose to Plaintiff and the Class the true nature of Auto-Renewal pricing.

107. McAfee's misrepresentations and omissions deceive or have a tendency to deceive the general public.

108. The misrepresentations and omissions by McAfee alleged herein were the type of representations and omissions that are regularly considered to be material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

109. As a result of the foregoing, Plaintiff and each Class member have been injured and have lost money or property and are entitled to restitution and injunctive relief.

110. Unless restrained by this Court, McAfee will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business & Professions Code § 17500 *et. seq.*

## COUNT VI
### Violations of California Business & Professions Code § 17600 *et seq.*

(On Behalf of the Class)

111. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

112. Plaintiff and the Class members are "consumers" under California Business & Professions Code § 17601(d).

113. McAfee's Auto-Renewal program constitutes an "automatic renewal" plan or arrangement under California Business & Professions Code § 17601(a).

114. McAfee's contractual promises and representations regarding Auto-Renewal pricing, as alleged herein, constitute "automatic renewal offer terms" under California Business & Professions Code §§ 17601(b) and 17601(b)(3).

115.    By charging Plaintiff and the Class members prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products, McAfee materially changed the terms of the Auto-Renewal program, as such program was specified in McAfee's Consumer Agreement and represented by McAfee to Plaintiff and the Class.

116.    McAfee failed to provide Plaintiff and the Class with clear and conspicuous notice of its material changes to the terms of the Auto-Renewal program or appropriate information regarding cancelation, in violation of California Business & Professions Code § 17602(c) & (d).

117.    As a result of the foregoing, Plaintiff and each Class member have been injured and have lost money or property and are entitled to restitution and injunctive relief pursuant to California Business & Professions Code § 17604.

118.    Unless restrained by this Court, McAfee will continue to engage in the misconduct alleged above, in violation of California Business & Professions Code § 17600 *et. seq.*

**COUNT VII**
**Violations of California's Consumer Legal Remedies Act, California Civil Code § 1750 *et. Seq.***

(On Behalf of the Class)

119.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

120.    McAfee is a "person," as defined by California Civil Code § 1761(c).

121.    Plaintiff and the Class members are "consumers," as defined by California Civil Code §1761(d).

122.    McAfee Software subscriptions and the Auto-Renewal program constitute "goods" and "services," as defined by California Civil Code §1761(a) and (b).

123.    Plaintiff's and Class members' purchases and renewals of McAfee Software subscriptions constitute "transactions," as defined by California Civil Code § 1761(e).

124.    Plaintiff and Class members purchased McAfee Software subscriptions for personal, family, and household purposes as meant by California Civil Code § 1761(d).

1    125.    Venue is proper under California Civil Code § 1780(d) because McAfee does

2    business in this county and a substantial portion of the transactions at issue occurred in this

3    county.  Plaintiff's declaration establishing that this Court has proper venue for this action is

4    attached hereto as **Exhibit B**.

5    126.    McAfee deceived consumers in that it: (a) misrepresented to consumers that the

6    price it charged Auto-Renewal customers to renew their McAfee Software subscriptions would be

7    no greater than the normal, then-current price that McAfee charged other customers for the same

8    products, when in fact McAfee consistently charged Auto-Renewal customers prices that were

9    higher than the normal, then-current prices that McAfee charged other customers for the same

10   products; and (b) failed to disclose to consumers, and concealed from them, the true nature of

11   Auto-Renewal pricing.

12   127.    McAfee's misrepresentations, concealments, and failures to disclose violated the

13   CLRA in the following manners:

14   a.    McAfee misrepresented that McAfee Software and the Auto-Renewal

15   program had characteristics, benefits, or uses that they did not have (California Civil Code

16   § 1770(a)(5));

17   b.    McAfee advertised McAfee Software and the Auto-Renewal program with

18   an intent not to sell them as advertised (California Civil Code § 1770(a)(9));

19   c.    McAfee made false or misleading statements of fact concerning reasons

20   for, existence of, or amounts of price reductions (California Civil Code § 1770(a)(13));

21   d.    McAfee misrepresented that McAfee Software and the Auto-Renewal

22   program conferred or involved rights, remedies, or obligations that they did not have (California

23   Civil Code § 1770(a)(14));

24   e.    McAfee misrepresented that McAfee Software and the Auto-Renewal

25   program were supplied in accordance with previous representations when they were not

26   (California Civil Code § 1770(a)(16));

27   f.    McAfee inserted unconscionable provisions in the Consumer Agreement,

28   including the choice-of-law provision (California Civil Code § 1770(a)(19)).

