1   Daniel F. Katz (*pro hac vice*)
    David S. Kurtzer-Ellenbogen (*pro hac vice*)
2   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
3   Washington, DC 20005
    Telephone:  (202) 434-5000
4   Facsimile:  (202) 434-5029
    dkatz@wc.com
5   dkurtzer@wc.com

6   Michael F. Donner (SBN 155944)
    Daniel K. Slaughter (SBN 136725)
7   STEIN & LUBIN LLP
    Transamerica Pyramid
8   600 Montgomery Street, 14th Floor
    San Francisco, CA  94111
9   Telephone:  (415) 981-0550
    Facsimile:  (415) 981-4343
10  mdonner@steinlubin.com
    dslaughter@steinlubin.com
11
    Attorneys for Defendant
12  McAFEE, INC.

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  SAM WILLIAMSON,                    Case No.  5:14-cv-00158-EJD

18         Plaintiff,                  **CLASS ACTION**

19  v.                                 **NOTICE OF MOTION AND MOTION OF
                                       DEFENDANT McAFEE, INC. TO DISMISS
20  McAFEE, INC.,                      COMPLAINT; MEMORANDUM OF
                                       POINTS AND AUTHORITIES IN
21         Defendant.                  SUPPORT**

22                                     **[Fed. R. Civ. P. 9(b), 12(b)(6)]**

23                                     Date:    August 1, 2014
                                       Time:    9:00 a.m.
24                                     Dept:    Courtroom 4, 5th Floor
                                       Judge:   Hon. Edward J. Davila
25

26

27

28

PLEASE TAKE NOTICE THAT on August 1, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Jose Division, in Courtroom 4, Fifth Floor, 280 South First Street, San Jose, California, before the Hon. Edward J. Davila, Defendant McAfee, Inc. ("McAfee"), will move to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

McAfee's motion rests on the following grounds, which are set forth in detail in the attached Memorandum of Points and Authorities:

Plaintiff allegedly purchased a McAfee software subscription for $29.99, which McAfee notified him was a discount off the regular price of $49.99. He admits that his contract with McAfee and associated marketing materials expressly provided for automatic renewal of his subscription at a non-discounted price, with a right to opt out at any time. Plaintiff did not opt out of auto-renewal, including after he received an email (before being charged) that notified him that he would be charged for renewal the same price presented to him at the outset—$49.99. After being charged $49.99 for renewal, Plaintiff did not seek a refund, though the contract afforded him that right. Plaintiff alleges that many other customers paid the same $49.99 for renewal.

All of Plaintiff's claims are based on the proposition that the $29.99 price he initially paid is the "true" price for the subscription he bought, and therefore that McAfee is liable both for charging him $49.99 for renewal and for representing $29.99 to be a discounted price. But based on Plaintiff's own allegations and the documents referenced in the Complaint, McAfee's conduct was consistent with the plain language of the contract and McAfee's associated marketing representations, which expressly permitted McAfee to charge Plaintiff a non-discounted price for renewal—the same non-discounted price he was quoted when first subscribing, that was disclosed to him before he was charged for renewal, and that other auto-renewal customers paid. Therefore, Plaintiff has failed to state any claims at all, whether for breach of contract (Count I), in quasi-contract (Counts II-III), for violations of California law (Counts IV-VII, X), or for violations of New York law (Counts VIII-IX).

While the Complaint's primary defect is that Plaintiff has pleaded himself out of Court, certain claims also fail for additional reasons, as follows:

- Plaintiff cannot recover for breach of the covenant of good faith and fair dealing (Count II) where McAfee only engaged in conduct expressly authorized under the contract; this claim also is duplicative of the breach of contract claim;

- Unjust enrichment (Count III) is not a cause of action under California law;

- Plaintiff has failed to plead sufficient facts under Federal Rule of Civil Procedure 9(b) as to all claims that sound in fraud, including claims under the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*) (Count IV), False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, *et seq.*) (Count V), the statute governing auto-renewal programs (Cal. Bus. & Prof. Code § 17600, *et seq.*) (Count VI), the Consumer Legal Remedies Act ("CLRA") (Cal. Civil Code § 1750, *et seq.*) (Count VII), and the "reference price" claim (which alleges additional violations of the UCL, FAL, and CLRA) (Count X).

- Plaintiff has not alleged facts that amount to actionable conduct under the UCL, the FAL, Cal. Bus. & Prof. Code § 17600, *et seq.*, or the CLRA (Counts IV-VII), because, *inter alia*, (1) his allegations rest on claims that fail the "reasonable consumer" test (as to the UCL and FAL claims); (2) Plaintiff does not allege facts sufficient to demonstrate reasonable reliance (same, and also applicable to the CLRA claim); (3) the conduct at issue does not fall under Section 17602 (as to the claim under Section 17600 *et seq.*); (4) Plaintiff did not buy or lease goods or services (as to the CLRA claim); and (5) the conduct at issue does not fall within the enumerated categories of actionable conduct under the CLRA.

- Plaintiff does not have standing to sue (1) under New York General Business Law §§ 349 and 350 (Counts VIII-IX), because he is not a resident of New York and was not allegedly deceived in New York, or (2) with respect to his "reference price" claim (Count X), because he has alleged neither economic injury nor damages suffered.

The Motion is based on this notice, the supporting memorandum of points and authorities and exhibits thereto, Plaintiff's Complaint, any reply brief filed hereafter, the oral argument of the parties, and the complete files and records for this action.

1    Dated: March 7, 2014            Respectfully submitted,

2                                    WILLIAMS & CONNOLLY LLP

3                                    By:  /s/ Daniel F. Katz
                                          Daniel F. Katz (*pro hac vice*)
4

5                                    STEIN & LUBIN LLP

6                                    By:  /s/ Michael F. Donner
                                          Michael F. Donner (SBN 155944)
7
                                     COUNSEL FOR DEFENDANT McAFEE, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT McAFEE INC.'S MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED.................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL STANDARD ............................................................................................... 4

ARGUMENT .......................................................................................................... 6

I.      PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT I) IS BASED ON A MISSTATEMENT OF THE LANGUAGE OF THE AGREEMENT. ............................... 6

II.     PLAINTIFF FAILS TO STATE QUASI-CONTRACT CLAIMS (COUNTS II-III). ........ 7

III.    PLAINTIFF HAS NO CLAIMS UNDER THE UCL OR FAL (COUNTS IV-V). ........... 8

        A.      Plaintiff Has No Claim Under Either the FAL or the "Fraudulent" Prong of the UCL. ............................................................................................................ 9

        B.      Plaintiff Has No Claim Under the Remaining Prongs of the UCL. ....................... 14

IV.     PLAINTIFF ALLEGES NO FACTS TO SUPPORT A CLAIM UNDER CALIFORNIA'S AUTO-RENEWAL STATUTE (COUNT VI). .................................... 15

V.      PLAINTIFF HAS NO CLAIM UNDER THE CLRA (COUNT VII). ............................. 15

        A.      Plaintiff Did Not Buy or Lease Goods or Services from McAfee. ........................ 16

        B.      McAfee's Alleged Conduct Does Not Fall Within Any Category Proscribed by the CLRA. ........................................................................................................... 17

        C.      Plaintiff's CLRA Claim Fails for the Same Reasons as His UCL and FAL Claims. ............................................................................................................ 19

VI.     BECAUSE PLAINTIFF WAS NOT ALLEGEDLY DECEIVED IN NEW YORK, HE HAS NO CLAIMS UNDER NEW YORK LAW (COUNTS VIII-IX). ......................... 19

VII.    PLAINTIFF'S ALTERNATIVE THEORY OF LIABILITY FAILS (COUNT X).......... 20

VIII.   THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE. ...................... 23

CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................4, 5

*Barker v. Default Resolution Network*, No. C 08-2898 CW, 2009 WL 593634
(N.D. Cal. Mar. 5, 2009) ...........................................................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................4

*Bruce v. Harley-Davidson, Inc.*, No. CV 09-6588 CAS, 2010 WL 3521775 (C.D.
Cal. Jan. 15, 2010) ...............................................................................................18, 19

*Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011)...............................16

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ........................................5, 6, 9, 14

*Cullen v. Netflix, Inc.*, No. 5:11-CV-01199, 2013 WL 140103 (N.D. Cal. Jan. 10,
2013) ...............................................................................................................9, 10, 12, 23

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) ............................................10

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) ............................................6, 19

*DuFour v. Be LLC*, 291 F.R.D. 413 (N.D. Cal. 2013) ...............................................................9

*Dunkel v. eBay Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan.
31, 2013) ...............................................................................................................7, 8

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal.
Oct. 5, 2010)...............................................................................................................16

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .............................................................10, 11

*Girard v. Toyota Motor Sales, U.S.A. Inc.*, 316 F. App'x 561 (9th Cir. 2008) ...........................11

