United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAM WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>MCAFEE, INC.,<br><br>        Defendant. | Case No.: 5:14-CV-00158-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[Re: Docket No. 21]** |

Presently before the court in this purported consumer class action is Defendant McAfee, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Sam Williamson's ("Plaintiff") Complaint. Def. Mot. to Dismiss ("Mot. to Dismiss"), Docket Item No. 21. The court previously found this matter suitable for decision without oral argument and vacated the hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the parties' submissions, and for the following reasons, the court GRANTS in part and DENIES in part Defendant's motion.

## I. Background

### a. Factual Background

This action concerns the alleged disparity between Defendant's auto-renewal and off-the-rack pricing for its popular anti-virus software: McAfee AntiVirus Plus, McAfee Internet Security,

1

and McAfee Total Protection (collectively, "Software").  See Compl. ¶ 13, Docket Item No. 1. Customers can purchase a one-year license to the Software either directly from Defendant's website or from an authorized retailer, such as Target or Best Buy.  Id. ¶¶ 15, 17.  According to Plaintiff, when customers purchase this initial one-year subscription, Defendant aggressively pushes them into an auto-renewal program, whereby, upon a customer's subscription expiration, Defendant automatically renews the subscription for another one-year period by charging the customer's credit card on file.  Id. ¶ 17.  Once in the auto-renewal program, these customers are allegedly charged a higher price for their renewed subscriptions than Defendant charges any of its other customers for a one-year subscription.

Customers arrive at Defendant's auto-renewal program in one of three ways.  First, when customers purchase a one-year subscription on Defendant's website, or when customers manually renew their subscription on the website, Defendant automatically enrolls them in its auto-renewal program.  Id. ¶¶ 17, 33.  Customers must take affirmative steps to un-enroll from the program.  Id. ¶ 33.  Second, when customers purchase the Software elsewhere, they may manually enroll in the auto-renewal program through their account on Defendant's website.  Id. ¶ 38.  Defendant encourages customers to do so by including prompts in the software installation process.  Id. Third, for customers who purchase the Software elsewhere but do not manually enroll in the auto-renewal program, the Software urges them to manually renew their subscriptions via a purchase path built into the Software itself.  Id. ¶ 36.  Upon manually renewing their subscriptions in this manner, customers are automatically enrolled in the auto-renewal program going forward.  Id. Similar to the website customers, these in-Software renewal customers must take affirmative steps to un-enroll themselves from the auto-renewal program.  Id.

A key selling point of the auto-renewal program, according to Plaintiff, is Defendant's repeated assurances that customers will not suffer any cost disadvantage by joining it.  See id. ¶¶ 21, 30.  For example, Defendant makes the following representation in its Consumer Products End User License Agreement ("Agreement"), which customers must agree to in order to use the Software:

2

Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

> If You have provided McAfee with a valid credit card number or an alternative payment method, Your subscription will be automatically renewed (and charged to the Account You have provided) for another term at the expiration of Your current term, whenever Your local regulations will allow, for a fee no greater than McAfee's then-current price, excluding promotional and discount pricing.

Compl. Ex. A ¶ 14, Docket Item No. 1-1; see Compl. ¶¶ 24-26, Dkt. No. 1.  This statement that auto-renewal customers' subscriptions will be renewed at the "then-current price, excluding promotional and discount pricing" also appears on Defendant's website, in the Software itself, before and during the checkout path, and on the un-enroll page. Compl. ¶¶ 21, 29, 34-35, 37, 39, Dkt. No. 1.

Plaintiff alleges that these repeated representations are designed to persuade customers that it is in their best interest to enroll and remain enrolled in the auto-renewal program.  But this design is a false and misleading one, according to Plaintiff, because in reality, Defendant consistently charges its auto-renewal customers higher prices than the normal, "then-current price" it offers to all other customers, whether they are purchasing a subscription to the Software for the first time or manually-renewing their existing subscription. Id. ¶¶ 30-31.  Defendant achieves this pricing disparity by advertising the price offered to all other customers as a discounted price, typically by displaying a slashed-through list price next to a new, promotional, price. See, e.g., id. ¶¶ 56, 156, 160.  Plaintiff contends that this price cannot be a promotional or discounted price because it is the price paid by nearly all of Defendant's customers; only the auto-renewal customers pay the purported list price, which in addition to exceeding the price charged to all others even exceeds the Manufacturer's Suggested Retail Price ("MSRP"). See id. ¶¶ 46-51.  In other words, Defendant charges a special, premium price to its auto-renewal customers.

