1  Michael W. Sobol (State Bar No. 194857)
   Roger N. Heller (State Bar No. 215348)
2  Nicole D. Sugnet (State Bar No. 246255)
   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111
4  Telephone:  (415) 956-1000
   E-mail: msobol@lchb.com
5  nreynolds@lchb.com

6  Daniel M. Hattis (State Bar No. 232141)
   HATTIS LAW
7  1134 Crane Street, Suite 216
   Menlo Park, CA 94025
8  Telephone:  (650) 980-1990
   E-mail: dan@hattislaw.com

9
   *Attorneys for Plaintiff*
10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14

15  SAM WILLIAMSON, individually and on       Case No.  5:14-CV-00158-EJD
    behalf of all others similarly situated,
16                                             **FIRST AMENDED CLASS ACTION
                    Plaintiff,                 COMPLAINT**
17
    v.                                         **JURY TRIAL DEMANDED**
18
    MCAFEE, INC.,
19
                    Defendant.
20

21

22          Plaintiff, individually and on behalf of all others similarly situated, alleges on personal

23  knowledge, investigation of his counsel, and on information and belief, as follows:

24                          **NATURE OF THE ACTION**

25          1.      This proposed class action alleges that McAfee, Inc. ("McAfee") has

26  systematically charged customers enrolled in its software "auto-renewal" program (hereinafter

27  "Auto-Renewal") higher prices than it charges other customers for identical products, in violation

28

of its contractual obligations and contrary to its express representations concerning its Auto-Renewal program.

2.      McAfee induces customers to enroll in its Auto-Renewal program by representing that the cost to automatically renew their McAfee anti-virus software subscriptions will be no more than McAfee's normal, then-current price charged to other customers for the same products. McAfee's representations include reassurances that its customers will not incur any cost disadvantage by enrolling in Auto-Renewal, as compared to the alternative of purchasing a software subscription outside of the Auto-Renewal program when their prior subscription expires. McAfee's promises in this regard are made at the point-of-sale to Plaintiff and the proposed Class and are also memorialized in McAfee's standardized Consumer Agreement.

3.      Contrary to its representations and the Consumer Agreement, McAfee consistently charges Auto-Renewal customers more than it charges other customers for the same products.

4.      As a result of McAfee's conduct and practices alleged herein, Plaintiff and the Class members have been damaged.

5.      On behalf of himself and the proposed Class of McAfee Auto-Renewal customers (the "Class"), Plaintiff brings this lawsuit against McAfee for breach of contract and for violations of California Business & Professions Code §§ 17200 *et seq*. ("UCL"), California Business & Professions Code §§ 17500 *et seq*. ("FAL"), and California Business & Professions Code §§ 17600 *et seq*.

6.      McAfee uses its Auto-Renewal pricing scheme to further yet another unlawful pricing scheme—this one perpetrated by McAfee on those customers who purchase subscriptions or manually renew existing subscriptions via McAfee's website or through their McAfee Software.  To these customers, McAfee advertises two prices for McAfee Software subscriptions: (a) the selling price; and (b) directly next to the selling price, a higher expressly-referenced former price with a line, or "slash," through it, along with a representation that the customer will "Save" money—the difference between the slash-through price and actual selling price—if they make their purchase at that time.  The slash-through reference prices and corresponding representations of savings that McAfee advertises are false because they do not represent

1   McAfee's true regular or former prices for the products in question.  The only time that McAfee

2   ever, or virtually ever, charges the higher reference prices for McAfee Software subscriptions are

3   when it improperly imposes such higher prices on Auto-Renewal customers.

4         7.      On behalf of himself and the proposed "Reference Price Class," as defined below,

5   Plaintiff brings claims against McAfee for injunctive relief, for violations of California Business

6   & Professions Code §§ 17200 *et seq*. ("UCL") and California Business & Professions Code §§

7   17500 *et seq*. ("FAL").

8                                      **PARTIES**

9         8.      Plaintiff Sam Williamson is an individual residing in Garden Grove, California.

10  Plaintiff Williamson is a citizen of California.

11        9.      Defendant McAfee, Inc. ("McAfee") is a Delaware corporation, and is

12  headquartered in Santa Clara, California, which is McAfee's principle place of business.  McAfee

13  is a wholly-owned subsidiary of Intel Corporation.

14        10.     McAfee is one of the largest computer security software companies in the United

15  States and the world.  Its revenues from consumer sales in the United States, alone, are well in

16  excess of $100 million annually.

17                          **JURISDICTION AND VENUE**

18        11.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

19  § 1332(d) as there are numerous class members who are citizens of states other than McAfee's

20  state of citizenship, and the amount in controversy exceeds $5,000,000, exclusive of interest and

21  costs.

22        12.     This Court has personal jurisdiction over McAfee because McAfee is

23  headquartered in California; a substantial part of the wrongdoing alleged in this Complaint took

24  place in California; McAfee is authorized to do business, and does a substantial portion of its

25  business, in California; McAfee has sufficient minimum contacts with California; and McAfee

26  intentionally avails itself of markets in California through the promotion, marketing and sale of its

27  products and services in California, rendering the exercise of jurisdiction by this Court

28  permissible under traditional notions of fair play and substantial justice.

1192319.6                                                    CLASS ACTION COMPLAINT
                                                             CASE NO. 5:14-00158-EJD

13.     McAfee is headquartered in California and, on information and belief, its operations relevant to the allegations and claims in this Complaint predominately emanate from California.  On information and belief, the contracts, representations, policy and practice decisions, and misconduct at issue in this case predominately emanated from California.

14.     Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because McAfee is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

15.     **Intra-District Assignment**.  Pursuant to the N.D. Cal. Civil Local Rules 3-2 and 3-5, Plaintiff has requested assignment to the San Jose Division of the Northern District of California.  Defendant McAfee, Inc. is headquartered in Santa Clara County and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County.

## COMMON FACTUAL ALLEGATIONS

### A.     McAfee Software

16.     McAfee markets and sells subscriptions to its anti-virus computer software products.  Generally, the subscriptions are one year in length.  Three of the software products that McAfee has marketed and sold subscriptions to throughout the relevant time period are McAfee AntiVirus Plus, McAfee Internet Security, and McAfee Total Protection.  These three products are collectively referred to herein as the "McAfee Software."

17.     McAfee represents to consumers that subscribing to McAfee Software will help them protect their computers from hackers and other "online threats," computer viruses, and other computer problems.  For example, McAfee represents that its McAfee Total Protection software will help "Guard your PC, social network, identity, family, and home network with our ultimate protection against hackers, malware, thieves, phishing, and other online threats."  Similarly, McAfee represents that its McAfee AntiVirus Plus software will allow customers to "Confidently surf, shop, and socialize online as our essential antivirus, antimalware, and firewall protect your PC and data."

18.     Consumers can purchase McAfee Software directly from McAfee's website or from a retailer authorized to sell McAfee Software, such as Amazon.com, Wal-Mart, Target, Best Buy, or Office Depot.

19.     In addition, some consumers initially sign up for "free trial" subscriptions to McAfee Software (*e.g.*, for a 30-day or 60-day "trial" period), after which McAfee aggressively encourages them, through expiration warning messages and other advertising and prompts, to purchase a one-year paid subscription to McAfee Software, which the customer can do via McAfee's website or by following a purchase path provided by McAfee in their McAfee Software.

**B.     The Auto-Renewal Program**

20.     For consumers who purchase a one-year subscription to McAfee Software through McAfee's website or through the McAfee Software itself, McAfee automatically enrolls them in McAfee's Auto-Renewal program.  Under the Auto-Renewal program, upon the expiration of the customer's current McAfee Software subscription, McAfee automatically renews the subscription for a subsequent one-year period, charging the customer's credit card on file.  These annual renewals and charges continue from year-to-year so long as the customer remains enrolled in Auto-Renewal.

21.     Customers may also renew existing McAfee Software subscriptions manually, *i.e.*, outside the Auto-Renewal program, through McAfee's website or the McAfee Software itself.  McAfee promotes Auto-Renewal over these other forms of renewal, including by making misrepresentations at the point-of-sale about Auto-Renewal pricing that are designed by McAfee to persuade customers to enroll and remain enrolled in Auto-Renewal, and which Plaintiff reasonably relied upon and which are material to a reasonable consumer.  McAfee promotes Auto-Renewal in this manner in order to maximize renewal rates and as means to charge higher subscription rates to those customers who are subject to the Auto-Renewal program.

22.     McAfee has long been, and continues to be, heavily reliant upon the Auto-Renewal program and the massive amounts of revenue it receives from customers through the program.  In order to keep the steady stream of Auto-Renewal money flowing, McAfee's

business model has been, and continues to be, deliberately designed and focused on maximizing enrollment in the Auto-Renewal program.

23.     One manifestation of McAfee's aggressive Auto-Renewal business model is its practice of automatically enrolling customers in the program, by default, as soon as McAfee has a credit card number for the customer on file.

24.     Another manifestation of McAfee's aggressive Auto-Renewal business model, are McAfee's pervasive representations to consumers that there is no cost disadvantage in having subscriptions automatically renewed pursuant to the Auto-Renewal program, as compared to manual renewals or separate additional purchases.  For years, McAfee has consistently promised and reassured customers that under Auto-Renewal, their subscriptions will be automatically renewed at a price no higher than the normal, then-current price that McAfee charges other customers for the same software.  These representations and promises, which are made expressly by McAfee at the point-of-sale, in McAfee's standardized Consumer Agreement, and elsewhere, are specifically designed by McAfee to lull customers into enrolling and remaining enrolled in the Auto-Renewal program.  As described herein, these promises and representations are false, because McAfee consistently charges Auto-Renewal customers more than it charges other customers for identical products.

25.     Another manifestation of McAfee's aggressive Auto-Renewal business model is its modification, in 2009, of the choice-of-law provision in its form Consumer Agreement.  Whereas the Consumer Agreement previously provided for the application of the laws of California, where McAfee has its headquarters, in 2009 the clause was amended to provide for the application of New York law, even though McAfee's operations have little or no direct connection to New York.  On information and belief, McAfee made this modification in an attempt to avoid the application of California consumer protection laws, including new California laws which became effective in 2010, that were specifically designed to address misconduct regarding automatic renewal services, such as those alleged herein.

26.     This lawsuit is not the first time McAfee has found itself in legal trouble for its aggressive tactics regarding Auto-Renewal.  In 2009, McAfee was investigated by the New York

1    Attorney General's office after it received numerous complaints that McAfee was enrolling

2    customers in Auto-Renewal, and charging them for automatic renewals, with virtually no notice

3    whatsoever to the customer of their enrollment.[1]  That investigation resulted in a settlement, and

4    did not address the pricing schemes that are the subject of this Complaint.

5              **C.      The McAfee Consumer Agreement**

6              27.    All customers who purchase McAfee Software subscriptions, including Plaintiff

7    and all Class members, enter into and are subject to the McAfee Consumer Products End User

8    License Agreement (hereinafter the "Consumer Agreement").  The Consumer Agreement is a

9    standardized, form contract of adhesion.  It is several pages long, is drafted by McAfee, the party

10   with superior bargaining power, and is presented to customers on a take-it-or-leave-it basis. The

11   Consumer Agreement states that it is "enforceable like any written contract," and by its terms it

12   governs numerous aspects of the relationship between McAfee and the customer.  An example of

13   the Consumer Agreement (the iteration effective as of approximately February 2, 2013) is

14   attached hereto as **Exhibit A.**

15             28.    Customers are required by McAfee to click a button and/or check a box to signify

16   their "acceptance" of the terms and conditions of the Consumer Agreement.

17             29.    The Consumer Agreement contains terms and conditions about the Auto-Renewal

18   program, including regarding the prices that McAfee will charge customers under the Auto-

19   Renewal program.  At all relevant times, the Consumer Agreement has provided that customers

20   whose subscriptions are automatically renewed pursuant to the Auto-Renewal program will be

21   charged, at the time of renewal, a price that is no greater than the normal, then-current price that

22   McAfee charges other customers for the products in question.  For example, the iteration of the

23   Consumer Agreement that was in place as of February 2, 2013 provides:

24             [T]his Agreement is effective for the term set forth in the Documentation.
              If no term is agreed to, the default term shall be one (1) year from the date
25

26   _____
     [1] *See* http://www.ag.ny.gov/press-release/cuomo-forges-settlement-symantec-and-mcafee-over-
     automatic-subscription-renewals.
27   [2] The "Checkout" page screen shot also shows additional deceptive practices by McAfee,
     including adding, by default, an unrequested physical CD to the order for an extra $12.95, and
28   adding, by default, an unrequested software program called Registry Power Cleaner for $4.95 (at

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

of purchase….If You have provided McAfee with a valid credit card number or an alternative payment method, **Your subscription will be automatically renewed (and charged to the Account You have provided) for another term at the expiration of Your current term, whenever Your local regulations will allow, for a fee no greater than McAfee's then-current price, excluding promotional and discount pricing.** The new term will be for the same duration as the expired term unless otherwise specified at the time of renewal…..

See **Exhibit A** at ¶ 14 (emphasis added).  All iterations of the Consumer Agreement during the relevant time period have included similar terms regarding Auto-Renewal pricing.

30.     The provisions in the Consumer Agreement regarding Auto-Renewal pricing constitute a binding contractual obligation.  Under the Consumer Agreement, McAfee was and is obligated to charge Plaintiff and the Class members, at the time their subscriptions are automatically renewed, prices that are no higher than the normal, then-current prices that McAfee charges other customers for the products in question.

**D.     Enrollment in Auto-Renewal and McAfee's Misrepresentations Regarding Auto-Renewal Pricing.**

31.     McAfee's misrepresentations regarding Auto-Renewal pricing are not only expressly made in the Consumer Agreement, they have also been pervasive on McAfee's website, in the McAfee Software itself, and elsewhere.

32.     McAfee's misrepresentations regarding Auto-Renewal pricing were, and continue to be, made at the point-of-sale to Plaintiff and the Class.  Pursuant to a 2009 agreement with the New York Attorney General, McAfee was required to provide customers with an opportunity to opt-out of Auto-Renewal and with instruction regarding how they can opt-out of Auto-Renewal. However, when McAfee presented this information to Plaintiff and the Class at the point-of-sale, such information was embedded with material misrepresentations about Auto-Renewal pricing, which representations Plaintiff reasonably relied upon, are material to a reasonable consumer, and are designed by McAfee to persuade customers to remain enrolled in Auto-Renewal rather than opt-out of Auto-Renewal.

33.     All enrollees in Auto-Renewal, including Plaintiff and the Class members, have been exposed to McAfee's false promises and representations regarding Auto-Renewal pricing at the point-of-sale.

34.     Through these misrepresentations, McAfee has consistently promised and reassured customers that, under Auto-Renewal, their subscriptions will be automatically renewed at a price no higher than the normal, then-current price that McAfee charges other customers for the software in question.  These representations are designed by McAfee to persuade and reassure customers that it is in their interest to be enrolled and remain enrolled in Auto-Renewal, and that there is no cost disadvantage of having their McAfee Software automatically renewed by McAfee as compared to manually renewing their subscriptions or other options the customers might have to protect their computers.

35.     These representations and promises are false and misleading because McAfee, in fact, consistently charges Auto-Renewal customers prices that are higher than the normal, then-current prices that McAfee charges other customers for the same products.

36.     There are three ways that customers become enrolled in the Auto-Renewal program.  On information and belief, McAfee enrolls most Auto-Renewal customers under one of the first two scenarios described below.  In all three scenarios, Auto-Renewal customers are exposed to McAfee's false promises and representations regarding Auto-Renewal pricing.

37.     As discussed below, McAfee's point-of-sale misrepresentations regarding Auto-Renewal pricing, made to customers who are enrolled in Auto-Renewal when making a subscription purchase or renewal via McAfee's website or through their McAfee Software, make no mention of any supposed "discount" or "promotional" prices being excluded from the Auto-Renewal pricing promise.

           **1.     Customers Enrolled When Purchasing or Manually Renewing Subscriptions On McAfee's Website.**

38.     Customers who purchase a McAfee Software subscription via McAfee's website are automatically enrolled by McAfee in the Auto-Renewal program going forward, by default. Similarly, customers who manually renew an existing McAfee Software subscription via McAfee's website are automatically enrolled by McAfee in the Auto-Renewal program going forward, by default.  Such customers must take affirmative steps to un-enroll in Auto-Renewal.

39.     These customers are exposed to McAfee's false promises regarding Auto-Renewal pricing when they enter their credit card information and confirm their purchase on the "Checkout" web page of McAfee's website.  During this stage of the purchase process, to induce these customers to remain enrolled in Auto-Renewal, McAfee reassures them that the price they will be charged when their subscription is automatically renewed will be "**the rate that's current on your renewal date.**"  These point-of-sale representations make no mention of any supposed "discount" or "promotional" prices being excluded from the Auto-Renewal pricing promise.  A screen shot of this portion of the "Checkout" web page is below:



40.     The "Checkout" web page states that customers can "turn [Auto-Renewal] off" if they "[d]on't want to auto-renew," referring customers to the "My Account" web page of McAfee's website, which can be accessed by customers only after they have completed their purchase and received an account ID.  However, McAfee's instruction regarding how to turn Auto-Renewal off is presented alongside McAfee's misrepresentation about Auto-Renewal pricing, which is designed by McAfee to dissuade customers from pursuing the steps required to turn Auto-Renewal off.  McAfee's misrepresentations regarding Auto-Renewal pricing at the point-of-sale are material in that a reasonable consumer would consider the information important in deciding whether to enroll or opt-out of Auto-Renewal.

### 2.     Customers Enrolled When Purchasing or Manually Renewing Subscriptions Via Their McAfee Software.

41.     McAfee lures customers into its Auto-Renewal scheme who did not originally purchase their McAfee Software subscription directly from McAfee, by pressuring them to

CLASS ACTION COMPLAINT
CASE NO. 5:14-00158-EJD

manually renew their subscription via a purchase path in the software itself.  McAfee targets such customers by bombarding them with ominous on-screen expiration warning messages which direct the customers to click a link to renew their subscriptions within the software.  Once the customers have manually renewed their subscriptions, they are automatically enrolled in the Auto-Renewal program going forward, by default.  McAfee uses similar tactics to urge customers who initially signed up for a "free trial" subscription (which is often pre-installed on new computers) to purchase a paid McAfee Software subscription through the software itself.  Again, once the customers have purchased their paid software subscriptions, they are automatically enrolled in the Auto-Renewal program going forward, by default.  Such customers must take affirmative steps to un-enroll in Auto-Renewal.  Below are some examples of the warning messages that McAfee displays on the computer desktops of these customers to create urgency and encourage them to renew their subscriptions and purchase paid subscriptions through their McAfee Software:



1
2
3
4
5
6
7
8
9
10
11



12      42.     Like the Auto-Renewal customers who are enrolled in the program when they

13  make a purchase or renewal via McAfee's website, customers who renew or purchase their

14  subscriptions through the purchase path in the software, including Plaintiff Williamson, are

15  exposed to McAfee's false promises regarding Auto-Renewal pricing when they enter their credit

16  card information and confirm their purchase.  On the "Secure Checkout" page, where these

17  customers complete their purchases, McAfee states:  "To prevent a lapse in protection, McAfee

18  will automatically renew your subscription using your payment information on file."  Under a

19  "Learn More" icon on that page, McAfee states that under Auto-Renewal, "We will charge you

20  **the product price current at the time of auto-renewal**…."  These point-of-sale representations

21  make no mention of any supposed "discount" or "promotional" prices being excluded from the

22  Auto-Renewal pricing promise.  A screen shot of the "Secure Checkout" page is below:

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    43.    Like the "Checkout" web page that is part of the website purchase path, the

17  "Secure Checkout" page that is part of the software purchase path states that customers can "opt-

18  out of auto-renewal," referring customers to the "My Account" web page of McAfee's website,

19  which can be accessed by customers only after they have completed their purchase and received

20  an account ID.  However, as with the website purchase path, McAfee's instruction regarding how

21  to opt-out of Auto-Renewal  is presented in the software purchase path alongside McAfee's

22  misrepresentation about Auto-Renewal pricing, which is designed by McAfee to dissuade

23  customers from pursuing the steps required to opt-out of Auto-Renewal.

24    44.    McAfee's misrepresentations regarding Auto-Renewal pricing at the point-of-sale

25  are material in that a reasonable consumer would consider them important in deciding whether to

26  enroll or opt-out of Auto-Renewal.  Plaintiff Williamson reasonably relied upon McAfee's point-

27  of-sale misrepresentations regarding Auto-Renewal pricing in deciding not to visit the My

28  Account web page to opt-out of Auto-Renewal.

45.     For those customers who do visit the My Account web page to pursue opting-out of Auto-Renewal after making their purchase via the website or software, and who proceed to the "My Auto-Renewal Settings" portion of the "My Account" web page (which is where Auto-Renewal can be turned off), McAfee makes a further misrepresentation on that page regarding Auto-Renewal pricing, in a further attempt to dissuade the customer from opting-out of Auto-Renewal, via a video presentation in which McAfee urges customers to enroll and remain enrolled in Auto-Renewal.  In a segment of the video entitled "How Auto-Renewal Works," McAfee states that an enrolled customer's subscription "will be automatically renewed at the then-current annual subscription price for the service.  This renewal fee excludes promotion and/or discount pricing."  A screen shot from McAfee's Auto-Renewal video presentation is below:



### 3.     Customers Who Manually Enable Auto-Renewal.

46.     Those customers who are not already enrolled in the Auto-Renewal program can manually enable Auto-Renewal by visiting the "My Auto-Renewal Settings" portion of the "My Account" web page on McAfee's website after logging into their account.  McAfee encourages customers who initially purchased McAfee Software from a retailer to visit this web page to enable Auto-Renewal, including through a prompt that appears when such customers are installing the software on their computers.  For example, during the software installation process, customers receive a prompt from McAfee, encouraging them to "**Stay Protected.**  Let Always On

Protection automatically renew your subscription when it expires to guarantee there is no protection gap from everyday new threats.  Sign Up Now."  The customer is then provided with a link, which takes the customer to the "My Auto-Renewal Settings" web page.  These customers are exposed to McAfee's misrepresentations regarding Auto-Renewal pricing via the misleading Auto-Renewal video presentation described above.

47.     Similar false and misleading representations about Auto-Renewal pricing have appeared elsewhere on McAfee's website, including on portions of the website where McAfee answers "Frequently Asked Questions" about Auto-Renewal.

48.     McAfee's false representations and promises, described herein, have been pervasive throughout the Class period.  Plaintiff and the Class have been exposed to McAfee's false representations and promises.

49.     McAfee's false representations and promises, described herein, are material in that a reasonable consumer would attach importance to them in deciding whether to enroll or op-out of Auto-Renewal.  It is McAfee's intention that customers will rely on these representations, and Plaintiff and the Class have reasonably relied upon these representations to their detriment.

50.     McAfee's representations and promises alleged herein are false, have a tendency to deceive, and are likely to deceive reasonable consumers and members of the public.

51.     McAfee has failed to disclose to Plaintiff and the Class material information regarding the true nature of Auto-Renewal pricing.  These material omissions are particularly misleading given McAfee's affirmative false and deceptive promises and representations regarding Auto-Renewal pricing.

52.     For example, McAfee sends email notices to Auto-Renewal customers prior to the end of the customer's subscription term, and then emails them another notice informing them when their credit card has been charged for the renewed subscription.  Customers are not required to read or confirm receipt of, or otherwise respond to, these notices.  Neither these notices, nor any other notice or information provided by McAfee, discloses that, contrary to McAfee's contractual promises and pervasive representations, the prices that Auto-Renewal customers are

1    charged when their subscriptions are renewed by McAfee are actually higher than the normal,

2    then-current prices that McAfee charges other customers for the same products.

3          E.    **McAfee Consistently Charges Auto-Renewal Customers More Than Other Customers for the Same Products.**

4

5        53.    Contrary to its contractual obligations and representations, and unbeknownst to

6    Plaintiff and the Class, the prices that McAfee charges Auto-Renewal customers are consistently

7    higher than the normal, then-current prices that McAfee charges other customers for the same

8    products.  In essence, McAfee consistently has a special, higher price for McAfee Software that it

9    imposes *only* on Auto-Renewal customers, and another, lower price that it offers to all other

10   customers for the same products.

11       54.    For example, customers who had their McAfee AntiVirus Plus subscriptions auto-

12   renewed by McAfee on January 1, 2014 would have been charged $49.99 by McAfee for their

13   renewed one-year subscription.  To all other customers that day, McAfee offered the same one-

14   year McAfee AntiVirus Plus subscription for just $34.99, whether the customers were purchasing

15   a new subscription or manually renewing an existing subscription, and whether they made their

16   purchase or manual renewal on McAfee's website or via their McAfee Software.  In fact, during

17   the three months prior to January 1, 2014, McAfee's selling price for a one-year McAfee

18   AntiVirus Plus subscription was consistently $34.99.  During the twelve months prior to January

19   1, 2014, McAfee never charged any customers as much as $49.99 for a one-year McAfee

20   AntiVirus Plus subscription, other than Auto-Renewal customers.  The following chart shows the

21   higher prices that McAfee charges Auto-Renewal customers compared to the prices McAfee

22   offers and charges all other customers, for McAfee AntiVirus Plus:

23

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO. 5:14-00158-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



55.   Similar disparities between the prices that McAfee charges Auto-Renewal customers and the prices it offers and charges other customers have been persistent for the McAfee Internet Security and McAfee Total Protection products as well, as shown in the following charts:



- 18 -

56.     The actual selling prices that McAfee offers to customers who are purchasing or manually renewing McAfee Software subscriptions are McAfee's normal, then-current prices, and are not discounted or promotional prices.  Those actual selling prices are the highest prices that McAfee should be charging Auto-Renewal customers for the products in question, under the terms of the Consumer Agreement and based on McAfee's pervasive representations regarding Auto-Renewal pricing.

57.     Based on information and belief, the prices that McAfee charges Auto-Renewal customers are not only higher than the prices that McAfee charges other customers, they are also higher than the suggested "list" prices that McAfee provides to retailers of McAfee Software.  As the chart below demonstrates, the Manufacturer's Suggested Retail Prices ("MSRPs") which McAfee sets for its retailers are lower than the prices that McAfee charges Auto-Renewal customers for the same products:

## McAfee MSRP vs. Auto-Renewal Price (2012 – 2014)

| Product | MSRP | Auto-Renewal Price |
|---|---|---|
| AntiVirus Plus | $39.99 | $49.99 |
| Internet Security | $69.99 | $79.99 |
| Total Protection | $79.99 | $89.99 |

58.     Retailers of McAfee Software routinely discount the products far below the MSRPs that McAfee provides to them.  For example, Amazon.com regularly offers McAfee Software at over 70% off the MSRP.  Below is a screenshot from Amazon.com, taken January 5, 2014, showing Amazon.com offering McAfee Internet Security for $13.45, discounted from the "List Price" (*i.e.*, the MSRP) of $69.99:



59. On information and belief, in the relatively rare event that an Auto-Renewal customer discovers that McAfee has charged him or her more than McAfee should have for the customer's McAfee Software subscription renewal, and the customer contacts McAfee to complain about it, McAfee has a policy and/or practice, not to disclose the truth about its Auto-Renewal pricing scheme, but instead to pacify such customers by offering them discounts and/or free months of McAfee Software subscriptions.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

60. On October 8, 2011, Plaintiff Sam Williamson purchased a desktop computer from a Micro Center retail store in Tustin, California. The computer that Mr. Williamson purchased came pre-installed with a 60-day "free trial" subscription to McAfee AntiVirus Plus. Later that day, Mr. Williamson activated the "free trial" subscription on his new computer by clicking an icon on the desktop and following instructions provided by McAfee.

61. While Mr. Williamson was in the process of activating the "free trial" subscription, McAfee displayed advertising on his computer encouraging him to purchase a one-year paid subscription to the software. McAfee's prompts and advertising promised Mr.

1   Williamson that if he immediately purchased a one-year subscription, he would receive a discount

2   from McAfee's purported regular selling price for the product.  McAfee offered to sell Mr.

3   Williamson a one-year subscription to McAfee AntiVirus Plus for $29.99, at a promised discount

4   of $20.00 from the purported regular price of $49.99.  McAfee prominently displayed both the

5   purported "regular" price and the representation that Mr. Williamson would supposedly save

6   $20.00 by making the purchase at that time.

7           62.     Relying on McAfee's representations, Mr. Williamson clicked on one of McAfee's

8   advertising prompts, which took him to a page in the software where he could purchase a paid

9   subscription to McAfee AntiVirus Plus.  On that page, McAfee again prominently represented to

10  Mr. Williamson that its regular selling price for a one-year subscription to McAfee AntiVirus

11  Plus was $49.99, and that the $29.99 price offered to Mr. Williamson that day reflected a discount

12  of $20.00 from the purported regular price.  Relying on McAfee's representations, Mr.

13  Williamson purchased a one-year subscription to McAfee AntiVirus Plus for $29.99 by entering

14  his credit card information as prompted by McAfee.

15          63.     The purported discount that McAfee represented to Mr. Williamson was false and

16  misleading, because the purported regular price of $49.99 that McAfee represented was fabricated

17  and failed to represent McAfee's prevailing regular or former price for a one-year McAfee

18  AntiVirus Plus subscription.  Plaintiff's pre-filing investigation has revealed a clear pattern by

19  McAfee, lasting approximately two years, of consistently advertising both an actual selling price

20  and a false slash-through reference price for the software within the class definition.  *See infra* ¶¶

21  131-132, ¶ 66.  This pattern is consistent with the pricing that McAfee presented to Plaintiff

22  Williamson when he made his AntiVirus Plus subscription purchase in October 2011.  Based on

23  this information, Plaintiff has an ample basis to believe, and does allege, that McAfee did not

24  offer for sale, or make substantial sales of, McAfee AntiVirus Plus at a price of $49.99 within a

25  reasonable period of time before Plaintiff Williamson's October 8, 2011 purchase, and that for

26  months prior to October 8, 2011, McAfee consistently offered the same one-year subscription to

27  McAfee AntiVirus Plus at a selling price lower than $49.99.  McAfee's historical pricing (actual

28  selling prices and reference prices) for the time period before when Plaintiff's counsel was able to

1    track, is not publicly available and is within McAfee's exclusive control.  McAfee's counsel has

2    confirmed, during meet and confer in this case regarding data and document preservation issues,

3    that McAfee has maintained the pertinent pricing data for the relevant time period.

4         64.    At the time Mr. Williamson made his one-year subscription purchase in October

5    2011, McAfee automatically enrolled Mr. Williamson in the Auto-Renewal program.  McAfee

6    represented to Mr. Williamson, on the page where he entered his credit card information to make

7    his purchase, that he could opt-out of Auto-Renewal by visiting the "My Account" web page on

8    McAfee's website.  Alongside that representation, McAfee represented to Mr. Williamson that

9    when his AntiVirus Plus subscription was automatically renewed under Auto-Renewal, McAfee

10   would charge him "the product price current at the time of auto-renewal" or substantially similar

11   language.  Mr. Williamson relied on this representation, and as a result he expected that, when his

12   subscription was automatically renewed under Auto-Renewal, he would be charged a price no

13   higher than McAfee's normal, then-current price that McAfee offered and charged other, non-

14   Auto-Renewal, customers for a one-year AntiVirus Plus subscription.  Because of McAfee's

15   representation about this limitation on Auto-Renewal pricing, Mr. Williamson did not visit the

16   My Account page to un-enroll in Auto-Renewal.  Had Mr. Williamson known the truth about

17   Auto-Renewal pricing, he would have un-enrolled in Auto-Renewal.

18        65.    By virtue of his McAfee Software subscription purchase, Mr. Williamson entered

19   into, and was subject to, McAfee's form Consumer Agreement, including the terms governing the

20   Auto-Renewal program and Auto-Renewal pricing.

21        66.    On November 7, 2012, McAfee automatically renewed Mr. Williamson's McAfee

22   AntiVirus Plus subscription for an additional one-year period.  McAfee charged Mr. Williamson

23   $49.99 for the renewed subscription, even though McAfee's selling price for a one-year

24   AntiVirus Plus subscription that day, and the price that McAfee offered and charged all non-Auto

25   Renewal customers that day for the same one-year AntiVirus Plus subscription, was just $34.95,

26   whether the customers were purchasing a new subscription or manually renewing an existing

27   subscription, and whether they were doing so on McAfee's website or via the purchase path

28   within the software.  The $34.95 price was not a promotional price or a discounted price off of a

1192319.6

normal selling price of $49.99.  The $49.99 price that McAfee charged Mr. Williamson under

Auto-Renewal was not McAfee's normal, then-current price for the product in question.  The

$49.99 price that McAfee charged Mr. Williamson under Auto-Renewal was not McAfee's then-

current price for the product in question excluding discount and promotional pricing.  In fact, as

the chart below shows, with the exception of one approximately 13-day period, McAfee's selling

price for McAfee AntiVirus Plus was consistently less than $49.99 for at least eight months prior

to the automatic renewal of Mr. Williamson's subscription:



67.    As a result of McAfee's contractual breaches and misconduct alleged herein, Mr.

Williamson suffered damages, including by paying additional amounts for his renewed software

subscription, over and above what he should have been charged and otherwise would have paid,

and by paying more than he otherwise would have paid for his initial one-year subscription and

1  being denied the discount and value that McAfee promised him in connection with his initial one-

2  year subscription.

3  **CLASS ACTION ALLEGATIONS**

4      68.    Plaintiff brings this class-action lawsuit on behalf of himself and the proposed

5  members of the "Class" pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and on

6  behalf of himself and the proposed members of the "Reference Price Class" pursuant to Rule

7  23(b)(2) of the Federal Rules of Civil Procedure.

8      69.    Plaintiff seeks certification of the following "Class":

9

10  All persons in the United States who have incurred charges from McAfee for the automatic
renewal of a subscription to the following McAfee-branded products during the following time
periods:

11

| Product | Time Periods |
|---|---|
| McAfee AntiVirus Plus | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |
| McAfee Internet Security | Applicable statute of limitation through 9/4/2012; 9/18/2012 through the present |
| McAfee Total Protection | Applicable statute of limitation through 9/5/2012; 9/18/2012 through 9/3/2013 |

12

13

14

15

16

17      70.    Plaintiff also seeks certification of the following "Reference Price Class":

18  All persons in the United States who purchased or manually renewed, on McAfee's website or via
their McAfee Software, McAfee-branded software advertised as discounted from a represented
former sales price as indicated and set forth in the chart immediately below:

19

20

| Product | Time Periods |
|---|---|
| McAfee AntiVirus Plus | Applicable statute of limitation through the present |
| McAfee Internet Security | Applicable statute of limitation through the present |
| McAfee Total Protection | Applicable statute of limitation through 9/3/2013 |

21

22

23

24

25      71.    Specifically excluded from the Class and Reference Price Class are McAfee and

26  any entities in which McAfee has a controlling interest, McAfee's agents and employees, the

27  judge to whom this action is assigned, members of the judge's staff, and the judge's immediate

28  family.

72.     **Numerosity.**  Plaintiff does not know the exact number of Class members and Reference Price Class members but believes that the Class and Reference Price Class each comprise at least hundreds of thousands of consumers throughout the United States.  As such, Class members and Reference Price Class members are so numerous that joinder of all members is impracticable.

73.     **Commonality and predominance.**  Well-defined, nearly identical legal or factual questions affect all Class members.  Similarly, well-defined, nearly identical legal or factual questions affect all Reference Price Class members.  These questions predominate over questions that might affect individual Class members or Reference Price Class members.  With respect to the Class, these common questions include, but are not limited to, the following:

a.     Whether the Consumer Agreement required McAfee to charge Auto-Renewal customers prices that were no higher than the normal, then-current prices that McAfee charged other customers for the same products;

b.     Whether McAfee breached its contractual obligations to Plaintiff and the Class by charging them prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products;

c.     Whether McAfee's representations to Plaintiff and the Class regarding Auto-Renewal pricing were objectively material;

d.     Whether McAfee failed to disclose objectively material information to Plaintiff and the Class regarding Auto-Renewal pricing;

e.     Whether McAfee's representations and omissions regarding Auto-Renewal pricing had a tendency to deceive consumers;

f.     Whether McAfee's conduct alleged herein violated California Business & Professions Code § 17200 *et seq*, California Business & Professions Code § 17500 *et seq*, and/or California Business & Professions Code § 17600 *et seq*.

g.     Whether Plaintiff and the Class are entitled to damages and/or restitution; and

1      h.      Whether McAfee should be enjoined from further engaging in the

2 misconduct alleged herein.

3      74.      With respect to the Reference Price Class, the common questions include, but are

4 not limited to, the following:

5      a.      Whether McAfee falsely advertises price discounts from purported regular

6 sales prices;

7      b.      Whether McAfee's representations directed to members of the Reference

8 Price Class contain false representations of material fact;

9      c.      Whether McAfee's conduct alleged herein violated California Business &

10 Professions Code § 17200 *et seq.* and/or California Business & Professions Code § 17500 *et seq.*

11      d.      Whether McAfee should be enjoined from further engaging in the

12 misconduct alleged herein.

13      75.      ***Typicality.***  Plaintiff's claims are typical of Class members' claims.  Plaintiff and

14 the Class members were all subject to McAfee's misconduct alleged herein regarding Auto-

15 Renewal pricing.  Plaintiff's claims are typical of Reference Price Class members' claims.

16 Plaintiff and Reference Price Class members were all subject to McAfee's false former price and

17 false discount representations.

18      76.      ***Adequacy.***  Plaintiff will fairly and adequately protect Class members' and

19 Reference Price Class members' interests.  Plaintiff has no interests antagonistic to Class

20 members' or Reference Price Class members' interests, and Plaintiff has retained counsel that

21 have considerable experience and success in prosecuting complex class-actions and consumer-

22 protection cases.

23      77.      ***Superiority.***  A class action is the superior method for fairly and efficiently

24 adjudicating this controversy for the following reasons without limitation:

25      a.      Class members' claims and Reference Price Class members' claims are

26 relatively small compared to the burden and expense required to litigate their claims individually,

27 so it would be impracticable for Class members or Reference Price Class members to seek

28 individual redress for McAfee's illegal and deceptive conduct;

1          b.      Even if Class members and Reference Price Class members could afford

2   individual litigation, the court system could not.  Individual litigation creates the potential for

3   inconsistent or contradictory judgments and increases the delay and expense to all parties and to

4   the court system.  By contrast, a class action presents far fewer management difficulties and

5   provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

6   a single court; and

7          c.      Plaintiff anticipates no unusual difficulties in managing this class action.

8   **CHOICE OF LAW/ MCAFEE'S ATTEMPT TO EVADE CALIFORNIA LAW**

9          78.     Even though it is headquartered in California and its operations predominately

10  emanate from California, McAfee's form Consumer Agreement currently contains a provision

11  providing for the application of New York law to certain claims, regardless of where in the

12  United States the consumer party resides.  Until approximately 2009, McAfee's Consumer

13  Agreement provided for the application of California law for all United States consumers

14  regardless of where in the United States they resided, presumably because McAfee is a

15  California-based company with its operations predominately emanating from California.

16         79.     On information and belief, McAfee modified the choice-of-law provision in the

17  Consumer Agreement, in or around 2009, in a deliberate attempt to evade California's consumer

18  protection laws, including: (a) California Business & Professions Code §§ 17600 *et seq*, which

19  was scheduled to take effect, and did take effect, beginning in 2010, and which was specifically

20  enacted by the California Legislature to address unfair, deceptive, and harmful practices

21  regarding automatic renewal services, such as McAfee's unfair and deceptive practices regarding

22  the Auto-Renewal program; (b) California Business & Professions Code § 17501, which requires

23  that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged

24  former price was the prevailing market price . . . within three months next immediately preceding

25  the publication of the advertisement."; and/or (c) generally, California's UCL and FAL, which

26  generally provide for greater protection to consumers, including non-California consumers when

27  a California company like McAfee is the alleged wrongdoer.

28

80.    On information and belief, McAfee also modified the choice-of-law provision in the Consumer Agreement in an attempt to foreclose customers residing in states other than New York from being able to pursue claims under state consumer protection statutes.

81.    To the extent the Consumer Agreement provides for the application of New York law, it is not applicable or enforceable as to the claims alleged herein under applicable choice-of-law principles.  There is no substantial relationship between the contractual relationship, conduct, or claims alleged herein and New York, and there is no reasonable or legitimate basis for the choice or application of New York law.  California has a materially greater interest than New York or any other state in having its laws apply, given that McAfee is a California company with operations predominately emanating from California, and the conduct alleged herein emanated predominately from California.  Moreover, the application of New York law would violate fundamental policies of California, including, but not limited to, as follows: (a) Customers from states other than New York may be restricted in their ability pursue claims under New York General Business Law § 349 and § 350, whereas customers from all fifty states would be able to pursue claims against California-based McAfee under California's UCL and FAL and thus the application of New York law would deprive California consumers and consumers from other states doing business with a California company, McAfee, of important rights and remedies, and would interfere with California's important interests in protecting consumers who conduct business in California and deterring California companies from engaging in unfair and deceptive business practices, such as those alleged herein; and (b) California law provides consumers with enhanced protection and relaxed pleading and evidentiary burdens, and thus the application of New York law would interfere with California's important interests in protecting consumers who conduct business in California and deterring California companies from engaging in unfair and deceptive business practices, such as those alleged herein.

82.    Application of New York law to the Class members' claims in this case would reward McAfee for its deliberate attempt to evade the application of California laws that are designed to protect consumers and deter California companies from engaging in unfair and deceptive business practices, such as those alleged herein.

83.     California law applies to the claims of all Class members under applicable choice-of-law principles and for the reasons set forth herein.  Alternatively, California law applies to all Class members residing in states other than New York, and New York law applies only to those Class members residing in New York.

**CAUSES OF ACTION**

**COUNT I**
**Breach of Contract**

(On Behalf the Class)

84.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

85.     McAfee entered into valid contractual agreements with Plaintiff and all Class members.

86.     The material terms of McAfee's contracts with Plaintiff and the Class members included McAfee's obligation that, under the Auto-Renewal program, customers enrolled in the program would have their McAfee Software subscriptions renewed at a price no higher than the normal, then-current price that McAfee charged other customers for the same products.

87.     Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with McAfee.

88.     McAfee has breached its contracts with Plaintiff and the Class members by charging them prices that were higher than the normal, then-current prices that McAfee charged other customers for the same products.

89.     By reason of McAfee's contractual breaches, Plaintiff and all Class members have suffered damages, in an amount to be proven at trial, including by paying additional amounts for their renewed McAfee Software subscriptions.

90.     McAfee's contractual breaches are ongoing.  Absent an order from the Court requiring McAfee to perform as it is required to do under its contracts with Plaintiff and the Class members, McAfee will continue to breach its contracts to the detriment of the Class.

1192319.6

CLASS ACTION COMPLAINT
CASE NO. 5:14-00158-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### Violations of California Business & Professions Code § 17200, *et. seq.*

(On Behalf of the Class)

91.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

92.     McAfee's practices alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq.* ("UCL").

93.     McAfee  has violated the "unlawful" prong of the UCL through its contractual breaches and other legal violations regarding Auto-Renewal pricing alleged herein.

94.     McAfee has violated the "fraudulent" prong of the UCL through its misrepresentations and omissions regarding Auto-Renewal pricing alleged herein.

95.     McAfee's misrepresentations and omissions regarding Auto-Renewal pricing are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions, including deciding whether to enroll or opt-out of Auto-Renewal.

96.     McAfee's misrepresentations and omissions regarding Auto-Renewal pricing are false and misleading.

97.     McAfee's misrepresentations and omissions regarding Auto-Renewal pricing deceive or have a tendency to deceive reasonable consumers.

98.     Plaintiff and the Class reasonably relied upon McAfee's misrepresentations and omissions regarding Auto-Renewal pricing to their detriment.  Because of McAfee's misrepresentation regarding Auto-Renewal pricing, Mr. Williamson did not un-enroll in Auto-Renewal.  Had Mr. Williamson known the truth about Auto-Renewal pricing, he would have un-enrolled in Auto-Renewal.

99.     McAfee has violated the "unfair" prong of the UCL through its practices regarding Auto-Renewal pricing alleged herein, under both the *Cel-Tech* "tethering" test and "balancing" test utilized by California courts.

100.    McAfee's practices regarding Auto-Renewal pricing, alleged herein, violate California public policy, including as such policy is reflected in California Business & Professions Code § 17600 *et. seq.*, which the California Legislature specifically enacted to protect consumers from unscrupulous and unfair conduct regarding automatic renewal services.  Among other things, California Business & Professions Code § 17600 *et. seq.* reflects and confirms California's public policy that consumers whose services are subject to automatic renewal should be presented, before they are enrolled in such a program, with accurate information, to the extent it is available to the seller at that time, regarding the pricing terms that will apply at the time of renewal.  *See* Cal. Bus. § Prof. Code §§ 17601(a)(3), 17602(a)(1).  McAfee's practices alleged herein, which include misrepresentations and failures to provide accurate information to customers about Auto-Renewal pricing, before and after their enrollment, not only violate the express terms of California Business & Professions Code § 17600 *et. seq.*, they also violate the spirit of the public policy reflected in that statute, which is intended to ensure, *inter alia*, that customers are properly and accurately informed about automatic renewal offer terms before being enrolled in such programs.

101.    McAfee's practices regarding Auto-Renewal pricing, alleged herein, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

102.    McAfee has engaged in a years-long, pervasive scheme of making misrepresentations to its customer about Auto-Renewal pricing in order to falsely reassure customers that it is in their interest to enroll and remain enrolled in Auto-Renewal, and thereby to extract additional money from these customers for McAfee's own benefit.  McAfee has deliberately calibrated its representations to give customers the false impression that there is no cost disadvantage to having their subscriptions be renewed pursuant to Auto-Renewal, as compared to alternatives such as manually renewing their subscriptions when they expire. Having promoted a false expectation about Auto-Renewal pricing, McAfee then consistently charges customers enrolled in Auto-Renewal special premium prices that are significantly higher than the prices McAfee offers and charges all other customers for the same products.

1    Perpetrating a systemic practice of misleading customers and overcharging them is immoral,

2    unethical, and unscrupulous.

3          103.    Moreover, McAfee's practices are oppressive and substantially injurious to

4    consumers.  McAfee has improperly extracted substantial additional money from consumers

5    through its Auto-Renewal pricing scheme, pursuant to which Auto-Renewal customers are

6    charged significantly more (on average, greater than 40% more) than McAfee's true regular

7    prices offered and charged to all other customers for the same products.  McAfee has improperly

8    extracted these additional funds from many thousands of customers.  There is no utility to

9    McAfee's misconduct, and even if there were any such utility, it would be significantly

10   outweighed by the gravity of the harm to consumers caused by McAfee's misconduct.

11         104.    As a result of the foregoing, Plaintiff and each Class member have been injured

12   and have lost money or property, including by paying additional amounts for their renewed

13   software subscriptions, over and above what they should have been charged and otherwise would

14   have paid, and are entitled to restitution and injunctive relief.

15         105.    Unless restrained by this Court, McAfee will continue to engage in unfair,

16   deceptive, and unlawful conduct, as alleged above, in violation of California Business &

17   Professions Code § 17200 *et. seq.*

18                                 **COUNT III**
     **Violations of California Business & Professions Code § 17500, *et. seq.***

19                          (On Behalf of the Class)

20         106.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the

21   preceding paragraphs as though alleged in this Count.

22         107.    McAfee has committed acts of untrue and misleading advertising, as defined by

23   California Business and Professions Code § 17500 *et seq.*, including by: (a) making false

24   representations regarding Auto-Renewal pricing to Plaintiff and the Class; and (b) failing to

25   disclose to Plaintiff and the Class the true nature of Auto-Renewal pricing.

26         108.    McAfee's misrepresentations and omissions regarding Auto-Renewal pricing

27   deceive or have a tendency to deceive the general public.

28

109.    McAfee's misrepresentations and omissions regarding Auto-Renewal pricing are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions, including deciding whether to enroll or opt-out of Auto-Renewal.

110.    Plaintiff and the Class reasonably relied upon McAfee's misrepresentations and omissions regarding Auto-Renewal pricing to their detriment.  Because of McAfee's misrepresentation regarding Auto-Renewal pricing, Mr. Williamson did not un-enroll in Auto-Renewal.  Had Mr. Williamson known the truth about Auto-Renewal pricing, he would have un-enrolled in Auto-Renewal.

111.    As a result of the foregoing, Plaintiff and each Class member have been injured and have lost money or property, including by paying additional amounts for their renewed software subscriptions, over and above what they should have been charged and otherwise would have paid, and are entitled to restitution and injunctive relief.

112.    Unless restrained by this Court, McAfee will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business & Professions Code § 17500 *et. seq.*

**COUNT IV**
**Violations of California Business & Professions Code § 17600 *et seq.***

(On Behalf of the Class)

113.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

114.    Plaintiff and the Class members are "consumers" under California Business & Professions Code § 17601(d).

115.    McAfee's Auto-Renewal program constitutes an "automatic renewal" plan or arrangement under California Business & Professions Code § 17601(a).

116.    Auto-Renewal pricing terms constitute "automatic renewal offer terms" under California Business & Professions Code § 17600(a)(3).

117.    Pursuant to California Business & Professions Code §§ 17600(a)(3) and 17602(a)(1), McAfee was required to clearly and conspicuously present to Plaintiff and the Class,

- 33 -

1  before they were enrolled in the Auto-Renewal program, information, if known by McAfee at the

2  time, regarding the pricing terms that would apply when Plaintiff and the Class members'

3  McAfee Software subscriptions were automatically renewed.  To satisfy this requirement, the

4  pricing information presented by McAfee to Plaintiff and the Class was required to be accurate.

5      118.   McAfee has violated California Business & Professions Code § 17600 *et seq.* by

6  failing to present to Plaintiff and the Class, before (or, for that matter, after) they were enrolled in

7  the Auto-Renewal program, accurate information regarding the pricing terms that would apply

8  when their software subscriptions were automatically renewed.  McAfee knew, at the time it

9  enrolled Plaintiff and the Class in the Auto-Renewal program, the true nature and terms of Auto-

10  Renewal pricing (*i.e.*, that, McAfee intended to charge Plaintiff and the Class special premium

11  prices at Auto-Renewal that were substantially higher than the normal, then-current prices offered

12  and charged to all other customers for the same products), but nevertheless the only information

13  that McAfee presented to Plaintiff and the Class about Auto-Renewal pricing was false and

14  misleading.

15      119.   Plaintiff and the Class reasonably relied upon McAfee's misrepresentations and

16  omissions regarding Auto-Renewal pricing to their detriment.

17      120.   As a result of the foregoing, Plaintiff and each Class member have been injured

18  and have lost money or property, including by paying additional amounts for their renewed

19  software subscriptions, over and above what they should have been charged and otherwise would

20  have paid, and are entitled to restitution and injunctive relief pursuant to California Business &

21  Professions Code § 17604.

22      121.   Unless restrained by this Court, McAfee will continue to engage in the misconduct

23  alleged above, in violation of California Business & Professions Code § 17600 *et. seq.*

### COUNT V
### Violations of California Business & Professions Code §§ 17200 *et seq.*

(On Behalf of the Reference Price Class)

26      122.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the

27  preceding paragraphs as though alleged in this Count.

28

123.     Plaintiff brings this Count individually and on behalf of the proposed members of the Reference Price Class.  Plaintiff seeks injunctive relief to enjoin McAfee from continuing to advertise false former prices and false discounts, as alleged herein.

124.     McAfee uses its Auto-Renewal pricing scheme, alleged above, to help carry out yet another unlawful pricing scheme—this one perpetrated by McAfee on those customers who purchase new McAfee Software subscriptions or manually renew existing subscriptions via McAfee's website or their McAfee Software.

125.     To these customers, McAfee advertises two prices for McAfee Software subscriptions: (a) the selling price; and (b) directly next to the selling price, a higher expressly-referenced former price with a line, or "slash," through it.  McAfee also expressly represents that the customer will "Save" money if they make their purchase at that time.  McAfee states the "savings" in specific dollar or percentage amounts that equal the difference between the referenced former price and the selling price.  McAfee prominently advertises the former reference price and the purported discount from such price.  McAfee also prominently features phrases such as "Buy Now" regarding the false discounts in order to create a sense of urgency and the false impression that customers will miss out on the purported markdowns if they do not buy the products immediately.

126.     McAfee designs its slash-through price and corresponding discount representations to create the false impression that the slash-through prices are McAfee's former prices for the product that the customer would have had to pay if they had made their purchase on another day within a reasonable time period.

127.     The purported discounts that McAfee represents to these customers are false because the referenced former prices are fabricated and fail to represent McAfee's true regular or former prices for the products in question.  The only time that McAfee ever, or virtually ever, charges the higher reference prices for McAfee Software subscriptions are when it improperly imposes such higher prices on Auto-Renewal customers.  On information and belief, McAfee tries to "establish" its false former reference prices, advertised to consumers on its website and through its software, through its inflated and unfair charges to Auto-Renewal customers.

128.    McAfee's false reference price scheme has been rampant across all three McAfee Software product lines.  Its representations of discounts from false reference prices have been pervasive on its website and in representations made to customers through the software.

129.    For example, a customer purchasing or manually renewing a one-year subscription to McAfee AntiVirus Plus on December 9, 2013, either via McAfee's website or via their McAfee Software, would have been presented by McAfee with: (a) the actual selling price for the subscription, $34.99; and (b) directly next to that selling price, a former reference price of $49.99 with a "slash" line through it, together with a representation that the customer will "Save 30%" if they "Buy Now."  For example, see the screenshot below taken from McAfee's website on December 9, 2013:



130.    After customers clicked the "Buy Now" button, they would have been taken to the following "Checkout" page, where they again would have been exposed to the former reference price and discount representations. McAfee explicitly states on the "Checkout" page: "**Save $15 off** the regular price of $49.99."[2]

---

[2] The "Checkout" page screen shot also shows additional deceptive practices by McAfee, including adding, by default, an unrequested physical CD to the order for an extra $12.95, and adding, by default, an unrequested software program called Registry Power Cleaner for $4.95 (at a purported $35.00 discount from the claimed regular price of $39.95, even though the product cannot be otherwise found for sale on McAfee's website).  The customer must take affirmative steps to remove the unwanted add-ons or will be charged for them.

1192319.6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   131.   The $49.99 reference price is false, as is McAfee's corresponding representation of

20   "savings," because the reference price does not represent McAfee's true "regular" or former price

21   for the product.  During the 12 months prior to December 9, 2013, McAfee always offered the

22   same one-year subscription to McAfee AntiVirus Plus at a selling price lower than $49.99.  The

23   only time during this period that McAfee charged as much as $49.99 for a one-year AntiVirus

24   Plus subscription was when it improperly and unfairly imposed this higher price on Auto-

25   Renewal customers.  The following chart demonstrates that McAfee has consistently advertised

26   McAfee AntiVirus Plus at a purported discount from a false former reference price:

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    132.    The following charts further demonstrate that McAfee's advertising of purported

18  discounts from false former reference prices has been pervasive for its Internet Security and Total

19  Protection products as well:

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1192319.6

133.     McAfee's reference price representations do not include any indication that the reference prices represent, not McAfee's true former or regular selling prices for the products in question, but instead premium prices imposed only pursuant to Auto-Renewal.

134.     McAfee deliberately and artificially sets the false reference prices to create false impressions among customers regarding the products' values and the bargains that customers will receive if they purchase McAfee's products, and to artificially increase demand for McAfee Software.

135.     McAfee's integrated marketing scheme of advertising false savings from false former prices increases the demand for its products and enables McAfee to charge higher prices. As a result of this scheme, consumers who purchase new software subscriptions or manually renew existing subscriptions, on McAfee's website or via their McAfee Software, end up paying more than they bargained for because they do not receive the price discounts and value of products that McAfee promises them, and pay more than they otherwise would pay for the products.

136.     McAfee advertised a false reference price and false discount to Plaintiff Williamson, regarding its AntiVirus Plus product. *See* ¶¶ 61-63, above.  Mr. Williamson reasonably relied upon McAfee's false representations and thereby believed that he was receiving a discount from McAfee's regular price by making his purchase on October 8, 2011.  Mr. Williamson was injured by McAfee's false reference price and false discount representations, including by paying more for his McAfee Software subscription than he otherwise would have paid, and being denied the discount and product value he was promised.

137.     McAfee's practices alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq.* ("UCL").

138.     McAfee has violated the "unlawful" prong of the UCL through its false reference price scheme alleged herein.   McAfee's false reference price scheme violates California law prohibiting advertising goods for sale as discounted from former prices which are false.  Pursuant to California Business and Professions Code § 17501, "[n]o price shall be advertised as a former

1    price of any advertised thing, unless the alleged former price was the prevailing market price . . .

2    within three months next immediately preceding the publication of the advertisement."

3         139.    McAfee has violated the "fraudulent" prong of the UCL through its false reference

4    price scheme alleged herein.  McAfee's misrepresentations regarding false reference prices and

5    false discounts and savings are false and misleading.

6         140.    McAfee's misrepresentations regarding false reference prices and false discounts

7    and savings deceive or have a tendency to deceive reasonable consumers.

8         141.    McAfee's misrepresentations regarding false reference prices and false discounts

9    and savings are material, in that a reasonable person would attach importance to the information

10   and would be induced to act on the information in making purchase decisions.

11        142.    Plaintiff and the Reference Price Class reasonably relied upon McAfee's

12   misrepresentations regarding false reference prices and false discounts and savings to their

13   detriment.

14        143.    McAfee has violated the "unfair" prong of the UCL through its false reference

15   price scheme alleged herein, under both the *Cel-Tech* "tethering" test and "balancing" test utilized

16   by California courts.

17        144.    McAfee's false reference price scheme violates California public policy, including

18   as such policy is reflected in California Business & Professions Code § 17501, which is

19   specifically directed at protecting consumers from false reference price advertising.  McAfee's

20   false reference price scheme also violates California public policy as such policy is reflected in

21   California Civil Code § 1770(a)(13), which prohibits companies from "[m]aking false or

22   misleading statements of fact concerning reasons for, existence of, or amounts of price

23   reductions."  The Court has determined that Plaintiff cannot pursue a claim here under the CLRA

24   because the Court found that McAfee Software does not constitute a "good" or "service" under

25   the CLRA, and has dismissed that claim without leave to amend.  Nevertheless, the CLRA (and in

26   particular California Civil Code § 1770(a)(13)) reflects and confirms that the advertising of false

27   discounts to consumers is inconsistent with California public policy.

28

145.     McAfee's false reference price scheme is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

146.     McAfee has engaged in a years-long, pervasive scheme of advertising false information to its customers about the former selling prices of its products, the value of its products, and the discounts and savings customers will receive.  McAfee deliberately advertises false reference prices and uses formatting and language designed to create a false sense of urgency and to convince consumers that they will receive significant discounts if they "Buy Now," even though the purported discounts are false.  The purpose of McAfee's false reference price scheme is to increase demand for, and sales of, McAfee Software and to extract additional money from customers for McAfee's own benefit.  Perpetrating a systemic practice of misleading customers is immoral, unethical, and unscrupulous.

147.     Moreover, McAfee's practices are oppressive and substantially injurious to consumers.  McAfee has improperly extracted substantial additional money from consumers through its false reference price scheme.  McAfee has extracted these additional funds from many thousands of customers.  There is no utility to McAfee's misconduct, and even if there were any such utility, it would be significantly outweighed by the gravity of the harm to consumers caused by McAfee's misconduct.

148.     As a result of the foregoing, Plaintiff and the Reference Price Class have been injured and lost money or property and are entitled to injunctive relief.

149.     Unless restrained by this Court, McAfee will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business & Professions Code § 17200 *et. seq.*

150.     Plaintiff, on behalf of himself and the Reference Price Class, seeks a permanent injunction, enjoining McAfee from continuing to engage in the misconduct alleged in this Count.

## COUNT VI
### Violations of California Business & Professions Code §§ 17500 *et seq*

#### (On Behalf of the Reference Price Class)

151.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count, including but not limited to the allegations set forth in Count V, above, specifically regarding McAfee's false reference price scheme.

152.    Plaintiff brings this Count individually and on behalf of the proposed members of the Reference Price Class.  Plaintiff seeks injunctive relief to enjoin McAfee from continuing to advertise false former prices and false discounts, as alleged herein.

153.    McAfee has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 *et seq*., including, but not limited to, by: (a) advertising false former prices and false discounts and savings; and (b) advertising prices as former prices of McAfee Software when such prices were not the prevailing price within the three months next preceding the publication of the advertisement.  Cal. Bus. & Prof. Code § 17501.

154.    McAfee's misrepresentations regarding false reference prices and false discounts and savings are false and misleading.

155.    McAfee's misrepresentations regarding false reference prices and false discounts and savings deceive or have a tendency to deceive the general public.

156.    McAfee's misrepresentations regarding false reference prices and false discounts and savings are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

157.    Plaintiff and the Reference Price Class reasonably relied upon McAfee's misrepresentations regarding false reference prices and false discounts and savings to their detriment.

158.    As a result of the foregoing, Plaintiff and the Reference Price Class have been injured and lost money or property and are entitled to injunctive relief.

159.    Unless restrained by this Court, McAfee will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business & Professions Code § 17500 *et. seq*.

160.    Plaintiff, on behalf of himself and the Reference Price Class, seeks a permanent injunction, enjoining McAfee from continuing to engage in the misconduct alleged in this Count.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRAYER FOR RELIEF

On behalf of himself and the Class and Reference Price Class, Plaintiff requests that the Court order relief and enter judgment against McAfee as follows:

        a.      An order certifying the proposed Class and Reference Price Class and appointing Plaintiff and his counsel to represent the Class and Reference Price Class;

        b.      An order that McAfee is permanently enjoined from its misconduct as alleged;

        c.      A judgment awarding Plaintiff and the Class members restitution, including, without limitation, restitutionary disgorgement of all profits that McAfee may have received as a result of its misconduct as alleged;

        d.      A judgment awarding Plaintiff and the Class members actual damages;

        e.      Pre-judgment and post-judgment interest;

        f.      Attorneys' fees, expenses, and the costs of this action; and

        g.      All other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 8, 2014           Respectfully submitted,

                                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                 By: */s Michael W. Sobol*
                                 Michael W. Sobol

                                 Michael W. Sobol
                                 msobol@lchb.com
                                 Roger N. Heller
                                 rheller@lchb.com
                                 Nicole D. Sugnet
                                 nsugnet@lchb.com
                                 LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                 275 Battery Street, 29th Floor
                                 San Francisco, CA  94111
                                 Telephone:  (415) 956-1000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel M. Hattis
dan@hattislaw.com
HATTIS LAW
1134 Crane Street, Suite 216
Menlo Park, CA 94025
Telephone:  (650) 980-1990

*Attorneys for Plaintiff*

1192319.6

CLASS ACTION COMPLAINT
CASE NO. 5:14-00158-EJD