1  Daniel F. Katz (*pro hac vice*)
   David S. Kurtzer-Ellenbogen (*pro hac vice*)
2  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
3  Washington, DC 20005
   Telephone:  (202) 434-5000
4  Facsimile:  (202) 434-5029
   dkatz@wc.com
5  dkurtzer@wc.com

6  Michael F. Donner (SBN 155944)
   Ellen A. Cirangle (SBN 164188)
7  LUBIN OLSON & NIEWIADOMSKI LLP
   Transamerica Pyramid
8  600 Montgomery Street, 14th Floor
   San Francisco, CA  94111
9  Telephone:  (415) 981-0550
   Facsimile:  (415) 981-4343
10 mdonner@lubinolson.com
   ecirangle@lubinolson.com
11
   Attorneys for Defendant
12 McAFEE, INC.

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15 SAM WILLIAMSON,                 | Case No. 5:14-cv-00158-EJD

16        Plaintiff,               | **CLASS ACTION**

17 v.                              | **NOTICE OF MOTION AND MOTION OF
                                   | DEFENDANT McAFEE, INC. TO DISMISS
18 McAFEE, INC.,                   | FIRST AMENDED COMPLAINT**

19        Defendant.               | **[Fed. R. Civ. P. 9(b), 12(b)(6)]**

20                                 | **Date:  March 5, 2015**

21                                 | **Time:  9:00 a.m.**

22                                 | **Judge:  Hon. Edward J. Davila**

23

24        PLEASE TAKE NOTICE THAT on March 5, 2015, at 9:00 a.m., or as soon thereafter as

25 the matter may be heard, in the United States District Court for the Northern District of

26 California, San Jose Division, in Courtroom 4, Fifth Floor, 280 South First Street, San Jose,

27 California, before the Hon. Edward J. Davila, Defendant McAfee, Inc. ("McAfee"), will move to

28 dismiss the First Amended Complaint in this action ("Amended Complaint") with prejudice

1   pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

2        McAfee's motion rests on the following grounds, which are set forth in detail in the

3   attached Memorandum of Points and Authorities:

4        *First*, Plaintiff's "reference price" Unfair Competition Law ("UCL") and False

5   Advertising Law ("FAL") claims (Counts V and VI) fail as a matter of law because the factual

6   allegations in the Amended Complaint make clear that McAfee made substantial sales of

7   AntiVirus Plus at the advertised $49.99 regular price.  As a matter of law, an advertised regular

8   price at which McAfee made (and makes) substantial sales of AntiVirus Plus is not false or

9   misleading under the UCL or FAL.  Plaintiff's "reference price" claims also should be dismissed

10  with prejudice because Plaintiff fails to allege any injury resulting from his purchase of AntiVirus

11  Plus for $29.99 or any facts to support his claims for restitutionary or injunctive relief arising

12  from his purchase of AntiVirus Plus for $29.99.

13       *Second*, Plaintiff's UCL and FAL claims concerning McAfee's auto-renewal pricing

14  (Counts II and III) are not cognizable because McAfee's alleged representations concerning the

15  price Plaintiff would be charged on auto-renewal were neither false nor misleading as a matter of

16  law and would not deceive a reasonable consumer.  McAfee represented to Plaintiff that he would

17  receive the current price for AntiVirus Plus, excluding promotional or discount pricing, at the

18  time of his auto-renewal.  As the Amended Complaint states, Plaintiff was charged the same

19  regular price—$49.99—paid by numerous other McAfee customers.  The discounted prices

20  advertised on McAfee's website were not offered to Plaintiff as an auto-renewal customer, as he

21  had been informed in McAfee's license agreement.  Plaintiff also fails to allege any basis for

22  injunctive relief under the UCL or FAL.

23       *Third*, Plaintiff's claim under the California Auto-Renewal Statute (Count IV) fails as a

24  matter of law because McAfee's representations concerning auto-renewal pricing were not false

25  or misleading.  The claim also fails because Plaintiff does not allege a cognizable violation of the

26  California Auto-Renewal Statute and erroneously attempts to convert the California Auto-

27  Renewal Statute into a fraud statute akin to the FAL or UCL.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Finally*, Plaintiff's claim for breach of contract (Count I) fails because Plaintiff did not provide McAfee pre-suit notice of his claim, as required by the UCC, and because Count I does not state a cognizable claim for breach of contract.

The Motion is based on this notice, the supporting memorandum of points and authorities, the exhibits to McAfee's Motion, Plaintiff's Amended Complaint, any reply brief filed hereafter, the oral argument of the parties, and the complete files and records of this action.


Dated: October 9, 2014                   Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  /s/ Daniel F. Katz
        Daniel F. Katz (*pro hac vice*)


LUBIN OLSON & NIEWIADOMSKI LLP

By:  /s/ Michael F. Donner
        Michael F. Donner (SBN 155944)

COUNSEL FOR DEFENDANT McAFEE, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 3

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT ................................................................................................................. 6

I.  PLAINTIFF'S "REFERENCE PRICE" FAL CLAIM FAILS AS A MATTER OF LAW
(COUNT VI). ...................................................................................................... 6

    A.  Plaintiff Fails To Allege False "Reference Price" Advertising by McAfee. .......... 6

        1.  McAfee Did Not Advertise a False Reference Price. ................................... 7

        2.  A Reasonable Consumer Would Not Be Misled as a Matter of Law. ........... 10

    B.  Plaintiff Has Not Alleged Any Cognizable Injury or Claim for Restitution. ........ 11

    C.  Plaintiff Has Not Alleged Any Cognizable Claim for Injunctive Relief. ............. 12

II. PLAINTIFF'S "REFERENCE PRICE" UCL CLAIM FAILS AS A MATTER OF LAW
(COUNT V). ...................................................................................................... 13

    A.  Plaintiff Does Not Allege a Cognizable "Fraudulent Prong" Claim..................... 13

    B.  Plaintiff Has No Claim Under the Remaining Prongs of the UCL. ...................... 14

    C.  Plaintiff Has Not Alleged Any Cognizable Injury or Claim for Restitution or
Injunctive Relief. ..................................................................................... 15

III. PLAINTIFF'S UCL AND FAL CLAIMS BASED ON McAFEE'S AUTO-RENEWAL
PRICING FAIL AS A MATTER OF LAW (COUNTS II & III)................................... 16

    A.  McAfee's Auto-Renewal Advertising Was Not False or Misleading as a Matter
of Law. ...................................................................................................... 16

    B.  McAfee's Auto-Renewal Advertising Did Not Violate the "Unlawful" Prong of
the UCL....................................................................................................... 19

    C.  McAfee's Auto-Renewal Advertising Did Not Violate the "Unfair" Prong of the
UCL.......................................................................................................... 20

    D.  Plaintiff Has No Claim for Injunctive Relief. ................................................. 21

1

2  IV.    PLAINTIFF DOES NOT ALLEGE A COGNIZABLE CLAIM UNDER THE

3       CALIFORNIA AUTO-RENEWAL STATUTE (COUNT IV). ...................................... 21

4  V.    THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED (COUNT I). ...... 22

5       A.    Plaintiff Cannot Plead the Condition Precedent of Notice, Which Precludes

6             His Breach of Contract Claim. .............................................................. 22

7       B.    Count I Fails To State a Breach of Contract Claim. ............................... 24

8  CONCLUSION ...................................................................................................... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011)......................................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................5

*Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5258060 (N.D. Cal. Dec. 21,

2010) .................................................................................................................................2, 9

*Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559

(N.D. Cal. May 30, 2014) ..................................................................................................11

*Caldera v. J.M. Smucker Co.*, No. CV12-4936-GHK, 2014 WL 1477400 (C.D.

Cal. Apr. 15, 2014)..............................................................................................................12

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th

Cir. 2001) ............................................................................................................................19

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ....................................6, 14, 15, 20

*Cullen v. Netflix, Inc.*, No. 5:11-CV-01199, 2013 WL 140103 (N.D. Cal. Jan. 10,

2013) ..............................................................................................................................10, 14

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012)..................................10, 18

*Delarosa v. Boiron, Inc.*, No. SACV10-1569, 2012 WL 8716658 (C.D. Cal. Dec.

28, 2012) ..............................................................................................................................12

*Dillon v. NBCUniversal Media LLC*, No. CV 12-09728 SJO, 2013 WL 3581938

(C.D. Cal. June 18, 2013)...................................................................................................20

*DuFour v. Be LLC*, 291 F.R.D. 413 (N.D. Cal. 2013)..................................................13

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976)............................23

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................................19, 20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................................12

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................10, 18

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561 (9th Cir. 2008) ..........................10

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*Gross v. Symantec Corp.*, No. C12-00154 CRB, 2012 WL 3116158, (N.D. Cal. July 31, 2012)...................................................................................................22, 23

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049 (9th Cir. 2008) .................................................................................................................6

*Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................15

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ................................................11

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc).....................12

*In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013).................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................................................18

*Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-cv-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014) ............................................................................................2, 8

*Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717 (6th Cir. 2006)......................23

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)...............................................6

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc).......................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).....................................................11

*Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13, 2013) ................................................................12, 13

*McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13-02032-VAP (SPx), 2014 WL 324008 (C.D. Cal. Jan. 29, 2014) ...............................................14

*Nilon v. Natural-Immunogenics Corp.*, No. 3:12-cv-00930-LAB, 2013 WL 5462288 (S.D. Cal. Sept. 30, 2013) ..................................................................11

*Noll v. eBay, Inc.*, 282 F.R.D. 462 (N.D. Cal. 2012) ......................................................6

*O'Connor v. Uber Techs., Inc.*, -- F. Supp. 2d --, No. C-13-3826 EMC, 2014 WL 4382880 (N.D. Cal. Sept. 4, 2014)............................................................. 19, 24

*O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG, 2011 WL 3299936 (C.D. Cal. July 29, 2011), *aff'd in part*, 566 F. App'x 605 (9th Cir. 2014)...............................16

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.)*, 729
   F.3d 1104 (9th Cir. 2013)..........................................................................................5

*Rahman v. Mott's LLP*, No. CV13-3482, 2014 WL 325241 (N.D. Cal. Jan. 29,
   2014) ......................................................................................................................12

*Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 152 (6th Cir. 1983) ................................23

*Schuman v. IKON Office Solutions, Inc.*, 232 F. App'x 659 (9th Cir. 2007)................................20

*Shroyer v. New Cingular Wireless Services., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .................19, 20

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, -- F. Supp. 2d --, No.
   5:12-CV-04382-EJD, 2014 WL 1728705 (N.D. Cal. May 1, 2014).........................................22

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................18

*Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) ................................................5, 10

*Williamson v. Apple Inc.*, No. 5:11-cv-00377-EJD, 2012 WL 3835104 (N.D. Cal.
   Sept. 4, 2012) ....................................................................................................5, 10

### STATE CASES

*Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545 (2011)....................................................11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................................14

*Clark v. Super. Ct.*, 50 Cal. 4th 605 (2010) ................................................................................16

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ........................................11

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ................................................................12

### OTHER AUTHORITIES

16 C.F.R. § 233.3 ......................................................................................................................5, 9

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... passim

Cal. Bus. & Prof. Code § 17500 *et seq.* ......................................................................... passim

Cal. Bus. & Prof. Code § 17600 *et seq.* ......................................................................... passim

Cal. Civ. Code § 1761(a) ............................................................................................................22

Cal. Com. Code § 2105(1) ..........................................................................................................22

Cal. Com. Code § 2607(3)(A)................................................................................................23, 24

Fed. R. Civ. P. 9(b) ......................................................................................................................6

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 12(b)(1)...............................................................................................5

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

Ohio Rev. Code Ann. § 1302.65(C).............................................................................23

Case No. 5:14-cv-00158-EJD

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1

## **INTRODUCTION**

2      The Court granted in part and denied in part McAfee's motion to dismiss Plaintiff's

3 original Complaint.  Dkt. No. 40.  The Amended Complaint (Dkt. No. 42) asserts six claims

4 against McAfee:  (i) a breach of contract claim based on the price charged to Plaintiff for the auto-

5 renewal of his AntiVirus Plus subscription (Count I); (ii) claims under the Unfair Competition

6 Law ("UCL"), False Advertising Law ("FAL"), and California Auto-Renewal Statute based on

7 McAfee's alleged misrepresentations concerning auto-renewal pricing (Counts II, III, and IV);

8 and (iii) claims under the UCL and FAL based on McAfee's "reference price" advertising (Counts

9 V and VI).

10      The Amended Complaint continues to suffer from fundamental flaws and should be

11 dismissed with prejudice.  Plaintiff's case rests on his allegation that McAfee advertised a false

12 $49.99 regular price for AntiVirus Plus.  That core allegation forms the foundation of all of

13 Plaintiff's claims:  (i) that McAfee falsely advertised at the time of his initial purchase that he

14 would receive a $20 discount from the $49.99 regular price if he purchased an AntiVirus Plus

15 subscription for $29.99 (Counts V and VI) and (ii) that McAfee misrepresented that $49.99 was

16 the regular price of AntiVirus Plus and overcharged him when it billed him $49.99 for a renewed

17 subscription as an auto-renewal customer (Counts I–IV).

18      Plaintiff's own factual allegations make clear, however, that his claims are deficient as a

19 matter of law.

20      *First*, Plaintiff's "reference price" UCL and FAL claims (Counts V and VI) fail as a

21 matter of law because Plaintiff's own allegations demonstrate that McAfee's advertised regular

22 price for AntiVirus Plus was neither false nor misleading.  The factual allegations of the

23 Amended Complaint demonstrate that McAfee made substantial sales of AntiVirus Plus at

24 $49.99.  Indeed, Plaintiff alleges that auto-renewal customers regularly paid that $49.99 price.

25 Am. Compl. ¶¶ 6, 51, 54, 127, 131.  He also alleges that McAfee is "heavily reliant upon the

26 Auto-Renewal program and the massive amounts of revenue it receives from customers through

27 the program," *id.* ¶ 22—*customers who are paying $49.99 for AntiVirus Plus*.

28

An advertised regular price at which—by Plaintiff's own admission—McAfee made substantial sales of AntiVirus Plus is not, as a matter of law, false or misleading.  To the contrary, an advertised reference price is false or misleading when it is a fictitious price at which a product is never or rarely sold.  *E.g.*, *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-cv-756, 2014 WL 4129576, at *4 (S.D. Ohio Aug. 19, 2014) (claim sufficiently alleged false reference price where plaintiff alleged that advertised regular price was "illusory" and that "defendant's suits are 'almost never' sold at the 'regular price'"); *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5258060, at *4 (N.D. Cal. Dec. 21, 2010) (claim sufficient where complaint alleged facts showing that advertised reference prices "are not prices at which Dell has offered for sale, or made substantial sales of, the relevant products").

McAfee's numerous auto-renewal customers are real customers who, by Plaintiff's own admission, regularly paid $49.99 for AntiVirus Plus.  Plaintiff cannot simply disregard all of those customers in attempting to claim that McAfee falsely advertised $49.99 as its regular price.  Because Plaintiff's factual allegations demonstrate that $49.99 was not a false reference price for AntiVirus Plus, McAfee did not violate either the FAL or the UCL when it advertised the price it offered to Plaintiff ($29.99) as a discount from the $49.99 regular price.  Plaintiff's "reference price" claims also should be dismissed with prejudice because Plaintiff fails to allege any cognizable injury or any facts to support his claims for restitutionary or injunctive relief arising from his purchase of AntiVirus Plus for $29.99.

*Second*, Plaintiff's UCL and FAL claims concerning McAfee's auto-renewal pricing (Counts II and III) fail as a matter of law because they are premised upon the erroneous assumption that the $49.99 Plaintiff paid for his auto-renewed AntiVirus Plus subscription was not "McAfee's then-current price for the product."  Am. Compl. ¶ 66.  As set forth above, Plaintiff's own factual allegations establish that McAfee properly advertised $49.99 as the regular price of AntiVirus Plus.  The lower prices offered on McAfee's website at various times were properly advertised as discounts from the regular $49.99 price.  The license agreement to which Plaintiff agreed—and of which he was on notice—expressly stated that McAfee would renew Plaintiff's subscription at "McAfee's then-current price, excluding promotional and discount

pricing." Ex. A to Am. Compl. ¶ 14.  Plaintiff was charged the regular price of AntiVirus Plus, excluding discounted or promotional pricing, as McAfee promised.

*Third*, Plaintiff's new claim under the California Auto-Renewal Statute (Count IV) fails as a matter of law because McAfee's alleged representations concerning auto-renewal pricing were not false or misleading.  The claim also fails because Plaintiff does not allege a cognizable violation of the California Auto-Renewal Statute and erroneously attempts to convert the California Auto-Renewal Statute into a fraud statute akin to the FAL or UCL.

*Finally*, Plaintiff's breach of contract claim is barred by his failure to provide advance notice of his claim to McAfee.  As Plaintiff conceded in briefing on McAfee's first motion to dismiss, his auto-renewal transaction with McAfee is governed by the UCC.  *See* Dkt. No. 25 at 18.  The UCC makes clear that pre-suit notice is a prerequisite for any breach of contract suit. Plaintiff fails to plead that he provided the mandatory notice, and his own pleadings demonstrate that the notice he did provide—at the time he filed his Complaint—is deficient as a matter of law. Plaintiff also fails to state a cognizable breach of contract claim.

For all of the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

## BACKGROUND

On August 22, 2014, the Court dismissed five counts of Plaintiff's ten-count original Complaint with prejudice.  Dkt. No. 40 at 14.  The Court denied McAfee's motion to dismiss with respect to Plaintiff's breach of contract claim and the "unlawful" prong of Plaintiff's UCL claim concerning McAfee's auto-renewal program.  *Id.*  The Court dismissed Plaintiff's remaining claims without prejudice.  *Id.*

Plaintiff's Amended Complaint, like his original Complaint, centers on his allegation that McAfee misrepresents on its website that $49.99 is the regular price of AntiVirus Plus.[1]  Plaintiff

---

[1] Plaintiff alleges that he purchased AntiVirus Plus; he does not allege that he purchased any other McAfee subscription.  *See* Am. Compl. ¶¶ 60–63, 66 (alleging purchases of only AntiVirus Plus). Accordingly, McAfee's motion focuses on Plaintiff's allegations concerning AntiVirus Plus.  The grounds for McAfee's motion, however, would apply with equal force with respect to the other McAfee software subscriptions referenced in the Amended Complaint (Internet Security and Total Protection).  *See, e.g.*, *id.* ¶ 55.

1   alleges that the regular price of AntiVirus Plus is a lower price (or prices) advertised on McAfee's

2   website as a discounted price. Am. Compl. ¶ 63.[2] Thus, Plaintiff alleges that 1) when he

3   purchased his AntiVirus Plus subscription for $29.99, McAfee misrepresented to him that he was

4   receiving a $20 discount from the $49.99 regular price and 2) when McAfee billed him $49.99 for

5   a renewed subscription as an auto-renewal customer, McAfee overcharged him. *Id.* ¶¶ 61–63, 66.

6        As the Court observed in its Order (Dkt. No. 40), "the heart of Plaintiff's argument is his

7   assertion that the price offered to all customers other than the auto-renewal customers is not a

8   'discounted' or 'promotional' price at all, but in fact is the <u>true</u>, non-discounted price of the

9   Software." *Id.* at 7 (emphasis in original). "Plaintiff contends that this price cannot be a

10  promotional or discounted price because it is the price paid by nearly all of Defendant's

11  customers; only the auto-renewal customers pay the purported list price . . . ." *Id.* at 3. But

12  McAfee respectfully submits that the impression Plaintiff attempts to create in both the Complaint

13  and the Amended Complaint—that "nearly all," *id.*, McAfee customers pay the discounted prices

14  advertised on McAfee's website, and that the discounted prices advertised on the website are the

15  regular prices of McAfee software subscriptions—is both erroneous as a matter of law and

16  contradicted by Plaintiff's own factual allegations.

17       Plaintiff never actually alleges that all or virtually all McAfee customers purchase directly

18  from McAfee's website at a discounted price, nor could he: by Plaintiff's own admission, a very

19  significant point of sale for McAfee is auto-renewal customers, who regularly pay $49.99 for

20  AntiVirus Plus. *See* Am. Compl. ¶¶ 6, 51, 54, 127, 131. Those customers are all real McAfee

21  customers, and Plaintiff cannot simply disregard them in attempting to claim that $49.99 is not the

22  regular price of AntiVirus Plus. Indeed, Plaintiff alleges that McAfee is "heavily reliant upon the

23  Auto-Renewal program and the *massive amounts of revenue it receives from customers through*

24  *the program*[,]" *id.* ¶ 22 (emphasis added)—customers who, by Plaintiff's admission, are paying

25  the advertised regular price of $49.99 for AntiVirus Plus. Plaintiff alleges that, "[i]n order to keep

26

27  ───────────────
    [2] Plaintiff alleges that McAfee advertised various discounted prices for AntiVirus Plus on its
    website and at times offered the $49.99 price. Am. Compl. ¶ 63. He does not identify which of
28  the various discounted prices offered by McAfee is the alleged "real" price of AntiVirus Plus.

1    the steady stream of Auto-Renewal money flowing, McAfee's business model has been, and

2    continues to be, deliberately designed and focused on maximizing enrollment in the Auto-

3    Renewal program." *Id.* Plaintiff seeks to bring claims on behalf of a putative nationwide class of

4    auto-renewal subscribers who were charged $49.99 for their renewals of AntiVirus Plus. *Id.* ¶ 69.

5          This is not a case where a company creates out of whole cloth a fictitious regular price that

6    no customer was ever charged in order to create the false impression of a discount; rather, by

7    Plaintiff's own allegations, $49.99 was the regular price paid by numerous McAfee customers.

8    The regular price of McAfee software is the price at which McAfee made substantial sales of the

9    software, as indicated by Federal Trade Commission ("FTC") Guidance providing that an

10   advertised list price is not false "if it is the price at which *substantial* (that is, not isolated or

11   insignificant) *sales* are made in the advertiser's trade area (the area in which he does business)."

12   16 C.F.R. § 233.3(d) (2014) (emphasis added).

13         Because—as Plaintiff's factual allegations acknowledge—McAfee made substantial sales

14   of its AntiVirus Plus software at the advertised regular price of $49.99, the advertised reference

15   price is not false as a matter of law.

16                                               **LEGAL STANDARD**

17         To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

18   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

19   plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

20   Twombly*, 550 U.S. 544, 570 (2007)).[3] Dismissal is appropriate "where the complaint lacks a

21   cognizable legal theory or sufficient facts to support a cognizable legal theory." *Williamson v.

22   Apple Inc.*, No. 5:11-cv-00377-EJD, 2012 WL 3835104, at *2 (N.D. Cal. Sept. 4, 2012) (internal

23   quotation marks omitted). Moreover, a plaintiff may "plead [him]self out of court" by

24   "plead[ing] facts which establish that he cannot prevail." *Weisbuch v. Cnty. of Los Angeles*, 119

25   F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks omitted).

26   [3] Where McAfee asserts that Plaintiff lacks standing under certain California statutes, McAfee's
27   motion should be considered pursuant to Rule 12(b)(6). *See Petzschke v. Century Aluminum Co.
     (In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104, 1109 (9th Cir. 2013) ("[F]ailure to
     allege statutory standing results in failure to state a claim on which relief can be granted, not the
28   absence of subject matter jurisdiction."). To the extent Rule 12(b)(1) has any application here,
     McAfee respectfully moves to dismiss pursuant to Rule 12(b)(1) as well.

1  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2  statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[T]he court need not accept as true

3  allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences,"

4  *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012), or "allegations that

5  contradict matters properly subject to judicial notice or by exhibit," *Hartman v. Gilead Scis., Inc.*

6  *(In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks

7  omitted). Claims "sounding in fraud are subject to the heightened pleading requirements of Fed.

8  R. Civ. P. 9(b)." *Cullen*, 880 F. Supp. 2d at 1022 (collecting cases). This requirement applies to

9  claims for violations of the UCL and FAL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir.

10  2009) (UCL); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012) (FAL).

11  **ARGUMENT**

12  **I.    PLAINTIFF'S "REFERENCE PRICE" FAL CLAIM FAILS AS A MATTER OF**

13  **LAW (COUNT VI).**

14  The FAL prohibits the making or dissemination of a statement "which is untrue or

15  misleading, and which is known, or which by the exercise of reasonable care should be known, to

16  be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Plaintiff's "reference price" claim

17  under the FAL fails as a matter of law because Plaintiff does not allege facts sufficient to create a

18  cognizable claim that McAfee's advertised reference price for AntiVirus Plus was untrue or

19  misleading. Plaintiff's claim also fails because he does not allege facts to show that he suffered

20  any cognizable injury from his initial purchase of AntiVirus Plus at $29.99 or that he is entitled to

21  restitutionary or injunctive relief under the FAL.

22  **A.    Plaintiff Fails To Allege False "Reference Price" Advertising by McAfee.**

23  The FAL provides that, "[f]or the purpose of this article the worth or value of any thing

24  advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is

25  at retail, at the time of publication of such advertisement in the locality wherein the advertisement

26  is published." Cal. Bus. & Prof. Code § 17501. Under the FAL, "[n]o price shall be advertised as

27  a former price of any advertised thing, unless the alleged former price was the prevailing market

28

1  price . . . within three months next immediately preceding the publication of the advertisement

2  . . . ." *Id.*

3      Plaintiff alleges that McAfee violated the FAL by "advertising false former prices and

4  false discounts and savings" and "advertising prices as former prices of McAfee Software when

5  such prices were not the prevailing prices within the three months next preceding the publication

6  of the advertisement." Am. Compl. ¶ 153.  But McAfee did not represent that $49.99 was a

7  "former" price.  Instead, as Plaintiff acknowledges in the Amended Complaint, "McAfee

8  prominently represented to Mr. Williamson that its *regular selling price* for a one-year

9  subscription to McAfee AntiVirus Plus was $49.99, and that the $29.99 offered to Mr.

10  Williamson that day reflected a discount of $20 from the purported *regular price*." *Id.* ¶ 61

11  (emphases added); *see also id.* ¶ 130 (McAfee screenshot for AntiVirus Plus checkout page at

12  $34.99, which states "save $15.00 off the *regular price* of $49.99" (emphasis added)).

13          **1.      McAfee Did Not Advertise a False Reference Price**.

14      Plaintiff claims that "the purported regular price of $49.99 that McAfee represented" when

15  he purchased his initial subscription "was fabricated and failed to represent McAfee's prevailing

16  regular or former price for a one-year McAfee AntiVirus Plus subscription."  Am. Compl. ¶ 63.

17  He alleges that "[t]he only time that McAfee ever, or virtually ever, charges the higher reference

18  prices for McAfee Software [is] when it improperly imposes such prices on Auto-Renewal

19  customers."  *Id.* ¶ 127.

20      The fatal flaw in Plaintiff's claim is that it presumes that the regular or prevailing price of

21  McAfee's software is a discounted price advertised on McAfee's website.  But the website is only

22  one point of sale for McAfee.  The prevailing market price is the price at which McAfee "offer[s]

23  for sale, or make[s] substantial sales of" its software, as Plaintiff acknowledges.  *See id.* ¶ 63.  The

24  allegations in Plaintiff's Amended Complaint make clear that McAfee offered for sale and made

25  substantial sales of AntiVirus Plus at $49.99.

26      Plaintiff alleges that McAfee customers on auto-renewal consistently pay $49.99 for

27  AntiVirus Plus.  Am. Compl. ¶¶ 6, 51, 54, 131.  According to Plaintiff, auto-renewal customers

28  regularly pay $49.99 for AntiVirus Plus, *id.* ¶ 54, Plaintiff himself was charged $49.99 for

1    AntiVirus Plus as an auto-renewal customer, *id.* ¶ 66, and McAfee routinely charges auto-renewal

2    customers that price, *see id.* ¶¶ 127, 131.[4]  Plaintiff alleges that McAfee is "heavily reliant upon

3    the Auto-Renewal program and the massive amounts of revenue it receives from customers

4    through the program." *Id.* ¶ 22.  According to Plaintiff, all of those customers are paying McAfee

5    the "higher" price that McAfee advertises as its regular price for its subscriptions (*e.g.*, $49.99 for

6    AntiVirus Plus). *Id.* ¶¶ 1, 3, 54, 127, 131.  Plaintiff seeks to bring claims on behalf of a putative

7    nationwide class of auto-renewal customers charged $49.99 for AntiVirus Plus. *Id.* ¶ 69.

8         An advertised reference price that is actually paid by a substantial number of consumers is

9    not, as a matter of law, false or misleading.  To the contrary, courts have held that a false

10   advertising claim is cognizable where it alleges facts showing that an advertised reference price is

11   false because the defendant has *not* made substantial sales at that price.

12        In *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-cv-756, 2014 WL 4129576 (S.D.

13   Ohio Aug. 19, 2014), for example, the court found that a claim sufficiently alleged a false

14   reference price where the plaintiff alleged that the advertised regular price was "illusory" and that

15   "defendant's suits are 'almost never' sold at the 'regular price.'" *Id.* at *4; *see also id.* ("The

16   *Amended Complaint* specifically alleges . . . that defendant's suits are 'almost never' sold at the

17   'regular price.'. . . Because suits are almost never sold at the purported 'regular price,' that price

18   is illusory and it is the 'sale price' that is the true regular price.").[5]

---

19

20   [4] As the Amended Complaint alleges, McAfee regularly offers auto-renewal customers the price
     of $49.99 for AntiVirus Plus.  Auto-renewal customers receive an e-mail 60 days prior to their

21   renewal date that states the exact price they will be charged for auto-renewal of AntiVirus Plus.
     *See* Ex. 1 to Declaration of Charlie Simpson, filed herewith.  They are free to cancel auto-renewal

22   at any time.  *See id.* & Ex. A to Am. Compl. ¶ 14.  They also may receive a refund upon request if
     they do not want a renewed subscription for $49.99.  *Id.*  The discounted pricing advertised on

23   McAfee's website is readily-available information; it is not a secret concealed from auto-renewal
     customers.  Indeed, any customer on auto-renewal is free to become a manual renewal subscriber

24   at any time if he or she wishes to give up the convenience and continuous protection offered by
     the auto-renewal program.

25

26   [5] *See Johnson* complaint (Exhibit 4 to the Declaration of Alexis Lien ("Lien Decl."), filed
     herewith) ¶ 25 ("Because Jos. A. Bank suits are never, or almost never, sold at what Jos. A. Bank

27   touts as 'regular price,' the purported 'regular price' is by definition not 'regular,' and is, instead,
     illusory."); *id.* ¶ 28 (alleging that "less than 1%" of suits were sold "at the purported 'regular

28   price'"); *id.* ¶ 55 ("[T]he suit did not actually have a regular price of $795 because Jos. A. Bank
     never actually sold that suit for $795[.]").  As set forth in McAfee's Motion for Judicial Notice,

1    Similarly, in *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5258060 (N.D. Cal.

2  Dec. 21, 2010), the court found a false advertising claim sufficient where "Plaintiffs allege that

3  the reference prices are not prices at which Dell has offered for sale, or made substantial sales of,

4  the relevant products." *Id.* at *4. The *Dell* plaintiffs alleged that "Dell *fabricates* the false former

5  reference prices," "*never offered*" one product at the advertised reference price, and did not "make

6  substantial sales" of other products at the advertised reference prices. Ex. 1 to Lien Decl. ¶¶ 23–

7  24, 66 (emphases added); *see also id.* ¶ 24 (alleging that $688 reference price was false because

8  "Dell had *never* offered this Dimension C521 model at the $688 price"); *id.* ¶ 66 (alleging that

9  Dell did not "make substantial sales" of computer at advertised $349 reference price).

10    A recently-filed federal complaint similarly alleges violations of the FAL and UCL where

11  "Michael Kors never intended, *nor did they ever, sell* . . . jeans at the represented MSRP price" at

12  a Kors Outlet store. Ex. 2 to Lien Decl. ¶ 33 (emphasis added). The *Kors* plaintiff alleges that

13  the "merchandise did not have a prevailing market price anywhere close to the MSRP price

14  advertised because the merchandise was *always sold*" at a lower price. *Id.* ¶ 74 (emphasis added).

15  Another recently-filed federal complaint claims a violation of the UCL based on the allegations

16  that Jos. A. Bank's former prices are "a price *no consumer has ever actually paid* for a Jos. A.

17  Bank suit[,]" Ex. 3 to Lien Decl. ¶ 3 (emphasis added), and that "Jos. A. Bank did not sell any

18  meaningful quantity of suits . . . at the 'regular' retail prices employed in their advertising and

19  marketing materials[,]" *id.* ¶ 4; *see also id.* ("Instead, these purportedly former prices are

20  constructed from whole cloth by Jos. A. Bank[.]").

21    Consistent with the case law, FTC Guidance published in 1967 provides that an advertised

22  list price "will not be deemed fictitious if it is the price at which *substantial* (that is, not isolated

23  or insignificant) *sales* are made in the advertiser's trade area (the area in which he does

24  business)." 16 C.F.R. § 233.3 (emphasis added). McAfee is not aware of any case decided under

25  the FAL or UCL after the issuance of the FTC Guidance holding that an advertised regular or list

26  price at which a company is alleged to have made substantial sales is false or misleading.

27

28  filed herewith, the Court may take judicial notice of the exhibits to McAfee's motion to dismiss
   without converting the motion into one for summary judgment.

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    Here, $49.99 was not an "illusory" or "fabricated" price for AntiVirus Plus; nor was it a

2    price at which AntiVirus Plus was "never" or "almost never" sold.  To the contrary, by Plaintiff's

3    own admission, $49.99 was the price at which McAfee made substantial sales of AntiVirus Plus

4    on a regular basis to real customers.[6]  As a matter of law, $49.99 was not a false advertised

5    reference price for AntiVirus Plus, and Plaintiff has no claim for false advertising under the FAL.

6                **2.    A Reasonable Consumer Would Not Be Misled as a Matter of Law**.

7         "FAL claims grounded in fraud are governed by the reasonable consumer test, which

8    requires the plaintiff to show that members of the public are likely to be deceived." Dkt. No. 40

9    at 10.  "[A] representation does not become 'false and deceptive' merely because it will be

10   unreasonably misunderstood by an insignificant and unrepresentative segment of the class of

11   persons to whom the representation [was] addressed." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d

12   1152, 1161–62 (9th Cir. 2012) (internal quotation marks omitted).

13        "[C]ourts have dismissed complaints as a matter of law because they did not meet the

14   'reasonable consumer' standard." *Cullen v. Netflix, Inc.*, No. 5:11-CV-01199, 2013 WL 140103,

15   at *6–7 (N.D. Cal. Jan. 10, 2013) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.

16   1995)).[7]  Here, McAfee's reference price advertising would not be false or misleading to a

17   reasonable consumer because the advertised $49.99 regular price for AntiVirus Plus was, by

18   Plaintiff's own admission, the price regularly paid by a substantial number of McAfee customers.

---

19

20   [6] Plaintiff's wholly conclusory allegation that he believes that "McAfee did not offer for sale, or
     make substantial sales of, McAfee AntiVirus Plus at a price of $49.99 within a reasonable period
21   of time before Plaintiff Williamson's October 8, 2011 purchase," Am. Compl. ¶ 63, is
     contradicted by numerous factual allegations in the Amended Complaint averring that McAfee
22   *did* make substantial sales of AntiVirus Plus at $49.99 and regularly charged that price to auto-
     renewal customers.  *E.g.*, *id.* ¶¶ 6, 51, 54, 131.  The Court should disregard an entirely conclusory
23   allegation that is contradicted by Plaintiff's specific factual allegations.  *See Cullen*, 2013 WL
     140103, at *3 ("[T]he court need not accept as true allegations that are conclusory, unwarranted
24   deductions of fact, or unreasonable inferences."); *see also Weisbuch v. Cnty. of Los Angeles*, 119
     F.3d 778, 783 n.1 (9th Cir. 1997) (plaintiff may "plead [him]self out of court" by "plead[ing]
25   facts which establish that he cannot prevail" (internal quotation marks omitted)).

26
     [7] *See also Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008)
27   (affirming dismissal of claims "because a reasonable consumer would not be misled by Toyota's
     statements"); *Williamson*, 2012 WL 3835104, at *5–6 (rejecting claim that reasonable customer
28   would be deceived by advertising about iPhone screen).

1   Because the discounts offered on McAfee's website are properly advertised as discounts from the

2   regular $49.99 price, a reasonable consumer would not be misled by McAfee's advertising.

3   **B.      Plaintiff Has Not Alleged Any Cognizable Injury or Claim for Restitution.**

4           Plaintiff's FAL claim also fails because he does not allege any cognizable injury arising

5   from his initial purchase of AntiVirus Plus for $29.99.[8]  Plaintiff alleges that he did not receive

6   the promised $20 discount when he purchased his subscription because the advertised $49.99

7   regular price was false.  Am. Compl. ¶ 63.  But the allegations in the Amended Complaint

8   establish that Plaintiff received a real $20 discount when he paid $29.99 for a one-year

9   subscription because a substantial number of other customers paid $49.99 for the identical

10  subscription.  Moreover, Plaintiff never alleges that he would not have purchased AntiVirus Plus

11  if he had known the alleged truth or that he could have purchased AntiVirus Plus elsewhere for

12  less than $29.99 at the time of his purchase.[9]

13          Nor does Plaintiff allege facts to support a claim for restitution from McAfee under the

14  FAL.[10]  Restitution is "equal to the difference between the price paid for [the software

15  subscription] and the value actually received."  *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-

16  cv-00930-LAB, 2013 WL 5462288, at *1 (S.D. Cal. Sept. 30, 2013); *see also Brazil v. Dole*

17  *Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *15 (N.D. Cal. May 30,

18  _____

19  [8] Plaintiff must allege an injury in fact resulting from McAfee's alleged conduct in order to have a cognizable claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

20  [9] The Court observed in its Order that it "does not . . . agree with Defendant that Plaintiff's

21  allegations, to the extent the [C]ourt can ascertain them, suggest a lack of standing."  Dkt. No. 40.
    McAfee respectfully submits that the allegations in the Amended Complaint fail to establish that

22  Plaintiff suffered any alleged injury for the reasons set forth herein and seeks to preserve that
    issue in the event the Court disagrees.  *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th

23  1545, 1555 (2011) (plaintiff lacked standing under UCL and FAL where she "did not allege that

24  she could have obtained a bundled transaction for a new cellular telephone—the telephone that
    she selected—at a lower price from another source" and did not allege that she would not have

25  purchased the product but for the alleged misrepresentation); *compare Hinojos v. Kohl's Corp.*,
    718 F.3d 1098, 1105 (9th Cir. 2013) (plaintiff alleged economic injury under UCL and FAL

26  where he averred that he "would not have purchased the goods in question absent"
    misrepresentation regarding discounts).

27
    [10] The restitutionary remedies under the FAL and UCL "are identical and are construed in the

28  same manner."  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 n.10 (2000).

2014) ("the proper measure of damages" under the UCL and FAL is the "difference between what the plaintiff paid and the value of what the plaintiff received" (internal quotation marks omitted)); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (the "difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution"). Plaintiff does not allege any facts to support a claim that his initial AntiVirus Plus subscription was not worth the $29.99 he paid for it; nor does he allege that he could have purchased AntiVirus Plus elsewhere at the time of his purchase for less than $29.99.[11]  Because Plaintiff does not allege any facts showing that that amount he paid exceeded the value of the software subscription he received in return, he does not allege any cognizable basis for an award of restitution under the FAL.

    Plaintiff also fails to allege any facts that would entitle him to a full refund of the purchase price.  He does not allege that the software did not work or that he received no benefit from it. *See Caldera v. J.M. Smucker Co.*, No. CV12-4936-GHK (VBKx), 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (restitution for UCL and FAL violations based on a full refund of price paid is only appropriate if no benefit was received from the product).  Accordingly, Plaintiff has no cognizable claim for restitution under the FAL.

## C.    Plaintiff Has Not Alleged Any Cognizable Claim for Injunctive Relief.

    Finally, Plaintiff's claim for injunctive relief under the FAL fails as a matter of law.  To seek injunctive relief, a plaintiff "must allege that he intends to purchase the products at issue in the future."  *Rahman v. Mott's LLP*, No. CV13-3482, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014).  Where there is no threat of a continuing violation, and thus no "likelihood of future injury," a plaintiff lacks Article III standing to seek an injunction.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039–40 (9th Cir. 1999) (en banc); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011).[12]  Here, Plaintiff's last alleged purchase of AntiVirus

---

[11] Plaintiff claims that his *renewed* subscription was not worth $49.99 because he could have purchased it for $34.95 on McAfee's website, Am. Compl. ¶ 66, but he does not allege facts to support a claim that his *initial* subscription was not worth $29.99.

[12] *Accord Delarosa v. Boiron, Inc.*, No. SACV10-1569, 2012 WL 8716658, at *3–6 (C.D. Cal. Dec. 28, 2012) (plaintiff lacked standing where she had no intention to purchase product in the future); *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019 BTM (DHB), 2013 WL 1969957, at

1   Plus was in 2012, Am. Compl. ¶ 66, and Plaintiff does not allege that he has any intention of

2   purchasing a McAfee software subscription in the future.  Accordingly, Plaintiff has no standing

3   to seek injunctive relief under the FAL.

4        For all of the foregoing reasons, Count VI should be dismissed with prejudice.

5   **II.    PLAINTIFF'S "REFERENCE PRICE" UCL CLAIM FAILS AS A MATTER OF**

6        **LAW (COUNT V).**

7        Plaintiff's "reference price" claim under the UCL also fails as a matter of law.  The UCL

8   proscribes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

9   untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Plaintiff attempts to assert

10  claims under all three prongs of the UCL, Am. Compl. ¶ 137, but he fails to allege any cognizable

11  deception in McAfee's "reference price" advertising; nor does he allege any viable claim under

12  the UCL "unfair" or "unlawful" prongs.  Plaintiff also fails to allege any cognizable injury or

13  entitlement to either restitutionary or injunctive relief.

14       **A.    Plaintiff Does Not Allege a Cognizable "Fraudulent Prong" Claim.**

15       A "fraudulent business act or practice" is one in which "members of the public are likely

16  to [have been] deceived."  *DuFour v. Be LLC*, 291 F.R.D. 413, 420–21 (N.D. Cal. 2013) (internal

17  quotation marks omitted).  Plaintiff alleges that McAfee "violated the 'fraudulent' prong of the

18  UCL through its false reference price scheme alleged herein.  McAfee's misrepresentations

19  regarding false reference prices and false discounts and savings are false and misleading."  Am.

20  Compl. ¶ 139.  Plaintiff's UCL claim is identical to his "reference price" claim under the FAL,

21  and it fails as a matter of law for the same reasons.  As discussed in Part I, *supra*, McAfee's

22  advertised regular price of $49.99 for AntiVirus Plus was neither false nor misleading as a matter

23  of law because, as Plaintiff acknowledges, McAfee actually made (and makes) substantial sales at

24  that price.  McAfee's advertised discounted prices were not false either, because they were

25  properly advertised as discounts from the regular $49.99 price.

26  _____

27  *4 (S.D. Cal. May 13, 2013) ("[A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaged in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the

28  plaintiff is still interested in [buying] the product in question.").

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    Plaintiff attempts to minimize the significance of the conceded fact that McAfee regularly

2    charges numerous customers the advertised regular price of $49.99 for AntiVirus Plus.  He

3    alleges that "[t]he only time . . . that McAfee charged as much as $49.99 for a one-year AntiVirus

4    Plus subscription was when it improperly and unfairly charged this higher price on Auto-Renewal

5    customers."  Am. Compl. ¶ 131.  But Plaintiff's characterization of the $49.99 price as

6    "improper" and "unfair" does nothing to change the admitted fact that it is the actual price offered

7    to, and paid by, a substantial number of real people.  As demonstrated in Part I, *supra*, $49.99 is

8    not a false or fictitious reference price as a matter of law, and McAfee did not engage in any

9    fraudulent or misleading act or practice when it advertised $49.99 as the regular price of

10   AntiVirus Plus.  *See Cullen*, 2013 WL 140103, at *7 (dismissing UCL and FAL claims where

11   "Plaintiff has not alleged facts showing that Defendant's assertions and calculations turned out to

12   be false").  Moreover, as discussed in Part I, *supra*, a reasonable consumer would not be misled

13   by McAfee's reference price advertising.  Plaintiff's "fraudulent prong" claim should be

14   dismissed with prejudice.

15       **B.      Plaintiff Has No Claim Under the Remaining Prongs of the UCL.**

16       To the extent Plaintiff attempts to assert a "reference price" claim under the remaining

17   prongs of the UCL, he fails to allege a cognizable claim.  The "unlawful" prong "permits injured

18   consumers to 'borrow' violations of other laws and treat them as unfair competition that is

19   independently actionable."  *McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13-

20   02032-VAP (SPx), 2014 WL 324008, at *9 (C.D. Cal. Jan. 29, 2014).  Plaintiff cannot proceed

21   under the "unlawful" prong because he alleges no violation of law arising from McAfee's

22   reference price advertising apart from his FAL claim.[13]  The failure of that claim is fatal to his

23   UCL claim.  *See Cullen*, 880 F. Supp. 2d at 1028; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel.*

24   *Co.*, 20 Cal. 4th 163, 178–81 (1999).

25

26   _____

27   [13] Plaintiff's claims under the California Auto-Renewal Statute (Count IV) and for breach of
     contract (Count I) both relate to McAfee's auto-renewal program, not Plaintiff's initial purchase
     of a McAfee AntiVirus subscription for $29.99.  They therefore cannot form the predicate for an

28   "unlawful" prong claim based on McAfee's reference price advertising.

1    Nor does Plaintiff allege a cognizable "unfair" prong claim based on McAfee's reference

2    price advertising.  "An unfair business practice under the UCL is one that either offends an

3    established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially

4    injurious to consumers."  *Cullen*, 880 F. Supp. 2d at 1028 (internal quotation marks omitted).  The

5    standard for "unfair" practices is currently "in flux among California courts," but federal courts

6    apply either a "tethering test," which requires that the unfair conduct be "tethered to specific

7    constitutional, statutory, or regulatory provisions," or a "balancing test," which "examines

8    whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous or

9    substantially injurious to consumers and requires the court to weigh the utility of the defendant's

10   conduct against the gravity of the harm to the alleged victim.'"  *Herskowitz v. Apple Inc.*, 940 F.

11   Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (internal quotation marks omitted).

12       Here, Plaintiff's claim under the "unfair" prong fails to the extent it is predicated upon

13   alleged "deceptive statements and statutory violations," *Cullen*, 880 F. Supp. 2d at 1028, for the

14   reasons set forth above.  And, for the reasons set forth above, McAfee's reference price

15   advertising was not "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

16   consumers."  *Id.*  To the contrary, McAfee properly advertised $49.99 as its regular price because,

17   as Plaintiff acknowledges, McAfee made a substantial number of sales at that price.  McAfee's

18   alleged conduct did not violate any law or public policy, as the advertised reference price was not

19   a fictitious price at which few or no sales were made.[14]  Accordingly, the Court should dismiss the

20   "reference price" UCL claim with prejudice.

21       **C.    Plaintiff Has Not Alleged Any Injury or Claim for Restitution or Injunctive**

22       **Relief.**

23       Plaintiff also has no claim under the UCL because he does not allege any cognizable

24   injury arising from his initial purchase of AntiVirus Plus for $29.99.  As discussed in Parts I(A) &

25

26   [14] To the extent Plaintiff attempts to invoke the public policy behind the CLRA, Am. Compl.
     ¶ 144, the Court has dismissed Plaintiff's CLRA claims with prejudice.  Dkt. No. 40 at 12, 14.  In

27   any event, Plaintiff does not allege a cognizable claim that McAfee made "false or misleading
     statements concerning reasons for, existence of, or amounts of price reductions," Am. Compl.

28   ¶ 144 (quotation omitted), for the reasons set forth herein.

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1   (B), *supra*, the allegations in the Amended Complaint establish that Plaintiff received a real $20

2   discount when he paid $29.99 for a one-year subscription and suffered no injury arising from his

3   purchase.  Moreover, Plaintiff does not allege facts to support a claim for restitution from

4   McAfee—the only monetary remedy available under the UCL.[15]  As discussed in Part I(B), *supra*,

5   Plaintiff does not allege any facts showing that the amount he paid exceeded the value of the

6   software subscription he received.  Finally, for the reasons set forth above in Part I(C), Plaintiff's

7   claim for injunctive relief under the UCL fails as a matter of law.

8       For all of the foregoing reasons, the Court should dismiss Plaintiff's "reference price"

9   UCL claim with prejudice.

10  **III.   PLAINTIFF'S UCL AND FAL CLAIMS BASED ON McAFEE'S AUTO-**

11       **RENEWAL PRICING FAIL AS A MATTER OF LAW (COUNTS II & III).**

12       Plaintiff's UCL and FAL claims based on McAfee's advertising concerning its auto-

13  renewal pricing also fail as a matter of law.

14       **A.   McAfee's Auto-Renewal Advertising Was Not False or Misleading as a**

15          **Matter of Law.**

16       Courts often address FAL and UCL "fraudulent prong" claims "in tandem," *O'Shea v.*

17  *Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *4 (C.D. Cal. July 29,

18  2011) (internal quotation marks omitted), *aff'd in part*, 566 F. App'x 605 (9th Cir. 2014), and

19  McAfee addresses them together here.

20       Plaintiff alleges that McAfee made a single false representation to him regarding auto-

21  renewal pricing by representing at the time of his initial purchase that "when his AntiVirus Plus

22  subscription was automatically renewed under Auto-Renewal, McAfee would charge him 'the

23  product price current at the time of auto-renewal' or substantially similar language."  Am. Compl.

24  ¶ 64.  The Amended Complaint identifies other allegedly false point-of-sale representations by

25  McAfee regarding auto-renewal, *id.* ¶¶ 39, 45, but it does not allege that Plaintiff either read them

26  or relied on them.  Plaintiff cannot predicate his claim on alleged false representations that he did

---

[15] *See Clark v. Super. Ct.*, 50 Cal. 4th 605, 614 (2010) ("[R]estitution is the only monetary remedy authorized in a private action brought under the unfair competition law.").

1  not read or rely upon.  *See* Dkt. No. 40 at 11; *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d

2  1089, 1093 (N.D. Cal. 2013).

3      Plaintiff alleges that the single representation he saw was false because "[t]he $49.99 price

4  that McAfee charged Mr. Williamson under Auto-Renewal was neither McAfee's normal, then-

5  current price" nor "McAfee's then-current price for the product excluding discount and

6  promotional pricing." Am. Compl. ¶ 66.  Plaintiff alleges that, during the eight months before the

7  automatic renewal of his subscription, McAfee advertised various (discounted) prices for the

8  subscription on its website, most of which were less than $49.99.  *See id.*

9      Plaintiff's claim assumes that the discounted price advertised on McAfee's website on any

10  given day is its "normal, then current price." *Id.*  But, as discussed in Part I, *supra*, McAfee's

11  website is only one point of sale.  Based on Plaintiff's own allegations, a very significant point of

12  sale for McAfee is auto-renewal customers, who regularly paid $49.99 for AntiVirus Plus.  *See*

13  pp. 7–8, *supra*.  Indeed, Plaintiff alleges that McAfee is "heavily reliant upon the Auto-Renewal

14  program and the massive amounts of revenue it receives from customers through the program."

15  Am. Compl. ¶ 22.  McAfee's normal or regular price for AntiVirus Plus was $49.99—the price

16  actually paid by a very substantial number of McAfee customers.  As discussed in Part I, *supra*,

17  the various lower prices advertised as discounts on McAfee's website were properly advertised as

18  such, because the regular price of McAfee AntiVirus Plus was $49.99.

19      Plaintiff claims that McAfee represented to customers that "there is no cost disadvantage

20  to having their subscriptions be renewed pursuant to Auto-Renewal, as opposed to alternatives

21  such as manually renewing their subscriptions[.]" Am. Compl. ¶ 102; *accord id.* ¶ 3.  He also

22  claims that McAfee represented that auto-renewal customers would receive the same price

23  "charged to other customers for the same products." *Id.* ¶ 4.  But these are Plaintiff's

24  characterizations, and they differ materially from what McAfee actually is alleged to have said.

25  When Plaintiff actually quotes the only representation that he claims he saw, he alleges that

26  McAfee represented that it would charge "'the product price current at the time of auto-renewal'

27  or substantially similar language." *Id.* ¶ 64.  McAfee did not represent that there was no cost

28  disadvantage to auto-renewal, or that auto-renewal customers would receive discounted prices

1  offered to other customers.  To the contrary, McAfee represented to Plaintiff in its license

2  agreement, the EULA, that he would receive the current price for AntiVirus Plus, excluding

3  promotional or discount pricing, at the time of his renewal—which was $49.99.  *See* Ex. A to Am.

4  Compl. ¶ 14.

5         Plaintiff alleges that the representation he saw at the time of his initial purchase did not

6  contain the words "excluding promotional and discount pricing."  *See* Am. Compl. ¶ 64.  But the

7  EULA, which Plaintiff "entered into" at the time of his initial purchase, *id.* ¶ 65, expressly stated

8  that McAfee would renew Plaintiff's subscription at "McAfee's then-current price, excluding

9  promotional and discount pricing."  Ex. A to Am. Compl. ¶ 14.  Plaintiff is presumed to be on

10  notice of the contents of the EULA.  "[W]here, as here, the parties to an agreement deal at arm's

11  length, it is not reasonable to fail to read a contract before signing it."  *Davis v. HSBC Bank Nev.,*

12  *N.A.*, 691 F.3d 1152, 1163–64 (9th Cir. 2012) (collecting cases); *see also Swift v. Zynga Game*

13  *Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) (party was on notice of terms of

14  agreement she accepted online).  The Court should consider the disclosures in the EULA, which

15  was available to Plaintiff at the time of his purchase and to which he agreed, Am. Compl. ¶ 65.

16  *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) ("Any ambiguity that Freeman would

17  read into any particular statement is dispelled by the promotion *as a whole*." (emphasis added));

18  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968

19  (S.D. Cal. 2012) ("Plaintiffs have failed to sufficiently allege how Sony's representations *taken as*

20  *a whole* would be likely to deceive the reasonable consumer." (emphasis added)).

21         McAfee's representations to Plaintiff in the EULA and on its website concerning the price

22  Plaintiff would be charged on auto-renewal were neither false nor misleading as a matter of law

23  and would not deceive a reasonable consumer.  Plaintiff was charged the same regular price—

24  $49.99—paid by numerous other McAfee customers.  Because, as Plaintiff acknowledges,

25  McAfee actually made substantial sales at the $49.99 price, McAfee lawfully advertised $49.99 as

26  its regular price.  The lower discounted prices offered on McAfee's website were properly

27  advertised as discounts from the regular $49.99 price, and the EULA expressly informed Plaintiff

28  that he would not be offered a discounted price as an auto-renewal customer.  Plaintiff certainly

1    knew that discounted prices were available, because he was offered a discount when he made his

2    initial purchase.  Am. Compl. ¶ 61.  He was free to cancel auto-renewal at any time and look for a

3    lower price.  Accordingly, Plaintiff's FAL and UCL "fraudulent prong" claims based on

4    McAfee's representations concerning auto-renewal fail as a matter of law.

5              **B.        McAfee's Auto-Renewal Advertising Did Not Violate the "Unlawful" Prong of**

6                    **the UCL.**

7              Plaintiff's "unlawful" prong claim also fails as a matter of law.  Plaintiff does not allege a

8    cognizable statutory claim arising from McAfee's auto-renewal advertising.  His FAL claim fails

9    for the reasons set forth above, and his claim under the California Auto-Renewal Statute fails as a

10   matter of law for the reasons set forth in Part IV, *infra*.  Because Plaintiff does "not plausibly

11   allege any statutory violations," he "fails to plausibly allege violation of the unlawful prong of the

12   UCL."  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 859 (N.D. Cal. 2012).

13             Plaintiff's breach of contract claim cannot save his "unlawful" prong claim for two

14   reasons.  First, as discussed in Part V, *infra*, the breach of contract claim should be dismissed.

15   Second, McAfee respectfully submits that Plaintiff's common law breach of contract claim is not

16   sufficient to state a claim under the UCL "unlawful" prong.[16]  In *Shroyer v. New Cingular*

17   *Wireless Services., Inc.*, 622 F.3d 1035 (9th Cir. 2010), the Ninth Circuit held that a common law

18   breach of contract claim was insufficient as a matter of law to state a claim under the "unlawful"

19   prong of the UCL.  *See id.* at 1043–44 ("Shroyer must also allege that New Cingular engaged in a

20   _____

21   [16] The Court concluded otherwise in its Order with respect to McAfee's original motion to
     dismiss, Dkt. No. 40 at 9, but the Court may revisit that determination.  An amended complaint
22   "supercedes the original complaint and renders it without legal effect."  *Lacey v. Maricopa Cnty.*,
     693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Accordingly, McAfee may "move to challenge the
23   *entire* amended complaint[,] including those causes of action the [C]ourt had previously found
     sufficient."  *O'Connor v. Uber Techs., Inc.*, -- F. Supp. 2d --, No. C-13-3826 EMC, 2014 WL
24   4382880, at *3 (N.D. Cal. Sept. 4, 2014) (emphasis in original) (collecting cases).  A motion to
     dismiss an amended complaint is not treated as a motion for reconsideration, even if it raises
25   issues addressed in an earlier motion to dismiss.  *See also City of Los Angeles, Harbor Div. v.
     Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001) (law of the case doctrine "does
26   not impinge upon a district court's power to reconsider its own interlocutory order"; "as long as a
     district court has jurisdiction over the case, then it possesses the inherent procedural power to
27   reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" (internal
     quotation marks omitted)).
28

1   business practice 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

2   regulatory, or court-made.'  In other words, *a common law violation such as breach of contract is*

3   *insufficient.*  Because Shroyer does not go beyond alleging a violation of common law, he fails to

4   state a claim under the unlawful prong of § 17200." (emphasis added) (citations omitted)).

5           An alleged common law breach of contract is not sufficient to state a claim under the

6   "unlawful" prong because, "if a simple breach of contract could form the basis for a UCL claim,

7   then virtually every contract action could be converted into a business tort."  *Dillon v.*

8   *NBCUniversal Media LLC*, No. CV 12-09728 SJO, 2013 WL 3581938, at *8 (C.D. Cal. June 18,

9   2013) (brackets and internal quotation marks omitted) (dismissing "unlawful" prong claim "to the

10  extent that it is predicated solely on Defendants' alleged breach of contract"); *see also Schuman v.*

11  *IKON Office Solutions, Inc.*, 232 F. App'x 659, 664 (9th Cir. 2007) ("To establish that a business

12  practice is unlawful under the UCL, a plaintiff must show a violation of a statute or regulation.");

13  *Elias*, 903 F. Supp. 2d at 859 ("[A]n alleged breach of a warranty—a contract—is not itself an

14  unlawful act for purposes of the UCL" (internal quotation marks omitted)).[17]  Plaintiff's

15  "unlawful" prong claim should be dismissed with prejudice.

16      **C.    McAfee's Auto-Renewal Advertising Did Not Violate the "Unfair" Prong of**

17          **the UCL.**

18          Plaintiff's "unfair" prong claim is based on McAfee's alleged deception concerning its

19  auto-renewal program and is based on the same allegations as Plaintiff's "deceptive" prong claim.

20  *See* Am. Compl. ¶¶ 101–103.  Plaintiff fails to allege a cognizable "unfair" prong claim based on

21  McAfee's auto-renewal advertising for the reasons set forth above.  McAfee's alleged conduct

22  was not "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,"

23  *Cullen*, 880 F. Supp. 2d at 1028 (internal quotation marks omitted), and did not violate any law or

24  public policy.  Plaintiff does not allege any cognizable violation of either the FAL or the

25

26  [17] Certain courts have held that a breach of contract claim may support a claim under the
    "unlawful" prong where "it also constitutes conduct that is unlawful, or unfair, or fraudulent."

27  *See Dillon*, 2013 WL 3581938, at *8 (emphasis and internal quotation marks omitted).  The Ninth
    Circuit did not so hold in *Shroyer*.  But even if that were the case, Plaintiff does not allege

28  conduct by McAfee that is unlawful, unfair, or fraudulent for the reasons set forth herein.

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1  California Auto-Renewal Statute, and McAfee's representations concerning auto-renewal pricing

2  were neither false nor misleading, for the reasons set forth above.

3       **D.       Plaintiff Has No Claim for Injunctive Relief.**

4       Finally, Plaintiff cannot assert a claim for injunctive relief concerning McAfee's

5  representations regarding auto-renewal because Plaintiff does not allege that he has any interest in

6  purchasing a McAfee software subscription or in participating in the auto-renewal program in the

7  future.  *See* Part I(C), *supra*.

8       For all of the foregoing reasons, the Court should dismiss Plaintiff's UCL and FAL claims

9  regarding McAfee's auto-renewal program with prejudice.

10  **IV.   PLAINTIFF DOES NOT ALLEGE A COGNIZABLE CLAIM UNDER THE**

11       **CALIFORNIA AUTO-RENEWAL STATUTE (COUNT IV).**

12       Plaintiff's original claim under the California Auto-Renewal Statute, Cal. Bus. & Prof.

13  Code §§ 17600–17606, alleged that McAfee materially changed the terms of its auto-renewal

14  program without providing adequate notice.  Dkt. No. 1 ¶¶ 115–116.  The Court dismissed that

15  claim on the ground that "Plaintiff cannot plausibly allege that Defendant materially changed the

16  terms of the Agreement at any particular point in time.  That the parties may have differed in their

17  understanding of the terms from the outset does not form a basis for a violation under this

18  statute."  Dkt. No. 40 at 13.

19       Plaintiff now attempts to assert a new and different claim under the California Auto-

20  Renewal Statute, alleging that McAfee "fail[ed] to present to Plaintiff and the Class, before . . .

21  they were enrolled in the Auto-Renewal program, accurate information regarding the pricing

22  terms that would apply when their software subscriptions were automatically renewed."  Am.

23  Compl. ¶ 118.  Plaintiff claims that McAfee provided "false and misleading" information because

24  it charges prices on auto-renewal that are "substantially higher than the normal, then-current

25  prices offered and charged to all other customers for the same products."  *Id.*

26       Plaintiff's second attempt to state a claim under the California Auto-Renewal Statute fares

27  no better than his first.  His claim fails as a matter of law because, for the reasons set forth in Parts

28  I–III above, McAfee does not provide false or misleading information regarding auto-renewal

21

1    pricing. The new claim also fails as a matter of law because Plaintiff erroneously attempts to

2    convert the California Auto-Renewal Statute into a fraud statute akin to the FAL or UCL.  The

3    Auto-Renewal Statute is not a fraud statute, however.  Instead, it requires certain disclosures to

4    consumers who are offered auto-renewal.  Plaintiff does not allege that he failed to receive the

5    disclosures required by the California Auto-Renewal Statute, such as "[t]he description of the

6    cancellation policy that applies to the offer" or "[t]he length of the automatic renewal term or that

7    the service is continuous, unless the length of the term is chosen by the consumer."  Cal. Bus. &

8    Prof. Code § 17601(b).  Instead, his claim is limited to the alleged falsity of the disclosures he

9    concedes he received.  Am. Compl. ¶ 118.  Plaintiff's claim that McAfee's disclosures regarding

10   its auto-renewal program were "false and misleading" is not cognizable under the California

11   Auto-Renewal Statute and should be dismissed with prejudice.

12   **V.      THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED (COUNT I).**

13          **A.      Plaintiff Cannot Plead the Condition Precedent of Notice, Which Precludes**

14                 **His Breach of Contract Claim.**

15          McAfee respectfully submits that the Court should dismiss Plaintiff's breach of contract

16   claim with prejudice because Plaintiff failed to provide McAfee with the pre-suit notice of his

17   claim mandated by the UCC.

18          As this Court recently noted, "[g]enerally, courts have found that mass-produced,

19   standardized, or generally available software, even with modifications and ancillary services

20   included in the agreement, is a good that is covered by the UCC." *Simulados Software, Ltd. v.*

21   *Photon Infotech Private, Ltd.*, -- F. Supp. 2d --, No. 5:12-CV-04382-EJD, 2014 WL 1728705, at

22   *5 (N.D. Cal. May 1, 2014).[18]  During briefing on McAfee's motion to dismiss Plaintiff's original

23   Complaint, Plaintiff not only did not dispute, but in fact affirmatively argued, that his McAfee

24   transactions were governed by the UCC.  *See* Dkt. No. 25 at 18 (citing *Gross v. Symantec Corp.*,

25

26   [18] The Court's holding in *Simulados* underscores the distinct treatment accorded software licenses
     under the UCC and the CLRA.  Unlike the CLRA, which narrowly defines a "good[]" as
27   "tangible chattel[]," the UCC broadly defines "goods" to include "all things" which are "movable
     at the time of identification to the contract for sale." *Compare* Cal. Civ. Code § 1761(a), *with*
28   Cal. Com. Code § 2105(1).

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    No. C12-00154 CRB, 2012 WL 3116158, at *8–9 (N.D. Cal. July 31, 2012), for the proposition

2    that "computer protection software [is a] good under [the] California UCC"). But Plaintiff's

3    Amended Complaint fails to plead a necessary prerequisite to any suit for breach under the UCC:

4    pre-suit notice to the seller. *See* Cal. Com. Code § 2607(3)(A) ("The buyer must, within a

5    reasonable time after he or she discovers or should have discovered any breach, notify the seller

6    of breach or be barred from any remedy . . . ."). That failure is fatal to Plaintiff's breach of

7    contract claim.

8        The language of the UCC means precisely what is says: notice is required for "*any*

9    breach." Cal. Com. Code § 2607(3)(A) (emphasis added); *see also Roth Steel Prods. v. Sharon*

10   *Steel Corp.*, 705 F.2d 134, 152 (6th Cir. 1983) ("The clear language 'any breach' indicates that

11   the statute applies to all breaches in which the goods are accepted.").[19] Although the notice

12   requirement is most frequently invoked with regard to alleged breaches of warranty, courts

13   addressing the statute in the context of other alleged breaches regularly conclude that both the

14   plain language of the statute, and the purposes animating it, mandate application of the notice

15   requirement to any allegation of breach, including a claim (as here) that the buyer was charged "a

16   higher price than the contract allows." *Roth Steel*, 705 F.2d at 152 (noting that the "same

17   purposes" for requiring notice of breach "are served by requiring notice of breach in instances

18   where the goods are conforming, but the performance is late, or at a higher price than the contract

19   allows"); *see also Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 729 (6th Cir. 2006)

20   (applying notice requirement to overcharging claim).

21       As a condition precedent to any suit for breach, notice to the seller of the alleged breach

22   "is an integral part of a buyer's cause of action and is not an affirmative defense of the seller." *E.*

23   *Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 970 nn.30–31 (5th Cir. 1976)

24   (applying California Commercial Code). Instead, "the buyer must both plead and prove that the

25   notice requirement has been complied with." *Id.* at 970 n.31. Plaintiff does not—and cannot—

26   _____

27   [19] The language of the Ohio statute at issue in *Roth Steel* mirrors that of the California statute.
     *Compare* Ohio Rev. Code Ann. § 1302.65(C) (requiring notice "within a reasonable time after
28   [the buyer] discovers or should have discovered any breach"), *with* Cal. Com. Code § 2607(3)(A)
     (same).

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    satisfy this requirement, because his own pleadings establish that the notice he provided fails to

2    conform to the statutory requirement.  *See* Dkt. 1-3 (Compl. Ex. C).[20]

3          Plaintiff notified McAfee of his overcharging allegation on January 10, 2014, the same

4    day he filed suit.  *Compare* Dkt. 1, *with* Dkt. 1-3.  But California law is clear that Section 2607

5    mandates *pre-suit* notice.  *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)

6    (applying rule that "reasonable notice in California [is] 'pre-suit notice'" (citation omitted)).  As a

7    result, notice provided "simultaneously with service of the complaint" facially fails to satisfy the

8    requirement of Section 2607(3)(A).  *Id.*  Nor can Plaintiff—having already filed suit—cure this

9    defect.  As the Ninth Circuit observed in *Alvarez*, the UCC's purpose in requiring notice "would

10   be completely undermined if it could be satisfied with the giving of post-suit notice."  *Id.*

11   Because Plaintiff failed to provide the statutorily required pre-suit notice, he is "barred from any

12   remedy" as a matter of law.  Cal. Com. Code § 2607(3)(A).  Accordingly, his breach of contract

13   claim should be dismissed with prejudice.

14          **B.     Count I Fails To State a Breach of Contract Claim.**

15          Finally, McAfee respectfully submits that Plaintiff's breach of contract claim fails as a

16   matter of law for the reasons set forth in Parts I–III, *supra*.[21]  As demonstrated above, McAfee

17   complied with its obligations under the EULA when it charged Plaintiff $49.99 for his renewed

18   subscription, as that was "McAfee's then-current price, excluding promotional and discount

19   pricing."  Ex. A to Am. Compl. ¶ 14.  For the reasons set forth above, $49.99 was McAfee's

20   regular price for AntiVirus Plus based on the allegations in the Amended Complaint, and the

21   lower prices advertised as discounts on McAfee's website were properly advertised as discounts

22

23   [20] For purposes of this motion only, McAfee assumes that the letter from Plaintiff's counsel
     regarding "Notice of Violation of California Consumer Legal Remedies Act" constitutes notice of
24   breach under the UCC.

25   [21] McAfee recognizes that the Court denied its motion to dismiss Plaintiff's breach of contract
     claim, Dkt. No. 40 at 6-8, but McAfee seeks to preserve its arguments with respect to the
26   Amended Complaint, which supersedes the Complaint.  *See O'Connor*, 2014 WL 4382880, at *3
27   (because amended complaint supersedes original complaint, defendant may "move to challenge
     the *entire* amended complaint[,] including those causes of action the court had previously found
28   sufficient") (emphasis in original) (collecting cases).

1    from the regular price.  As an auto-renewal customer, Plaintiff was informed that he would not be

2    offered promotional or discounted pricing and agreed to purchase a renewed subscription with

3    that understanding.  Accordingly, Count I should be dismissed with prejudice.

4                                                **CONCLUSION**

5            For the foregoing reasons, McAfee respectfully requests that the Court dismiss Plaintiff's

6    Amended Complaint in its entirety with prejudice.

7    Dated:  October 9, 2014                    WILLIAMS & CONNOLLY LLP

8                                               By:  /s/ Daniel F. Katz
                                                    Daniel F. Katz (*pro hac vice*)
9                                                   David S. Kurtzer-Ellenbogen (*pro hac vice*)
                                                    WILLIAMS & CONNOLLY LLP
10                                                  725 Twelfth Street, N.W.
                                                    Washington, DC 20005
11                                                  Telephone: (202) 434-5000
                                                    Facsimile: (202) 434-5029
12                                                  dkatz@wc.com
                                                    dkurtzer@wc.com
13
                                                LUBIN OLSON & NIEWIADOMSKI LLP
14
15                                              By:  /s/Michael F. Donner
                                                    Michael F. Donner (SBN 155944)
16                                                  Ellen A. Cirangle (SBN 64188)
                                                    LUBIN OLSON & NIEWIADOMSKI LLP
17                                                  Transamerica Pyramid
                                                    600 Montgomery Street, 14th Floor
18                                                  San Francisco, CA  94111
                                                    Telephone: (415) 981-0550
19                                                  Facsimile: (415) 981-4343
                                                    mdonner@lubinolson.com
20                                                  ecirangle@lubinolson.com

21                                              COUNSEL FOR DEFENDANT McAFEE, INC.

22

23

24

25

26

27

28

MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS