1    Michael W. Sobol (State Bar No. 194857)
     Roger N. Heller (State Bar No. 215348)
2    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
     275 Battery Street, 29th Floor
3    San Francisco, CA  94111
     Telephone:  (415) 956-1000
4    Facsimile:  (415) 956-1008

5    Daniel M. Hattis (State Bar No. 232141)
     Kirill M. Devyatov (State Bar No. 293106)
6    HATTIS LAW
     2300 Geng Road, Suite 200
7    Palo Alto, CA 94303
     Telephone:  (650) 980-1990
8
     *Attorneys for Plaintiff*
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13

14   SAM WILLIAMSON, individually and on       Case No.  5:14-cv-00158-EJD
     behalf of all others similarly situated,
15                                             **PLAINTIFF'S OPPOSITION TO MOTION**
                     Plaintiff,                **TO DISMISS FIRST AMENDED**
16                                             **COMPLAINT**
     v.
17                                             Date:  March 5, 2015
     MCAFEE, INC.,                             Time: 9:00 a.m.
18                                             Honorable Edward J. Davila
                     Defendant.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 3

    A.     McAfee's Auto-Renewal Program.................................................. 3

    B.     McAfee's Misrepresentations Regarding Auto-Renewal Pricing............... 3

    C.     McAfee's Consumer Agreement..................................................... 5

    D.     McAfee Charges Auto-Renewal Customers Unique, Premium Prices Not Charged to Any Other Customers ............................... 5

    E.     McAfee's False Reference Price Representations ...................... 6

III.   ARGUMENT ....................................................................................... 6

    A.     LEGAL STANDARD ................................................................. 6

    B.     PLAINTIFF'S AUTO-RENEWAL CLAIMS ARE WELL PLED. ........... 7

        1.     Plaintiff Adequately Pleads Violations of the FAL and the UCL's "Fraud" Prong. ............................................................. 7

            a.     The FAC Alleges Plaintiff's Reliance in Detail.................. 7

            b.     Plaintiff Continues to State a More-Than-Plausible Theory of Deception. ......................................................... 7

            c.     McAfee's Arguments Do Not Support Dismissal............... 8

        2.     Plaintiff Adequately Pleads "Unfair" and "Unlawful" Practices. ................................................................................. 12

        3.     Plaintiff's Claim Under the Auto-Renewal Statute is Well Pled................................................................................. 13

        4.     Plaintiff's Request for Injunctive Relief is Proper....................... 14

        5.     The Court Already Upheld Plaintiff's Breach of Contract Claim and McAfee's *Sub Rosa* Motion for Reconsideration Should Be Denied. ..................................................... 15

            a.     McAfee Should Be Foreclosed From Belatedly Making its Pre-Filing Notice Argument. ......................... 15

            b.     Pre-Filing Notice Was Not Required in Any Event.......... 16

            c.     McAfee's Other Arguments are Recycled From Its Prior Motion and Continue to Lack Merit......................... 18

    C.     PLAINTIFF'S REFERENCE PRICE CLAIMS ARE WELL PLED....... 18

        1.     Plaintiff Pleads a Direct Violation of Cal. Bus. & Prof. Code § 17501.............................................................. 19

        2.     Plaintiff Alleges Material Statements Likely to Mislead Consumers. ............................................................................. 20

        3.     Plaintiff Adequately Pleads "Unfair" and "Unlawful" Practices. ................................................................................. 23

        4.     Plaintiff Has Standing to the Pursue These Claims. ................. 23

        5.     Plaintiff's Request for Injunctive Relief is Proper....................... 25

**TABLE OF CONTENTS**
**(continued)**

**Page**

IV.    CONCLUSION .................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011)........................................................................................ 16

5

*American Philatelic Soc. v. Claibourne*,
3 Cal. 2d 689 (1935) .................................................................................................... 22

6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 7

7

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ..................................................................................... 12

8

*Bilodeau v. McAfee, Inc.*,
2013 U.S. Dist. LEXIS 89226 (N.D. Cal. Jun. 24, 2013) ............................................ 17

9

*Brazil v. Dell, Inc.*,
2010 U.S. Dist. LEXIS 137616 (N.D. Cal. Dec. 21, 2010) ......................................... 20, 23, 24

10

*Brazil v. Dole Packaged Foods, LLC*,
2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014) ............................................ 24

11

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp*,
169 Cal. App. 4th 116 (2008) ....................................................................................... 17

12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) .................................................................................................. 12

13

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013) ................................................................................... 8, 11

14

*Circle Click Media LLC v. Regus Mgmt. Group LLC*,
2013 U.S. Dist. LEXIS 57443 (N.D. Cal. Apr. 22, 2013) ........................................... 11

15

*Cullen v. Netflix, Inc.*,
2013 U.S. Dist. LEXIS 4246 (N.D. Cal. Jan. 10, 2013) .............................................. 21

16

*Davis v. Apperience Corp.*,
2014 U.S. Dist. LEXIS 154758 (N.D. Cal. Oct. 31, 2014)........................................... 17

17

*Davis v. Capitol Records, LLC*,
2013 U.S. Dist. LEXIS 55917 (N.D. Cal. Apr. 18, 2013) ........................................... 13

18

*Diacakis v. Comcast Corp.*,
2012 U.S. Dist. LEXIS 2329 (N.D. Cal. Jan. 9, 2012) ................................................ 11

19

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ......................................................................... 17

20

*Fletcher v. Sec. Pac. Nat'l Bank*,
23 Cal. 3d 442 (1979) ................................................................................................... 24

21

*Freeman v. Time*, Inc.,
68 F.3d 285 (9th Cir. 1995)........................................................................................... 11

22

*Gabali v. Onewest Bank*,
2013 U.S. Dist. LEXIS 47193 (N.D. Cal. Mar. 29, 2013)............................................. 8

23

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997).......................................................................................... 7

24

25

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013)...................................................................... 19, 24, 25

4

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................... 7

5

6

*In re McDonald's French Fries Litig.*,
503 F. Supp. 2d 953 (N.D. Ill. 2007) ...................................................................... 17

7

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................... 11

8

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ...................................................................... 24

9

*Johnson Controls, Inc. v. Jay Indus., Inc.*,
459 F.3d 717 (6th Cir. 2006)...................................................................... 18

10

11

*Koehler v. Litehouse, Inc.*,
2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) ................................................ 14, 25

12

*Kulesa v. PC Cleaner, Inc.*,
2012 U.S. Dist. LEXIS 188542 (C.D. Cal. Oct. 12, 2012) ...................................................................... 17

13

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ...................................................................... 23, 24

14

*Lanovaz v. Twinings N. Am., Inc.*,
2014 U.S. Dist. LEXIS 1639 (N.D. Cal. Jan. 6, 2014) ................................................ 14, 25

15

16

*Mohamed v. Jeppesen Dataplan, Inc.*,
579 F.3d 943 (9th Cir. 2009)...................................................................... 7

17

*Nilon v. Natural-Immunogenics Corp.*,
2013 U.S. Dist. LEXIS 141728 (S.D. Cal. Sep. 30, 2013) ...................................................................... 24

18

*O'Connor v. Uber Techs., Inc.*,
2014 U.S. Dist. LEXIS 124136 (N.D. Cal. Sept. 4, 2014) ...................................................................... 15

19

20

*Pollard v. Saxe & Yolles Dev. Co.*,
12 Cal. 3d 374 (1974) ...................................................................... 17

21

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
2014 U.S. Dist. LEXIS 46409 (N.D. Cal. Mar. 31, 2014)................................................ 14, 25

22

*Rosado v. eBay, Inc.*,
2014 U.S. Dist. LEXIS 89863 (N.D. Cal. Jun. 30, 2014)................................................ 8, 10

23

*Roth Steel Prods. v. Sharon Steel Corp.*,
705 F.2d 134 (6th Cir. 1983)...................................................................... 18

24

*Saunders v. Superior Court*,
27 Cal. App. 4th 832 (1994) ...................................................................... 13

25

*Shroyer v. New Cingular Wireless Servs., Inc.*,
606 F.3d 658 (9th Cir. 2010)...................................................................... 6

26

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009)...................................................................... 7

27

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)...................................................................... 7

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)........................................................................ 7, 8, 10, 20

*Worley v. Avanquest N. Am., Inc.*,
    2013 U.S. Dist. LEXIS 62475 (N.D. Cal. Apr. 30, 2013) ............................... 2, 15, 16

*Worley v. Avanquest North America, Inc.*,
    2013 U.S. Dist. LEXIS 16239 (N.D. Cal. Feb. 5, 2013)................................... 15, 17

**Statutes**

Cal. Bus. & Prof Code § 17203 ......................................................................... 24

Cal. Bus. & Prof Code § 17535 ......................................................................... 24

Cal. Bus. & Prof. Code § 17501 ..................................................................... 3, 19

Cal. Bus. & Prof. Code § 17600 ......................................................................... 13

Cal. Bus. & Prof. Code § 17601(b)(3) ............................................................... 13

Cal. Bus. & Prof. Code § 17602(a)(1) ............................................................... 13

Cal. Civ. Code § 1770(a)(13) ............................................................................ 23

Cal. Comm. Code § 2607 .................................................................................... 2

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................ 7

1    **I.        INTRODUCTION**

2           Plaintiff's First Amended Complaint (Dkt. 42; "FAC") adequately states claims, under

3    California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), that

4    Defendant McAfee, Inc. ("McAfee") has made material false and misleading statements to him

5    and other customers regarding the pricing of its software Auto-Renewal program.  For years,

6    McAfee has enrolled all customers who purchase software directly from McAfee into its Auto-

7    Renewal program by default.  After a 2009 New York Attorney General investigation and

8    settlement required McAfee to start providing customers with an opportunity to opt-out of Auto-

9    Renewal, McAfee began making express point-of-sale representations about Auto-Renewal

10   pricing to dissuade customers from opting-out.  Specifically, McAfee began including

11   reassurances at the point-of-sale, which persist to this day, that are designed to persuade

12   customers that there is no cost disadvantage to Auto-Renewal, as compared to other options for

13   renewal.  Contrary to these reassurances, McAfee's *actual* practice has been to consistently

14   charge Auto-Renewal customers premium, Auto-Renewal-only prices that are significantly higher

15   (on average, 40 percent higher) than the prices McAfee charges all other customers for the same

16   products, including customers manually renewing their software.

17          The Court's previous Order (Dkt. 40) recognized the central thrust of Plaintiff's Auto-

18   Renewal pricing claims, but dismissed Plaintiff's FAL and UCL deception claims without

19   prejudice, on the basis that the original Complaint did not sufficiently describe Plaintiff's reliance

20   on McAfee's Auto-Renewal pricing promise.  (Dkt. 40 at 11)  The Court granted leave to amend

21   to address this issue, and the FAC now clearly alleges Plaintiff's reliance in detail.  FAC ¶ 64.

22          Plaintiff continues to allege in extensive detail that McAfee's point-of-sale Auto-Renewal

23   promises are both actually false *and* have a tendency to mislead reasonable customers. McAfee's

24   theories for why customers supposedly should not have been misled fall well short of justifying

25   dismissal as a matter of law.  McAfee claims its representations could not possibly be false or

26   misleading because it charges the premium prices to numerous Auto-Renewal customers.

27   McAfee confuses its own *internal* rationalizations with the pertinent questions of how its *external*

28   statements regarding Auto-Renewal pricing are properly interpreted (*i.e.*, which prices are

1   McAfee's true, normal then-current prices that should be charged to Auto-Renewal customers),

2   and whether those statements have a tendency to mislead customers (*i.e.*, whether Auto-Renewal

3   customers reasonably expect, based on McAfee's statements, that McAfee will charge them

4   premium, Auto-Renewal-only prices not charged to any other customers).  These central factual

5   questions are properly resolved on a full record, not on a motion to dismiss.

6         McAfee also renews its argument that the confusion caused by its point-of-sale promises

7   is cured by the provision buried in its form End User License Agreement ("EULA"), which,

8   unlike the point-of-sale statements, purports to exclude "discount and promotional pricing" from

9   the Auto-Renewal pricing guarantee.  But this Court has already held that Plaintiff has adequately

10  stated a claim that McAfee's practices do not even comport with the EULA, and that the question

11  of whether the prices McAfee "excludes" from Auto-Renewal pricing are properly considered

12  "discount" prices cannot be resolved on the pleadings (Dkt. 40 at 7-8).  In all events, whether

13  McAfee's representations, taken as a whole, have a tendency to deceive is a factual issue that

14  cannot be decided as a matter of law.

15        Plaintiff also adequately states a claim under Cal. Bus. & Prof. Code § 17600 *et seq*. (the

16  "Auto-Renewal Statute"), based on McAfee's failure to provide Plaintiff and other customers

17  with known information about Auto-Renewal pricing terms, causing them to be enrolled without

18  their informed consent.

19        Further, the Court already held that Plaintiff adequately states a claim that McAfee's

20  Auto-Renewal pricing practices are in breach of contract.  (Dkt. 40 at 6-8)  Plaintiff's allegations

21  for this claim are unchanged from the allegations the Court found to be sufficient.  McAfee

22  attempts to belatedly argue, for the first time in this motion, that Plaintiff's contract claim should

23  be dismissed because he did not provide pre-filing notice to McAfee under Cal. Comm. Code §

24  2607.  However, having failed to raise this argument in its prior motion, McAfee should be

25  foreclosed from attempting to belatedly raise it now.  *See Worley v. Avanquest N. Am., Inc.*, 2013

26  U.S. Dist. LEXIS 62475, *3 n.2 (N.D. Cal. Apr. 30, 2013).  Moreover, under California law, pre-

27  filing notice was not required in any event for Plaintiff's non-warranty common law breach of

28  contract claim.

1    Plaintiff also adequately states claims for injunctive relief, under the UCL and FAL, based

2    on McAfee's pervasive advertising of "slash-through" reference prices and corresponding

3    representations of supposed "savings" to Plaintiff and the putative Reference Price Class.

4    Plaintiff alleges that these representations—which are designed to create a false sense of urgency

5    for consumers to purchase and to increase demand for the products—violate the express

6    prohibition of Cal. Bus. & Prof. Code § 17501, and also, additionally, have a tendency to mislead

7    reasonable consumers in violation of the UCL and FAL, given: (a) the products in question are

8    consistently offered to all customers at prices that are lower than the advertised slash-through

9    prices; and (b) McAfee never tells customers that the slash-through prices really only represent

10   premium prices McAfee charges Auto-Renewal customers.  The Court's prior Order found that

11   Plaintiff's reference price claims alleged material false and misleading statements, and disagreed

12   with McAfee that Plaintiff's allegations suggested he lacked standing to pursue these claims.

13   (Dkt. 40 at 14)  The Court's analysis on the issue was correct.

14   McAfee fails to present a meritorious basis for dismissing Plaintiff's claims and its motion

15   should be dismissed in its entirety.

16   **II.    BACKGROUND**

17   **A.    McAfee's Auto-Renewal Program**

18   McAfee sells one-year subscriptions to McAfee Software via its website and through the

19   software itself.  FAC ¶¶ 16-19.  For customers enrolled in Auto-Renewal, when their

20   subscriptions expire, McAfee renews their subscription to the same product for a subsequent one-

21   year period.  FAC ¶ 20.  Customers can also purchase a new subscription separately when their

22   prior subscription expires, or renew their existing subscriptions manually (*i.e.* outside of Auto-

23   Renewal), however McAfee aggressively promotes Auto-Renewal over these other forms of

24   renewal, including by enrolling customers in the program by default when they make a purchase

25   or manual renewal, and by misrepresenting the pricing of Auto-Renewal.  *Id.* ¶ 21, 23, 38, 41-43.

26   **B.    McAfee's Misrepresentations Regarding Auto-Renewal Pricing**

27   To induce customers to enroll in Auto-Renewal, rather than opt-out, McAfee makes

28   express representations regarding Auto-Renewal pricing that are designed to persuade customers

that there is no cost disadvantage in having their software auto-renewed, as compared to their other renewal options.  McAfee makes these representations at the point-of-sale.  FAC ¶¶ 38-43.

For customers enrolled when they purchase or renew software through McAfee's website, McAfee promises that under Auto-Renewal, McAfee will "charge you the rate that's current on your renewal date."  FAC ¶ 39.  Similarly, for customers, including Plaintiff, who enroll when they purchase or renew through the software itself, McAfee reassures them that under Auto-Renewal, McAfee will "charge you the product price current at the time of auto-renewal."  FAC ¶¶ 42, 64.  McAfee's point-of-sale representations include no indication that Auto-Renewal customers are actually charged premium prices that are significantly higher than what McAfee consistently charges all other customers for the same products, nor do they state that supposed "discount" or "promotional" prices are excluded from the Auto-Renewal pricing promise.  FAC ¶¶ 39, 42.

As the context of their adoption underscores, McAfee's point-of-sale reassurances about Auto-Renewal pricing are designed to mislead customers in order to keep them from opting-out of Auto-Renewal.  FAC ¶¶ 32, 39-40, 42-44.  In 2009, the New York Attorney General ("NYAG") investigated McAfee's then-existing practice of enrolling customers in Auto-Renewal with essentially no notice or opportunity to opt-out of the program.  FAC ¶ 26.  After a settlement with the NYAG required McAfee to provide customers with notice of enrollment and instructions regarding how they can opt-out, McAfee also adopted its point-of-sale promises regarding Auto-Renewal pricing to try to dissuade opt-outs.  Since that time, McAfee has embedded its disclosures about opting-out with its Auto-Renewal pricing reassurance in an effort to lull customers into thinking there is no cost disadvantage to Auto-Renewal.  FAC ¶¶ 32, 39-40, 42-43.

Plaintiff read and relied upon McAfee's Auto-Renewal pricing promise at the point-of-sale, and thus believed that, under Auto-Renewal, McAfee would charge him its normal, then-current price charged to non-Auto Renewal customers for AntiVirus Plus.  He did not expect that McAfee would charge him a premium price only charged to Auto-Renewal customers.  Because of McAfee's representation, Plaintiff enrolled in Auto-Renewal instead of opting-out.  Had he

1    known the truth about Auto-Renewal, Plaintiff would have opted-out.  FAC ¶¶ 64-65.

2        **C.    McAfee's Consumer Agreement**

3        Customers who purchase McAfee Software are subject to McAfee's End User License

4    Agreement ("EULA"), a contract of adhesion drafted by McAfee and presented to customers on a

5    take-it-or-leave-it basis.  FAC ¶ 27.  Multiple pages deep into the EULA is a provision regarding

6    Auto-Renewal pricing, which states that when customers' software is auto-renewed, they will be

7    charged "a fee no greater than McAfee's then-current price, excluding promotional and discount

8    pricing."  FAC ¶ 29, Ex. A.[1]  There is no indication in the EULA that Auto-Renewal customers

9    are always charged premium, Auto-Renewal-only prices without basis in the prices McAfee

10   charges outside of Auto-Renewal.  Nor does the EULA indicate that if McAfee is consistently

11   offering a price to all new and existing customers for weeks or even months, those prices would

12   be considered "promotional" or "discount" prices "excluded" from Auto-Renewal pricing.

13       **D.    McAfee Charges Auto-Renewal Customers Unique, Premium Prices Not
             Charged to Any Other Customers**
14

15       Contrary to its representations and contractual obligation, McAfee consistently charges

16   Auto-Renewal customers unique, higher prices not offered or charged by McAfee to any other

17   customers ever or virtually ever.  In essence, McAfee consistently has two prices for McAfee

18   Software products:  (1) one offered to all customers, whether they are purchasing a new

19   subscription or manually renewing an existing subscription, and whether they make their

20   purchase or renewal via McAfee's website or via their McAfee Software; and (2) a unique,

21   premium price charged only to Auto-Renewal customers.  FAC ¶¶ 53-55.

22       For example, a customer who had his or her AntiVirus Plus software auto-renewed on

23   January 1, 2014 would have been charged $49.99.  The same day, McAfee was offering the same

24   product to all customers for just $34.99.  FAC ¶ 54.  That $34.99 price was not a promotional

25   price available only to new subscribers; rather, the $34.99 price was available to all customers,

26   including those manually renewing an existing subscription.  *Id*.  Nor was the $34.99 price a

27   ─────────────────

28   [1] The language purporting to exclude "promotional and discount pricing" is not included in
     McAfee's point-of-sale representations.  FAC ¶¶ 39, 42.

1   discounted price being offered for a brief time only; rather McAfee had been offering the same

2   $34.99 price to all customers for approximately eight months with no break, and had been

3   offering the same product at an even lower price, $24.99, for several months before that.  *Id*.  The

4   prices that McAfee imposes on Auto-Renewal customers are also higher than the MSRPs that

5   McAfee sets for retailers of McAfee Software.  FAC ¶ 57.

6      **E.**  **McAfee's False Reference Price Representations**

7      For customers purchasing or manually renewing McAfee Software through McAfee's

8   website or through their software, McAfee presents them with two prices:  (a) the actual selling

9   price of the product; and (b) a reference price with a "slash" line through it, together with a

10  representation that the customer will "Save" money (stated as the difference between the actual

11  price and slash-through price) if they "Buy Now."  FAC ¶¶ 125-136.  McAfee misleadingly

12  presents the slash-through prices as its regular or former prices, even though McAfee consistently

13  offers the products in question to all customers at prices lower than those slash-through prices.

14  FAC ¶¶ 131-132.  The only time that McAfee ever or virtually ever charges the slash-through

15  prices are when they are imposed pursuant to Auto-Renewal.  *Id.*  McAfee's slash-through price

16  representations include no indication that the slash-through prices are intended to represent

17  premium prices that are only charged pursuant to Auto-Renewal.  FAC ¶ 133.

18     McAfee designs these representations to create false impressions regarding the products'

19  values and the bargains customers will receive by purchasing at that time, and to artificially drive

20  up demand for McAfee Software.  FAC ¶¶ 134-135.  Plaintiff relied upon McAfee's slash-

21  through price and representation that he would supposedly "save" money by making his purchase

22  on the day that he did.  McAfee's representations caused Plaintiff to pay more than he otherwise

23  would have, and he was denied the discount and value he was promised.  FAC ¶¶ 61-63, 67, 136.

24  **III.** **ARGUMENT**

25     **A.**  **LEGAL STANDARD**

26     Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks "a

27  cognizable legal theory" or "sufficient facts to support a cognizable legal theory."  *Shroyer v.*

28  *New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 664 (9th Cir. 2010).  The issue is not whether

PLAINTIFF'S OPP. TO MOTION TO DISMISS FAC;
CASE NO. 5:14-CV-00158-EJD

the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The Court must draw "all reasonable inferences from the complaint in [plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "must take all of the factual allegations in the complaint as true" and "construe them in the light most favorable to the plaintiffs." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). Claims sounding in fraud are also subject to Fed. R. Civ. P. 9(b), which is satisfied as long as the "allegations[of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The "requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lie more in the knowledge of the opposite party." *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011).

## B.   PLAINTIFF'S AUTO-RENEWAL CLAIMS ARE WELL PLED.

### 1.   Plaintiff Adequately Pleads Violations of the FAL and the UCL's "Fraud" Prong.

#### a.   The FAC Alleges Plaintiff's Reliance in Detail.

The Court previously dismissed these statutory claims without prejudice, on the sole basis that the original Complaint did not sufficiently describe Plaintiff's reliance on McAfee's Auto-Renewal pricing promise. The Court granted leave to address this issue. (Dkt. 40 at 11) The FAC alleges in detail that Plaintiff read and relied upon McAfee's point-of-sale Auto-Renewal pricing promise and that, as a result, he chose to enroll in Auto-Renewal instead of opting-out. FAC ¶ 64.

#### b.   Plaintiff Continues to State a More-Than-Plausible Theory of Deception.

The FAL and UCL "fraud" prong prohibit representations that are false as well as representations that are "misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

1   Whether a representation has a tendency to deceive is determined based on its likely impact on a

2   "reasonable consumer."  *Id.*

3           Ninth Circuit courts have repeatedly recognized that whether a representation has a

4   tendency to deceive "will usually be a question of fact not appropriate for decision on [a motion

5   to dismiss]."  *Williams*, 552 F.3d at 938-940 (dismissal at pleading stage is "rare"); *Rosado v.*

6   *eBay, Inc.*, 2014 U.S. Dist. LEXIS 89863, *15-16 (N.D. Cal. Jun. 30, 2014).  As long as Plaintiff

7   offers a plausible theory as to why the conduct at issue could mislead a reasonable consumer, his

8   claims should not be dismissed at the pleading stage.  *Williams*, 552 F.3d at 940; *Gabali v.*

9   *Onewest Bank*, 2013 U.S. Dist. LEXIS 47193, * 14-15 (N.D. Cal. Mar. 29, 2013); *Chapman v.*

10  *Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2013).

11          Plaintiff's allegations more than suffice to state a plausible theory of both falsity and a

12  tendency to deceive.  Plaintiff alleges in detail that McAfee has made material point-of-sale

13  representations to him and the putative Class about Auto-Renewal pricing.  FAC ¶¶ 31-45, 64-66.

14  As alleged, these representations were adopted by McAfee to persuade and reassure customers

15  that there is no cost disadvantage of having their subscriptions auto-renewed, and thereby to

16  dissuade them from opting-out of Auto-Renewal.  FAC ¶¶ 32, 34.  McAfee's point-of-sale

17  representations contain no indication that Auto-Renewal customers are charged unique, premium

18  prices never or virtually never charged outside of Auto-Renewal; to the contrary, they indicate

19  otherwise.  Plaintiff alleges that McAfee's representations are false and have a tendency to

20  mislead because McAfee's *actual* practice is to charge unique, premium prices for Auto-Renewal

21  while consistently offering the same products to all customers at much lower prices.

22                      **c.      McAfee's Arguments Do Not Support Dismissal.**

23          Disregarding Rule 12's principle that the facts be construed in a light most favorable to

24  the non-moving party, and that Plaintiff need only sate a plausible theory of deception to state a

25  claim, McAfee in effect asks the Court to view the representations and other allegations in the

26  FAC in the light most favorable to *McAfee*, and to prematurely resolve factual issues not properly

27  resolved on the pleadings.  McAfee's theories for why customers supposedly should not have

28  been misled fall well short of justifying dismissal as a matter of law.

1.   That McAfee Charges Other Auto-Renewal Customers The Premium Prices Does Not Support Dismissal.

McAfee argues that its point-of-sale representations could not possibly be false or misleading, as a matter of law, because McAfee charges the premium prices to numerous customers *under the Auto-Renewal program*. This argument is misguided for multiple reasons.

First, whether McAfee's representations are *false*, depends on how they are interpreted in context and on how they compare to McAfee's practices—determinations that should be made on a full record, not at the pleading stage. McAfee improperly presumes that its interpretation of the representations is correct, even though the issue is clearly disputed. Plaintiff alleges that the prices McAfee offers to all customers—whether they are making a new purchase or renewing an existing subscription, and whether they are making their transaction via the McAfee website or through their software—are McAfee's true normal, then-current prices for the products in question, and are the "product price current at the time of auto-renewal" and "the rate that's current on your renewal date," as those statements by McAfee are properly interpreted in context. Plaintiff submits that McAfee's interpretation—that the prices McAfee consistently offers to everyone are essentially irrelevant, and the statements at issue should be interpreted to mean the premium prices charged pursuant to Auto-Renewal only, as long as the Auto-Renewal program reaches some (unspecified by McAfee) size—is untenable (regardless of what the record may ultimately show the size of the Auto-Renewal program to be). For present purposes, it suffices that Plaintiff's interpretation and allegations of falsity are plausible and more than sufficient at the pleading stage. The mere fact that McAfee charges the premium prices to other Auto-Renewal customers does not render those prices "the product price current at the time of auto-renewal" as a matter of law.

Indeed, the Court's Order upholding Plaintiff's contract claim makes this clear. In so ruling, the Court recognized that the parties dispute the proper interpretation of the EULA language and what prices constitute McAfee's true normal, then-current prices under that language, and concluded that these questions are appropriately resolved at a later stage of the litigation. (Dkt. 40 at 7) If anything, the case for dismissing the deception claims is even weaker,

1  because McAfee's point-of-sale representations do not even purport to exclude supposed

2  "discount" or "promotional" prices from the Auto-Renewal pricing guarantee.

3       Second, Plaintiff does not need to prove actual *falsity* to prevail under the UCL or FAL.

4  (Dkt. 40 at 10) (UCL/FAL prohibit any representation "which, though technically true, is either

5  misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.")

6  (citing *Williams*, 552 F.3d at 938); *Rosado*, 2014 U.S. Dist. LEXIS 89863 at *23 (section 17500

7  "extend[s] beyond literal false statements.").  Plaintiff alleges that McAfee's representations have

8  a tendency to mislead, regardless of whether McAfee can present some rationalization for why

9  they are not technically false.  That McAfee charges the premium prices to other Auto-Renewal

10  customers does not change the fact that, as alleged, those prices are charged to Auto-Renewal

11  customers only.  Plaintiff offers a more-than-plausible theory that, based on McAfee's statements,

12  he and other Auto-Renewal customers reasonably expect to be charged the normal, then-current

13  prices McAfee charges non-Auto-Renewal customers for the same products, and do *not* expect to

14  be charged premium, Auto-Renewal-only prices never or virtually never charged outside of Auto-

15  Renewal.  McAfee posits that it is unreasonable to not understand that McAfee consistently

16  charges a premium for Auto-Renewal, but the representations and their context more-than-

17  plausibly tell a different story.  Ultimately, whether McAfee's statements have a tendency to

18  mislead is a factual question that should be answered on a full record.

19          2.   <u>The EULA Reinforces the Deception for Those Who Read It</u>.

20       As it did previously, McAfee argues that customers could not have been misled because

21  the EULA, unlike the point-of-sale statements, includes language purporting to exclude

22  "promotional and discount pricing" from the Auto-Renewal pricing guarantee.  This argument is

23  foreclosed by the Court's prior Order and lacks merit in any event.

24       Plaintiff alleges that the EULA provision *itself* misstates McAfee's pricing practice and

25  thus only *furthers* the deception for those who read it.  The Court has already held that Plaintiff

26  has sufficiently stated a claim that McAfee's actual pricing practices do not comport with its

27  obligations under the EULA provision.  (Dkt. 40 at 6-8)  In so ruling, the Court cited Plaintiff's

28  detailed allegations that the prices McAfee "excludes" from Auto-Renewal pricing are not

PLAINTIFF'S OPP. TO MOTION TO DISMISS FAC;
CASE NO. 5:14-CV-00158-EJD

"'discounted' or 'promotional' price[s] at all, but in fact [are] the <u>true</u>, non-discounted price[s] of the Software." (*Id.*) McAfee argues that the EULA erases any confusion, but that issue could not possibly be decided in McAfee's favor on a motion to dismiss, when the Court has already recognized it cannot be said as a matter of law that the EULA provision is even consistent with McAfee's practices.

Even if the accuracy of the EULA language were not in dispute (which it is), whether exclusion language buried in the EULA could cure McAfee's point-of-sale misrepresentations (which included no qualifications regarding exclusions), and whether the representations as a whole have a tendency to deceive, must be resolved by the finder of fact on a full record, after discovery, not on a motion to dismiss.[2]

### 3. McAfee's Renewal Emails Fail to Reveal the Truth.

McAfee also suggests that its renewal emails, sent to customers long after they are enrolled in Auto-Renewal, render it unreasonable to be misled by the point-of-sale promises. However, to the extent customers see them, the emails do *not* disclose that the prices being charged at auto-renewal are significantly higher than the normal prices McAfee is offering to all customers for the same products, contemporaneously and for months before, nor do they disclose that the prices being charged are premium prices only charged to Auto-Renewal customers, and thus they do not disclose that McAfee has failed to live up to its promise. FAC ¶ 52; Dkt. 49-1 at

---

[2] *See Chapman*, 220 Cal. App. 4th at 227-28 ("[W]hether a reasonable consumer would read the 'Fair Usage Policy' [to which customers 'agreed' by checking a box] and discover the limits on the 'Unlimited' calling plan is a question of fact. We thus cannot conclude as a matter of law that those limits are so conspicuous and apparent that consumers are not likely to be deceived. Moreover, the fact that [defendant] ultimately discloses the limits in its 'Fair Usage Policy' does not excuse its practice of labeling the plan 'Unlimited' in its initial dealings with potential customers."); *Circle Click Media LLC v. Regus Mgmt. Group LLC*, 2013 U.S. Dist. LEXIS 57443, *13-18, 24-28 (N.D. Cal. Apr. 22, 2013); *Diacakis v. Comcast Corp.*, 2012 U.S. Dist. LEXIS 2329, *7-8, 14-15 (N.D. Cal. Jan. 9, 2012). McAfee's citations do not support its argument. That the court in *Freeman v. Tim*e, Inc., 68 F.3d 285 (9th Cir. 1995), found it unreasonable for plaintiff to expect to win the "Million Dollar Dream Sweepstakes" says nothing about how a fact-finder will evaluate McAfee's representations and conduct here. Moreover, a later opinion in *Sony Gaming* specifically declined to dismiss deception claims where there were "competing, potentially ambiguous representations," finding the question of whether they were likely to mislead was "more properly adjudicated after discovery." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990 (S.D. Cal. 2014).

Ex.1.[3]  McAfee posits that customers could check for themselves what McAfee's true normal

prices are at the time they are auto-renewed, and thereby figure out they have been charged an

unexpected premium.  But the purpose and effect of McAfee's Auto-Renewal pricing promise is

to reassure customers that they do not need to worry about that because, under Auto-Renewal,

McAfee will treat them fairly and charge them its normal, then-current prices being charged to

non-Auto-Renewal customers.

### 2.        Plaintiff Adequately Pleads "Unfair" and "Unlawful" Practices.

Plaintiff pleads that McAfee's Auto-Renewal pricing scheme violates the UCL's "unfair"

prong.  Under the "balancing" test,[4] Plaintiff alleges that McAfee has engaged in immoral,

unethical, and unscrupulous conduct by deliberately misleading customers in order to dissuade

them from opting-out of Auto-Renewal and thereby extract more money from them.  FAC ¶ 102.[5]

McAfee's conduct has significantly harmed Plaintiff and other Auto-Renewal customers, who

have been charged on average 40% more than McAfee's true normal, then-current prices charged

to other customers, and lacks any counter-veiling utility.  FAC ¶ 103.  Plaintiff also alleges unfair

practices "tethered" to the spirit and policy of the Auto-Renewal Statute, which the California

Legislature enacted to ensure that customers are properly informed about the key terms of auto-

renewal programs (including pricing terms) before providing their consent to be enrolled in such

programs. FAC ¶ 100; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20

Cal. 4th 163, 186-87 (1999) (sufficient under tethering test to allege practice violates "spirit or

policy" of another law).

Plaintiff's allegations of McAfee's FAL and Auto-Renewal Statute violations are also

---

[3] McAfee submitted with its papers what it represents to be an exemplar renewal email.  Dkt. 49-1.  Without conceding its authenticity based on the current record, Plaintiff notes that the document McAfee submitted *confirms* Plaintiff's allegation that the renewal emails do not tell Auto-Renewal customers the truth that they are being charged premium, Auto-Renewal-only prices that are higher than the normal, then-current prices McAfee is charging other customers for the same products.

[4] *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (2006).

[5] McAfee's conduct is all the more unscrupulous given that McAfee adopted this practice to unfairly dissuade customers from exercising the opt-out choice the NYAG settlement was supposed to provide for them.  FAC ¶¶ 26, 32.

1   sufficient to state "unlawful" practices under the UCL.  Moreover, this Court's prior ruling that

2   the "unlawful" prong encompasses contract breaches such as those alleged here (Dkt. 40 at 9), is

3   consistent with California law and with other rulings in this District.  *See Davis v. Capitol*

4   *Records, LLC*, 2013 U.S. Dist. LEXIS 55917, *16-17 (N.D. Cal. Apr. 18, 2013) (systemic breach

5   of contract can constitute unlawful prong violation); *Saunders v. Superior Court*, 27 Cal. App. 4th

6   832, 838-39 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices

7   forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or

8   court-made.").

9               **3.      Plaintiff's Claim Under the Auto-Renewal Statute is Well Pled.**

10          The Auto-Renewal Statute requires business to provide customers with certain, specified

11   categories of information about auto-renewal programs before enrolling them in such programs.

12   The statute is designed to protect customers from being enrolled without their informed consent.

13   Cal. Bus. & Prof. Code § 17600.  Among the information that must be provided to customers are

14   "the recurring charges that will be charged to the customer's credit or debit card…and that the

15   amount may change, if that is the case, and the amount to which the charge will change, if

16   known."  Cal. Bus. & Prof. Code §§ 17601(b)(3), 17602(a)(1).  McAfee does not dispute that its

17   Auto-Renewal program is covered by the Auto-Renewal Statute, or that known pricing terms are

18   among the terms that must be provided to customers prior to enrollment.  FAC ¶¶ 115-116.  As

19   alleged, McAfee has violated the statute by failing to provide information about Auto-Renewal

20   pricing terms to customers prior to enrollment, even though such information was known to

21   McAfee.  FAC ¶¶ 117-118.  McAfee's arguments for dismissing this claim lack merit.

22          First, McAfee argues the information it provides customers about Auto-Renewal pricing

23   terms is accurate.  This argument fails to support dismissal as a matter of law.  As discussed

24   above, Plaintiff sufficiently alleges a plausible theory that McAfee's statements to customers

25   regarding Auto-Renewal pricing are inaccurate and misleading.  *See supra* section III.B.1

26          Second, contrary to McAfee's suggestion, McAfee clearly cannot satisfy its obligations

27   under the statute by providing knowingly inaccurate information about pricing terms.  FAC ¶ 117.

28   The statute is designed to ensure that customers are informed about the true terms that will apply

1    before they consent to enrolling, *not* merely to ensure that businesses tell customers *something*

2    (accurate or not) about each of the items listed in section 17601(b).  McAfee accuses Plaintiff of

3    trying to turn section 17600 into a "fraud statute," but Plaintiff does nothing of the kind.  The

4    Auto-Renewal Statute is a consumer protection statute, designed to protect consumers from being

5    enrolled in programs like McAfee's Auto-Renewal without their informed consent.  McAfee

6    knows the truth about Auto-Renewal pricing—that its practice is to charge premium prices for

7    Auto-Renewal that are significantly higher than the prices charged to everyone else.  FAC ¶ 118.

8    Nevertheless, McAfee tells customers different, inaccurate information, causing them to be

9    enrolled without their informed consent.  These allegations state a direct violation of the statute.

10                   **4.      Plaintiff's Request for Injunctive Relief is Proper.**

11           McAfee argues that Plaintiff may not pursue injunctive relief because the FAC does not

12   say that Plaintiff "has any interest in" purchasing or renewing McAfee Software again.  However,

13   the FAC never says that Plaintiff did not like the McAfee Software product he bought or that he

14   would not buy or renew McAfee Software again.  Rather, Plaintiff alleges he did not receive the

15   pricing he was promised.  This is *not* a situation where the product at issue has been discontinued

16   and there is no threat of being subject to further representations about such product.  *See Pratt v.*

17   *Whole Foods Mkt. Cal., Inc.*, 2014 U.S. Dist. LEXIS 46409, *30-31 (N.D. Cal. Mar. 31, 2014)

18   (declining to dismiss request for injunctive relief, even where defendants argued that plaintiff

19   stopped purchasing the products at issue, where "[d]efendants have not demonstrated that the

20   products at issue were discontinued").  As this Court ruled in *Pratt*, Plaintiff's claim for

21   injunctive relief here should not be determined until the factual record is developed.  *Id.* at *30-

22   31.[6]

23

24   _____

25   [6] Nor should the fact that Plaintiff has now learned he was deceived by McAfee disqualify him
     from seeking injunctive relief on behalf of himself and the Class  *See, e.g., Lanovaz v. Twinings*
26   *N. Am., Inc.*, 2014 U.S. Dist. LEXIS 1639 at *30-31 (N.D. Cal. Jan. 6, 2014) (under such a
     narrow view, "federal courts would be precluded from enjoining false advertising under
27   California consumer laws because a plaintiff who had been injured would always be deemed to
     avoid the cause of the injury thereafter."); *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS
28   176971 at *17 (N.D. Cal. Dec. 13, 2012) (such a narrow view would "eviscerate the intent of the
     California legislature in creating consumer protection statutes.").

5.   **The Court Already Upheld Plaintiff's Breach of Contract Claim and McAfee's _Sub Rosa_ Motion for Reconsideration Should Be Denied.**

McAfee attempts to take a second bite at Plaintiff's breach of contract claim, despite the Court's prior Order (Dkt. 40 at 6-8) finding that claim was sufficiently pled, and even though Plaintiff's allegations in support of this claim are unchanged from before.  Under these circumstances, Plaintiff respectfully submits that McAfee's arguments should be treated as a motion for reconsideration.  _Worley_, 2013 U.S. Dist. LEXIS 62475, at * 3 n.2 ("Defendant's second round challenges to plaintiffs' breach of contract…claims do not hinge on or even address the allegations of the new plaintiff or the amended allegations…but rather amount to a _sub rosa_ motion to reconsider the prior ruling."); _but see O'Connor v. Uber Techs., Inc._, 2014 U.S. Dist. LEXIS 124136, *9 (N.D. Cal. Sept. 4, 2014).  McAfee fails to demonstrate that reconsideration is warranted, either with respect to its belated pre-filing notice argument or its arguments made previously and renewed again in this motion.  Moreover, McAfee's arguments for dismissal lack merit in any event.

a.   **McAfee Should Be Foreclosed From Belatedly Making its Pre-Filing Notice Argument.**

For the first time in its present motion, McAfee now argues that Plaintiff's contract claims should be dismissed because Plaintiff did not allege he provided pre-filing notice to McAfee, as McAfee now contends is required under Cal. Comm. Code § 2607.  However, having failed to raise this argument previously, and given that Plaintiff's allegations in the FAC regarding his contract claim are unchanged from before, McAfee should be foreclosed from belatedly raising this argument now.  A nearly identical issue arose in _Worley_, where the defendant's initial motion to dismiss unsuccessfully sought dismissal of plaintiffs' contract claim but did not argue that dismissal of that claim was proper due to a lack of pre-filing notice (defendant there did argue that lack of notice warranted dismissal of the plaintiffs' warranty claim).  _Worley_, 2013 U.S. Dist. LEXIS 16239 at *9-14.  After plaintiffs amended their allegations regarding their other claims in an amended pleading, defendant filed a second motion to dismiss, raising pre-filing notice with respect to the contract claim for the first time and also raising other arguments to try to dismiss the already upheld contract claim.  _See_ N.D. Cal. Case No. 3:12-cv-04391-WHO, Dkt. 53 at 5-6.

- 15 -

1    The Court rejected defendant's attempt to belatedly raise the exact argument McAfee now tries to

2    belatedly assert here, and to make other arguments for dismissing plaintiffs' contract claim, which

3    claim had not changed from the prior complaint:

> Defendant's motion attacks not only the adequacy of the claims amended by
> plaintiffs…but also the claims on which the Court denied defendant's prior motion
> to dismiss. Defendant's second round challenges to plaintiffs' breach of contract
> [claim and other previously upheld claims] do not hinge on or even address the
> allegations of the new plaintiff or the amended allegations…but rather amount to a
> *sub rosa* motion to reconsider the prior ruling. Defendant did not make the
> showing required by Local Rule 7-9 to warrant reconsideration, and the Court sees
> no reason to allow defendant to now present arguments it could have raised (and in
> large part did raise) on its first motion to dismiss.

9    *Worley*, 2013 U.S. Dist. LEXIS 62475 at * 3 n.2.  The same reasoning applies here.  Plaintiff's

10   allegations regarding his contract claims were deemed sufficient by the Court, and those

11   allegations have not changed.  McAfee has made no showing that reconsideration is warranted or

12   that it could not have raised its pre-filing notice argument in its first motion.  Like the defendant

13   in *Worley*, McAfee should be foreclosed from belatedly making this argument in its second

14   motion to dismiss.

### b.    Pre-Filing Notice Was Not Required in Any Event.

16        McAfee's pre-filing notice argument lacks merit in any event because, even assuming

17   McAfee's Auto-Renewal program is a "good" under the UCC,[7] California courts have for years

18   limited section 2607's pre-filing notice requirement to breach of warranty cases.

19   McAfee does not cite a single California case (federal or state) applying the requirement outside

20   of the warranty context.  As far as Plaintiff can determine, with the exception of one recent, non-

21   binding opinion, the only time California courts have ever applied a pre-filing notice requirement

22   to a common law breach of contract claim is where such claim was derivative of, or based on the

23   same assertions as, an accompanying warranty claim.  *See, e.g., Alvarez v. Chevron Corp.*, 656

24   F.3d 925, 930-32 (9th Cir. 2011) (contract claim same as adjoining warranty claim); *Cardinal*

---

[7] The Court's prior Order held that McAfee Software licenses are neither "goods" nor "services" under the CLRA.  Dkt. 40 at 12.  While Plaintiff disagreed with that, Plaintiff did not concede, as McAfee suggests, that the licenses can be "goods" under the UCC if they are not "goods" under the CLRA, or argue that his contract claim is governed by the UCC.  Moreover, the contractual provisions at issue in this claim relate primarily to the Auto-Renewal program, not to the software licenses themselves.

1 | *Health 301, Inc. v. Tyco Elecs. Corp*, 169 Cal. App. 4th 116, 135 (2008) (breach of contract claim
2 | "based solely on [defendant's] alleged breach of warranty").

3 | After *Alvarez*, both courts and parties in California have continued to distinguish (at least
4 | implicitly) between breach of warranty claims and non-warranty-based common law breach of
5 | contract claims for purposes of the notice requirement. *See, e.g., Worley*, 2013 U.S. Dist. LEXIS
6 | 16239, at *9-14 (dismissing breach of warranty claim because of lack of pre-filing notice; not
7 | dismissing breach of contract claim); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929-932 (N.D.
8 | Cal. 2012) (dismissing breach of warranty claim with prejudice because of lack of pre-filing
9 | notice; dismissing breach of contract claim without prejudice).[8] The lone exception is the recent
10 | opinion in *Davis v. Apperience Corp.*, 2014 U.S. Dist. LEXIS 154758 (N.D. Cal. Oct. 31, 2014).
11 | Even there, while the plaintiff did not allege a warranty claim, his claim, unlike here, was based
12 | on allegations that the product he purchased did not function as promised. *Id*. at *10-11. To the
13 | extent it applies the pre-filing notice requirement beyond the warranty context, Plaintiff submits
14 | that *Davis* is wrongly decided and without support in California law. Moreover, *Davis* is not
15 | controlling authority. To the extent the Court reaches this issue, it should decline to follow *Davis*.

16 | It also bears mentioning that the purposes of requiring notice in warranty cases are
17 | decidedly absent here. This not a situation where McAfee may be unaware of its breaching
18 | conduct, and pre-suit notice would provide helpful information to McAfee and a chance to fix the
19 | problem. *See Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (1974). Rather, as alleged,
20 | the conduct constituting the breach here is part of a deliberate scheme perpetrated by McAfee on
21 | a class of customers. Despite being confronted by customers in the past, McAfee has failed to
22 | stop its pervasive breaching conduct. FAC ¶ 59. *Cf. In re McDonald's French Fries Litig.*, 503
23 | F. Supp. 2d 953, 956 (N.D. Ill. 2007) (notice not required where defendant has actual notice)
24 | (applying Illinois law). Additional pre-suit notice here would have served no purpose but to
25 | provide McAfee an opportunity to pick-off a prospective class representative and thereby

26 |
27 | [8] *See also Bilodeau v. McAfee, Inc.*, 2013 U.S. Dist. LEXIS 89226, *38-41 (N.D. Cal. Jun. 24, 2013) (requiring allegations of pre-suit notice for warranty claims but not for common law breach
28 | of contract claim); *Kulesa v. PC Cleaner, Inc.*, 2012 U.S. Dist. LEXIS 188542, *29-34 (C.D. Cal. Oct. 12, 2012) (same).

perpetuate its ongoing class-wide misconduct.[9]  Finally, given the case law, it was certainly not

unreasonable for Plaintiff to understand that no pre-filing notice requirement applied to this

claim.

### c.     McAfee's Other Arguments are Recycled From Its Prior Motion and Continue to Lack Merit.

McAfee's other arguments regarding this claim raise nothing new, and fail to justify

revisiting the Court's prior well-reasoned ruling upholding the claim.  As the Court found

previously, McAfee continues to ignore "the nuance of Plaintiff's theory," which is that "the price

offered to all customers other than auto-renewal customers is not a 'discounted' or 'promotional'

price at all, but in fact is the true, non-discounted price of the Software."  As the Court aptly

noted, "Plaintiff pleads a direct challenge to Defendant's characterization of its pricing scheme."

Dkt. 40 at 7; *see also* FAC ¶ 56.  McAfee's arguments continue to rest on the same improper

presumption as before.

### C.     PLAINTIFF'S REFERENCE PRICE CLAIMS ARE WELL PLED

The Court's prior Order directed Plaintiff to separate his reference price claims into

separate causes of action for each statute, which Plaintiff has now done.  FAC ¶¶ 122-160.  The

Court also addressed arguments that McAfee made previously and that are recycled in McAfee's

current motion.  The Court disagreed with McAfee's contention that Plaintiff failed to allege

material false and misleading statements under the UCL "fraud" prong.  (Dkt. 40 at 14)  The

Court also disagreed with McAfee that Plaintiff's allegations suggested a lack of standing to

pursue his reference price claims.  (*Id.*)  McAfee's current motion is premised on the same

meritless arguments as its prior motion, and likewise presents no basis for dismissing these

claims.

The FAC continues to allege in detail that McAfee has made pervasive slash-through price

---

[9] In addition to not applying California law, *Roth Steel* and *Johnson Controls*, cited by McAfee, are factually distinguishable.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134 (6th Cir. 1983), involved a commercial supply contract between two business entities, where the supplier was compelled to change the pricing structure due to changed market conditions.  *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717 (6th Cir. 2006), likewise involved a commercial supply contract where, unlike here, the alleged breaching conduct was not a pre-planned scheme affecting many thousands of consumers.

1  representations, and corresponding representations of "savings," both on the McAfee website and

2  on the purchase path in the software, and that these representations *both*: (a) directly violate Cal.

3  Bus. & Prof. Code § 17501; and (b) have a tendency to deceive reasonable customers in violation

4  of the FAL and the UCL's "fraud" prong.

5            **1.**       **Plaintiff Pleads a Direct Violation of Cal. Bus. & Prof. Code § 17501.**

6        Plaintiff alleges that McAfee has violated the express prohibition of section 17501, by

7  "advertising prices as former prices of McAfee Software when such prices were not the

8  prevailing price within three months next preceding the publication of the advertisement."  FAC

9  ¶ 153; *see also* FAC ¶¶ 122-160.  McAfee's arguments for dismissing Plaintiff's claim of a direct

10  section 17501 violation lack merit.

11        First, McAfee's conclusory assertion that its slash-through prices are not advertised

12  "former prices," as that term is meant by section 17501, is contrary to Plaintiff's allegations

13  (which must be treated as true and read in the light most favorable to Plaintiff) and with how

14  courts have interpreted the section.  McAfee's representations denote that the slash-through price

15  is a price the customer would have had to pay if they made their purchase on a previous day

16  within a reasonable time.  FAC ¶¶ 125-127.  McAfee's slash-through prices fall squarely within

17  the scope of section 17501.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)

18  ("[A] product's 'regular' or 'original' price matters; it provides important information about the

19  product's worth and the prestige that ownership of that product conveys ….Misinformation about

20  a product's 'normal' price is, therefore, significant to many consumers.  That, of course, is why

21  retailers… have an incentive to advertise false 'sales.' It is also why the California legislature has

22  prohibited them from doing so.").

23        Second, while McAfee accuses *Plaintiff* of making presumptions, it is *McAfee* that asks

24  the Court to resolve factual disputes and make presumptions not properly made against a non-

25  movant on a motion to dismiss.  McAfee asks the Court to presume that the premium prices

26  McAfee unilaterally charges to Auto-Renewal customers only, constitute the "prevailing prices"

27  for the products.  Plaintiff clearly disputes this, and his FAC includes detailed allegations

28  regarding the lower prices McAfee consistently offers to all customers.  McAfee again tries to

PLAINTIFF'S OPP. TO MOTION TO DISMISS FAC;
CASE NO. 5:14-CV-00158-EJD

1  minimize the relevance of those prices, characterizing them as "discount" prices, but the Court

2  has already recognized that Plaintiff has adequately pled a direct challenge to McAfee's

3  characterization of those prices, and that this disputed factual issue is properly resolved at a later

4  stage of the litigation.  (Dkt. 40 at 7)  Moreover, as alleged, the slash-through prices are not only

5  higher than the prices McAfee consistently offers all customers, they are also higher than the

6  MSRPs that McAfee sets for retailers of McAfee Software in the market.  FAC ¶¶ 57-58.

7       Whether McAfee's slash-through price representations directly violate section 17501

8  depends on the answers to factual questions that are properly decided on a full record, not at the

9  pleading stage.  Plaintiff states a direct violation of section 17501.

10       **2.**      **Plaintiff Alleges Material Statements Likely to Mislead Consumers.**

11       In addition to alleging a violation of the express prohibition of section 17501, Plaintiff

12  further alleges that McAfee's slash-through price representations and corresponding

13  representations of "savings" have a tendency to deceive consumers in violation of the UCL

14  "fraud" prong and the FAL generally.  Both statutes broadly prohibit all forms of misleading

15  advertising, not just the specific scenario called out by section 17501.  *Williams*, 552 F.3d at 938;

16  *Brazil v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 137616, *10-11 (N.D. Cal. Dec. 21, 2010) (Section

17  17501 does not "provide a 'safe harbor' for clearly deceptive reference price advertising. Such an

18  interpretation of the statute would vitiate the intent of this type of consumer protection law.").  As

19  the Court previously found with respect to the UCL claim (Dkt. 40 at 14), Plaintiff has alleged

20  material false and misleading statements.  In addition to providing screenshot examples of the

21  representations (FAC ¶¶ 129-130), Plaintiff alleges that:

22       McAfee designs its slash-through price and corresponding discount representations
     to create the false impression that the slash-through prices are McAfee's former
23       prices for the product that the customer would have had to pay if they had made
     their purchase on another day within a reasonable time period.
24       #

25       McAfee…prominently features phrases such as "Buy Now" regarding these false
     discounts in order to create a sense of urgency and the false impression that the
26       customer will miss out on the purported markdowns if they do not buy the
     products immediately.

27

28

1   FAC ¶¶ 125-126.[10]  Plaintiff further alleges, in great detail, that McAfee's representations are

2   false and misleading because McAfee consistently offers the products in question to all customers

3   at prices that are lower than the advertised slash-through prices. FAC ¶¶ 129-132.  Simply put,

4   the products in question are perpetually available to all customers at a false "discount."

5        McAfee argues it is unreasonable to be misled by these representations because McAfee

6   charges the slash-through prices to numerous customers under Auto-Renewal.  This argument

7   misses the mark entirely.  That McAfee might *itself* rely on its imposition of premium Auto-

8   Renewal prices to *internally* rationalize presenting those prices to other customers as slash-

9   through prices, does not mean that McAfee's *external* representations (*i.e.*, what customers see)

10  are not misleading.[11]  Plaintiff alleges that customers are likely to be misled here because, *inter

11  alia*: (a) the slash-through prices and corresponding representations ("Buy Now," "Save") suggest

12  a customer will get a particular bargain—in the amount of the difference between the slash-

13  through and selling prices—if they make their purchase that day instead of another day, when in

14  fact the products in question are consistently available to all customers at prices lower than the

15  slash-through prices (FAC ¶ 131); and (b) McAfee *never tells customers* the slash-through prices

16  are meant to represent premium prices only charged pursuant to Auto-Renewal.  FAC ¶ 133.  The

17  reasonable consumer has no idea the slash-through price is an Auto-Renewal-only price.[12]

18        Plaintiff's experience is illustrative.  When Plaintiff made his subscription purchase in

19  2011, McAfee presented him with a slash-through price of $49.99, and told him he would "save"

20  $20.00 if he made his purchase at that time.  FAC ¶¶ 61-62.  Believing he would get a true

21  bargain by making his purchase that day, Plaintiff made his purchase.  FAC ¶ 62.  McAfee never

22

23  [10] *See also* FAC ¶¶ 140-142, 155-157 (the representations are material and likely to influence
    reasonable customers).

24  [11] McAfee's reliance on the treatment of different representations in other cases is misplaced.  For

25  example, that this Court, in *Cullen v. Netflix, Inc.*, 2013 U.S. Dist. LEXIS 4246 (N.D. Cal.
    Jan. 10, 2013), found the representations there about subtitles not misleading, says nothing about

26  the completely different representations and conduct here.

27  [12] Plaintiff also notes that there is a tension between McAfee, on the one hand, arguing the slash-
    through prices represent regular prices for the products being advertised, and, on the other hand,

28  suggesting Auto-Renewal is a premium service that is different from manual purchases or
    renewals (*see* Mot. at 8 n.4).

PLAINTIFF'S OPP. TO MOTION TO DISMISS FAC;
CASE NO. 5:14-CV-00158-EJD

told Plaintiff the slash-through price represented *not* the price Plaintiff would have had to pay if he made his purchase on a different day within a reasonable time, but rather was only a premium price that McAfee was charging only for Auto-Renewal.  McAfee never told Plaintiff the supposed "savings" were off of a premium Auto-Renewal-only price that Plaintiff could not possibly have paid for his initial purchase.  The fact that McAfee *internally* rationalizes its conduct the way it does, did not affect what Plaintiff reasonably expected based on what he was told.

McAfee's citation to the practices of *other businesses*, to try to foreclose Plaintiff from pursuing his reference price claims here, is misguided.  Plaintiff's claims here will turn on whether *McAfee's own representations* are false, likely to mislead customers, and/or directly violate the specific prohibition of section 17501.  That one business's conduct may be deceptive, does not mean that a second business's conduct is only deceptive if it is identical to or "as bad as" that of the first business.  *See American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698-699 (1935) ("in searching for a precise precedent, an equity court must not lose sight, not only of its power, but of its duty to arrive at a just solution of the problem.").  The protective scope of the UCL and FAL are not restricted and defined by the allegations of misconduct in three cases.  That said, the nature of the misconduct alleged here is substantially the same as the examples McAfee cites—a business advertising reference prices and corresponding "savings" to mislead customers into believing they are getting bargains, to create urgency to buy, and to drive up demand, while consistently offering the products in question for prices lower than the reference prices.  The cases cited by McAfee do *not* stand for the proposition that a business may mislead customers in this manner as long as it has a rationalization for the reference prices advertised.  Nor do they support the proposition that McAfee's charging of premium prices under Auto-Renewal render McAfee's representations non-misleading as a matter of law, or render the Auto-Renewal-only prices "prevailing prices" for the products under section 17501.  Resolving these claims will require factual determinations that should be made after discovery and on a full record regarding McAfee's practices and their likely impact on consumers, not at the pleading stage by looking at the practices of another business.

### 3.    **Plaintiff Adequately Pleads "Unfair" and "Unlawful" Practices.**

Plaintiff also pleads that McAfee's reference price practices constitute "unfair" practices under the UCL.  Under the "balancing" test, Plaintiff alleges that McAfee has engaged in immoral, unethical, and unscrupulous practices by deliberately misleading customers in order to artificially increase demand for McAfee Software and get customers to pay more than they otherwise would.  FAC ¶ 146.  McAfee's conduct caused Plaintiff and numerous other customers to pay substantial additional sums, with no counter-veiling utility.  FAC ¶ 147.  Plaintiff's reference price claims are also sufficiently "tethered" to California legislative policy.  McAfee's alleged practices run contrary to the policy codified in section 17501, FAC ¶¶ 143-144, and are also contrary to the policy and spirit of Cal. Civ. Code § 1770(a)(13).  FAC ¶ 144.[13]  Finally, Plaintiff's allegations of McAfee's section 17501 violations are sufficient to plead "unlawful" practices under the UCL.  FAC ¶ 138.

### 4.    **Plaintiff Has Standing to the Pursue These Claims.**

The Court's prior assessment regarding Plaintiff's standing to pursue these claims (Dkt. 40 at 14) was correct.  Plaintiff clearly alleges he was injured as a result of McAfee's slash-through price representations by "by paying more for his McAfee Software subscription than he otherwise would have paid, and being denied the discount and product value he was promised."  FAC ¶¶ 67, 136.  These forms of injury have been recognized by the California Supreme Court as creating standing under the FAL and UCL, and have specifically been held to be sufficient in the context of a reference price claim.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323, 330 (2011) ("There are innumerable ways in which economic injury from unfair competition may be shown," including "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have"; standing where plaintiff alleges he "was made to part with more money than he…otherwise would have been willing to expend"); *Brazil v. Dell Inc*., 2010 U.S. Dist. LEXIS 137616, *9-10 ("Plaintiffs have alleged that Dell falsely represented that the value of the computers, and have also alleged that they would not have paid as much if the representations

---

[13] Though the Court held that the CLRA does not directly apply, Cal. Civ. Code § 1770(a)(13) demonstrates the California Legislature's strong policy interest in protecting consumers from the very sort of "misleading statements of fact" regarding price reductions that are alleged here.

1    about discount not been made. Plaintiffs have alleged that they did not receive the benefit of their

2    bargain; their UCL and FAL claims therefore survive").  Moreover, as alleged, McAfee's slash-

3    through price representations drove up demand for its software, allowing McAfee to charge

4    inflated prices to Plaintiff and other customers, FAC ¶ 135, further establishing standing.  *Brazil*,

5    2010 U.S. Dist. LEXIS 127616, * 10.[14]

6         McAfee's other arguments (Mot. at 11-12) do not concern standing, but rather concern the

7    "wholly distinct" issues of whether Plaintiff is entitled to restitution and how such restitution

8    would be measured.  *See Kwikset*, 51 Cal. 4th at 335-37 ("To make standing under section 17204

9    dependent on eligibility for restitution under section 17203 would turn the remedial scheme of the

10    UCL on its head.").  While the FAC only seeks injunctive relief for the two reference price claims

11    (Counts V and VI), and while there is no reason the Court would need to resolve the proper

12    method of measuring restitution on a motion to dismiss in any event,[15] Plaintiff notes that

13    McAfee grossly misstates how restitution may be measured under the UCL and FAL.  While the

14    difference between amount paid and value received is certainly *an* accepted measure that makes

15    sense in some cases (*e.g.*, in the labeling cases that McAfee cites), the UCL and FAL by their

16    terms empower courts with broad power to award restitution of any amounts "which may have

17    been acquired by means of" the misconduct at issue.  Cal. Bus. & Prof Code §§ 17203, 17535;

18    *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 450-452 (1979) ("[T]he Legislature obviously

19    intended to vest the trial court with broad authority to fashion a remedy that would effectively

20    [prevent prohibited practices] and deter the defendant, and similar entities, from engaging in such

21

22    [14] McAfee's suggestion that Plaintiff can only have standing if he would not have purchased
AntiVirus Plus at all but for McAfee's misconduct, or that he is required to allege the software is

23    available at a lower price from another seller, is directly at odds with *Kwikset* and its progeny,
which recognize numerous types of injury that are sufficient to confer UCL and FAL standing,

24    including the types pled here.  *See Kwikset*, 51 Cal. 4th at 335-37; *Hinojos*, 718 F.3d at 1104

25    (standing where customer alleges they paid more than they otherwise would have paid).
Moreover, while not necessary, Plaintiff here *does* allege other retailers offered McAfee's

26    software at lower prices than McAfee.  FAC ¶ 58.

27    [15] The decisions that McAfee cites regarding restitution arose in the context of class certification
motions, not motions to dismiss.  *See Nilon v. Natural-Immunogenics Corp.*, 2013 U.S. Dist.

28    LEXIS 141728 (S.D. Cal. Sep. 30, 2013); *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist.
LEXIS 74234 (N.D. Cal. May 30, 2014); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009).

1   practices in the future.").  The Ninth Circuit has specifically stated that "the difference between

2   what a plaintiff actually paid and what he would have paid had the product been truthfully

3   advertised" would be an appropriate restitution measure in a reference price case.  *Hinojos*, 718

4   F.3d at 1105 n.6.[16]

5                        **5.   Plaintiff's Request for Injunctive Relief is Proper.**

6          McAfee argues that Plaintiff cannot pursue injunctive relief for these claims because the

7   FAC does not say "he has any intention of purchasing a McAfee software subscription in the

8   future."  McAfee's argument should be rejected for the same reasons as its identical argument

9   regarding injunctive relief for Plaintiff's Auto-Renewal claims.  *See supra* section III.B.4.

10         The McAfee Software products at issue have not been discontinued, nor has McAfee's use

11  of false and misleading reference prices in its advertising.  FAC ¶¶ 105, 121; *Pratt*, 2014 U.S.

12  Dist. LEXIS 46409 at *30-31.  Moreover, Plaintiff has never suggested he did not like the

13  McAfee Software he purchased or would not purchase McAfee Software again.  Plaintiff's claim

14  for injunctive relief should be determined only once the factual record has been developed.  *Id.*

15  Nor should the fact that Plaintiff has now learned he was deceived by McAfee's disqualify him

16  from seeking injunctive relief on behalf of himself and the Class  *See Lanovaz*, 2014 U.S. Dist.

17  LEXIS 1639 at *30-31; *Koehler*, 2012 U.S. Dist. LEXIS 176971 at *15-17.

18  **IV.   CONCLUSION**

19         For the foregoing reasons, McAfee's motion should be denied in its entirety.

20

21

22

23

24

25

---

26  [16] If McAfee's hyper-narrow view of UCL restitution were the law, it would allow defendants to
lie about discounts with monetary impunity as long as the "value" of the product matches the

27  falsely "discounted" price, even if the result were customers parting with more money, and the

28  defendant using its lies to make more money, than they otherwise would have.  That would turn
section 17501, and California false advertising law in general, on their head.

PLAINTIFF'S OPP. TO MOTION TO DISMISS FAC;
                                          CASE NO. 5:14-CV-00158-EJD

1

2     Dated:  November 4, 2014                  Respectfully submitted,

3                                              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

4
                                              By:    /s/ Roger N. Heller
5                                                    Roger N. Heller

6                                             Michael W. Sobol
                                              msobol@lchb.com
7                                             Roger N. Heller
                                              rheller@lchb.com
8                                             LIEFF CABRASER HEIMANN & BERNSTEIN LLP
9                                             275 Battery Street, 29th Floor
                                              San Francisco, CA  94111
10                                            Telephone:  (415) 956-1000
                                              Facsimile:  (415) 956-1008
11
                                              Daniel M. Hattis
12                                            dan@hattislaw.com
                                              Kirill M. Devyatov
13                                            HATTIS LAW
                                              2300 Geng Road, Suite 200
14                                            Palo Alto, CA 94303
                                              Telephone:  (650) 980-1990
15

16                                            *Attorneys for Plaintiff*

17    1204026.1

18

19

20

21

22

23

24

25

26

27

28