Daniel F. Katz (*pro hac vice*)
David S. Kurtzer-Ellenbogen (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
dkatz@wc.com
dkurtzer@wc.com

Michael F. Donner (SBN 155944)
Ellen A. Cirangle (SBN 164188)
LUBIN OLSON & NIEWIADOMSKI LLP
Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, CA  94111
Telephone:  (415) 981-0550
Facsimile:  (415) 981-4343
mdonner@lubinolson.com
ecirangle@lubinolson.com

Attorneys for Defendant
McAFEE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM WILLIAMSON,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>McAFEE, INC.,<br><br>　　　　　Defendant. | Case No. 5:14-cv-00158-EJD<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT McAFEE, INC. TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 9(b), 12(b)(6)]<br><br>Date:  March 5, 2015<br><br>Time:  9:00 a.m.<br><br>Judge:  Hon. Edward J. Davila |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ...................................................................................................................................... 2

I. PLAINTIFF'S REFERENCE PRICE CLAIMS FAIL AS A MATTER OF LAW. ............ 2

    A. McAfee Did Not Advertise a False or Misleading Reference Price. ...................... 2

    B. Plaintiff's Arguments Are Unavailing. ................................................................... 2

    C. Plaintiff Has No Claim Under the UCL "Unfair" or "Unlawful" Prongs. ............... 5

    D. Plaintiff Has Not Alleged Any Cognizable Injury. .................................................. 6

    E. Plaintiff Has Not Alleged Any Cognizable Claim for Injunctive Relief. ................ 8

II. PLAINTIFF'S UCL AND FAL CLAIMS BASED ON McAFEE'S AUTO-RENEWAL PRICING FAIL AS A MATTER OF LAW. ................................................................... 9

    A. McAfee's Auto-Renewal Advertising Was Not False or Misleading. ..................... 9

    B. McAfee's "Unfair" and "Unlawful" Prong Claims Fail as a Matter of Law. ......... 12

    C. Plaintiff Has No Cognizable Claim for Injunctive Relief. ..................................... 12

III. PLAINTIFF DOES NOT ALLEGE A COGNIZABLE CLAIM UNDER THE CALIFORNIA AUTO-RENEWAL STATUTE. ................................................................ 12

IV. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED. ........................... 13

    A. McAfee Did Not Waive Its Arguments. ................................................................ 13

    B. Plaintiff's Failure To Provide Pre-Suit Notice Bars His Claim. ............................ 13

    C. Count I Fails To State a Breach of Contract Claim. ............................................. 15

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011).................................................................13, 14

*Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ..........................................................................................................................................7

*Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014).....................................................................................................................15

*Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2013 WL 5487420 (N.D. Cal. Sept. 30, 2013)..................................................................................................................13

*Circle Click Media LLC v. Regus Management Group LLC*, No. 12-04000 SC, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013) ....................................................................11

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ............................................................3

*Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ........................................................................................................................10

*Davis v. Apperience Corp.*, No. C 14-00766WHA, 2014 WL 5528232 (N.D. Cal. Oct. 31, 2014)......................................................................................................................13

*Davis v. Capitol Records, LLC*, No. 12-cv-1602 YGR, 2013 WL 1701746 (N.D. Cal. Apr. 18, 2013)..................................................................................................................12

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012).......................................................10

*Delarosa v. Boiron, Inc.*, No. SACV10-1569-JST, 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012)......................................................................................................................9

*Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2012 WL 43649 (N.D. Cal. Jan. 9, 2012) ........................................................................................................................11

*Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976)......................14

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................................10, 11

*Girard v. Toyota Motor Sales, U.S.A. Inc.*, 316 F. App'x 561 (9th Cir. 2008) .............................10

*Gundy v. Cal. Dep't of Corr. & Rehab.*, No. 1:12-CV-01020-LJO, 2013 WL 522789 (E.D. Cal. Feb. 11, 2013), *report and recommendation adopted*, 2013 WL 789096 (E.D. Cal. Mar. 1, 2013) .......................................................................................13

*Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014) ..........................................................................................................15

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) .................................................................7

1    *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013) .................................. 3

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................................. 15

*Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................................................................................................... 8

*Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ........................................................................................................................... 8

*Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ............................................................................................................... 7

*Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13, 2013) .............................................................................. 8, 9

*McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13-02032-VAP(SPx), 2014 WL 324008 (C.D. Cal. Jan. 29, 2014) ............................................... 10

*O'Connor v. Uber Techs., Inc.*, -- F. Supp. 2d --, No. C-13-3826 EMC, 2014 WL 4382880 (N.D. Cal. Sept. 4, 2014) ............................................................................... 15

*Pratt v. Whole Foods Market California, Inc.*, No. 5:12-CV-05652-EJD, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ................................................................................. 9

*Rahman v. Mott's LLP*, No. CV13-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .................................................................................................................................. 8

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ............................ 12

*Turner v. Tierney*, No. C 12-6231 MMC, 2013 WL 2156264 (N.D. Cal. May 17, 2013) ........................................................................................................................... 15

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) .................................................. 8

*Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) .................................................. 1

*Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 SI, 2013 WL 1820002 (N.D. Cal. Apr. 30, 2013) ......................................................................................................... 13

**STATE CASES**

*Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545 (2011) ..................................................... 7

*Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217 (2013) ................................................................ 11

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010) ........................................................................... 6

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996) ........................................................... 14

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ................................................................. 6, 7, 8

**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code § 17200 *et seq*. ...................................................................................... passim

Cal. Bus. & Prof. Code § 17500 *et seq*. ...................................................................................... passim

Cal. Bus. & Prof. Code § 17600 *et seq*. ...................................................................................... passim

Cal. Com. Code § 2607 ................................................................................................................. 14, 15

Cal. Com. Code § 2714 ....................................................................................................................... 14

# INTRODUCTION

Plaintiff asserts that McAfee's motion to dismiss raises "central factual questions" that "are properly resolved on a full record, not a motion to dismiss." Opposition (Dkt. 54) ("Opp.") at 2. But Plaintiff's own factual allegations "establish that he cannot prevail" on his claims. *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

Under settled law and FTC Guidance that Plaintiff never addresses—let alone disputes—an advertised reference price is not false as a matter of law if it is the price actually paid by a substantial number of consumers. *See* McAfee's Opening Br. (Dkt. 48) at 8–9. Plaintiff's allegations establish that McAfee's advertised $49.99 regular price for AntiVirus Plus was not false or misleading. The Amended Complaint alleges that McAfee "consistently" charges all auto-renewal subscribers the advertised $49.99 regular price. Am. Compl. ¶¶ 3, 53–54, 131. And Plaintiff alleges that McAfee is "heavily reliant upon the Auto-Renewal program and the massive amounts of revenue it receives from customers through the program." *Id.* ¶ 22. Plaintiff's allegations establish that McAfee properly advertised $49.99 as its regular price. The Amended Complaint "plead[s] [Plaintiff] out of court" on his reference price claims (Counts V and VI). *Weisbuch*, 119 F.3d at 783 n.1 (internal quotation marks omitted).

Because McAfee's reference prices are admittedly supported by substantial sales, Plaintiff's claims based on McAfee's auto-renewal pricing (Counts II and III) fail as well. Plaintiff asserts that McAfee falsely represents "that there is no cost disadvantage to Auto-Renewal, as compared to other options for renewal." Opp. at 1. But that is Plaintiff's characterization, not McAfee's actual representation. The facts alleged in the Amended Complaint establish that McAfee accurately represented that the lower prices advertised on McAfee's website were discounts from its $49.99 regular price. McAfee clearly informed Plaintiff in the EULA that, as an auto-renewal customer, he was not eligible for discounted pricing. Ex. A to Am. Compl. ¶ 14. A reasonable consumer would not, as a matter of law, be deceived by McAfee's representations concerning auto-renewal pricing.

Plaintiff's claim under the California Auto-Renewal Statute (Count IV) is not cognizable either. Plaintiff acknowledges in the Amended Complaint that McAfee made disclosures to him

regarding auto-renewal pricing at the time of his enrollment in the auto-renewal program. Am. Compl. ¶¶ 64–65, 113. His allegation that those disclosures were "false and misleading" is erroneous as a matter of law and does not state a claim under the Auto-Renewal Statute in any event. Finally, Plaintiff's admitted failure to provide the pre-filing notice required by California law precludes his breach of contract claim (Count I).

## ARGUMENT

### I. PLAINTIFF'S REFERENCE PRICE CLAIMS FAIL AS A MATTER OF LAW.

#### A. McAfee Did Not Advertise a False or Misleading Reference Price.

McAfee demonstrated in its opening brief that Plaintiff's reference price claims under the FAL and UCL (Counts V and VI) fail as a matter of law for two critical reasons: (1) an advertised reference price is not false or misleading if it is a price at which McAfee makes substantial sales to real customers and (2) Plaintiff's factual allegations establish that McAfee made substantial sales of AntiVirus Plus at the advertised reference price of $49.99.

Plaintiff has no response to either of these points. He never denies that the relevant legal question is whether McAfee made substantial sales of AntiVirus Plus at its advertised regular price; nor does he cite a single case contradicting the case law and FTC Guidance cited by McAfee on this point. *See* Dkt. 48 at 8–9. Plaintiff also fails to confront the allegations in his Amended Complaint that demonstrate that McAfee made substantial sales of AntiVirus Plus at the advertised $49.99 regular price. *See* Am. Compl. ¶¶ 3, 53–54, 131. Plaintiff never alleges that McAfee's website is its exclusive or primary point of sale or that $49.99 is an illusory or fictitious price that no McAfee customer actually pays. Because the allegations in the Amended Complaint establish that McAfee's advertised $49.99 regular price was not false or misleading as a matter of law, the Court should dismiss Plaintiffs' reference price claims with prejudice.

#### B. Plaintiff's Arguments Are Unavailing.

Plaintiff's arguments do nothing to salvage his claims.

*First*, Plaintiff claims that McAfee violated section 17501 of the FAL by "'advertising prices as *former* prices of McAfee Software when such prices were not the prevailing prices within the three months next preceding the publication of the advertisement.'" Opp. at 19

(quoting Am. Compl. ¶ 153) (emphasis added). But Plaintiff has not alleged a cognizable violation of section 17501. The Amended Complaint alleges that McAfee advertised that $49.99 was its *regular* price for AntiVirus Plus, not a *former* price. Indeed, the Amended Complaint includes a screenshot from McAfee's website that contains McAfee's actual representation: "[s]ave $15.00 off the *regular price of $49.99*." Am. Compl. ¶ 130 (emphasis added).

Moreover, Plaintiff specifically alleges that the representation that McAfee made *to him*—the only representation on which he allegedly relied and on which he could predicate a claim[1]—was that "its *regular selling price* for a one-year subscription to McAfee AntiVirus Plus was $49.99, and that the $29.99 offered to Mr. Williamson that day reflected a discount of $20 from the purported *regular price*." *Id.* ¶ 61 (emphases added); *accord id.* ¶¶ 62–63 (alleging that McAfee represented to Plaintiff that $49.99 was its "*regular selling price*" and "*regular price*" for AntiVirus Plus) (emphases added). The Court should not credit Plaintiff's conclusory allegations regarding McAfee's purported advertising of "former" prices, Opp. at 19, when Plaintiff's allegations about the representation made *to him*—and the actual McAfee screenshot copied verbatim in the Amended Complaint—directly contradict his conclusory claims. *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012) ("[T]he court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.").

*Second*, Plaintiff asserts that McAfee "consistently offer[s] to all customers" and "everyone" prices lower than $49.99 for AntiVirus Plus, Opp. at 3; *accord id.* at 6, 9, and that McAfee charges auto-renewal customers "premium prices." *E.g.*, Opp. at 3, 8, 9, 10, 12 n.3, 19, 21, 22. But the Amended Complaint does not allege that "the products in question are consistently offered to *all* customers at prices that are lower than the advertised slash-through prices." Opp. at 3, 6 (emphasis added). Rather, the Amended Complaint alleges that all auto-renewal customers—a very large portion of McAfee's business—are consistently offered, and consistently pay, the advertised regular price of $49.99. Am. Compl. ¶¶ 3, 53–54, 131. And the

---

[1] Plaintiff cannot predicate his claim on alleged false representations that he never read or relied upon. *See* Order (Dkt. No. 40) at 11 (dismissing fraud-based claims based on Plaintiff's failure to allege "reliance on any representations made particularly to him"); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013).

EULA appended to the Amended Complaint makes clear that McAfee told its customers that auto-renewal customers will *not* be offered discounted or promotional pricing. *Id.* Ex. A ¶ 14.

More importantly, Plaintiff's arguments ignore the relevant legal question, which is whether the Amended Complaint acknowledges that McAfee made substantial sales of AntiVirus Plus at the advertised regular price of $49.99. The answer to that question is yes. Plaintiff does not cite a single case holding that a company's advertised regular price is false or misleading when a substantial number of its customers *actually paid that price*. Nor does Plaintiff cite a single case holding that a discounted price advertised on a website—a single point of sale—is a company's regular price where that company makes substantial sales at its advertised regular price through a different point of sale (here, McAfee's auto-renewal program). And Plaintiff fails to cite a single case holding that auto-renewal customers are not real customers or that the prices that auto-renewal customers pay are irrelevant for determining whether a substantial number of customers pay the advertised regular price. Plaintiff does not (and cannot) dispute that he alleges that (1) McAfee's auto-renewal customers consistently pay $49.99 for AntiVirus Plus and (2) auto-renewal customers constitute a very significant portion of McAfee's business. Am. Compl. ¶¶ 3, 22, 53–54, 131. As a matter of law, those allegations are fatal to Plaintiff's reference price claims.[2]

*Third*, Plaintiff's claim that McAfee's advertised regular prices are false because McAfee's suggested MSRPs for *other retailers* "are lower than the prices that McAfee charges Auto-Renewal customers for the same products," Am. Compl. ¶ 57; Opp. at 6, 20, is a red herring. The issue here is whether McAfee falsely advertised that *McAfee's* regular price for AntiVirus Plus is $49.99; the prices that retailers other than McAfee charge (and McAfee's suggested pricing to those retailers) are irrelevant to whether McAfee falsely advertised its own regular price. Plaintiff limits his purported reference price class to persons who purchased

---

[2] Plaintiff also fails to cite a single case in support of his contention that McAfee had a duty to state that $49.99 was a purported "premium price that McAfee was charging only for Auto-Renewal." Opp. at 22. To the contrary, under the governing legal standard, McAfee properly advertised $49.99 as its regular price where, as Plaintiff alleges, numerous real McAfee customers actually paid that price.

McAfee software *from McAfee*. *See* Am. Compl. ¶ 70. The relevant legal question is whether the Amended Complaint alleges facts showing that McAfee made substantial sales at its advertised regular price—not the pricing suggested to retailers.

*Fourth*, Plaintiff's contention that he personally was misled into believing that he would save $20 by purchasing AntiVirus Plus for $29.99 (Opp. at 21–22) cannot save his claims. The test for whether McAfee's reference price advertising was false or misleading is objective, not subjective, and is based on whether a reasonable consumer would be deceived or misled. *See* note 10, *infra*. McAfee's alleged representation to Plaintiff that $29.99 was a $20 discount from McAfee's regular price was not false or misleading as a matter of law because $49.99 was, by Plaintiff's own admission, the price paid by a very substantial number of McAfee customers.

*Fifth*, Plaintiff's assertion that McAfee's advertising "was designed to create a false sense of urgency for consumers to purchase and to increase demand for its products," Opp. at 3, fails as a matter of law. Plaintiff does not allege that McAfee represented that the discounted price it offered to Plaintiff was only available for a limited time. Instead, Plaintiff alleges that McAfee represented that the price offered to him was $20 less than its regular $49.99 price. Am. Compl. ¶ 61. That representation was not false or misleading as a matter of law, as discussed above; Plaintiff alleges no facts to support a claim that McAfee created "a false sense of urgency."

*Finally*, the Court should reject Plaintiff's last-ditch plea that "[r]esolving these claims will require factual determinations that should be made after discovery and on a full record . . . ." Opp. at 22. Plaintiff's claims should be dismissed because the facts alleged in the Amended Complaint conclusively establish that Plaintiff has no cognizable claim for relief based on McAfee's reference price advertising. Plaintiff should not be permitted to proceed to costly and time-consuming discovery on claims that fail as a matter of law.

    **C.**    **Plaintiff Has No Claim Under the UCL "Unfair" or "Unlawful" Prongs.**

Plaintiff's reference price claims under the UCL "unfair" and "unlawful" prongs are based on the same allegations underlying his claims under the FAL and UCL "fraudulent" prong—that McAfee falsely advertised $49.99 as its regular price for AntiVirus Plus, *see* Am. Compl. ¶¶ 137– 38, 143–47—and fail for the same reasons. Plaintiff's "unlawful" prong claim also fails because

he does not allege any cognizable violation of the FAL—the only statutory violation he alleges with respect to his reference price claims. *See id.* ¶ 138. Because McAfee's reference price advertising complied with FTC Guidance and California law, McAfee did not, as a matter of law, violate either the "unfair" or the "unlawful" prong of the UCL.

### D. Plaintiff Has Not Alleged Any Cognizable Injury.

Under the FAL and UCL, a plaintiff must have "lost money or property to have standing to sue" and must "demonstrate some form of economic injury." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011) (internal quotation marks omitted). Plaintiff has not alleged any facts to support a claim that he lost money or property, or suffered economic injury, as a result of his purchase of AntiVirus Plus for $29.99.

Plaintiff admits in his Opposition that he "only seeks injunctive relief for the two reference price claims." Opp. at 24. His admission that he does not seek restitution underscores that he did not lose any money or suffer economic injury from his $29.99 purchase of AntiVirus Plus.[3] Accordingly, Plaintiff's reference price claims should be dismissed with prejudice.[4]

The allegations in the Amended Complaint also establish that Plaintiff suffered no economic injury from his $29.99 purchase of AntiVirus Plus and has no standing to pursue his reference price claims. Plaintiff received a real $20 discount when he purchased his software license because (as Plaintiff alleges) numerous other McAfee customers paid $49.99, the advertised regular price, for the identical license. Moreover, Plaintiff never alleges that he could have purchased AntiVirus Plus for less than $29.99 in October 2011;[5] nowhere alleges that

---

[3] This is not a situation in which a plaintiff asserts a viable claim for restitution that he is ultimately unable to prove. *Cf. Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788–89 (2010). Nor is it a situation in which an injured plaintiff is "ineligibl[e]" for restitution because her claim involves "a loss by the plaintiff without any corresponding gain by the defendant, such as, for example, a diminishment in the value of some asset a plaintiff possesses." *Kwikset*, 51 Cal. 4th at 336. If Plaintiff lost any money by paying McAfee $29.99 for AntiVirus Plus, McAfee would have a corresponding gain.

[4] Plaintiff's prayer for relief purports to seek restitution generally. *See* Am. Compl. at 44, Prayer for Relief (c). At a minimum, the Court should strike from the Prayer for Relief any claim for restitution with respect to Plaintiff's reference price claims based on his admission that he is not seeking restitution with respect to those claims.

[5] Plaintiff alleges that he purchased his initial AntiVirus Plus subscription on October 8, 2011. Am. Compl. ¶¶ 60–63. His assertion that he "allege[s] other retailers offered McAfee's software

AntiVirus Plus was not worth the $29.99 he paid; and never alleges that he would not have purchased AntiVirus Plus if he had known about the purported false discount. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011) (plaintiff lacked standing under UCL and FAL where she "did not allege that she could have obtained a bundled transaction for a new cellular telephone—the telephone that she selected—at a lower price from another source" and did not allege that she would not have purchased the product but for the alleged misrepresentation).

The cases cited by Plaintiff do not support his contention that he has alleged a cognizable economic injury. In *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387837 (N.D. Cal. Dec. 21, 2010) (Opp. at 23–24), the plaintiffs alleged that they suffered injury where one "paid $1.49 in excess of the true regular sales price for the Dimension Desktop" and the other "paid $157.66 more for the Inspiron Notebook than the average actual sales price for that model." *Id.* at *1. Here, in sharp contrast, Plaintiff does not allege that $29.99 exceeded the true regular sales price for AntiVirus Plus at the time of his purchase. Thus, Plaintiff does not allege that he lost any money by paying $29.99 for his software license.[6] In both *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (Opp. at 24 n.14), and *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), the plaintiffs stated a claim for economic injury where they alleged that they "would not have purchased the goods in question absent th[e] [alleged] misrepresentation." *Hinojos*, 718 F.3d at 1105; *see also Kwikset*, 51 Cal. 4th at 327–28 (plaintiffs alleged they "would not have bought the locksets otherwise"). Here, Plaintiff never alleges that he would not have purchased AntiVirus Plus absent the alleged false discount. Plaintiff has not stated a cognizable claim for

---

at lower prices than McAfee," Opp. at 24 n.14, cites paragraph 58 of the Amended Complaint, which references a price offered on Amazon.com for McAfee *Internet Security*, not AntiVirus Plus. *See* Am. Compl. ¶ 58.

[6] This is not a case involving a false label, where a plaintiff may allege economic injury by alleging that she paid a premium price based on misrepresentations about the quality of goods she purchased. *See Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 46822, at *1, *9 (N.D. Cal. Jan. 6, 2014) (Opp. at 14 n.6) (plaintiff had standing where she "alleges that she paid a premium for Twinings' green and black tea and would not have purchased them but for Twinings' unlawful labeling"). Plaintiff does not allege that McAfee made any misrepresentation about the quality of AntiVirus Plus; nor does he allege that he paid a premium price when he purchased AntiVirus Plus for $29.99.

economic injury resulting from his $29.99 purchase of AntiVirus Plus, and his reference price claims should be dismissed.

### E. Plaintiff Has Not Alleged Any Cognizable Claim for Injunctive Relief.

Plaintiff's claims for injunctive relief under the FAL and UCL also fail as a matter of law because he lacks standing to assert them. First, Plaintiff must allege that he suffered a cognizable economic injury in order to have standing to assert a claim under the FAL or UCL for injunctive relief. *See Kwikset*, 51 Cal. 4th at 337 ("[T]he availability of an injunction depends on standing to sue[.]"). Because, as discussed above, Plaintiff does not allege any cognizable economic injury resulting from his $29.99 purchase of AntiVirus Plus, he has no standing to seek injunctive relief.

Second, Plaintiff does not allege that he has any intention of purchasing AntiVirus Plus in the future. "[T]o establish standing [to seek injunctive relief], plaintiff must allege that he intends to purchase the products at issue in the future." *Rahman v. Mott's LLP*, No. CV13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (dismissing demand for injunctive relief on motion to dismiss) (collecting cases); *accord Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM (DHB), 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) (dismissing claim for injunctive relief where plaintiff did not allege any intention to purchase product in the future).[7] Plaintiff's reliance on *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) (Opp. at 14 n.6) is misplaced, as Judge Illston subsequently "decline[d] to follow" her own earlier analysis in *Koehler* on this issue. *See Rahman*, 2014 WL 325241, at *10 n.9. To the extent that certain cases (*see* Opp. at 14 n.6) "purport to create a public-policy exception to the standing requirement [for injunctive relief based on the pro-consumer nature of California law], that exception does not square with Article III's mandate." *Mason*, 2013 WL 1969957, at *5 (internal quotation marks omitted). "[A]s important as consumer protection is, it is not within the Court's

---

[7] *See also Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013) ("Because Plaintiffs fail to identify any allegation in their Complaint that suggests that they maintain an interest in purchasing the diapers or wipes, or both, in the future, Plaintiffs have not sufficiently alleged standing to pursue injunctive relief"; dismissing demand for injunctive relief); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 623 (N.D. Cal. 2011) (plaintiff lacked standing to seek injunctive relief where plaintiff did not allege he would purchase product again, even though defendant continued alleged false advertising).

authority to carve out an exception to Article III's standing requirement to further the purpose of California consumer protection laws." *Id.*[8]

Plaintiff does not dispute that (1) his last alleged purchase of AntiVirus Plus was in 2012, Am. Compl. ¶ 66, and (2) he does not allege any intention of purchasing a McAfee subscription in the future. Accordingly, Plaintiff has no standing to seek injunctive relief under the FAL or UCL (the only relief he seeks) and his reference price claims should be dismissed with prejudice.

## II. PLAINTIFF'S UCL AND FAL CLAIMS BASED ON McAFEE'S AUTO-RENEWAL PRICING FAIL AS A MATTER OF LAW.

### A. McAfee's Auto-Renewal Advertising Was Not False or Misleading.

Plaintiff's claims that McAfee made false or misleading representations concerning auto-renewal pricing, in violation of the UCL and FAL (Counts II and III), fail as a matter of law based on the factual allegations in the Amended Complaint. Plaintiff's allegations also establish that he suffered no cognizable injury when he was charged $49.99 for the auto-renewal of his subscription—the same regular price paid by numerous other McAfee customers.

Plaintiff's claims based on McAfee's auto-renewal pricing are based on a single allegedly-false representation: that "when his AntiVirus Plus subscription was automatically renewed under Auto-Renewal, McAfee would charge him 'the product price current at the time of auto-renewal' or substantially similar language." Am. Compl. ¶ 64.[9] Plaintiff argues that he has stated a "plausible" claim of falsity, which suffices at the pleading stage. Opp. at 9. But Plaintiff's claim rests on the contention that McAfee's "true" product price for AntiVirus Plus

---

[8] In *Pratt v. Whole Foods Market California, Inc.*, No. 5:12-CV-05652-EJD, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014), the Court denied a motion to dismiss a claim for injunctive relief where the plaintiff alleged that "he stopped buying Defendants' products after learning they were mislabeled." *Id.* at *9. But this case involves "a different situation than one involving a food product containing allegedly false advertising; in that circumstance, a plaintiff may indeed purchase the food in the future, once it is no longer falsely advertised." *Delarosa v. Boiron, Inc.*, No. SACV10-1569-JST, 2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012).

[9] The Amended Complaint identifies other allegedly false point-of-sale representations by McAfee regarding auto-renewal, Am. Compl. ¶¶ 39, 45, but it does not allege that Plaintiff either read them or was exposed to them. Plaintiff continues to discuss these other alleged representations in his Opposition, *e.g.*, Opp. at 9, but he cannot predicate his claim on alleged false representations that he never read or relied upon. *See* note 1, *supra*.

was not $49.99, but rather a lower price advertised as a discount on McAfee's website. Opp. at 10–11. That claim is not plausible in light of the factual allegations in the Amended Complaint, which establish as a matter of law that McAfee properly represented that $49.99 was its regular price. *See* Part I, *supra*. The Amended Complaint also establishes that (1) the lower prices offered to non-auto-renewal customers on McAfee's website were properly advertised as discounts from the regular $49.99 price, *see id.*, and (2) the EULA informed Plaintiff that he would not receive promotional or discounted pricing as an auto-renewal customer.

Plaintiff argues that his claims should not be dismissed because "whether McAfee's representations are false" is a determination "that should be made on a full record, not at the pleading stage." Opp. at 9; *see also id.* at 2, 11. But courts dismiss UCL and FAL claims at the pleading stage when alleged false statements are unlikely to deceive a "person of ordinary intelligence." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (internal quotation marks omitted) (affirming dismissal of UCL and FAL claims).[10] Here, a reasonable consumer would not be deceived by McAfee's alleged representations as a matter of law. The Amended Complaint establishes that McAfee accurately represented that $49.99 was its regular price for AntiVirus Plus because, by Plaintiff's own admission, McAfee made substantial sales at that price. *See* Part I, *supra*. Thus, McAfee properly advertised the lower prices offered on its website as discounts from its $49.99 regular price. Plaintiff does not dispute that McAfee informed its customers in the EULA that customers on auto-renewal would not receive discounted or promotional pricing.[11]

---

[10] *See also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (affirming dismissal of FAL claim because allegedly misleading advertising "was not likely to deceive a reasonable consumer"); *Girard v. Toyota Motor Sales, U.S.A. Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) (affirming dismissal of UCL claim "because a reasonable consumer would not be misled" by allegedly misleading statements); *McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13-02032-VAP(SPx), 2014 WL 324008, at *8 (C.D. Cal. Jan. 29, 2014) (dismissing UCL claim because it was "improbable that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'" by the allegedly misleading statements); *Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 WL 140103, at *7 (N.D. Cal. Jan. 10, 2013) (dismissing UCL and FAL claims because "Plaintiff's pleadings have not met the 'reasonable consumer' standard courts use when determining whether statements that might not technically be false could be characterized as deceptive").

[11] The Court should consider the disclosures in the EULA, which was available to Plaintiff at the time of his purchase and to which he agreed, Am. Compl. ¶ 65. *See Freeman v. Time, Inc.*, 68

1  *See* Ex. A to Am. Compl. ¶ 14.  A reasonable consumer would understand that, as an auto-
2  renewal customer, she would not be offered the lower prices advertised as discounted prices on
3  McAfee's website.  A reasonable customer also would understand, based on the disclosure in the
4  EULA that auto-renewal customers will not receive discounted or promotional pricing, that a
5  lower price might be available if she elected to forgo the convenience and assured continuous
6  protection of auto-renewal and manually renew her subscription.  McAfee's advertising was not
7  deceptive as a matter of law.[12]

8       Finally, Plaintiff asserts that McAfee assured customers "that there is no cost disadvantage
9  to Auto-Renewal." Opp. at 1; *accord id.* at 4, 8.  But these are Plaintiff's characterizations, not
10  McAfee's actual alleged representations.  McAfee did not represent that there was no cost
11  disadvantage to auto-renewal.  To the contrary, the Amended Complaint establishes that McAfee
12  represented to Plaintiff he would receive the current price for AntiVirus Plus, *excluding*
13  *promotional or discount pricing*, at the time of his auto-renewal.  Ex. A to Am. Compl. ¶ 14.
14  Because McAfee's representations concerning auto-renewal pricing were not false or misleading
15  as a matter of law, and Plaintiff suffered no economic injury when he paid the same $49.99

---

F.3d 285, 290 (9th Cir. 1995) ("Any ambiguity that Freeman would read into any particular statement is dispelled by the promotion *as a whole*." (emphasis added)).

[12] Plaintiff's authorities, Opp. at 11 n.2, are readily distinguishable.  In *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217 (2013), the plaintiff alleged that Skype deceptively advertised "unlimited" calling when its plan was not unlimited.  Skype disclosed this in a document called "Fair Usage Policy," which could be reached from a link at the bottom of a web page "in a much smaller font." *Id.* at 227.  The court concluded that "[a] reasonable interpretation of the words 'fair usage policy' is that they suggest a policy to protect against misuse of the service provided.  They do not necessarily suggest to an ordinary consumer that the 'Unlimited' plan is actually limited as to the number of minutes and number of calls." *Id*.  Here, in contrast, McAfee's customer agreement is titled "End User License Agreement," plainly alerting consumers that it applies to their software license.  Moreover, McAfee customers must affirmatively accept the terms of the EULA. *See* Am. Compl. ¶ 65.  And paragraph 14 of the EULA, titled "Term and Automatic Renewal," provides clear notice that it contains information regarding auto-renewal.  In *Circle Click Media LLC v. Regus Management Group LLC*, No. 12-04000 SC, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013), the court denied a motion to dismiss because the Terms and Conditions were in "miniscule font . . . that the Court [could] barely decipher, even with the aid of a magnifying glass." *Id.* at *6 (citation omitted).  Plaintiff makes no such allegation regarding the EULA, which is in normal-sized font.  *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2012 WL 43649, at *1 (N.D. Cal. Jan. 9, 2012), involved oral representations that allegedly contradicted the terms of an agreement.  Plaintiff has not alleged any oral representations by McAfee.

regular price as numerous other McAfee customers, the Court should dismiss Counts II and III of the Amended Complaint with prejudice.

### B. McAfee's "Unfair" and "Unlawful" Prong Claims Fail as a Matter of Law.

Plaintiff's "unfair" prong claim is based on his allegation that McAfee deceived consumers concerning its auto-renewal pricing. *See* Opp. at 12; Am. Compl. ¶¶ 100, 102–103. It fails as a matter of law for the reasons set forth above. Plaintiff's "unlawful" prong claim fails because Plaintiff does not allege any cognizable statutory claim arising from McAfee's representations concerning auto-renewal. Plaintiff's breach of contract claim cannot save his "unlawful" prong claim because the breach of contract claim should be dismissed. *See* Part IV, *infra*. Moreover, Plaintiff's common law breach of contract claim is not sufficient to state a claim under the UCL "unlawful" prong. *See* Dkt. 48 at 19–20 (collecting cases).[13]

### C. Plaintiff Has No Cognizable Claim for Injunctive Relief.

Finally, Plaintiff cannot assert a claim for injunctive relief under the FAL or UCL because he does not allege that he has any interest in purchasing a McAfee software subscription or participating in the auto-renewal program in the future. *See* Part I(E), *supra*.

## III. PLAINTIFF DOES NOT ALLEGE A COGNIZABLE CLAIM UNDER THE CALIFORNIA AUTO-RENEWAL STATUTE.

Plaintiff's claim under the California Auto-Renewal Statute (Count IV) fails as a matter of law because, as discussed above, Plaintiff does not have a cognizable claim that McAfee made false or misleading representations concerning its auto-renewal pricing. Plaintiff's claim also fails because the Auto-Renewal Statute is a disclosure statute, not a fraud statute. Plaintiff admits that McAfee disclosed information to him at the time of his initial purchase concerning the price he would be charged for auto-renewal. Am. Compl. ¶¶ 64–65, 113. His claim that McAfee's disclosures were "false and misleading" is not cognizable under the Auto-Renewal Statute.

---

[13] The Ninth Circuit has held that a common law breach of contract claim is insufficient as a matter of law to state a claim under the "unlawful" prong of the UCL. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043–44 (9th Cir. 2010). The district court decision cited by Plaintiff, *Davis v. Capitol Records, LLC*, No. 12-cv-1602 YGR, 2013 WL 1701746 (N.D. Cal. Apr. 18, 2013), is not the law of this Circuit. In any event, Plaintiff does not allege a "systemic" breach of contract by McAfee, *id.* at *6, for the reasons set forth herein.

## IV. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.

### A. McAfee Did Not Waive Its Arguments.

Plaintiff asserts that McAfee has waived any new arguments concerning Plaintiff's breach of contract claim. *E.g.*, Opp. at 2, 15–16. But the Amended Complaint supersedes the original Complaint, and McAfee is entitled to advance new arguments directed to the Amended Complaint regardless of whether it could have raised those arguments in its original motion to dismiss. *See Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013) (defendant did not "waive[] its right to advance the arguments set forth in its present motion to dismiss by failing to raise them in a Rule 12 motion prior to answering the original Consolidated Complaint" because the amended complaint superseded the original complaint (emphasis added)); *Gundy v. Cal. Dep't of Corr. & Rehab.*, No. 1:12-cv-01020-LJO-MJS, 2013 WL 522789, at *6 (E.D. Cal. Feb. 11, 2013) (defendant moving to dismiss amended complaint may "raise new arguments that were previously available"), *report and recommendation adopted*, 2013 WL 789096 (E.D. Cal. Mar. 1, 2013).[14]

### B. Plaintiff's Failure To Provide Pre-Suit Notice Bars His Claim.

Despite the bold claim that "California courts have for years limited section 2607's pre-filing requirement to breach of warranty cases," Opp. at 16, Plaintiff fails to identify a single case (in California or otherwise) so holding.[15] To the contrary, as Plaintiff acknowledges, this precise argument was rejected by Judge Alsup just last month. *See Davis v. Apperience Corp.*, No. C 14-00766WHA, 2014 WL 5528232, at *5 (N.D. Cal. Oct. 31, 2014). Although Plaintiff dismisses *Davis* as "one recent, non-binding opinion," Opp. at 16, Plaintiff cannot so easily disregard the Ninth Circuit's decision in *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011), on which *Davis* relies. Instead, Plaintiff attempts to rewrite *Alvarez*, claiming that its holding

---

[14] McAfee respectfully submits that *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 SI, 2013 WL 1820002 (N.D. Cal. Apr. 30, 2013) (Opp. at 2, 15–16), erroneously applied the motion for reconsideration standard to a motion to dismiss an amended complaint, *id.* at *1 n.2, and is against the weight of authority. *See supra* & note 16, *infra*.

[15] In fact, not one of the cases relied on by Plaintiff for this supposed rule even discusses the notice requirement in connection with a breach of contract claim, much less holds that, contrary to *Alvarez*, the requirement is limited to warranty claims.

rests on a contract claim being "derivative of, or based on the same assertions as, an accompanying warranty claim." Opp. at 16.  But Plaintiff identifies no language in *Alvarez* that would support his reading; to the contrary, the plain language of *Alvarez* defeats it, as it expressly distinguishes between contract and warranty claims, and holds that the notice rule applies to both: "To avoid dismissal of a breach of contract *or* breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" 656 F.3d at 932 (emphasis added) (citation omitted).  Nor does Plaintiff address *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976), which, like *Alvarez*, concluded that the pre-filing notice requirement of California's Commercial Code applies to "any breach," *id.* at 970–71; *see also id.* at 972 (notice requirement applies to "breach of any promise").

Plaintiff likewise ignores the plain language of section 2607 of the California Code, never addressing how "*any* breach" can be read to mean "only certain breaches."  *See* Cal. Com. Code § 2607(3) (emphasis added).  As section 2714 clarifies, the nonconformity about which pre-suit notice must be provided in order to recover damages "includes not only breaches of warranties but *also any failure of the seller to perform according to his obligations under the contract*." Cal. Com. Code § 2714(1) cmt. 2 (emphasis added).  Plaintiff does not dispute that he failed to provide the requisite pre-suit notice.  Instead, relying on an Illinois federal court decision, he suggests that he may escape the pre-filing notice requirement because McAfee already was on notice due to prior customer complaints.  Opp. at 17.  But in Illinois, as elsewhere, the UCC requires "that the seller be notified that *this particular transaction* is troublesome and must be watched." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (internal quotation marks omitted); *see also Eastern Air Lines*, 532 F.2d at 972 (purpose of notice requirement is not notice of facts, "but of buyer's claim that they constitute a breach").  *Connick* held that media reports and settlements with states' attorneys general were not sufficient to satisfy the notice requirement.  675 N.E.2d at 590.  Plaintiff's vague reference to prior customer complaints, Opp. at 17, does not suffice either.

Alternatively, Plaintiff argues that notice was not required because it "would have served no purpose but to provide McAfee an opportunity to pick-off a prospective class representative."

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Opp. at 17.  But the settlement of claims (even those of a "prospective class representative") is an express purpose of the notice requirement: "The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, *and thus opens the way for normal settlement through negotiation*."  Cal. Com. Code § 2607 cmt. 4 (emphasis added).  Having failed to provide McAfee with the required notice, Plaintiff is barred from pursuing "any remedy" as to his contract claim.  *Id.* § 2607(3).

### C. Count I Fails To State a Breach of Contract Claim.

Finally, McAfee respectfully submits that Plaintiff's breach of contract claim fails as a matter of law for the reasons set forth in Parts I and II, *supra*.  McAfee complied with its contractual obligation to charge Plaintiff its current price, excluding discounted or promotional pricing, for the automatic renewal of his subscription.  The Court's Order denying McAfee's original motion to dismiss does not preclude the Court from considering this issue.[16]

### CONCLUSION

McAfee respectfully submits that the Amended Complaint should be dismissed with prejudice.

Dated:  November 25, 2014

WILLIAMS & CONNOLLY LLP

By:  /s/ Daniel F. Katz
Daniel F. Katz (*pro hac vice*)

LUBIN OLSON & NIEWIADOMSKI LLP

By:  /s/ Michael F. Donner
Michael F. Donner (SBN 155944)

COUNSEL FOR DEFENDANT McAFEE, INC.

---

[16] Contrary to Plaintiff's contention (Opp. at 18), McAfee's motion to dismiss the Amended Complaint does not merely repeat the arguments it made in its original motion to dismiss.  Nor does McAfee "ignore" Plaintiff's theory of the case.  In any event, McAfee's motion to dismiss the Amended Complaint is not treated as a motion for reconsideration.  *See, e.g., O'Connor v. Uber Techs., Inc.*, -- F. Supp. 2d --, No. C-13-3826 EMC, 2014 WL 4382880, at *3 (N.D. Cal. Sept. 4, 2014); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *7 n.2 (N.D. Cal. Jan. 15, 2014); *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *6 n.4 (N.D. Cal. Jan. 7, 2014); *Turner v. Tierney*, No. C 12-6231 MMC, 2013 WL 2156264, at *1 (N.D. Cal. May 17, 2013); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010).