UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAM WILLIAMSON, | Case No. 5:14-cv-00158-EJD (HRL) |
| Plaintiff, | **CLASS ACTION** |
| vs. | [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |
| McAFEE, INC., | |
| Defendant. | [Re: Dkt. 67] |

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. LIAISON

The parties have identified the following liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI:

| PARTY | LIAISON |
|---|---|
| Plaintiff | Roger N. Heller |
| Defendant | David S. Kurtzer-Ellenbogen |

Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format,

collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

If the parties are unable to resolve any dispute about any issue in this Order, including but not limited to any disputes regarding the lists of custodians or search terms or regarding preservation issues, they may present the issue to the Court for resolution in compliance with the Court's Standing Order re Civil Discovery Disputes.

**4. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The parties have met and conferred on multiple occasions regarding ESI and document preservation issues, and each party represents that it has taken reasonable and appropriate steps to preserve potentially relevant ESI. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created, received, or modified on or after January 1, 2004 will be preserved (the parties may agree to shorter time period(s) to apply to particular document requests or sets of document requests, or for use in conducting electronic document searches);

b) Within ten (10) days of the entry of this Order, each party shall propose lists of the types of ESI that it believes should be produced by it and the custodians (along with their job titles), or, as appropriate, the general job titles or descriptions of custodians, for whom it believes ESI should be preserved by it (e.g., "HR head," "scientist," and "marketing manager." Within ten (10) days of receiving such proposed list, each party shall propose any additions or modifications to the other party's proposed lists. The parties shall endeavor to come to an agreement regarding these issues in a timely manner, and shall add or remove ESI types during the litigation as agreed to by the parties.

c) Based on the representations of Defendant that the following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), ESI from these particular sources will not be preserved, searched, reviewed, or produced by Defendant even though they may contain relevant ESI. The parties may supplement or modify this list by agreement.

   i. "deleted," "slack," "fragmented," "free," or "unallocated" data on hard drives;

    ii. random access memory (RAM) or other ephemeral data;

    iii. on-line access data such as temporary internet files, history, cache, cookies, etc.;

    iv. data in metadata fields that are frequently updated automatically, such as last-opened dates, except as may be provided herein;

    v. instant messaging;

    vi. automatically saved versions of documents;

    vii. system or executable files (.exe, .dll, etc.);

    viii. unreadable or corrupt files (that a document may be password protected does not, standing alone, mean that it falls within this category);

    ix. data from Blackberry, iPhone or other smartphone devices where the Producing Party believes based on its standard practices that the information contained therein is expected to be duplicative of other sources (e.g., other email systems);

    x. systems no longer in use that cannot be accessed;

    xi. text messages, such as cell phone to cell phone SMS messages, and voice mail messages;

    xii. materials retained primarily for backup or disaster recovery purposes, with the exception of McAfee's 2013 yearly "snapshot" of portions of its servers that is stored on a data domain, which McAfee shall continue to preserve; and

    xiii. any other file types subsequently agreed by the Parties.

d) The parties also agree that the parties are not required to obtain or preserve a *physical* forensic image of any custodian's computer or hard drive, provided that reasonable steps are taken to preserve potentially relevant material on such custodian's computer or hard drive (excluding materials referenced in the preceding subsection). McAfee has taken such steps with respect to the custodians that it has identified as having material potentially relevant to this case, and will continue to do so as it identifies any additional such custodians going forward.

e) The parties expressly agree that the preservation obligations specified in this section shall not be construed as an agreement with respect to collection, search, or production of any document or category of ESI, and that the agreement between the parties with respect to preservation shall be without prejudice to any objection that any party may make to collection, search, or production.

5. **SEARCH**

**Custodians:** Following receipt of initial Fed. R. Civ. P. 34 requests, the producing party shall provide the requesting party with a proposed initial list of custodians whose emails

and custodial files are to be searched for responding to such requests.  The parties shall thereafter meet and confer in good faith to attempt to reach an agreement regarding the list.  The parties currently anticipate, based on the respective representations made by the parties to one another during meet and confer, that the number of custodians will not exceed 15 custodians per party, exclusive of any shared or departmental files.  Additional custodians may be added for searches by agreement of the parties or Court Order.

**Search Terms:**  Following receipt of initial Fed. R. Civ. P. 34 requests, the producing party shall provide the requesting party with a proposed initial list of search terms to be used in searching email and custodial files for responding to such requests.  The parties shall thereafter meet and confer in good faith to attempt to reach an agreement regarding the list.  The parties anticipate that the number of terms will not exceed thirty (30), and that search terms will be narrowly tailored to particular issues, including conjunctive combinations of multiple words or phrases (e.g., "computer" and "system") and narrowing search criteria (e.g., "and," "but not," or "w/x") wherever possible.  Indiscriminate terms, such as the name of software offered for subscription, or the name of a party, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.   Additional search terms may be added for further searches, and the list may be modified or supplemented, by agreement of the parties or Court Order.

**Other Files:**  Nothing in this section shall be read to obviate the need to preserve or search ESI sources besides emails and custodial files, including but not limited to shared and department level files.  The parties shall meet and confer as necessary about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.  However, conducting a search of ESI sources in accordance with this protocol and based upon the custodians and search terms agreed to by the parties or ordered by the Court (or any other agreement of the parties or Order of the Court as to a specific form or source of ESI, including but not limited to regarding shared or departmental level files) shall constitute a reasonable search for documents that satisfies the producing party's obligations

under Rule 26(b)(2) as it relates to ESI sources.  Nothing in this section shall be read to relieve the parties from producing relevant documents, subject to proper discovery requests, that the producing party is aware of, whether or not such documents are maintained in electronic format.

### 6. PRODUCTION FORMATS

Except as set forth herein, the parties shall produce documents as single page black and white tiff format files imaged at 300 dpi, Group IV compression; name each tiff file with a unique name matching the Bates number labeled on the corresponding page; and group every 1000 tiffs into a new folder.  The parties agree not to degrade the searchability of documents as part of the document production process.  The searchable, extracted text for redacted documents will be replaced with OCR text.  For documents originally created in color, the requesting party may, after reviewing such documents and as reasonably necessary, request that such documents be produced in compressed .JPG or similar format files.

#### Image Load File

Documents will be produced with appropriate accompanying Concordance load files. The Concordance load files will contain the path to the extracted text files or the path to the OCR text file, the custodian of the document, the Bates number of the document, an indication of whether the document is redacted, and an indication of confidentiality designation. The text of the document shall not be included in the .dat file, but instead the .dat file shall include a link to the .txt file.  For images, the parties will provide .OPT (Opticon) files.

#### Document Text

For documents that were originally stored as native electronic files and which do not have redactions, the extracted, full text from the body of each document will be produced in a separate .txt file named for the beginning Bates number of the document.  For documents that were originally stored as native electronic files and which have redactions, OCR text will be produced from the redacted image(s) associated with each document as a separate .txt file for each document named for the beginning Bates number of the document. The text of the

document shall not be included in the .dat file, but instead the .dat file shall include a link to the .txt file. Any redacted material should be clearly labeled to show the redactions on the tiff image.

**Production of ESI in Native Format**

All non-privileged/unredacted files created by spreadsheet programs (e.g., Microsoft Excel) as well as other structured data coming from databases (e.g., Access, SQL) or comma delimited files (e.g., .csv) shall be produced in native format with a corresponding TIFF image of a slip sheet identifying the Bates stamp of the native file. In addition, all media files (e.g., video, .mpg, audio) shall be produced in native format with a corresponding TIFF image of a slip sheet identifying the Bates stamp of the native file. The producing party shall provide a relative file path or link to the native file in the production load file.

Other than as specifically set forth herein, wholesale requests for production of all files, or all files of a certain type, in native format shall be avoided. A receiving party may request that particular documents, including but not limited to particular documents created by PowerPoint or other presentation programs, be produced in native format, provided that such requests are reasonable. The parties agree to cooperate to make any and all native productions reasonable and limited to avoid undue burden.

No ESI produced in native format shall be manipulated, intentionally or otherwise, to change the appearance or substance of the document prior to its collection. ESI produced in native format should be named with the Bates number of the first page of the corresponding tiff production of the document (e.g., "ABC00001.xls," "ABC00001.ppt"). The original file name shall be maintained in a way such that a party will be able to search for the original file name.

**Large Data Productions.**

With respect to large data productions (such as the production of customer and transactional data), the parties shall meet and confer as necessary regarding the format and logistics of the production, including as necessary conducting a call among the parties'

technical personnel.

**Hard-Copy Documents**

Any documents that exist in hard copy must be scanned and produced in the required production format.

**Meet and Confer Among the Parties' Technical Personnel**

If necessary, the parties shall conduct a meet and confer with the parties' technical personnel to ensure that the processing and format of production is in compliance with this order.

### 7. DE-DUPLICATION

Parties may de-duplicate globally (*e.g.*, across custodians) utilizing a standard, industry acceptable methodology.

The parties may use software to identify and suppress lesser inclusive email threads (i.e., email threads that are contained entirely within a subsequent email thread) and are not required to produce lesser inclusive email threads as long they are produced as part of a longer inclusive email thread. However, the parties are required to preserve all suppressed documents and to produce in their entirety all lesser inclusive emails with attachments that are not part of the more inclusive email thread, and any tangential email threads.

The parties agree that an email that includes content on the "bcc" or other blind copy field shall **not** be treated as duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining content in the email is identical. The parties will produce a single unique copy of a given e-mail message and its attachments, or standalone file, with references to each custodian/location in which a copy originally appeared as set forth in the metadata specifications below. In the case of duplicates maintained by custodians in different time zones, it is understood that the image and date/time metadata will reflect Pacific Standard Time ("PST").

With respect to logging, on a privilege log, longer inclusive email threads that a

designating party asserts are entirely privileged (*i.e.*, where all of the individual emails in the thread are claimed to be privileged), the parties shall continue to meet and confer about appropriate ways to manage the burden on the designating party of logging such entries while still providing the other party with sufficient information to evaluate the claim of privilege..

**8.   DOCUMENT METADATA**

Parties shall produce extracted metadata for each document in the form of a .dat file along with standard Concordance image load file, and include the following fields to the extent available, except that if the field contains privileged information, that privileged information may be redacted.  Any redactions for privilege reasons shall be recorded on a privilege log:

| Field | Description |
| --- | --- |
| Bates_Begin | The Bates label of the first page of the document |
| Bates_End | The Bates label of the last page of the document |
| Attach_Begin | The Bates label of the first page of a family of documents (e.g., email and attachment) |
| Attach_End | The Bates label of the last page of a family of documents |
| File Name | The filename of an attachment or stand-alone e-file |
| File Extension | The file extension of the document (e.g., .doc, .xls) |
| Subject | The subject of an email |
| Time_Zone | The time zone used to process the document |
| Sent_Date | For email, the sent date of the message |
| Sent_Time | For email, the sent time of the message |
| Received Date | For email, the date the message was received |
| Received Time | For email, the time the message was received |
| Message_ID | For email, the message ID |
| Create_Date | For efiles or attachments, the document's creation date or operating system creation date |
| Create_Time | For efiles or attachments, the document's creation time or operating system creation time |
| Modified_Date | For efiles or attachments, document's last modified date or operating system last modified date |

| Field | Description |
|---|---|
| Modified_Time | For efiles or attachments, the document's last modified time or operating system last modified time |
| Author | The author of a stand-alone efile or attachment |
| From | The sender of an email message |
| To | The recipients of an email message, in a semi-colon delimited multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited multi-value list |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited, multi-value list |
| Custodians | The custodian in whose file the document was found, and the custodians of any duplicates, in a semi-colon delimited multi-value list |
| Modified_Author | The author who last modified the document |
| MD5 | The calculated MD5 hash value of the document |
| Native_File | The file path to the location of the native file if produced natively |
| OCR/Txt Path | The relative path to the OCR/Txt Files |
| Redaction | Whether the document is redacted (Yes/No) |
| AEO_Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case |

## 9. RETENTION OF ORIGINAL DOCUMENTS

Each party agrees to retain native electronic source documents for all electronically stored information produced in this litigation. Each party agrees to use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of the original production in the event the review of such metadata becomes necessary. Notwithstanding this, each party understands and acknowledges that producing the metadata may affect some changes in the metadata itself, and agrees that any metadata change that results from production to requesting parties is permissible.

## 10. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: March 16, 2015         /s/ *Roger N. Heller*

  Roger N. Heller, Counsel for Plaintiff Sam Williamson

Dated: March 16, 2015         /s/ *David S. Kurtzer-Ellenbogen*

  David S. Kurtzer-Ellenbogen, Counsel for Defendant McAfee, Inc.

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: March 19, 2015

  Hon. Howard R. Lloyd
  UNITED STATES MAGISTRATE JUDGE

1222131.1