1   Daniel M. Hattis (State Bar No. 232141)
    HATTIS LAW
2   9221 NE 25th Street
    Clyde Hill, WA 98004
3   Telephone:  (650) 980-1990
    Facsimile: (425) 412-7171
4   dan@hattislaw.com

5
    *Attorneys for Plaintiffs*
6

7

8                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

11
    SAM WILLIAMSON, individually and on      Case No.  5:14-cv-00158-EJD
12  behalf of all others similarly situated,
                                             **DECLARATION OF DANIEL HATTIS IN**
13              Plaintiff,                    **SUPPORT OF MOTION FOR**
                                             **PRELIMINARY APPROVAL OF CLASS**
14  v.                                       **SETTLEMENT**

15  MCAFEE, INC.,
                                                Date:  August 18, 2016
16              Defendant.                       Time: 10:00 a.m.
                                                Honorable Edward J. Davila
17

18

19  SAMANTHA KIRBY, individually and on      Case No.  5:14-cv-02475-EJD
    behalf of all others similarly situated,
20
                Plaintiff,
21
    v.
22
    MCAFEE, INC.,
23
                Defendant.
24

25

26

27

28
                                    DECLARATION OF DANIEL M. HATTIS IN SUPPORT
                                         OF MOTION FOR PRELIMINARY APPROVAL OF
                                                  CLASS ACTION SETTLEMENT

I, Daniel M. Hattis, declare as follows:

1.     I have personal knowledge of the facts set forth herein, and if called to testify thereto, I could and would do so competently.

2.     I am a member in good standing of the California State Bar and the Washington State Bar, and am the principal attorney at the Law Offices of Daniel M. Hattis d/b/a Hattis Law ("Hattis Law"). I am one of the attorneys representing Plaintiffs in the Williamson v. McAfee, Inc. case. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

3.     I received my law degree from the University of California at Berkeley School of Law (Boalt Hall) in 1999. From 2004 through 2011, I worked as an attorney at the Law Offices of Angelo Salvatore Parise, where I litigated dozens of cases, in addition to working on transactional and intellectual property matters.

4.     In 2011, I was appointed co-class counsel, together with Lieff Cabraser Heimann & Bernstein LLP ("LCHB"), in a false discount advertising case of first impression, Brazil v. Dell Inc., No. C-07-01700 RMW (N.D. Cal.). After getting a class certified, we obtained a court-approved class settlement, pursuant to which Dell agreed to provide a $50 cash payment to each class member who submitted a valid claim. In addition, Dell changed its methodology for consumer online advertising because of the case.  In 2015, I was appointed co-class counsel, together with LCHB, in a false advertising case, In Re: TracFone Unlimited Service Plan Litigation, 13-cv-03440-EMC (N.D. Cal.). We obtained a court-approved class settlement, pursuant to which TracFone agreed to provide a non-reversionary $40 million settlement fund from which eligible customers who submitted valid claims could receive a cash payments.  I continue to work closely with LCHB on investigating and prosecuting complex consumer protection class actions.  For LCHB's qualifications, see Declaration of Roger N. Heller, filed

herewith.

5.      In 2008, I founded Hattis Law, a class action law firm specializing in false advertising cases. As principal of Hattis Law, I have performed a significant amount of class action litigation work, including being involved in all aspects of the litigation and settlement of this case.  I am also currently serving as plaintiff's counsel in the class case, Bekkerman Et Al. v. California Board of Equalization Et Al., Case No. 2:16-cv-00709-MCE-EFB (E.D. Cal.).

6.      In addition to my work as an attorney, I have considerable experience in the technology and software industries. For example, in 1998, I co-founded Rentals.com, Inc., which built and supplied software and Internet solutions for the rental housing industry. While there, I managed and worked with software engineers to build and develop various computer technologies. In 2001, I co-founded an investment bank, SG Capital, LLC, where I advised technology companies regarding capital raising, acquisitions and other transactional matters. In 2007, I co-founded Sesh.com, Inc. ("Sesh"), a Web-based communications company that enables "co-browsing" of Web pages (i.e., multiple users browsing the same Web page at the same time). During my time at these companies, I have developed a strong familiarity with Internet and database technologies, knowledge that has been instrumental in investigating, prosecuting, and bringing this matter to a successful resolution.

7.      I have dedicated a significant amount of time and resources to investigating and litigating this matter to date.  Hattis Law began an investigation of McAfee's auto-renewal and advertising practices after receiving complaints about McAfee's auto-renewal practices in late 2011.  Since that time, I have spoken with over two dozen McAfee customers regarding their complaints about McAfee's auto-renewal and pricing practices. As part of this investigation, I visited several retail stores including Fry's Electronics and Best Buy to survey, purchase and review McAfee's packaging, advertising and End User License Agreements ("EULAs").  I

DECLARATION OF DANIEL M. HATTIS IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1   purchased and activated several McAfee software product subscriptions to examine the sign up

2   process and pertinent disclosures and EULAs.

3       8.      Hattis Law developed, at significant cost, a proprietary and sophisticated tracking

4   mechanism which extracted and compiled, on a daily basis, pricing and other information directly

5   from McAfee's website and the websites of other retailers selling McAfee products. Hattis Law

6   collected daily pricing history and screenshots from these websites beginning in March 2012,

7   nearly 2 years before the Williamson case was filed. In all, more than 100,000 records were

8   compiled and organized for analysis. These daily records and analysis were used as a basis for

9   Plaintiffs' claims regarding McAfee's auto-renewal pricing practices and its use of reference

10  prices that Plaintiffs alleged did not represent McAfee's regular selling prices for the products in

11  question. This analysis was used to create historical pricing charts included in Plaintiff

12  Williamson's complaint. Hattis Law spent nearly 200 hours investigating, documenting and

13  analyzing this evidence, and cross-referencing it with the experiences of complaining customers

14  including Plaintiff Sam Williamson.

15      9.      After filing suit in 2014, Hattis Law continued to track McAfee pricing. In 2015,

16  Plaintiffs' counsel obtained in discovery McAfee's complete transactional database going back to

17  2008 for the products in question. The data contained tens of millions of records. Hattis Law

18  hired an experienced database software engineer and statistician, at significant cost, to do a deep

19  dive into the data and to cross-reference the data with our own database of tracked prices. We

20  thoroughly analyzed the entire data set (rather than sampling), performing multiple regression

21  analyses. Our analysis also determined that certain data had been inadvertently left out of

22  McAfee's production. After this additional data was provided, the entire dataset was re-analyzed.

23  I spent approximately 122 hours analyzing the McAfee transactional data.

24      10.     Hattis Law partnered with LCHB in filing and prosecuting the Williamson v.

- 3 -

McAfee action, and I have worked closely in particular with LCHB partners Michael Sobol and

Roger Heller on this case since June 2013. I have been involved in all aspects of the litigation of

this case, including: Plaintiffs' pre-litigation investigation of the issues addressed in this case;

working with the named Plaintiff Sam Williamson; assisting LCHB in drafting complaints,

motions, pleadings, and settlement documents in these actions; reviewing documents produced in

discovery by McAfee including the transactional data described above; and developing the

damages model used in the case.

       11.     My former associate attorney Kirill M. Devyatov also expended a significant

amount of time litigating this case. Mr. Devyatov worked at Hattis Law from August 2014

through May 2015. Prior to that, Mr. Devyatov worked for Kemnitzer, Barron & Krieg, LLP, a

firm dedicated to consumer protection class and individual actions. Mr. Devyatov started

working at the Kemnitzer firm prior to attending law school and worked there for more than 5

years, finishing his employment there as a licensed attorney. While at the Kemnitzer firm, Mr.

Devyatov was involved in all steps of class action litigation including the initial client interview,

filing complaints, drafting motions, conducting discovery, and working on settlement agreements.

Mr. Devyatov graduated from University of San Francisco School of Law in May 2013, and

received his law license in December 2013.

       12.     Together with LCHB and also Adhoot & Wolfson, PC, I have closely participated

in the resolution of these cases with opposing counsel, as well as in the extensive arms-length

settlement negotiations, including a full-day mediation session with Prof. Eric Green of

Resolutions, LLC on April 8, 2015 and continued negotiations over many months with Prof.

Green's assistance. These negotiations resulted in a strong Settlement and a robust class notice

program (a copy of the Settlement is attached to the Declaration of Roger N. Heller, filed

herewith). Our litigation and settlement efforts yielded not only substantial monetary relief for

DECLARATION OF DANIEL M. HATTIS IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

the Auto-Renewal Class, but also important practice changes by McAfee addressing both the

auto-renewal pricing and reference price claims in the litigation

13.     I believe the Settlement reached in this case represents a fair, adequate, and

reasonable result for the Class Members.  Throughout the settlement process, and before finally

entering into the Settlement Agreement, I discussed the Settlement terms in detail with Plaintiff

Sam Williamson.  I also discussed with him the benefits of the Settlement as well as the risks and

uncertainty of continuing to litigate the case.

14.     The Settlement provides substantial and valuable relief.  All members of the Auto-

Renewal Class will receive an $11.50 benefit without having to take any action.  They will each

have the choice of receiving the $11.50 benefit as cash by filing a Cash Election form, or, if they

do not file a Cash Election form, they will still receive the benefit in the form of an $11.50

McAfee value certificate.  Based on the analysis that we performed of the McAfee transactional

data, the $11.50 benefit amount represents approximately one-half of the average alleged

overcharge for auto-renewal transactions during the class period, which is a strong result.  In

addition, the practice changes required by the Settlement are significant.  They make McAfee's

auto-renewal pricing policies clearer so that customers can make a more informed choice in their

purchases and renewals from McAfee, and will help ensure that McAfee's advertised reference

prices have an appropriate basis.

15.     Meanwhile, McAfee has presented significant arguments and defenses in this case.

These arguments include: McAfee's disclosures regarding auto-renewal pricing would not

mislead a reasonable consumer; its auto-renewal pricing policies were disclosed in its form

consumer agreements; auto-renewal customers were sent advance notice of the prices they would

be charged and could cancel their renewed subscriptions after being charged; its advertised

reference prices were sufficiently based on auto-renewal sales prices or other sales prices of the

DECLARATION OF DANIEL M. HATTIS IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1   products; customers got software products worth what they paid; and its reference prices would

2   not mislead a reasonable customer.

3       16.     I strongly believe that this Settlement Agreement is an excellent result for Class

4   Members and provides not only substantial monetary relief, but also important practice changes

5   which will benefit millions of consumers.  I am proud to have played a part in the Settlement

6   Plaintiffs have achieved in this case.

7

8       I declare under penalty of perjury that the foregoing is true and correct and that this

9   Declaration was signed in Clyde Hill, Washington on July 13, 2016.

10

11

12                  DANIEL M. HATTIS