128.    McAfee's misrepresentations and nondisclosures alleged herein were material to Plaintiff and the Class.  A reasonable person would have considered them important in making purchase decisions.

129.    Plaintiff and the Class relied upon McAfee's material misrepresentations and nondisclosures.  Had Plaintiff and the Class known the truth, they would have acted differently.

130.    As a direct and proximate result of McAfee's material misrepresentations and nondisclosures, Plaintiff and the Class have been irreparably harmed.

131.    On behalf of the Class, Plaintiff seeks injunctive relief to enjoin the material misrepresentations and omissions alleged herein.  Plaintiff also seeks attorneys' fees and costs.

132.    In accordance with California Civil Code § 1782(a), on January 10, 2014, Plaintiff's counsel served McAfee with notice of its CLRA violations by certified mail, return receipt requested.  A true and correct copy of that notice is attached hereto as **Exhibit C**.

133.    If McAfee fails to provide appropriate relief for its CLRA violations within 30 days of Plaintiff's January 10, 2014 notification letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by California Civil Code §§ 1780 and 1782(b).

### COUNT VIII
### In The Alternative, Violations of New York General Business Law §349

134.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

135.    This Count is alleged, in the alternative, on behalf of those Class members residing in the State of New York.

136.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service…."

137.    The misconduct by McAfee alleged in this Complaint is consumer oriented, is of a recurring nature, is directed at consumers and the public at large, and has affected and continues to affect at least thousands of consumers.

138. With respect to Class members residing in the State of New York, the deceptive acts or practices by McAfee alleged herein have occurred in the conduct of business, trade or commerce, and/or in the furnishing of a service, in the State of New York.

139. The misconduct by McAfee alleged in this Complaint is deceptive and misleading in material respects.

140. The misconduct by McAfee alleged in this Complaint is likely to mislead a reasonable consumer acting reasonably under the circumstances.

141. As a result of McAfee's violations of New York General Business Law § 349, Class members suffered damages, in an amount to be proven at trial, including by paying additional amounts for their renewed McAfee Software subscriptions.

142. McAfee's violations of New York General Business Law § 349 are ongoing. Injunctive relief, pursuant to New York General Business Law § 349(h), is required to prevent McAfee from further harming Class members through its continued violations.

143. McAfee's violations of New York General Business Law § 349 have been willful and knowing. Pursuant to New York General Business Law § 349(h), Class members are entitled to recover three times their actual damages up to $1,000.

## COUNT IX
## In the Alternative, Violations of New York General Business Law § 350

144. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

145. This Count is alleged, in the alternative, on behalf of those Class members residing in the State of New York.

146. New York General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service…."

147. With respect to Class members residing in the State of New York, the false advertising by McAfee alleged herein has occurred in the conduct of business, trade or commerce, and/or in the furnishing of a service, in the State of New York.

148.    McAfee's misrepresentations alleged in this Complaint are false and misleading in material respects.

149.    McAfee's misrepresentations alleged in this Complaint are likely to mislead a reasonable consumer acting reasonably under the circumstances.

150.    As a result of McAfee's violations of New York General Business Law § 350, Class members suffered damages, in an amount to be proven at trial, including by paying additional amounts for their renewed McAfee Software subscriptions.

151.    McAfee's violations of New York General Business Law § 350 are ongoing. Injunctive relief is required to prevent McAfee from further harming Class members through its continued violations.

152.    McAfee's violations of New York General Business Law § 350 have been willful and knowing.  Class members are entitled to recover three times their actual damages up to $1,000.

## COUNT X
### Violations of California Business & Professions Code §§ 17200 *et seq*, California Business & Professions Code §§ 17500 *et seq*, and California Civil Code § 1750 *et seq*.

(On Behalf of the Reference Price Class)

153.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

154.    Plaintiff brings this Count individually and on behalf of the proposed members of the Reference Price Class.  Plaintiff seeks injunctive relief to enjoin McAfee from continuing to advertise false former prices and false discounts, as alleged herein.

155.    McAfee uses its Auto-Renewal pricing scheme, alleged above, to help carry out yet another unlawful pricing scheme—this one perpetrated by McAfee on those customers who purchase new McAfee Software subscriptions or manually renew existing subscriptions via McAfee's website or their McAfee Software.

156.    To these customers, McAfee advertises two prices for McAfee Software subscriptions: (a) the selling price; and (b) directly next to the selling price, a higher expressly-referenced former price with a line, or "slash," through it.  McAfee also expressly represents that

the customer will "Save" money if they make their purchase at that time. McAfee states the "savings" in specific dollar or percentage amounts that equal the difference between the referenced former price and the selling price. McAfee prominently advertises the former reference price and the purported discount from such price. McAfee also prominently features phrases such as "Buy Now" regarding the false discounts in order to create a sense of urgency and the false impression that customers will miss out on the purported markdowns if they do not buy the products immediately.

157. McAfee intends that customers will perceive that its reference prices stand for former or regular prices charged by McAfee.

158. The purported discounts that McAfee represents to these customers are false because the referenced former prices are fabricated and fail to represent McAfee's true regular or former prices for the products in question. The only time that McAfee ever, or virtually ever, charges the higher reference prices for McAfee Software subscriptions are when it improperly imposes such higher prices on Auto-Renewal customers. On information and belief, McAfee tries to "establish" its false former reference prices, advertised to consumers on its website and through its software, through its inflated and unfair charges to Auto-Renewal customers.

159. McAfee's false reference price scheme has been rampant across all three McAfee Software product lines. Its representations of discounts from false reference prices have been pervasive on its website and in representations made to customers through the software.

160. For example, a customer purchasing or manually renewing a one-year subscription to McAfee AntiVirus Plus on December 9, 2013, either via McAfee's website or via their McAfee Software, would have been presented by McAfee with: (a) the actual selling price for the subscription, $34.99; and (b) directly next to that selling price, a former reference price of $49.99 with a "slash" line through it, together with a representation that the customer will "Save 30%" if they "Buy Now." For example, see the screenshot below taken from McAfee's website on December 9, 2013:



161.    After customers clicked the "Buy Now" button, they would have been taken to the following "Checkout" page, where they again would have been exposed to the former reference price and discount representations. McAfee explicitly states on the "Checkout" page: "**Save $15 off** the regular price of $49.99":[2]

---

[2] The "Checkout" page screen shot also shows additional deceptive practices by McAfee, including adding, by default, an unrequested physical CD to the order for an extra $12.95, and adding, by default, an unrequested software program called Registry Power Cleaner for $4.95 (at a purported $35.00 discount from the claimed regular price of $39.95, even though the product cannot be otherwise found for sale on McAfee's website).  The customer must take affirmative steps to remove the unwanted add-ons or will be charged for them.

162.    The $49.99 reference price is false, as is McAfee's corresponding representation of "savings," because the reference price does not represent McAfee's true "regular" or former price for the product.  During the 12 months prior to December 9, 2013, McAfee always offered the same one-year subscription to McAfee AntiVirus Plus at a selling price lower than $49.99.  The only time during this period that McAfee charged as much as $49.99 for a one-year AntiVirus Plus subscription was when it improperly and unfairly imposed this higher price on Auto-Renewal customers.  The following chart demonstrates that McAfee has consistently advertised McAfee AntiVirus Plus at a purported discount from a false former reference price:



163.    The following charts further demonstrate that McAfee's advertising of purported discounts from false former reference prices has been pervasive for its Internet Security and Total Protection products as well:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





164. McAfee deliberately and artificially sets the false reference prices to create false impressions among customers regarding the products' values and the bargains that customers will receive if they purchase McAfee's products.

165. McAfee's integrated marketing scheme of advertising false savings from false former prices increases the demand for its products. As a result of this scheme, consumers who purchase new software subscriptions or manually renew existing subscriptions, on McAfee's website or via their McAfee Software, end up paying more than they bargained for because they do not receive the price discounts and value of products that McAfee promises them.

166. McAfee advertised a false reference price and false discount to Plaintiff Williamson, regarding its AntiVirus Plus product. *See* ¶¶ 55-57, above. Mr. Williamson reasonably relied upon McAfee's false representations and thereby believed that he was receiving a discount from McAfee's regular price by making his purchase on October 8, 2011. Mr. Williamson was injured by McAfee's false representations, including by paying more for his McAfee Software subscription than he otherwise would have paid, and being denied the discount and product value he was promised.

167. McAfee's false reference price scheme violates California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.

168. Pursuant to California Business and Professions Code § 17501, "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement."

169. California Civil Code § 1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

170. McAfee's practices, misrepresentations, and omissions, as alleged herein, constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq*.

171.   McAfee has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 *et seq.*, including, but not limited to, by advertising prices as former prices of McAfee Software when such prices were not the prevailing price within the three months next preceding the publication of the advertisement.

172.   The misrepresentations and omissions by McAfee alleged herein were the type of representations and omissions that are regularly considered to be material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

173.   McAfee's misrepresentations and omissions deceive or have a tendency to deceive the general public.

174.   McAfee is a "person," as defined by California Civil Code § 1761(c).

175.   Plaintiff and the Reference Price Class members are "consumers," as defined by California Civil Code §1761(d).

176.   McAfee Software subscriptions constitute "goods" and "services," as defined by California Civil Code §1761(a) and (b).

177.   Plaintiff's and Reference Price Class members' purchases and renewals of McAfee Software subscriptions constitute "transactions," as defined by California Civil Code § 1761(e).

178.   Plaintiff and Reference Price Class members purchased McAfee Software subscriptions for personal, family, and household purposes as meant by California Civil Code § 1761(d).

179.   Venue is proper under California Civil Code § 1780(d) because McAfee does business in this county and a substantial portion of the transactions at issue occurred in this county.  Plaintiff's declaration establishing that this Court has proper venue for this action is attached as **Exhibit B**.

180.   McAfee's misrepresentations, concealments, and failures to disclose violated the CLRA in the following manners:

a.   McAfee misrepresented that McAfee Software had characteristics, benefits, or uses that it did not have (California Civil Code § 1770(a)(5));

1            b.      McAfee advertised McAfee Software with an intent not to sell it as

2 advertised (California Civil Code § 1770(a)(9));

3            c.      McAfee made false or misleading statements of fact concerning reasons

4 for, existence of, or amounts of price reductions (California Civil Code § 1770(a)(13));

5            d.      McAfee misrepresented that McAfee Software conferred or involved

6 rights, remedies, or obligations that it did not have (California Civil Code § 1770(a)(14)); and

7            e.      McAfee misrepresented McAfee Software was supplied in accordance with

8 previous representations when it was not (California Civil Code § 1770(a)(16));

9            f.      McAfee inserted unconscionable provisions in the Consumer Agreement,

10 including the choice-of-law provision (California Civil Code § 1770(a)(19)).

11      181.    As a result of the foregoing, Plaintiff and each Reference Price Class member have

12 been injured.

13      182.    Unless restrained by this Court, McAfee will continue to engage in unfair,

14 deceptive, and unlawful conduct, as alleged above, in violation of California Business &

15 Professions Code § 17200 *et. seq.*, California Business & Professions Code § 17500 *et. seq.*, and

16 California Civil Code § 1750 *et seq.*

17      183.    Plaintiff, on behalf of himself and the Reference Price Class, seeks a permanent

18 injunction, enjoining McAfee from continuing to engage in the misconduct alleged in this Count.

19

20 **PRAYER FOR RELIEF**

21      1.    On behalf of himself and the Class and Reference Price Class, Plaintiff requests

22 that the Court order relief and enter judgment against McAfee as follows:

23            a.      An order certifying the proposed Class and Reference Price Class and

24 appointing Plaintiff and his counsel to represent the Class and Reference Price Class;

25            b.      An order that McAfee is permanently enjoined from its misconduct as

26 alleged;

27

28

1      c.      A judgment awarding Plaintiff and the Class members restitution,

2  including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that

3  McAfee obtained as a result of its misconduct as alleged;

4      d.      A judgment awarding Plaintiff and the Class members actual damages;

5      e.      A judgment awarding Plaintiff and the Class members punitive, exemplary

6  and  treble damages;

7      f.      Pre-judgment and post-judgment interest;

8      g.      Attorneys' fees, expenses, and the costs of this action; and

9      h.      All other and further relief as this Court deems necessary, just, and proper.

10                            **JURY DEMAND**

11      Plaintiff demands a trial by jury on all issues so triable.

12

13  Dated:      January 10, 2014        Respectfully submitted,

14                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

15

16  By: _____
    Michael W. Sobol

17

18  Michael W. Sobol
    msobol@lchb.com
19  Roger N. Heller
    rheller@lchb.com
20  Nicole D. Sugnet
    nsugnet@lchb.com
21  LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    275 Battery Street, 29th Floor
22  San Francisco, CA  94111
    Telephone:  (415) 956-1000
23
    Daniel M. Hattis
24  dan@hattislaw.com
    HATTIS LAW
25  1134 Crane Street, Suite 216
    Menlo Park, CA 94025
26  Telephone:  (650) 980-1990

27                            *Attorneys for Plaintiff*

28