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049 (9th
Cir. 2008) ...............................................................................................................5

*Haskins v. Symantec Corp.*, No. 13-cv-01834, 2013 WL 6234610 (N.D. Cal. Dec.
2, 2013) ...............................................................................................................16

*Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...................................... passim

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ........................................................22, 23

*In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010)...................21, 22

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D.
Cal. 2011)...............................................................................................................18

*In re Clorox Consumer Litig.*, No. 12-00280 SC, 2013 WL 3967334 (N.D. Cal.
July 31, 2013)...............................................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) .................................................................................................................3

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................16

*In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013)................................12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) ..........................................................................................16

*Janda v. T-Mobile, USA, Inc.*, No. 05-cv-03729-JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009), aff'd, 378 F. App'x 705 (9th Cir. 2010)............................................7, 9, 10, 23

*Kaufman v. Sirius XM Radio, Inc.*, No. 09 Civ. 9590(VM), 2010 WL 4968049 (S.D.N.Y. Nov. 23, 2010), aff'd, 474 F. App'x 5 (2d Cir. 2012) ............................................23

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).............................................................5, 19

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................9, 23

*McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13-02032-VAP, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014) ...................................................................... passim

*Noll v. eBay, Inc.*, 282 F.R.D. 462 (N.D. Cal. 2012) .......................................................5, 9, 12, 13

*Noll v. eBay Inc.*, No. 5:11-CV-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013) ...............................................................................................................12, 13

*O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWX), 2011 WL 3299936 (C.D. Cal. July 29, 2011) ....................................................................................................9

*Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104 (9th Cir. 2013).........................................................................................4

*Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008) .........................1, 5, 23

*Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105 (N.D. Cal. 2013) ........................22

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003)................................................................................16

*Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010)............................................................16, 17

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................................13

*Warth v. Seldin*, 422 U.S. 490 (1975) ...........................................................................................20

*Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) ....................................................5

*Williamson v. Apple*, No. 5:11-cv-00377-EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ...............................................................................................................5, 11, 19, 23

*Wixon v. Wyndham Resort Dev. Corp.*, No. C07-02361 JSW, 2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) ...................................................................................................17

*Wofford v. Apple Inc.*, No. 11-CV-0034 AJB NLS, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ......................................................................................................16

*Woods v. Google Inc.*, No. 5:11-cv-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) .................................................................................................7

*Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ........................... passim

## STATE CASES

*Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555 (Cal. Ct. App. 2006).......................18

*Bower v. AT&T Mobility, LLC*, 127 Cal. Rptr. 3d 569 (Cal. Ct. App. 2011) ..........................22, 23

*Cel-Tech Commc'ns, Inc. v. L.A Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548 (Cal. 1999) .................................................................................................14

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)...............................19

*In re Tobacco II Cases*, 93 Cal. Rptr. 3d 559 (Cal. 2009) ...........................................8, 9

*Kazi v. State Farm Fire & Cas. Co.*, 103 Cal. Rptr. 2d 1 (Cal. 2001) ...........................17

*Meyer v. Sprint Spectrum L.P.*, 88 Cal. Rptr. 3d 859 (Cal. 2009) ...........................19, 22

*Sproul v. Oakland Raiders*, Nos. A104542, A106658, 2005 WL 1941388 (Cal. Ct. App. Aug. 15, 2005)........................................................................................17

*Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585 (Cal. Ct. App. 2008) .................................................................................................7

## OTHER AUTHORITIES

*Black's Law Dictionary* (9th ed. 2009)................................................................17

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................................................2, 8, 22

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ......................................................2, 8, 21

Cal. Bus. & Prof. Code §§ 17600 *et seq.* ......................................................15, 23

Cal. Civ. Code §§ 1750 *et seq.*.................................................................... passim

Federal Rule of Civil Procedure 9(b) ................................................................ passim

Federal Rule of Civil Procedure 12(b)(1) .................................................................5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................4, 19, 21

New York General Business Law §§ 349 and 350 .......................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1          **INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**

2          Plaintiff Sam Williamson bought a subscription for Defendant McAfee, Inc.'s anti-virus

3   software at a discount and entered into a written agreement that made clear that his subscription

4   would be renewed at a non-discounted price.  He now brings a putative nationwide class action,

5   claiming that his renewal should have been at the same price he initially paid.  But Plaintiff's

6   claims are belied by the plain language of the contract, which unambiguously states that McAfee

7   would renew Plaintiff's subscription for a fee no greater than "McAfee's  then-current price,

8   *excluding promotional and discount pricing*."  Ex. A to Compl. ¶ 14 (emphasis added).  Plaintiff

9   attempts to write this clear provision out of the contract, repeatedly disregarding its express

10  language that the renewal price "exclud[es] promotional and discount pricing."  *See, e.g.*, Compl.

11  ¶¶ 2, 21, 27, 30, 31, 45, 46, 58, 67(a)-(b), 80, 82, 88, 115.  Because the contract expressly

12  permitted the conduct about which Plaintiff complains (*i.e.*, renewal at a price higher than

13  Plaintiff paid at the outset), the Court should dismiss Plaintiff's breach of contract claim.  *See*

14  *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (granting motion to dismiss

15  where alleged conduct was permitted by contract); *Plascencia v. Lending 1st Mortg.*, 583 F. Supp.

16  2d 1090, 1101-02 (N.D. Cal. 2008) (dismissing with prejudice breach of contract claim "premised

17  on a promise that [was] not contained in the contract").  Stripped of Plaintiff's false premise about

18  what McAfee promised, the other counts of the Complaint also fail to state a claim.

19         McAfee's contract is not unusual.  Like countless subscription services—cable and

20  satellite TV providers, health clubs, and magazine publishers, to name a few—McAfee often

21  offers subscribers like Plaintiff a promotional price to sign up, hoping that the customer will

22  continue to subscribe at a non-discounted price after the promotional period ends.  Customers

23  may opt out of auto-renewal at the outset, in which case their subscription will end when it

24  expires.  If they do not opt out of auto-renewal initially, customers may do so later at any time.

25  They are notified by e-mail when the auto-renewal of their subscription is approaching, with a

26  message that includes the price they will be charged for that renewal.  They can elect not to renew

27  at that time.  If they want, but forget, to cancel their renewal before they are charged, McAfee

28

1   promises a full refund within sixty days, no questions asked, of any auto-renewal charges.  *See*

2   Ex. A to Compl. ¶ 14.

3       Plaintiff got exactly what he bargained for:  (1) a discounted subscription price when he

4   signed up, and (2) renewal at the disclosed "then-current price*, excluding promotional and

5   discount pricing.*"  Ex. A to Compl. ¶ 14.  Plaintiff does not allege that he was dissatisfied with

6   McAfee's software.  He does not allege that he tried to cancel his subscription but was charged

7   anyway.  He does not allege that he tried to opt out of auto-renewal but could not do so.  Nor does

8   he allege that he requested a refund after he was charged for renewal but was refused.  Rather, the

9   premise of Plaintiff's Complaint is that McAfee had an obligation to go beyond the terms of the

10  contract and to maintain the same discounted pricing upon renewal of his *existing* subscription

11  that it offers to *new* subscribers, and that McAfee's failure to do so is actionable.

12      All ten counts of the Complaint should be dismissed.  Because McAfee specifically told

13  Plaintiff that, upon renewal, he would be charged "McAfee's then-current price, *excluding*

14  *promotional and discount pricing*," he has no claim for breach of contract.  For the same reason,

15  Plaintiff has no common law equitable claims, nor claims under California's Unfair Competition

16  Law ("UCL") or False Advertising Law ("FAL").  As to the FAL and UCL, his allegations also

17  fail because he has not met the heightened pleading requirements of Rule 9(b), and he never

18  alleges that he read or relied upon the allegedly misleading statements concerning auto-renewal.

19  His claim under the California Legal Remedies Act ("CLRA") fails for the same reasons.  It also

20  fails because his software subscription does not involve the sale or lease of goods or services and

21  because the conduct alleged does not fall within the specific categories of conduct proscribed by

22  the CLRA.  Plaintiff's claims under New York law fail because he does not have standing to

23  bring those claims.  Plaintiff's final claim—that the advertised regular prices on McAfee's

24  website are not true prices—fares no better, because he fails to allege any cognizable fraud or

25  misrepresentation by McAfee, nor any cognizable injury at all.

26      There is nothing misleading or sinister here, and Plaintiff is not a victim.  The Court

27  should dismiss this action with prejudice.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## FACTUAL BACKGROUND[1]

McAfee licenses computer security software to consumers who wish to protect their computers from viruses, malware, phishing, hackers, and other threats.  Compl. ¶¶ 13, 14. McAfee's subscribers enter into a licensing contract called the Consumer Products End User License Agreement.  *See* Ex. A to Compl. ("EULA").[2]  The EULA is attached to, and referenced throughout, the Complaint.  *See, e.g.*, Compl. ¶¶ 24-27.

Upon subscribing, a customer receives a license (typically for a year) to use McAfee's software.  Compl. ¶ 13; EULA ¶¶ 2, 14.  If the customer has supplied McAfee with a credit card, the "subscription will be automatically renewed (and charged to the account You have provided) for another term at the expiration of Your current term . . . for a fee no greater than McAfee's then-current price, excluding promotional and discount pricing."  EULA ¶ 14.  The EULA expressly states that customers may opt out of auto-renewal at any time.  *Id.*  Those who remain enrolled in auto-renewal receive an e-mail prior to the end of their subscription term.  *Id.*; *see also* Compl. ¶ 45.  That e-mail states expressly the price that will be charged upon renewal.  *See* EULA ¶ 14 ("McAfee will send written notice of Your renewal to the e-mail address You have provided to McAfee prior to the time of Your renewal and upon the renewal of Your subscription term."); Exhibit 1 to the Declaration of Charlie Simpson ("Exhibit 1").[3]  Under the plain language of the EULA, if an auto-renewal customer forgets to opt out, or decides after being charged that she does not want to renew, McAfee provides a full refund, upon request, at any time within sixty days of a renewal.  EULA ¶ 14.

In October 2011, Plaintiff purchased a one-year subscription to McAfee's AntiVirus Plus for $29.99.  Compl. ¶¶ 54-56.  At that time, McAfee informed him that the regular price for the

---

[1]  Solely for purposes of this motion, McAfee accepts as true the non-conclusory, well-pled factual allegations of the Complaint.

[2]  Plaintiff alleges that "[a]ll iterations of the [EULA] during the relevant time period have included similar terms" to those at issue here.  Compl. ¶ 26.

[3]  As the Complaint and EULA expressly reference this e-mail, it may be considered on a motion to dismiss.  *See, e.g.*, *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *3 (N.D. Cal. Aug. 2, 2012).  The e-mail that was sent to Plaintiff was generated from a dynamic template in the form attached as Exhibit 1.

1   subscription was $49.99 and offered Plaintiff a $20 discount.  *Id.*  When Plaintiff purchased his

2   subscription, he was informed that he had been signed up for auto-renewal.  *Id.* ¶ 58.  He also

3   knew that he was entering into a contract with McAfee, *id.* ¶ 59; this contract afforded Plaintiff

4   the right to opt out of auto-renewal, EULA ¶ 14, although he apparently declined to do so.  In

5   November 2012, McAfee charged Plaintiff $49.99 for the renewal of his subscription—exactly

6   the price that McAfee had stated was the regular, non-discounted price for the software

7   subscription when Plaintiff first signed up.[4]  Compl. ¶¶ 55, 60.

8         Plaintiff now alleges that the $49.99 price was "fabricated" and "failed to represent

9   McAfee's true regular or former price" for this subscription.  Compl. ¶ 57.  But Plaintiff

10   simultaneously alleges that *all* auto-renewal subscribers were charged that same $49.99 price for

11   a renewed one-year subscription to McAfee AntiVirus Plus.  *Id.* ¶ 47; *see also id.* ¶ 158 (alleging

12   that auto-renewal customers are charged the "higher reference prices" for subscriptions).  Plaintiff

13   also alleges that auto-renewal customers constitute a significant proportion of McAfee

14   customers—indeed, he alleges that McAfee is "heavily reliant" on subscribers who automatically

15   renew each year.  *Id.* ¶ 19.  Thus, by Plaintiff's own allegations, the price he paid for his renewed

16   subscription (and the price all other auto-renewal customers paid as well) was—exactly as

17   McAfee promised—no more than the "then-current price, excluding promotional and discount

18   pricing."  EULA ¶ 14.

19                                       **LEGAL STANDARD**

20         To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

21   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

22   plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

23   *Twombly*, 550 U.S. 544, 570 (2007)).[5]  Dismissal is appropriate "where the complaint lacks a

---

4   Plaintiff purchased his one-year subscription on October 8, 2011, Compl. ¶¶ 54-58, but also had
a 60-day free trial period in connection with his computer purchase, *id.* ¶ 54.  His paid
subscription thus began in December 2011, after the trial period, and as agreed, McAfee charged
him for renewal in November 2012, one month before his annual subscription was to expire.  *See*
EULA ¶ 14 (renewal charges will be made "within 30 days prior to the expiration of the term").

5   Where McAfee asserts that Plaintiff lacks standing under certain California statutes, McAfee's
motion should be considered pursuant to Rule 12(b)(6).  *See Petzschke v. Century Aluminum Co.*
*(In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104, 1109 (9th Cir. 2013) ("[F]ailure to

1   cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Williamson v.*

2   *Apple*, No. 5:11-cv-00377-EJD, 2012 WL 3835104, at *2 (N.D. Cal. Sept. 4, 2012) (quotations

3   omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4   statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

5        Not all allegations in a complaint must be accepted as true.  "[T]he court need not accept

6   as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable

7   inferences," *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012), or "allegations

8   that contradict matters properly subject to judicial notice or by exhibit," *Hartman v. Gilead Scis.,*

9   *Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotations omitted).

10  "Nor is a court required to assume the truth of legal conclusions merely because they are cast in

11  the form of factual allegations."  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1137 (N.D. Cal.

12  2013) (quotations omitted).

13       Conversely, with respect to those factual allegations that *are* taken as true, a plaintiff may

14  "plead [him]self out of court" by "plead[ing] facts which establish that he cannot prevail."

15  *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotations omitted).

16  Indeed, courts routinely dismiss breach of contract claims when the contract expressly permits the

17  allegedly violative conduct or does not actually contain the promise a plaintiff alleges was broken.

18  *See, e.g.*, *Zepeda*, 777 F. Supp. 2d at 1220 (dismissing putative class action alleging breach of

19  contract where alleged conduct was permitted by contract); *Plascencia*, 583 F. Supp. 2d at

20  1101-02 (dismissing breach of contract claim with prejudice where claim was "premised on a

21  promise that is not contained in the contract").

22       Claims "sounding in fraud are subject to the heightened pleading requirements of Fed. R.

23  Civ. P. 9(b)."  *Cullen*, 880 F. Supp. 2d at 1022 (collecting cases).  This requirement applies to

24  claims for violations of the CLRA, UCL, and FAL.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120

25  (9th Cir. 2009) (CLRA and UCL); *Noll v. eBay Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012)

26  (FAL).

27

28  allege statutory standing results in failure to state a claim on which relief can be granted, not the
    absence of subject matter jurisdiction.").  To the extent Rule 12(b)(1) has any application here,
    McAfee respectfully moves to dismiss pursuant to Rule 12(b)(1) as well.

1

**ARGUMENT**

2  **I.  PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT I) IS BASED ON A**

3  **MISSTATEMENT OF THE LANGUAGE OF THE AGREEMENT.**

4          "In order to state a claim for breach of contract, a plaintiff must plead the existence of a

5  contract, [the] performance of the contract or excuse for nonperformance, the defendant's breach

6  and resulting damages." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012).[6]

7  "The complaint must identify the specific provision of the contract allegedly breached by the

8  defendant." *Id.*  Plaintiff fails this test, because under the plain language of the EULA, there was

9  no breach.

10         Plaintiff alleges that under the EULA, McAfee was obligated to charge him for renewal at

11  "a price no higher than the normal, then-current price that McAfee charged other customers for

12  the same products." Compl. ¶ 80; *see also id.* ¶¶ 2, 21, 27, 30, 31, 45, 46, 58, 67(a)-(b), 82, 88,

13  115 (allegations to same effect).  He claims that McAfee breached the EULA by not doing so.  *Id.*

14  ¶ 82.  But the EULA says no such thing, and Plaintiff does not allege a breach of any specific

15  language in the EULA.[7]  The EULA *nowhere* obligates McAfee to offer customers upon renewal

16  the same discounts it might offer to new subscribers, and Plaintiff acknowledges that he (and all

17  other auto-renewal subscribers) were charged the same $49.99 price that was represented to

18  Plaintiff as the regular price for McAfee AntiVirus Plus when he first signed up.  *Id.* ¶¶ 47, 55.

19         McAfee did just what it promised:  it renewed Plaintiff's subscription at a fee no greater

20  than "McAfee's then-current price, excluding promotional and discount pricing."  EULA ¶ 14.

21  The Court should dismiss the breach of contract claim because Plaintiff does not allege that

22  McAfee violated any actual provision of the EULA, and because he predicates his claim on a

23  misstatement of the plain terms of the agreement.  *See Zepeda*, 777 F. Supp. 2d at 1220

24  _____

25  [6]  The EULA has a choice-of-law provision (selecting New York law), that Plaintiff claims is
    unenforceable.  EULA ¶ 25; Compl. ¶¶ 72-77.  Plaintiff alleges that California law applies to his
    claims.  *Id.* ¶ 77.  McAfee does not concede Plaintiff's argument, but for purposes of this motion,
26  assumes *arguendo* that California law governs.

27  [7]  Because Plaintiff's allegations concerning the purported terms of the EULA are contradicted by
    the plain language of that agreement (Exhibit A to the Complaint), the Court should disregard
28  them.  *See Herskowitz*, 940 F. Supp. 2d at 1137 ("[A] court need not accept as true allegations
    contradicted by judicially noticeable facts."); *Cullen*, 880 F. Supp. 2d at 1022.

1  (dismissing breach of contract claim because contract expressly permitted defendant's conduct);

2  *Woods v. Google Inc.*, No. 5:11-cv-1263-JF, 2011 WL 3501403, at *2-6 (N.D. Cal. Aug. 10,

3  2011) (dismissing breach of contract claim where plaintiff failed to show any breach of promise

4  in agreement); *Janda v. T-Mobile, USA, Inc.*, No. 05-cv-03729-JSW, 2009 WL 667206, at *9

5  (N.D. Cal. Mar. 13, 2009) (no breach of contract for charging additional fee "because the

6  contract[] clearly stated that it would charge them a monthly fee, plus additional charges"), *aff'd*,

7  378 F. App'x 705 (9th Cir. 2010).[8]

8  **II.    PLAINTIFF FAILS TO STATE QUASI-CONTRACT CLAIMS (COUNTS II-III).**

9       Plaintiff's claim for unjust enrichment (Count III) is not cognizable under California law.

10  "Simply put, there is no cause of action in California for unjust enrichment."  *Dunkel v. eBay Inc.*,

11  No. 5:12-CV-01452-EJD, 2013 WL 415584, at *11 (N.D. Cal. Jan. 31, 2013) (quotations

12  omitted); *accord Herskowitz*, 940 F. Supp. 2d at 1148 ("[T]here is no cause of action for unjust

13  enrichment under California law.") (collecting cases).  Accordingly, the Court should dismiss the

14  unjust enrichment claim with prejudice.

15      Plaintiff's claim for breach of the covenant of good faith and fair dealing (Count II) should

16  be dismissed for the same reasons as the breach of contract claim.  The covenant of good faith and

17  fair dealing "will only be recognized to further the contract's purpose; it will not be read into a

18  contract to prohibit a party from doing that which is expressly permitted by the agreement itself."

19  *Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 597 (Cal. Ct. App. 2008).  The

20  EULA expressly permitted McAfee to charge Plaintiff on renewal a price that excluded any

21  promotions or discounts he was offered when first subscribing.  Because McAfee did only "what

22  it was expressly given the right to do," *id.*, Plaintiff has no claim.  *See also Herskowitz*, 940 F.

23  Supp. 2d at 1143 (dismissing good faith and fair dealing claim where the "express terms of the

24  Agreement" permitted the alleged conduct).

25  _____

[8] To the extent Plaintiff alleges "on information and belief" that McAfee charges auto-renewal
26  customers a price higher than the pricing suggestions that McAfee offers to third-party retailers,
Compl. ¶ 50, and that such third party retailers offer greater discounts than McAfee, *id.* ¶ 51,
27  Plaintiff fares no better.  The prices allegedly charged by third party retailers, or those allegedly
suggested by McAfee to third party retailers, are not "McAfee's then-current price, excluding
28  promotional and discount pricing."  EULA ¶ 14.  McAfee is not responsible for the prices charged
by others for McAfee products.

1   This claim also is duplicative of Plaintiff's breach of contract claim.  When allegations in

2   support of a claim for breach of the covenant of good faith and fair dealing "do not go beyond the

3   statement of a mere contract breach and, relying on the same alleged acts, simply seek the same

4   damages or other relief already claimed in a companion contract cause of action, they may be

5   disregarded as superfluous as no additional claim is actually stated."  *Dunkel*, 2013 WL 415584,

6   at *10 (quotations omitted).  Here, both the breach of contract claim and the good faith and fair

7   dealing claim incorporate the same factual allegations by reference.  Compl. ¶¶ 78, 85.  Both are

8   based on the faulty premise, defeated both by the plain language of the EULA and by Plaintiff's

9   own allegations, that McAfee charged him on renewal a price higher than agreed.  *Id.* ¶¶ 82, 88.

10  And both seek the same relief:  damages and an injunction.  *Id.* ¶¶ 83-84, 92-93.  Even if the

11  breach of contract claim were to survive, because the good faith and fair dealing claim simply

12  alleges a breach of the EULA based on the same factual allegations, the latter should be dismissed

13  as duplicative of the former.  *See Dunkel*, 2013 WL 415584, at *10; *Zepeda*, 777 F. Supp. 2d at

14  1221.

15  **III.    PLAINTIFF HAS NO CLAIMS UNDER THE UCL OR FAL (COUNTS IV-V).**

16  Plaintiff attempts to state claims under the UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

17  and FAL (Cal. Bus. & Prof. Code §§ 17500 *et seq.*).  The UCL proscribes any "unlawful, unfair

18  or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

19  Cal. Bus. & Prof. Code § 17200.  Each of the three "prongs" of the UCL (i.e., "unlawful,"

20  "unfair," and "fraudulent") is "a separate and distinct theory of liability."  *Dunkel*, 2013 WL

21  415584, at *10 (quotations omitted).  The FAL prohibits the making or dissemination of a

22  statement "which is untrue or misleading, and which is known, or which by the exercise of

23  reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

24

25

26

27

28

A.    **Plaintiff Has No Claim Under Either the FAL or the "Fraudulent" Prong of the UCL.**

Plaintiff's UCL and FAL claims are predicated on the "fraudulent" prong of the UCL, which incorporates the FAL.[9]  *See In re Tobacco II Cases*, 93 Cal. Rptr. 3d 559, 569 n.8 (Cal. 2009) ("A violation of the UCL's fraud prong is also a violation of the false advertising law."). "[C]ourts often address these claims in tandem," *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWX), 2011 WL 3299936, at *4 (C.D. Cal. July 29, 2011), and McAfee addresses them together here.

A "fraudulent business act or practice" is one in which "members of the public are likely to [have been] deceived," but "[a] UCL claim under the 'fraudulent prong' requires the plaintiff to have 'actually relied' on the alleged misrepresentation to his detriment."  *DuFour v. Be LLC*, 291 F.R.D. 413, 420-21 (N.D. Cal. 2013) (citation and quotations omitted).  The FAL also requires actual reliance.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1026 (N.D. Cal. 2012) ("[A]ctual reliance is required to have standing to sue under the FAL.").  Claims under both the FAL and the fraudulent prong of the UCL also must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *See Cullen*, 880 F. Supp. 2d at 1022; *see also Noll*, 282 F.R.D. at 468 (applying Rule 9(b) to FAL claim).

Plaintiff's claims under these statutes fail for multiple independent reasons.

*First*, the core defect in these claims is that there is no fraud, nor any false advertising, in McAfee's alleged conduct.  McAfee offers new subscribers a discount to encourage them to purchase its products; it charges existing subscribers the "then-current price, excluding promotional and discount pricing," EULA ¶ 14, for auto-renewal.  This saves those renewal subscribers the time and effort of initiating a new subscription, and gives them the peace of mind that their anti-virus subscription will not lapse.  Nothing about this conduct is fraudulent or

---

[9]  That Plaintiff's UCL claim can proceed—if at all—only under the "fraudulent" prong is evidenced by the manner in which he categorizes the alleged wrongful conduct for purposes of his CLRA claim, *see* Compl. ¶¶ 119-133.  With the exception of one claim regarding the supposedly "unconscionable" choice-of-law provision in the EULA, Plaintiff categorizes *all* of the alleged violations of the CLRA as misrepresentations.  *See id.* ¶ 127(a)-(e).

misleading, nor is anything about it advertised falsely.  *See Cullen v. Netflix, Inc.*, No. 5:11-CV-
01199, 2013 WL 140103, at *7 (N.D. Cal. Jan. 10, 2013) (dismissing UCL and FAL claims where
"Plaintiff has not alleged facts showing that Defendant's assertions and calculations turned out to
be false"); *Janda*, 2009 WL 667206, at *6, *8 (no claim under UCL or FAL where service
agreement and advertising "disclose[d] the fact that T-Mobile would charge these fees" and
"invoices clearly disclosed the nature of [the fees]"); *cf. Herskowitz*, 940 F. Supp. 2d at 1147
(rejecting fraud claim where conduct was expressly permitted by contract).

     *Second*, Plaintiff's UCL and FAL claims fail because, if *he* feels misled, he is not a
reasonable consumer.  "Whether an advertisement is 'misleading' must be judged by the effect it
would have on a reasonable consumer . . . .  [A] representation does not become 'false and
deceptive' merely because it will be unreasonably misunderstood by an insignificant and
unrepresentative segment of the class of persons to whom the representation was addressed."
*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (alteration, quotations,
and citation omitted).  Here, McAfee told Plaintiff expressly in the EULA that, when renewing,
he would not receive the promotional or discount pricing he was offered at the outset.  Before the
renewal, he was sent an e-mail telling him the exact price of his renewed subscription, *see* Exhibit
1, and he decided to renew anyway.  Given the clear statement in the EULA (and associated
marketing and advertising, *see, e.g.*, Compl. ¶ 35) that renewal charges would "exclud[e]
promotional and discount pricing," EULA ¶ 14, no reasonable customer could be misled when
charged a renewal price that was not discounted.

     "[C]ourts have dismissed complaints as a matter of law because they did not meet the
'reasonable consumer' standard." *Cullen*, 2013 WL 140103, at *6 (quoting *Freeman v. Time,
Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  In *Freeman*, for example, the plaintiff alleged that *Time*
had misrepresented the terms of a promotion.  The Ninth Circuit affirmed the dismissal of UCL
and FAL claims because "[t]he promotions expressly and repeatedly state the conditions which
must be met in order to win."  68 F.3d at 289.  In *Cullen*, this Court dismissed UCL and FAL
claims where the Court found that Cullen could not satisfy the "reasonable consumer" standard
with "conclusory assertions and references to a single consumer's interpretations." *Cullen*, 2013

1   WL 140103, at *7.  Similarly, in *McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV

2   13-02032-VAP, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014), the court dismissed a UCL claim

3   because it was "unlikely that the public would be deceived by Defendants' statements on [its]

4   packaging, as it is improbable that a significant portion of the general consuming public or of

5   targeted consumers, acting reasonably in the circumstances, could be misled by those statements."

6   *Id.* at *8 (quotations omitted).

7          The same is true here.  Plaintiff bought a subscription for $29.99, which he was told was a

8   discount from the regular price of $49.99.  Compl. ¶ 55.  He agreed to a contract under which, at

9   the end of his initial subscription period, he would be charged for renewal up to the "then-current

10  price, excluding promotional and discount pricing."  EULA ¶ 14.  He was then charged $49.99 for

11  renewal.  Compl. ¶ 60.  Nothing about this is misleading or untrue, and nothing about this would

12  mislead a reasonable customer.  Reasonable consumers who sign up for discounted initial

13  subscriptions, *and who are expressly told that their renewal will be at non-discounted prices*,

14  cannot possibly be surprised or misled when, in fact, they are renewed at non-discounted prices.

15  *See also Girard v. Toyota Motor Sales, U.S.A. Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008)

16  (affirming dismissal of UCL and other claims "because a reasonable consumer would not be

17  misled by Toyota's statements"); *Williamson*, 2012 WL 3835104, at *5-6 (rejecting claim that

18  reasonable customer would be deceived by advertising about iPhone screen).

19         Moreover, Plaintiff *cannot* have been misled about the price he would be charged for

20  renewal of his subscription, because he was *expressly told that price* before being charged.  *See*

21  Exhibit 1 ("The following product(s) will be automatically renewed for the additional period(s) at

22  the following price . . . :  Product name (of renewal):  McAfee AntiVirus Plus . . .[;] Base price

23  (pre-tax): $49.99(USD)"); *see also* EULA ¶ 14 ("McAfee will send written notice of Your

24  renewal to the e-mail address You have provided to McAfee prior to the time of Your renewal

25  and upon the renewal of Your subscription term."); Compl. ¶ 45 ("McAfee sends email notices to

26  Auto-Renewal customers prior to the end of the customer's subscription term . . . .").  Having

27  received an e-mail expressly stating the price he would be charged, no reasonable customer could

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    believe that he would be charged a different price.  *See Freeman*, 68 F.3d at 289 ("no reasonable

2    reader could ignore" terms of offer clearly laid out in materials).

3        *Third*, both the UCL and FAL claims fail because Plaintiff fails to allege facts sufficient to

4    demonstrate reasonable reliance on the alleged misrepresentations and, therefore, cannot show an

5    injury in fact.  "A plaintiff must plead reliance on alleged misstatements with particularity by

6    alleging facts of sufficient specificity, allowing a court to infer that misrepresentations caused

7    injury to plaintiffs by inducing them to pay for products or services."  *Noll*, 282 F.R.D. at 468

8    (quotations omitted); *see also Cullen*, 2013 WL 140103, at *4 (plaintiff "must plead with

9    particularity actual reliance" (quotations omitted)).  Plaintiff has not alleged that he actually read

10   and relied upon the EULA.  Indeed, Plaintiff does not allege anywhere that he saw, read, or relied

11   upon the statement in the EULA that animates his entire claim.  Rather, he alleges only that he

12   "entered into and was subject to" the EULA, Compl. ¶ 59, and that McAfee made an alleged

13   representation "on the page where [he] entered his credit card information to make his purchase,"

14   *id.* ¶ 58.  *See Noll v. eBay Inc.*, No. 5:11-CV-04585-EJD, 2013 WL 2384250, at *5 (N.D. Cal.

15   May 30, 2013) (dismissing UCL and FAL claims with prejudice where contract clearly listed fees

16   to be charged and plaintiff failed to read agreement); *see also In re LinkedIn User Privacy Litig.*,

17   932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (plaintiffs could not establish standing based on

18   misrepresentation when they "do not even allege that they actually read the alleged

19   misrepresentation").

20       Even if Plaintiff could truthfully allege that he read the EULA, he would still fail to plead

21   reliance adequately, because he does not "specify which exact misrepresentation [he] relied on"

22   or "whether that misrepresentation induced [his] decision."  *Noll*, 282 F.R.D. at 468.  Nor could

23   Plaintiff "meet the actual reliance requirement," *McMahon*, 2014 WL 324008, at *9, with new

24   allegations.  Any claimed reliance on McAfee's alleged misrepresentations would be "manifestly

25   unreasonable," *id.* (quotations omitted), in light of (1) the plain language of the contract that

26   auto-renewal customers may be charged the "then-current price, excluding promotional and

27   discount pricing," EULA ¶ 14; (2) Plaintiff's knowledge that he was offered (and accepted) with

28   respect to his initial subscription a $29.99 price represented to him as a discount from a $49.99

1    regular price; and (3) the e-mail Plaintiff received before being charged for renewal, which told

2    him the exact price of $49.99 he would be charged, *see* Exhibit 1; EULA ¶ 14; Compl. ¶ 45.

3         Plaintiff's conclusory allegations of reliance, *e.g.*, Compl. ¶¶ 42, 61, cannot save his

4    claims. "[T]he court need not accept as true allegations that are conclusory, unwarranted

5    deductions of fact, or unreasonable inferences." *Cullen*, 2013 WL 140103, at *3. Here, not only

6    does Plaintiff never allege that he personally read the EULA and relied on its language, but his

7    allegations and the documents referenced therein show that he received an e-mail, before his

8    subscription was renewed, *stating the exact price he was to be charged* and giving him the option

9    to opt out of auto-renewal if he did not want to renew at that price. *See* EULA ¶ 14; Exhibit 1;

10   Compl. ¶ 45. Plaintiff plainly was aware that McAfee offers discounts to new customers—he

11   alleges that he signed up on the basis of a $20 discount from a $49.99 regular price. Compl. ¶ 56.

12   But even after he learned that he was going to be charged $49.99, not $29.99, for his renewal, he

13   did not cancel his subscription, opt out of auto-renewal, or seek a no-questions-asked refund, as

14   the EULA expressly permitted. EULA ¶ 14. To the contrary, Plaintiff alleges that, on November

15   7, 2012, his subscription was automatically renewed at the price of $49.99. Compl. ¶ 60. *See*

16   *Noll*, 2013 WL 2384250, at *4 ("Plaintiffs do not allege that they cancelled their GTC Listings or

17   otherwise ceased placing GTC Listings upon discovering that eBay charged recurring fees on

18   such listings. This omission is fatal to Plaintiffs' fraud-based claims.") (dismissing UCL and

19   FAL claims).

20        *Fourth*, Plaintiff's UCL and FAL claims do not meet the standard of Rule 9(b), which

21   requires him to "allege 'the who, what, where, and how of the misconduct charged.'" *Noll*, 2013

22   WL 2384250, at *4 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

23   2003)). This Court has dismissed claims under the FAL and the "fraudulent" prong of the UCL

24   for failure to satisfy Rule 9(b) when the plaintiff did not identify the specific alleged

25   misrepresentation that he read and relied upon. *See Noll*, 282 F.R.D. at 468 (dismissing UCL and

26   FAL claims under Rule 9(b) where complaint "does not specify which exact misrepresentation

27   Plaintiff relied on, whether that misrepresentation induced Plaintiff's decision to use GTC

28   listings, or whether Plaintiff would have acted differently had there been no misrepresentation").

1

**B.      Plaintiff Has No Claim Under the Remaining Prongs of the UCL.**

2        To the extent Plaintiff attempts to assert a claim under the remaining prongs of the UCL,

3    he fails to allege a cognizable claim.  The "unlawful" prong "permits injured consumers to

4    'borrow' violations of other laws and treat them as unfair competition that is independently

5    actionable." *McMahon*, 2014 WL 324008, at *9.  Plaintiff cannot proceed under the "unlawful"

6    prong because he alleges no violation of law apart from the other statutory claims pled in the

7    Complaint.  The failure of those statutory claims is fatal to his UCL claim.  *See Cullen*, 880 F.

8    Supp. 2d at 1028 ("Because Cullen's other claims fail, his UCL claims premised on 'unlawful'

9    acts ha[ve] no basis and must also fail." (citation omitted)) (collecting cases); *Cel-Tech*

10   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 560-61 (Cal. 1999).

11       "An unfair business practice under the UCL is one that either offends an established

12   public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

13   consumers." *Cullen*, 880 F. Supp. 2d at 1028 (quotations omitted).  "To test whether a business

14   practice is unfair, [a] court must weigh the utility of the defendant's conduct against the gravity

15   of the harm to the alleged victim." *Id.*  The standard for "unfair" practices is currently "in flux

16   among California courts," but federal courts apply either a "tethering test," which requires that the

17   unfair conduct be "tethered to specific constitutional, statutory, or regulatory provisions," or a

18   "balancing test," which "examines whether the challenged business practice is 'immoral,

19   unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court

20   to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

21   victim.'" *Herskowitz*, 940 F. Supp. 2d at 1145-46 (citations and quotations omitted).

22       Here, as in *Cullen*, Plaintiff's claims under the "unfair" prong fail to the extent they are

23   predicated upon alleged "deceptive statements and statutory violations," 880 F. Supp. 2d at 1028,

24   for the reasons set forth above.  To the extent Plaintiff attempts to allege a violation of the

25   "unfair" prong based on other unspecified alleged misconduct, Plaintiff has not alleged any public

26   policy to which his auto renewal claims are "tethered," nor facts sufficient to show that McAfee's

27   auto-renewal charges are "immoral, unethical, oppressive, unscrupulous or substantially injurious

28

to consumers," *Herskowitz*, 940 F. Supp. 2d at 1145-46 (quotations omitted). His claim thus fails under the "unfair" prong, in addition to the other prongs of the UCL (and the FAL).

The Court should dismiss Plaintiff's UCL and FAL claims with prejudice.

## IV. PLAINTIFF ALLEGES NO FACTS TO SUPPORT A CLAIM UNDER CALIFORNIA'S AUTO-RENEWAL STATUTE (COUNT VI).

The California Code includes a statute that establishes certain requirements for automatic renewal plans of the kind McAfee and many other companies offer. *See* Cal. Bus. & Prof. Code §§ 17600-17606. Plaintiff alleges that McAfee violated this statute because, "[b]y charging [him] and the Class members prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products, McAfee materially changed the terms of the Auto-Renewal program, as such program was specified in" the EULA. Compl. ¶ 115.

This claim fails for two reasons. *First*, Plaintiff again rewrites the EULA to claim a purported violation of the statute—but the EULA simply does not say what he claims. *Second*, even if the EULA had guaranteed Plaintiff the same discounted price forever, which it plainly did not, Plaintiff fails to allege a "material change" to "the terms of the automatic renewal" program under California Business and Professions Code § 17602(c). Section 17602(c) addresses the situation in which a company enters into an agreement with its auto-renewal subscribers and then changes *the terms of that agreement* in a manner that is not clear and conspicuous. There is no allegation in the Complaint, nor could there be, that McAfee ever changed the terms of the EULA applicable to Plaintiff *at all*. The EULA that governs Plaintiff's relationship with McAfee is the same one that he agreed to in the first place. Plaintiff has no claim under this statute.

## V. PLAINTIFF HAS NO CLAIM UNDER THE CLRA (COUNT VII).

The CLRA, Cal. Civ. Code §§ 1750-1784, affords certain remedies to consumers, but does not afford Plaintiff a remedy when he was charged on renewal exactly the price he was promised. *Compare* Compl. ¶ 55, *with id.* ¶ 60; *see also* EULA ¶ 14. Plaintiff's CLRA claim therefore fails for the same fundamental reasons as his other claims. But it also fails for several additional reasons.

*First*, the CLRA does not apply because Plaintiff bought a software license; he did not buy or lease goods or services.  *Second*, McAfee's conduct as alleged does not fall into one of the categories proscribed by the CLRA.  *Third*, Plaintiff has not pled his CLRA claim specifically, nor has he pled actual reliance, which is necessary to state a claim under the CLRA.  *See Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 537-38 (S.D. Cal. 2011).

### A.    Plaintiff Did Not Buy or Lease Goods or Services from McAfee.

"The CLRA only applies to a limited set of consumer transactions, and is not a law of 'general applicability.'"  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) (quoting *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)).  One limitation of the CLRA is that it applies only to transactions involving "the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  Plaintiff did not buy or lease goods or services from McAfee—he purchased a software license.

Under the CLRA, "'[g]oods'" must be "tangible chattel[,]" and "'[s]ervices'" must be "work, labor, and services."  Cal. Civ. Code § 1761(a)-(b).  Software purchased digitally is neither a good nor a service.  *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *18-19 (N.D. Cal. Oct. 5, 2010); *accord McMahon*, 2014 WL 324008, at *10 ("[S]oftware and online services fall outside the 'goods' and 'services' covered by the CLRA." (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012)).[10]  Accordingly, the CLRA does not apply here.

Even if Plaintiff's auto-renewal subscription were a "good" or "service" under the CLRA, McAfee does not *sell or lease its software*; rather, it *licenses use* of its software.  *See* EULA ¶ 2 ("McAfee hereby grants to You a non-exclusive, non-transferable, non-assignable, revocable

---

[10]  *See also In re iPhone*, 844 F. Supp. 2d at 1070 (following *Ferrington*); *Wofford v. Apple Inc.*, No. 11-CV-0034 AJB NLS, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) (same).  In *Haskins v. Symantec Corp.*, No. 13-cv-01834, 2013 WL 6234610, at *10 (N.D. Cal. Dec. 2, 2013), a court in this District held that, where available both in stores and online, software might be considered a "good" under the CLRA.  *Haskins* is an outlier, and the weight of authority has followed the well-reasoned analysis in *Ferrington*.  In any event, while Plaintiff alleges that McAfee software is available both in stores and online, Compl. ¶ 15, Count VII pertains to the *renewal* of his subscription, which occurs only online.  Thus, even under *Haskins*, Plaintiff's CLRA claim does not involve the sale or lease of a "good," and the CLRA does not apply.

license to download, install and use the Software . . . .  The Software is licensed, not sold.").  A license is not a transaction involving the sale or lease of a good or service as required for the CLRA to apply.  *See Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1111 (9th Cir. 2010) (software license is not a sale);[11] *Black's Law Dictionary* 1002 (9th ed. 2009) (defining "license" as "an agreement (*not amounting to a lease* or profit à prendre) that it is lawful for the licensee to enter the licensor's land to do some act that would otherwise be illegal" (emphasis added)).  To the extent anything was sold, it was a license.  "A license is not a 'tangible chattel.'"  *Sproul v. Oakland Raiders*, Nos. A104542, A106658, 2005 WL 1941388, at *19 (Cal. Ct. App. Aug. 15, 2005) (citation omitted); *see also Wixon v. Wyndham Resort Dev. Corp.*, No. C07-02361 JSW, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008) (time share interest including license to use certain vacation properties was not good or service under CLRA).  Indeed, Plaintiff does not allege that he purchased *software*, but rather that he purchased a software *subscription*.  Compl. ¶¶ 56, 58-60, 122-123 (same).  A subscription, like a license, is not tangible.  *See Kazi v. State Farm Fire & Cas. Co.*, 103 Cal. Rptr. 2d 1, 7 (Cal. 2001) ("'[T]angible property' refers to things that can be touched, seen, and smelled.").  Plaintiff's auto-renewal transaction is not governed by the CLRA.

## B.   McAfee's Alleged Conduct Does Not Fall Within Any Category Proscribed by the CLRA.

Plaintiff's CLRA claim independently fails because the conduct he alleges by McAfee does not fall within any of the categories proscribed by the CLRA.  California Civil Code § 1770 lists twenty-six specific practices deemed unlawful under the CLRA—practices such as, *inter alia*, "[p]assing off goods or services as those of another," "[a]dvertising furniture without clearly indicating that it is unassembled," or "[a]dvertising or promoting any event" regarding veterans'

---

[11]  In *Vernor*, the Ninth Circuit held that "a software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions."  621 F.3d at 1111.  Here, the EULA meets all of these criteria.  It expressly provides that the user is granted a "license" and provides that the license is "non-transferable" and "non-assignable."  EULA ¶ 2; *see also id.* ("The Software is licensed, not sold.").  It also makes clear that McAfee "retain[s] all right, title and interest in and to the Software," *id.* ¶ 4, and imposes significant restrictions on the user, *e.g.*, *id.* ¶ 7 ("License Restrictions").

1   benefits without satisfying certain conditions.  *Id.* § 1770(a)(1), (11), (25)(A).  Plaintiff's

2   conclusory allegations, Compl. ¶ 127(a)-(f), do not allege conduct covered by any of the

3   enumerated statutory categories.

4        Plaintiff nowhere alleges any facts that would support a conclusion that McAfee

5   misrepresented the "characteristics, benefits, or uses" of its software subscription.  Compl.

6   ¶ 127(a).  Nor has he propounded any factual allegations that would lead to the conclusion that

7   McAfee advertised its software subscription "with an intent not to sell [it] as advertised," *id.*

8   ¶ 127(b).  Plaintiff asserts that McAfee "made false or misleading statements of fact concerning

9   reasons for, existence of, or amounts of price reductions," *id.* ¶ 127(c), but his CLRA claim in

10  Count VII involves alleged auto-renewal *overcharges*, not price reductions.  And there are no

11  factual allegations in the Complaint that McAfee misrepresented that its software subscription

12  "conferred or involved rights, remedies, or obligations that [it] did not have," *id.* ¶ 127(d), nor

13  that McAfee misrepresented that its software subscription was "supplied in accordance with

14  previous representations when [it was] not," *id.* ¶ 127(e).

15       Plaintiff's last effort to fit the square peg of his factual allegations into the round hole of

16  the CLRA is the claim that McAfee "inserted unconscionable provisions" into the EULA.

17  Compl. ¶ 127(f).  But the only provision he identifies as "unconscionable" is a New York

18  choice-of-law provision that he claims is unenforceable.  *See id.* ¶¶ 72-77.  If Plaintiff is correct

19  that the choice-of-law provision is unenforceable (and if any of his claims survive, which they

20  should not), then the case will proceed under California law, just as McAfee has assumed for

21  purposes of this motion.  If he is wrong, then New York law will apply.  Either way, the

22  choice-of-law clause hardly "shock[s] the conscience."  *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr.

23  3d 555, 564 (Cal. Ct. App. 2006) (quotations omitted).  Plaintiff's "argument[] that the

24  choice-of-law provision is procedurally unconscionable . . . [is] unconvincing."  *In re Apple &*

25  *AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011).  Moreover,

26  even if the choice-of-law provision truly did "shock the conscience" and were therefore

27  unconscionable, Plaintiff has not and cannot allege facts that would show any injury associated

28  with that contract provision.  *See Bruce v. Harley-Davidson, Inc.*, No. CV 09-6588 CAS, 2010

1   WL 3521775, at *7 (C.D. Cal. Jan. 15, 2010) (dismissing CLRA claim where "plaintiffs have not

2   suffered any damage[s] as a result of Harley-Davidson's purported unconscionable warranty

3   provision because plaintiffs do not allege that Harley-Davidson has threatened or sought to

4   enforce the provision at issue" (quotations omitted)); *Meyer v. Sprint Spectrum L.P.*, 88 Cal. Rptr.

5   3d 859, 865-66 (Cal. 2009) (no CLRA claim for allegedly unconscionable contract provision

6   when no party has tried to enforce it).

7       **C.      Plaintiff's CLRA Claim Fails for the Same Reasons as His UCL and FAL**

8              **Claims.**

9              Finally, Plaintiff's CLRA claim fails for the same reasons as the UCL and FAL claims.

10  *See supra* Part III.  As with the UCL and FAL, a CLRA claim sounding in fraud must satisfy Rule

11  9(b), *Kearns*, 567 F.3d at 1125, but Plaintiff's allegations fall far short for the reasons explained

12  above.  Plaintiff posits the conclusory allegation that he and all other putative class members

13  "relied upon McAfee's material misrepresentations and nondisclosures."  Compl. ¶ 129.  But he

14  does not even allege that he *read* the alleged misrepresentation in the EULA, let alone that he

15  relied on it.  *See Donohue*, 871 F. Supp. 2d at 924 ("The plaintiff must also allege the specifics of

16  his reliance upon such misrepresentations." (quotations omitted)); *Williamson*, 2012 WL

17  3835104, at *5 (dismissing CLRA claim where "Plaintiff does not allege that he specifically

18  relied on the . . . statements or video demonstration in a manner which meets the standard

19  required by Federal Rule of Civil Procedure 9(b)").  As with the UCL claim, Plaintiff's failure to

20  adequately plead either a misrepresentation or reliance is fatal under Rules 12(b)(6) and 9(b).

21  **VI.    BECAUSE PLAINTIFF WAS NOT ALLEGEDLY DECEIVED IN NEW YORK,**

22          **HE HAS NO CLAIMS UNDER NEW YORK LAW (COUNTS VIII-IX).**

23              Plaintiff purports to bring claims under New York General Business Law ("GBL") §§ 349

24  and 350 "on behalf of those Class members residing in the State of New York."  Compl. ¶¶ 135,

25  145.  But Plaintiff does not live in New York; he lives in Garden Grove, California. *Id.* ¶ 6.  And

26  by his own allegations, "[t]here is no substantial relationship between the contractual relationship,

27  conduct, or claims alleged herein and New York[.]" *Id.* ¶ 75.

28

1   To state a claim under Sections 349 and 350 of the GBL, "the deception of [the] consumer

2   must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y.

3   2002); *accord In re Clorox Consumer Litig.*, No. 12-00280 SC, 2013 WL 3967334, at *7 (N.D.

4   Cal. July 31, 2013). Plaintiff has not suffered any alleged deception in New York and cannot

5   bring these claims, whether for himself or for others. *See Warth v. Seldin*, 422 U.S. 490, 502

6   (1975) (plaintiff must be a member of the class he seeks to represent; "[u]nless these petitioners

7   can thus demonstrate the requisite case or controversy between themselves personally and

8   respondents, none may seek relief on behalf of himself or any other member of the class."

9   (quotations omitted)). The Court should dismiss Counts VIII and IX.

10  **VII.   PLAINTIFF'S ALTERNATIVE THEORY OF LIABILITY FAILS (COUNT X).**

11  Plaintiff concludes the Complaint with a smorgasbord count purporting to state CLRA,

12  UCL, and FAL claims all at once under an entirely new theory of liability. Compl. ¶¶ 153-183.

13  While Counts I through IX pertain to the prices that McAfee charges its *existing* subscribers for

14  auto-renewals, Count X pivots and addresses *new* subscribers. Here, Plaintiff alleges that the

15  discounts that McAfee offers are "fabricated" because McAfee's advertised regular price of

16  $49.99 is not a "true" price. *Id.* ¶ 158, 162.

17  This claim fails for several independent reasons.

18  *First*, Plaintiff's "reference price" claim, *see, e.g.*, Compl. ¶ 154, fails as a matter of law

19  under all three statutes because he does not allege any misrepresentation or fraudulent conduct.

20  Plaintiff received the discount he was promised when he purchased a subscription for McAfee

21  AntiVirus Plus for $29.99, $20 off the regular $49.99 price. *Id.* ¶ 55. Plaintiff cannot plausibly

22  claim that the advertised $49.99 regular price was a fiction when he simultaneously alleges that

23  he and many others were *actually charged* that price (affording them the convenience of not

24  having to re-subscribe, and the assurance of no lapse in anti-virus protection). Plaintiff alleges

25  that many, many subscribers pay the non-discounted price of $49.99 for a subscription to McAfee

26  AntiVirus Plus. *See, e.g.*, *id.* ¶¶ 17-20, 47, 158. Indeed, Plaintiff alleges that McAfee is "heavily

27  reliant" on the "massive amounts of revenue" it receives from renewal subscribers who are paying

28  $49.99 to renew their subscriptions. *Id.* ¶¶ 19, 47. Plaintiff seeks to bring claims on behalf of

1    those many renewal subscribers charged $49.99 for their renewals.  *Id.* & *passim* (Counts I-IX).

2    Thus, by Plaintiff's own allegations, $49.99 is not a fictitious or false price, but a *real price*

3    charged to numerous McAfee customers, and Count X fails as a matter of law.

4        *Second*, Plaintiff's reference price claim under the CLRA fails because this claim, like the

5    auto-renewal claim, involves a software license and does not involve the sale or lease of a good or

6    service.  *See supra* Part V; *see also* Compl. ¶ 176 (identifying the alleged good or service as

7    "Software subscriptions").[12]

8        *Third*, Plaintiff's reference price claim under the FAL fails under Rules 9(b) and 12(b)(6)

9    because he has not pled facts concerning the prevailing market price in the three months prior to

10   his purchase of a McAfee AntiVirus Plus subscription in October 2011.[13]  Plaintiff makes

11   allegations concerning a hypothetical purchaser in December 2013 and alleged pricing by

12   McAfee in 2012 and 2013, *see* Compl. ¶¶ 160, 162, but those allegations do not address

13   McAfee's pricing in the months that preceded Plaintiff's purchase in *October 2011*.

14       Plaintiff alleges "[o]n information and belief" that "McAfee did not offer for sale, or make

15   substantial sales of, McAfee AntiVirus Plus at a price of $49.99 within a reasonable period of

16   time before October 8, 2011."  *Id.* ¶ 57.  But "[a]llegations of fraud based on information and

17   belief usually do not satisfy the particularity requirements of Rule 9(b)."  *In re Accuray, Inc.*

18   *S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 934 (N.D. Cal. 2010); *see also Barker v. Default*

19   *Resolution Network*, No. C 08-2898 CW, 2009 WL 593634, at *2-4 (N.D. Cal. Mar. 5, 2009)

20   _____

21   [12]  As with his auto-renewal CLRA claim, Plaintiff purports to identify specific categories of
     proscribed conduct that McAfee allegedly violated.  *See* Compl. ¶ 180(a)-(f).  While McAfee does

22   not dispute that this claim at least *alleges* "false or misleading statements of fact concerning . . .
     price reductions," *id.* ¶ 180(c) (though it fails for other reasons, as described above), the other

23   categories do not work.  Plaintiff nowhere alleges that McAfee misrepresented the
     "characteristics, benefits, or uses" of its software; that McAfee advertised its software "with an

24   intent not to sell it as advertised"; and so forth.  The Court should dismiss the reference price
     CLRA claim in its entirety and with prejudice, but in any event should dismiss claims with
     respect to the conduct listed in Paragraphs 180(a-b) and (d-f) of the Complaint.

25
     [13] Under the FAL, "[n]o price shall be advertised as a former price of any advertised thing, unless

26   the alleged former price was the prevailing market price as above defined within three months
     next immediately preceding the publication of the advertisement or unless the date when the

27   alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."
     Cal. Bus. & Prof. Code § 17501.

28

1    (dismissing claims with prejudice based on plaintiff's failure to alleged fraud with specificity

2    required by Rule 9(b)). A plaintiff may plead fraud on information and belief "as to matters

3    peculiarly within the opposing party's knowledge," but only if he also "state[s] the facts upon

4    which the belief is founded." *In re Accuray*, 757 F. Supp. 2d at 934; *see also Primo v. Pac.*

5    *Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1111 (N.D. Cal. 2013). Here, information about

6    McAfee's pricing in the three months before October 2011 is *not* peculiarly within McAfee's

7    knowledge; to the contrary, the Complaint is replete with allegations concerning McAfee's

8    pricing at various points in time. *E.g.*, Compl. ¶¶ 60, 162, 163. Plaintiff's failure to state any

9    facts in support of his claim, solely on "information and belief," *id.* ¶ 57, that McAfee did not

10   offer or sell AntiVirus Plus for $49.99 during the months preceding October 2011, is fatal to his

11   FAL claim. It also is fatal to the remaining claims alleged in Count X because Plaintiff does not

12   allege any facts to support his assertion that $49.99 was a "false" reference price, *id.* ¶ 162, in

13   October 2011.

14        *Fourth*, Plaintiff's reference price claim fails under all three statutes because he lacks

15   standing. Standing under the UCL or FAL requires an "injury in fact" and "lost money or

16   property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also id.*

17   § 17535 (materially similar provision of the FAL). To meet this requirement, Plaintiff must

18   allege "some form of economic injury as a result of his transactions with" McAfee. *Hinojos v.*

19   *Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quotations omitted). Likewise, standing

20   under the CLRA requires damages suffered as a result of a violation. Cal. Civ. Code § 1780(a);

21   *Meyer*, 88 Cal. Rptr. 3d at 864. But here, Plaintiff was offered an anti-virus subscription for

22   $29.99, bought it for $29.99, and liked it enough to renew.

23        Plaintiff's allegations of injury with respect to Count X amount to the conclusory assertion

24   that he "pa[id] more for his McAfee Software subscription than he otherwise would have paid,

25   and [was] denied the discount and product value he was promised." Compl. ¶ 166. Plaintiff does

26   not allege that he could have purchased the same software subscription at a lower price elsewhere,

27   nor that he would not have purchased the subscription for $29.99 had he realized that only

28   auto-renewal customers pay $49.99. This is fatal to his claim. *See Bower v. AT&T Mobility,*

1   *LLC*, 127 Cal. Rptr. 3d 569, 577-79 (Cal. Ct. App. 2011) (plaintiff lacked standing under UCL,

2   FAL, and CLRA where she "did not allege that she could have obtained a bundled transaction for

3   a new cellular telephone—the telephone that she selected—at a lower price from another source"

4   and did not allege that she would not have purchased the product but for the alleged

5   misrepresentation); *compare Hinojos*, 718 F.3d at 1105 (plaintiff alleged economic injury under

6   UCL and FAL where he averred that he "would not have purchased the goods in question absent"

7   misrepresentation regarding discounts).  The Court should dismiss Count X.[14]

8   **VIII.   THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE.**

9          The Court should dismiss this action with prejudice.  An amendment could not cure the

10  fundamental deficiencies in Plaintiff's claims, such as his inability to allege any violation of the

11  *actual* language of the contract or any fraudulent misrepresentation by McAfee; his assertion of

12  quasi-contractual and New York statutory claims that are not cognizable as a matter of law; and

13  his invocation of statutes that have no application here (such as the CLRA and Cal. Bus. & Prof.

14  Code §§ 17600-17606).  *See, e.g.*, *Plascencia*, 583 F. Supp. 2d at 1102 (dismissing breach of

15  contract and breach of covenant of good faith and fair dealing claims with prejudice because

16  claims were "premised on a promise that [was] not contained in the contract"); *Williamson*, 2012

17  WL 3835104, at *10 (dismissing unjust enrichment claim with prejudice because there is no claim

18  for unjust enrichment in California); *Cullen*, 2013 WL 140103, at *9 (dismissing UCL, FAL, and

19  CLRA claims with prejudice because plaintiff lacked statutory standing); *Low*, 900 F. Supp. 2d at

20  1028 (dismissing FAL claim with prejudice because plaintiff failed to sufficiently state actual

21  reliance on allegedly false advertising); *Janda*, 2009 WL 667206, at *10 (dismissing UCL, FAL,

22  CLRA, and breach of contract claims with prejudice for failure to state a claim); *Kaufman v.

23  Sirius XM Radio, Inc.*, No. 09 Civ. 9590(VM), 2010 WL 4968049, at *2 (S.D.N.Y. Nov. 23,

24  2010) (dismissing GBL § 349 claim with prejudice because plaintiff did not adequately plead that

25  alleged deception occurred in New York), *aff'd*, 474 F. App'x 5 (2d Cir. 2012).

26

27  [14]  Even if the Court were to conclude that Plaintiff alleged non-economic injury adequate for
standing under the CLRA, it still should dismiss the UCL and FAL reference price claims—which

28  unquestionably require an economic injury plainly not present here—for lack of standing.

1

## <u>CONCLUSION</u>

2      For the foregoing reasons, McAfee respectfully requests that the Court dismiss Plaintiff's

3 Complaint in its entirety with prejudice.

4 Dated:  March 7, 2014              WILLIAMS & CONNOLLY LLP

5                                    By:  /s/ Daniel F. Katz
                                         Daniel F. Katz (*pro hac vice*)
6                                        David S. Kurtzer-Ellenbogen (*pro hac vice*)
                                         WILLIAMS & CONNOLLY LLP
7                                        725 Twelfth Street, N.W.
                                         Washington, DC 20005
8                                        Telephone: (202) 434-5000
                                         Facsimile: (202) 434-5029
9                                        dkatz@wc.com
                                         dkurtzer@wc.com
10

11                                   STEIN & LUBIN LLP

12                                   By: /s/ Daniel K. Slaughter
                                         Michael F. Donner (SBN 155944)
13                                       Daniel K. Slaughter (SBN 136725)
                                         STEIN & LUBIN LLP
14                                       Transamerica Pyramid
                                         600 Montgomery Street, 14th Floor
15                                       San Francisco, CA  94111
                                         Telephone: (415) 981-0550
16                                       Facsimile: (415) 981-4343
                                         mdonner@steinlubin.com
17                                       dslaughter@steinlubin.com

18

19                                   COUNSEL FOR DEFENDANT McAFEE, INC.

20

21

22

23

24

25

26

27

28