Plaintiff claims to be one of a class of customers who were deceived by Defendant's pricing scheme.  He states that his new desktop computer came pre-installed with a 60-day free trial subscription to McAfee AntiVirus Plus, which he activated on October 8, 2011. Id. ¶ 54.  During the activation process, the software displayed prompts and advertising encouraging him to

3
Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

purchase a one-year paid subscription to the software and offering him a discount from the purported list price. Id. ¶ 55. Plaintiff purchased the one-year subscription at the ostensibly discounted price and was automatically enrolled in the auto-renewal program. Id. ¶¶ 56, 58. In doing so, Plaintiff entered into the Agreement with Defendant. Id. ¶ 59. Defendant automatically renewed Plaintiff's subscription on November 7, 2012, charging him the purported list price of $49.99. Id. ¶ 60. That same day, Defendant offered the same subscription for $34.95 to all non-auto-renewal customers, whether those customers were subscribing for the first time or manually renewing their existing subscriptions. Id.

### b. Procedural Background

On January 10, 2014, Plaintiff filed this purported class action regarding Defendant's allegedly misleading pricing scheme, raising claims of (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, (4) violation of California Business & Professions Code § 17200, et seq., (5) violation of California Business & Professions Code § 17500, et seq., (6) violation of California Business & Professions Code § 17600, et seq., (7) violation of California Civil Code § 1750 et seq., and, in the alternative (8) violation of New York General Business Law § 349, and (9) violation of New York General Business Law § 350. Compl., Dkt. No. 1. In addition, Plaintiff includes a tenth claim focused on Defendant's misleading price advertisements. Id. Plaintiff purports to represent a class defined as:

> All persons in the United States who have incurred charges from McAfee for the automatic renewal of a subscription to the following McAfee-branded products during the following time periods:

| Product | Time Periods |
| --- | --- |
| McAfee AntiVirus Plus | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |
| McAfee Internet Security | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |

| McAfee Total Protection | Applicable statute of limitation through 9/5/2012; 9/18/2012 through 9/3/2013 |

Id. ¶ 63. In addition, Plaintiff seeks to represent a "Reference Price Class" defined as:

> All persons in the United States who purchased or manually renewed, on McAfee's website or via their McAfee Software, McAfee-branded software advertised as discounted from a represented former sales price as indicated and set forth in the chart immediately below:

| Product | Time Periods |
| --- | --- |
| McAfee AntiVirus Plus | Applicable statute of limitation through the present |
| McAfee Internet Security | Applicable statute of limitation through the present |
| McAfee Total Protection | Applicable statute of limitation through 9/3/2013 |

Id. ¶ 64.  Defendant filed the instant Motion to Dismiss on March 7, 2014.  Dkt. No. 21.  The court now turns to the substance of that motion.

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the complaint with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Shroyer v. New Cingular Wireless Servs., Inc., 606 F.3d 658, 664 (9th Cir. 2010) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations

contained in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

Fraud-based claims are subject to further heightened pleading requirements under Federal Rule of Civil Procedure 9(b). A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice … so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Allegations of fraud must also contain an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).

**III.  Discussion**

    **a.  Auto-Renewal Class Claims**

        **i.  Breach of Contract**

Plaintiff contends that Defendant has breached its contract with him by charging him a higher price for his auto-renewal then the normal, then-current price offered to other customers for the same product. See Compl.¶ 82, Dkt. No. 1. To state a claim for breach of contract in California, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse of non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).[1] Here, the parties dispute only whether Plaintiff has adequately pled the element of breach.

---

[1] The parties dispute the enforceability of the Agreement's choice-of-law provision, which selects New York law. See Compl. Ex. A ¶ 25, Dkt. No. 1-1. For purposes of this motion, however, the parties agree to assume California law applies. See Mot to Dismiss at 6, n. 1, Dkt. No. 21.

6

Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

The Agreement specifies that, upon expiration of Plaintiff's subscription, Defendant will auto-renew the subscription "for a fee no greater than McAfee's then-current price, excluding promotional and discount pricing." Compl. Ex. A ¶ 14, Dkt. No. 1-1. Defendant contends that Plaintiff's breach of contract claim must be dismissed because this section of the Agreement expressly permits the exact behavior Plaintiff considers to be a breach, i.e. "renewal at a price higher than Plaintiff paid at the outset." Moreover Defendant contends that this provision does not require it to offer Plaintiff the same price for auto-renewal that it offers to new subscribers. Mot. to Dismiss at 1, 6, Dkt. No. 21.

While Defendant's arguments are technically correct, they miss the nuance of Plaintiff's theory. Plaintiff alleges that Defendant breached the Agreement not by failing to offer him a discounted renewal price or by requiring him to pay a higher price than he paid the previous year, but rather by charging him a premium above the then-current, non-discounted price offered to all other customers who were not enrolled in the auto-renewal program. Defendant implicitly relies on the fact that the price it charges all non-auto-renewal customers is presented as a bargain: for instance, in many circumstances, the former, higher, selling price of the Software is set forth in a slashed-through manner and the new, lower, promotional price that a customer will actually pay is displayed next to it. See, e.g. Compl. ¶¶ 55, 156, Dkt. No. 1. On the surface, it thus appears that all non-auto-renewal customers are simply being offered a discounted price, a price which Defendant is under no obligation to offer to its auto-renewal customers under the Agreement. But the heart of Plaintiff's argument is his assertion that the price offered to all customers other than the auto-renewal customers is not a "discounted" or "promotional" price at all, but in fact is the true, non-discounted price of the Software. See Compl. ¶ 49, Dkt. No. 1. Plaintiff pleads a direct challenge to Defendant's characterization of its pricing scheme with particularity, offering historical price data and MSRPs. See id. ¶¶ 46-50. As such, the court does not agree that Plaintiff's allegations amount to a blatant misstatement of the language of the Agreement as Defendant suggests. Nor is the court compelled by Defendant's remaining arguments regarding contract interpretation, which the court finds to be more appropriate for a later stage in the

7

Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

litigation. Accordingly, the court finds that Plaintiff has sufficiently pled his breach of contract claim.

### ii. Breach of the Covenant of Good Faith and Fair Dealing

"The obligations imposed by the covenant of good faith and fair dealing are not those set out in the term of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged—fairly and in good faith." Koehrer v. Super. Ct., 181 Cal. App. 3d 1155, 1169 (Cal. Ct. App. 1986). The contours of any party's duty under the covenant, as well as any conduct prohibited by the covenant, are determined by the purpose and terms of the contract at issue. See Inter-Mark USA, Inc. v. Intuit, Inc., No. 07-CV-04178, 2008 WL 552482, at *7 (N.D. Cal. Feb. 27, 2008) (quoting Commercial Union Assurance Cos. v. Safeway Stores, Inc., 26 Cal. 3d 912, 918 (1980) and Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 373 (1992)). However, a claim for breach of the implied covenant must present a separate basis for relief than a breach of the contract itself. "If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated ." Malcolm v. JP Morgan Chase Bank, N.A., No. 09–CV–4496, 2010 WL 934252, *6 (N.D. Cal. Mar. 15, 2010) (quoting Schulken v. Wash. Mut. Bank, No. 09–CV–02708, 2009 WL 4173525 (N.D. Cal. Nov. 19, 2009)).

Plaintiff bases his claim for breach of the implied covenant on his assertion that the Agreement vests Defendant with a certain amount of discretion to set prices for its auto-renewal customers, discretion which Defendant abused in charging Plaintiff a premium over the regular price it offered to all other non-auto-renewal customers. See Compl. ¶¶ 88-89, Dkt. No. 1. Though artfully pled, the court finds that this claim ultimately depends on the same conduct at issue in the breach of contract claim: Defendant's charging its auto-renewal customers a higher price than all other customers. As such, this claim is duplicative of Plaintiff's breach of contract claim and will be dismissed without leave to amend.

### iii. Unjust Enrichment

"Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003). As this court has previously recognized, "'unjust enrichment is not a proper cause of action under California law'" in cases involving breach of contract claims. Dunkel v. eBay Inc., No. 12-CV-1452-EJD, 2013 WL 415584, at *11 (N.D. Cal. Jan. 31, 2013) (citing In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010)); Buckley v. Align Tech., Inc., No. 13-CV-2812-EJD, 2014 WL 3778921, at *5 (N.D. Cal. Jul. 31, 2014) (finding that a plaintiff can state a claim for unjust enrichment when there is no contractual relationship between the parties). Considering this case is premised in part on a breach of contract claim, Plaintiff cannot state a claim for unjust enrichment; accordingly, this claim will be dismissed without leave to amend.

### iv. California Unfair Competition Law "Unlawful" Prong Claim, California Business & Professions Code § 17200 et seq.

California's Unfair Competition Law ("UCL") makes actionable any "unlawful, unfair or fraudulent business act or practice" (Cal. Bus. & Prof. Code § 17200) and provides remedies that are "cumulative…to the remedies or penalties available under all other laws…." (Cal. Bus. & Prof. Code § 17205). "Each prong of the UCL is a separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). Plaintiff's fourth cause of action for unfair competition in violation of the UCL includes claims under each of these prongs. See Compl. ¶ 100, Dkt. No. 1. Having found that Plaintiff has adequately stated a claim for breach of contract, the court also finds by extension that Plaintiff has adequately stated a claim under the UCL's unlawful prong. See Cel-Tech Commc'ms, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (finding that injured consumers may "borrow" violations of other laws to state an independently actionable claim under the UCL's unlawful prong).

### v. UCL "Fraudulent" Prong Claim and California False Advertising Law Claim, California Business & Professions Code § 17500, et seq.

The parties agree that Plaintiff raises at least two fraud-based claims: one under the UCL's fraudulent prong, and one under California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, et seq. The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id. at § 17500. Any violation of the FAL constitutes a violation of the UCL. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). These laws prohibit not only advertising which is false, but also advertising which, though technically true, is either misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. Williams, 552 F.3d at 938.

UCL and FAL claims grounded in fraud are governed by the "reasonable consumer" test, which requires the plaintiff to "show that members of the public are likely to be deceived." Id. (internal citations omitted). California courts "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." Id. However, courts have occasionally dismissed complaints as a matter of law because they did not meet the "reasonable consumer" standard. See Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of UCL and FAL claims because statements promising sweepstakes payout in exchange for purchasing magazine subscription were unlikely to deceive a "person of ordinary intelligence.").

Rule 9(b)'s heightened pleading standard applies to all UCL and FAL claims that are grounded in fraud. See Vess, 317 F.3d at 1103-06. To satisfy Rule 9(b), Plaintiff must allege "the who, what, where, and how of the misconduct charged." Id. at 1106 (internal quotations omitted). In addition, Plaintiff must plead reasonable reliance on alleged misstatements with particularity by alleging facts "of sufficient specificity," allowing a court to infer that "misrepresentations caused injury to plaintiff[] by inducing [him] to pay" for products or services. In re Actimmune Mktg. Litig., No. 08-CV-02376, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009).

Plaintiff's claims under the UCL's fraudulent prong and the FAL fail for a simple reason: Plaintiff does not allege reliance on Defendant's representation that his subscription would be automatically renewed at the "then-current" price charged to other consumers. While Plaintiff goes to great lengths to allege reliance on Defendant's representation that the price it offered Plaintiff for his <u>initial</u> purchase was a discounted one, he is silent as to his reliance on any representations made particularly to him regarding <u>future</u> purchases pursuant to Defendant's auto-renewal pricing policy. <u>Compare</u> Compl. ¶¶ 55-57 <u>with</u> ¶¶ 58-59, Dkt. No. 1. As such, Plaintiff has not satisfied the heightened pleading standard of Rule 9(b) and the court will dismiss his fraud-based claims with leave to amend.

### vi. UCL "Unfair" Prong Claim

While a plaintiff may raise a claim independently under the UCL's unfair prong, the standard for deciding that claim is not settled. California courts have held that such an unfair business practice for purposes of this prong is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008) (internal citations omitted). Under this standard, a court considering an unfair prong claim must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. <u>See</u> <u>Bardin v. Daimlerchrysler Corp.</u>, 136 Cal. App. 4th 1255, 1268 (2006). The California Supreme Court, however, considers this standard "too amorphous," at least as it applies to claims for unfair competition brought by a business competitor. <u>Cel-Tech</u>, 20 Cal. 4th at 185. Under those circumstances, the court is required to consider whether the alleged unfairness is "tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." <u>Id.</u> at 185, 187 (internal citations omitted). As a result of this disagreement, "California courts are currently divided on whether the tethering or balancing test applies in consumer actions." <u>Ferrington v. McAfee, Inc.</u>, No. 10-CV-01455-LHK, 2010 WL 3910169, at *12 (N.D. Cal. Oct. 5, 2010) (collecting cases). The Ninth Circuit has not resolved this issue for the federal district courts; instead, it approves the use of either test until the California Supreme Court issues guidance. <u>See</u>

11
Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007) (holding that both the balancing and tethering tests were viable and not mutually exclusive in consumer harm actions).

Here, Plaintiff has failed to state a claim under both the balancing and the tethering tests. As to the balancing test, Plaintiff has sufficiently described Defendant's practices but has not provided sufficient factual allegations to plausibly and plainly allege that those practices are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," nor has Plaintiff included allegations that go towards comparing the harm to consumers against the utility of Defendant's conduct. As to the tethering test, Plaintiff argues that its claims could be tethered to the policy and spirit of the Auto-Renewal Statute and the principles underlying the covenant of good faith and fair dealing. As the court dismisses both of these claims in this Order, Plaintiff cannot properly base its unfair prong claim on them. Accordingly, the court dismisses the unfair prong claim with leave to amend.

### vii. Consumer Legal Remedies Act Claim, California Civil Code § 1750 et seq.

The California Consumer Legal Remedies Act ("CLRA") prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Defendant argues that Plaintiff cannot state a CLRA claim because neither software nor licenses to software constitute "goods" or "services" under that statute. While neither the Ninth Circuit nor the California Court of Appeal have yet provided guidance on this issue, courts in this district have found that, at this time, California law supports a finding that software, along with licenses to it, is not included in the CLRA's scope; moreover, a court in this district determined that Defendant's product in particular does not constitute a good or service for purposes of the CLRA. See Ferrington, 2010 WL 3910169 at *18-19 (collecting cases and finding that the CLRA does not cover McAfee software). While the answer to this issue remains a close call, this court follows its sister courts and finds that the CLRA does not cover software licenses. Accordingly, the court will dismiss Plaintiff's CLRA claim without leave to amend.

12
Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

####        viii. California's Auto-Renewal Statute Claim, California Business & Professions Code §§17600-17606

The California Auto-Renewal Statute requires a business making automatic renewal offers to, <u>inter alia</u>, provide consumers "clear and conspicuous notice" of any "material change in the terms of the automatic renewal…service." Cal. Bus. & Prof. Code § 17602(c). Plaintiff alleges that Defendant violated this statute because its decision to charge its auto-renewal customers a price higher than the price charged to all other customers represented a material change to the terms of the Agreement and customers were not provided notice of this change. <u>See</u> Compl. ¶ 15, Dkt. No. 1. The court is not convinced that the facts, as alleged, suffice to state a claim under this statute. The behavior Plaintiff complains of occurred throughout the life of the Agreement; therefore, Plaintiff cannot plausibly allege that Defendant materially changed the terms of the Agreement at any particular point in time. That the parties may have differed in their understanding of the terms from the outset does not form a basis for a violation under this statute. Accordingly, this claim will be dismissed with leave to amend.

####        ix. New York Claims

Plaintiff brings a number of New York statutory claims in the alternative due to the parties' dispute over choice-of-law. Without reaching the choice-of-law issue or the merits of the New York law claims, the court notes that Plaintiff is a resident of California and, by his own admission, suffered harm in California only. <u>See</u> Compl. ¶¶ 6-7, 75, Dkt. No. 1. Under these circumstances, Plaintiff has failed to allege any actionable deception he suffered in New York, and thus lacks standing to bring these claims. The court will therefore dismiss the New York statutory claims without leave to amend.

### b. Reference Price Class Claim

Plaintiff's final cause of action appears to be in truth at least three causes of action under the UCL, FAL, and CLRA, all based on the same conduct: Defendant's advertising of false "slash-through" reference prices implying similarly false "savings." <u>See</u> Compl. ¶¶ 153-183, Dkt. No. 1. These claims are separate from the auto-renewal claims and are brought on behalf of a different

"Reference Price" class. At the outset, the court notes that the conflating of three distinct claims into a single cause of action fails to satisfy Rule 8's basic pleading standard. See Milpitas Mobile Home Estates v. City of Milpitas, No. 12-CV-3386-EJD, 2013 WL 4504877 (N.D. Cal. Aug. 21, 2013). This failure alone provides ample ground on which the court can and will dismiss this claim, yet the court cannot simply do so without further explanation because dismissing three causes of action as a single claim could yield to unwieldy results, especially considering some portions must be dismissed with leave to amend and others without. Therefore, the court will briefly provide guidance as to these three individual claims.

As to the CLRA portion of the claim, the court dismisses that claim without leave to amend, for the same reasons as set forth in Section III(a)(vii).

As to the FAL portion of the claim, the court dismisses that claim with leave to amend. Plaintiff's allegations with respect to this claim are unclear given the current organization. The court does not, however, agree with Defendant that Plaintiff's allegations, to the extent the court can ascertain them, suggest a lack of standing. Nor does the court agree that Plaintiff must include additional historical price data that is exclusively in Defendant's control.

As to the UCL fraudulent prong portion of the claim, the court dismisses that claim with leave to amend. Again, the organization of the claim is confusing, but the court does not agree that the allegations suggest a lack of standing. Nor does the court agree with Defendant that Plaintiff has failed to allege a material false and misleading statement.

As to any intended UCL unfair prong portion of the claim, the court dismisses that claim with leave to amend for the same reasons as set forth in Section III(a)(vi).

**IV. Conclusion**

For the foregoing reasons, the court GRANTS Defendant's Motion to Dismiss as to Claims 2-10 and DENIES that motion as to Claims 1 and 4 (to the extent it is premised on the UCL's unlawful prong). Claims 4 (to the extent it is premised on the UCL's unfair and/or fraudulent prongs), 5, and 6 are DISMISSED with leave to amend. Because the court finds amendment would be futile, claims 2, 3, 7, 8, and 9 are DISMISSED without leave to amend. See Miller v. Rykoff-

Sexton, 845 F.2d 209, 214 (9th Cir. 1988).  Claim 10 is DISMISSED with leave to amend as governed by Section III(b) of this Order.

Any amended complaint must be filed within fifteen days of the date of this Order. Plaintiff is advised that he may not add new claims or parties without first obtaining Defendant's consent or leave of court pursuant to Federal Rule of Civil Procedure 15.  Plaintiff is further advised that failure to amend the complaint in a manner consistent with this order may result in the dismissal of this action.

**IT IS SO ORDERED**

Dated: August 22, 2014



EDWARD J. DAVILA
United States District Judge

Case No.: 5:14-CV-00158-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS