UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAM WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MCAFEE, INC.,<br><br>　　　　　Defendant. | Case Nos.  5:14-cv-00158-EJD; 5:14-cv-02475-EJD<br><br>**ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| SAMANTHA KIRBY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MCAFEE, INC.,<br><br>　　　　　Defendant. | |

　　　　The instant cases are putative class actions filed by Representative Plaintiffs Sam Williamson and Samantha Kirby (collectively, "Plaintiffs") against McAfee, Inc. ("Defendant"). Presently before the court are unopposed Motions for Preliminary Approval of Class Settlement filed by Plaintiffs.

　　　　Federal jurisdiction arises pursuant to 28 U.S.C. § 1332.  The Court, after having carefully reviewed the Settlement Agreement along with the parties' arguments, GRANTS the Motions for

1
Case No.: 5:14-cv-00158-EJD; 5:14-cv-02475-EJD
ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant markets and sells subscriptions to software products designed to protect computers from hackers, viruses, and online threats. Dkt. No. 42 ("FAC") at ¶ 16. Consumers can purchase these subscriptions directly from Defendant's website, through the software itself, or via authorized retailers like Amazon.com, Wal-Mart, Office Depot etc. Id. at ¶ 18. Consumers that purchase one year subscriptions through Defendant's website or through the software itself are automatically enrolled in Defendant's Auto-Renewal Program. Id. at ¶ 20. These subscriptions are automatically renewed by Defendant at the end of one year, and continue to be renewed as long as consumers are enrolled in the program. Id. Auto-Renewal program enrollment can occur in the following ways: (1) consumers that purchase products directly from Defendant's website are automatically enrolled in the program and must take "affirmative steps" to un-enroll, (2) consumers that did not directly purchase the software from Defendant are shown software expiration messages onscreen when using the software and are given the option to manually renew or sign up for annual subscriptions through the product's purchase path; consumers that sign up or renew their subscriptions this way are then automatically enrolled into the Auto-Renewal program at the end of one year, and (3) consumers can also enroll into the Auto-Renewal program by logging into their accounts on Defendant's website. Id. at ¶¶ 38, 39, 41, 46.

Williamson belonged to the second category of consumers. Id. at ¶ 42. He purchased a desktop computer and activated a pre-installed 60 day free trial subscription of one of Defendant's products. Id. at ¶ 60. During the trial period, he was offered a one-year subscription to the product for a discounted price of $29.99, with the "regular price" listed as $49.99. Id. at ¶ 61. Williamson purchased the product and alleges that the $49.99 price was not the prevailing regular or former price of the product because Defendant consistently offered the product for sale at a price lower than $49.99 ($34.99 for example). Id. at ¶¶ 54, 63, 66. He further contends that

1  Defendant perpetrated an unlawful pricing scheme on consumers that manually renewed their
2  subscriptions by advertising a selling price and a "higher expressly-referenced former price" with
3  a line thorough it, indicating the price and percentage of customer savings. Id. at ¶¶ 124, 129.
4  Specifically, according to Williamson, the former price created a false impression of savings
5  because customers were typically charged a regular or non-price that was lower than $49.99. Id.
6  at ¶¶ 54, 63, 66.

   All consumers that purchase product subscriptions, including Williamson, are bound by the
McAfee Consumer Products End User License Agreement ("Consumer Agreement"). See Ex. A
attached to FAC. Williamson asserts that around February 2, 2013 –within the class period, which
lasted from January 2010 to February 2015 – the relevant portions of the agreement stated that
when subscriptions are automatically renewed, customers will be charged a price that is *no greater*
than the "normal, then-current price" that Defendant charged other customers for the same
products. Id. at ¶ 29; Ex. A at ¶14. The language specifically states:

> [T]he Agreement is effective for the term set forth in the Documentation...
> If You have provided with a valid credit card number…Your subscription
> Will be automatically renewed (and charged to the Account You have
> provided) for another term at the expiration of Your current term, whenever
> Your local regulations will allow, for a fee no greater than McAfee's then-current
> price, excluding promotional and discount pricing.

Id. Williamson was exposed to this language, and alleges that he and other class members
enrolled in the Auto-Renewal program were charged a price that was higher than the current price
for the same products. Id. at ¶¶ 53, 54, 63, 66. Specifically, these consumers were charged $49.99
for example, while other customers that purchased identical product subscriptions for the first time
the same day or manually renewed their subscriptions that day were charged $34.99. Id. at ¶ 54.

   Kirby purchased Defendant's product on May 10, 2010 for a price of $59.99.[1] KC at ¶ 8.
She alleges that on April of 2011 and of 2012, her subscription was automatically renewed for a

---

[1] See Complaint filed by Plaintiff Samantha Kirby in Case No. 5:14-cv-02475-EJD, which will be referenced as "KC" in this order.

3
Case No.: 5:14-cv-00158-EJD; 5:14-cv-02475-EJD
ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

price of $79.99, that Defendant imported her debit card information into the Auto Renewal Program, and thereafter required her to provide new card information to give her the option of deleting the existing card information in her account. Id. at ¶¶ 8-11. Moreover, Kirby contends she received a notice from Defendant stating that it was unable to renew her subscription in early 2014 because her debit card had expired, but then received another notice stating that her account was renewed. Kirby alleges Defendant renewed her account by charging a debit that she did not authorize. Id. at ¶ 18. She asserts that Defendant admitted to the deceptive and unfair business practices of acquiring and charging customers debit and credit cards without their consent by citing information on Defendant's website. The information said:

> **If a customer is enrolled in McAfee's automatic renewal program, their credit card may be charged even if it has expired. McAfee is enrolled in account updater services from Visa and MasterCard which provides McAfee with updated credit card information.** This is not information that McAfee seeks out, this is information that is provided as a service by Visa and MasterCard

Id. at ¶ 17.

Based on these factual allegations, Plaintiffs asserts the following causes of action: (1) Breach of Contract, (2) Violations of California Business & Professions Code § 17200 on behalf of the Automatic Renewal Class, (3) Violations of California Business & Professions Code § 17500 on behalf of the Automatic Renewal Class, (4) Violations of California Business & Professions Code § 17600, (5) Violations of California Business & Professions Code § 17200 on behalf of the Reference Price Class, and (6) Violations of the California Business and Professions Code § 17500 on behalf of the Reference Price Class. See FAC at ¶¶ 84-160. Williamson seeks to represent an Automatic Renewal class and a Reference Price class. The Auto-Renewal class ("AR" class) is defined as:

> All persons in the United States who paid McAfee for the automatic renewal of subscription license for any McAfee software (including software branded under the "McAfee" or "Intel Security" names) from January 10, 2010 to February 10, 2015, and whose first auto-renewal charge was at a price greater than the price paid to McAfee

for the initial subscription license. The AutoRenewal Class shall not include any person whose charges as described above were fully refunded by McAfee or fully charged back through such person's credit or debit card issuer.

The Reference Price class ("RP" class) is defined as:

All persons in the United States (1) who initially purchased from McAfee or manually renewed through McAfee a subscription license for any McAfee software (including software branded under the "McAfee" or "Intel Security" names) from January 10, 2010 to February 10, 2015, and (2) whose subscription license was initially purchased or manually renewed at a discounted price.

Settlement Agreement, Dkt. No. 95, at ¶¶ 1-2. Williamson seeks damages, restitution, and injunctive relief on behalf of the AR class members, and only injunctive relief on behalf of the RP class members. Dkt. No. 91 at 23, n10.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court…." Fed. R. Civ. P. 23(e). When parties to a putative class action reach a settlement agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and fairness of the settlement." Stanton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "Approval under 23(e) involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Approving a preliminary settlement agreement and notice to a proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

1   treatment to class representatives or segments of the class, and falls within the range of possible

2   approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

3   Additionally, "the court may find that the settlement proposal contains some merit, is within the

4   range of reasonableness required for a settlement offer, or is presumptively valid." Id. (internal

5   quotations and citations omitted).

### III.    DISCUSSION

#### A.   Class Certification

A class may be certified if the following four requirements present in Federal Rule of Civil Procedure 23(a) are met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, the class action must satisfy the provisions of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1.   Rule 23(a)

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity is not dependent on a specific number of proposed class members, courts generally find that it is satisfied when the class contains at least forty members. Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, the parties state that the AR and RP classes contain approximately 7.53 million and 8.85 million members respectively. Dkt. No. 91 at 11, n8. These numbers far exceed the forty person class size generally deemed sufficient for numerosity purposes. As such, the court finds that Plaintiffs have made an adequate showing of numerosity.

Rule 23(a)(2) requires a Plaintiff to show that common questions of law and fact are shared by the class members. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Additionally, commonality requires "the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart, 564 U.S. at 350 (citations and internal quotations omitted). The claims asserted by class members "must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

Here, Plaintiffs contend that the commonality requirement is met because the claims of class members from both classes raise the following common questions: (1) whether Defendant's representations about auto renewal pricing were material, (2) whether McAfee's advertised references prices were material, and (3) the impact that the terms and conditions of Defendant's consumer agreement had on the alleged claims. The court agrees. Since these common questions arise out of Defendant's pricing practices, and their answers would resolve issues essential to the validity of all causes of actions asserted by members of both classes, the court finds that Plaintiff has met the commonality requirement of Rule 23(a)(2).

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim…of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those absent members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Moreover, the typicality requirement is satisfied if Plaintiff's claims "arise from the same remedial and legal theories" as the class claims. Arnold v. United Artists Theatre Cir., Inc., 158 F.R.D. 439, 449 (N.D. Cal. 1994); see also Hanlon, 976 F.2d at 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether the other class members have been injured by the same court of conduct.").

Here, Plaintiffs suffered injuries similar to class members from both classes. They, like other class members, had their software subscription automatically renewed at a price higher than

the price they were initially charged.  Moreover, Plaintiffs, like other members, were exposed to Defendant's referenced price advertisement, which overstated the amount of the discount.  Since the injuries suffered by named Plaintiffs is similar to the ones suffered by the other class members, the court finds that Plaintiffs have met the typicality requirement of Rule 23(a)(3).

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether a class representative fairly and adequate protects the interests of the class, the court must answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between the representatives and absentees."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

The court finds, based on the information presented, that Plaintiffs and their counsel do not have conflicts of interest with other class members.  In fact, their interests are aligned because they all suffered similar injuries arising from Defendant's auto-renewal policy and reference price advertisements.  Moreover, the court finds that Plaintiffs' counsel has and will continue to pursue this action vigorously on behalf of the class in light of counsel's reputation, qualifications, and extensive experience representing clients in consumer protection class actions.

### 2. Rule 23(b)(3)

Under Rule 23(b)(3), the court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available means for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation."  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935,

944 (9th Cir. 2009) (internal quotations omitted).  Regarding superiority, courts must determine "whether maintenance of this litigation as a class is efficient and whether it is fair," such that litigating this case as a class action is superior to other means of resolving the dispute.  Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

With respect to predominance, as stated above, questions of law and fact common to all class members are whether representations made by Defendant regarding reference prices and the implementation of an auto-renewal policy were material and resulted in Plaintiffs and other class members paying more than they should have, and whether and to what extent the terms of the consumer agreement signed by Plaintiffs impacted the alleged claims.  In light of these common questions, the court finds that the predominance requirement set forth in Rule 23(b)(3) is satisfied.

With respect to superiority, each class member's potential recovery amount pales in comparison to the legal costs associated with pursuing millions of independent legal actions.  As such, a vast majority of class members would be deterred from filing suits and seeking recovery.  Moreover, fairness and judicial economy also favors allowing this case to proceed as a class action because Defendant's auto-renewal policy and reference price advertisements were uniformly directed to class members of the AR and RP classes.  For all of these reasons, Plaintiffs have shown that a class action is the most efficient and effective means of resolving this controversy.

### B. Preliminary Fairness Determination

The Court now examines the major components of the proposed settlement to determine its fairness.  The Agreement contains the following major components:

- Members of the AR class will receive $11.50 from Defendant in the form of either a mailed check or direct credit to a PayPal account.  AR class members that do not timely submit cash election forms will receive a $11.50 value certificate (in the form of an electronic code) that can be applied towards Defendant's or Intel's Security consumer products.
- Plaintiffs only seek injunctive relief with respect to the RP class.

- Plaintiffs seeks and Defendant does not oppose service awards in an amount not to exceed $1,250 for Plaintiffs Williamson and Kirby.
- Plaintiffs' counsel seeks and Defendant does not oppose attorneys' fees and costs in an amount not to exceed $2,400,000.

Settlement Agreement at ¶¶ 28, 38, 41; see also Dkt. No. 91 at 23, n10.

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." In re Haier Freezer Consumer Litig., No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *5 (N.D. Cal. May 21, 2013). Moreover, Rule 23(e)(1)(C) requires courts to scrutinize the settlement agreement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The burden to establish fairness rests with the parties seeking settlement. In re Haier, 2013 WL 2237890, at *5. The relevant factors for the fairness inquiry are: "(1) strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; and (7) the experience and views of counsel." Stanton, 327 F.3d at 959.

Here, since the settlement occurred before formal class certification, the settlement approval requires a higher standard of fairness to ensure that class representatives and their counsel do not disproportionately benefit at the expense of the class. Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

The court has thoroughly reviewed the settlement agreement and finds that several factors support a finding of fairness. First, the settlement was reached after significant effort expended by the parties. Plaintiffs' counsel compiled daily screenshots, pricing, and discount information of Defendant's products over approximately two years. See Dkt. No. 91-1 ("Heller Decl.") at ¶ 12. Plaintiffs' counsel also analyzed Defendant's pricing and transaction data, reviewed Defendant's historical consumer agreements and other important documents, engaged in discovery, and conducted legal research regarding the legal claims at issue. Id. at ¶ 11. Plaintiffs' counsel

purchased Defendant's products, compiled and organized more than 100,000 pricing records, and spent over 200 hours investigating and analyzing this information. Dkt. No. 91-2 ("Hattis Decl.") at ¶¶ 8-9. The results of this analysis formed the basis of the asserted claims. The parties' participated in a day-long mediation with Professor Eric D. Green and reached an agreement. Heller Decl. at ¶ 13.

Second, the parties have considered the risks, complexity, and challenges associated with a protracted litigation. As stated by Plaintiffs, multiple factors will contribute to a lengthy litigation. These factors include Defendant's policies regarding auto-renewal pricing, which were disclosed in the consumer agreements, and advance notices of prices sent to customers, both of which add complexity to the case and reduce the Plaintiffs' likelihood of prevailing in the lawsuit. Dkt. No. 91 at 23-24. Third, Plaintiffs' counsel – who are experienced class action litigators – supports settlement. Harris Decl. at ¶ 5; Heller Decl. at ¶¶ 3-4. Fourth, regarding the RP class, Defendant has changed its practice by agreeing to show a reference price equivalent to the price at which a product was offered for sale for "at least 45 days within the preceding calendar year." Dkt. No. 91 at 14. Since Defendant's changed practice will more accurately represent a consumer's discount, it is an important and positive change.

Certain aspects of the settlement, however, weigh against a finding of fairness. Defendant has not agreed to change its practice with respect to the AR class. Instead, it proposed to add language at the point of sale stating that "subscriptions will be automatically renewed at the *undiscounted* subscription price in effect at the time of renewal. The subscription price is subject to change." Dkt. No. 91 at 13. While this statement would better inform consumers, the underlying policy of charging customers the *undiscounted* subscription price would continue, and the subscription price may change.

Additionally, the individual benefit amount to be paid to class members raises concerns. It is not clear why the parties agreed to a $11.50 benefit amount for Auto-Renewal class members, an amount that is one half of the average overcharge amount. Dkt. No. 91 at 22. As such, the

11
Case No.: 5:14-cv-00158-EJD; 5:14-cv-02475-EJD
ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

settlement will deprive class members of a significant percentage of the amount overcharged. Moreover, members that had their subscriptions automatically renewed on more than one occasion during the class period will receive only a quarter of the amount overcharged. Defendant asserts that the settlement amount is fair because Plaintiffs' would have been on notice after their subscriptions were automatically-renewed at a higher price for the first time, and that they made changes to the auto-renewal and reference pricing policies in order to correct the issues that gave rise to this lawsuit. While these arguments have some merit, the question of the fairness of the reduction of the benefit amount to one half of the average amount overcharged remains debatable. Particularly when the change to Defendant's auto-renewal practice is only the inclusion of language that informs consumers of Defendant's intent to automatically renew at a higher price, rather than a policy change consisting of renewing subscriptions at a price equal to the initial product purchase price. As such, the benefit amount must be seen as weighing against fairness.

However, while certain factors weigh against fairness, a class settlement does not need to contain the best possible terms. At this stage, the court need only determine whether the settlement terms fall within a reasonable range of possible settlements. Hanlon, 150 F.3d at 1027; see also In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079. And a thorough review of the proposed settlement demonstrates that the agreed upon remedies, while not ideal, do fall within a reasonable range.

As such, since the factors favoring approval of the settlement outweigh the factors that support a finding to the contrary, the court preliminary approves the proposed settlement agreement.

**C. Class Notice**

Rule 23(c)(2)(B) requires parties to provide class members with "the best notice… practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) requires provision of reasonable notice to all class members that would be bound by the proposed

settlement. "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., L.L.C. v. Ge. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (citations and internal quotations omitted).

The parties have agreed to directly notify class members via email and mail. They created two short form notices to be disseminated to class members. Short Form Notice 1 is tailored for class members that are in the AR class but not in the RP class, and for members that are in both the AR and RP classes. Settlement Agreement at ¶ 8. Short Form Notice 2 is tailored towards class members that are in the RP class but not in the AR class. Id. The email notices will be in a form substantially similar to Exhibits 2 and 4, while mail notice will be on a double sided post card similar to Exhibit 3. Heller Decl. at p. 64-73.

Short Form notices will be sent to all class members at their last known email or mailing address within 45 days of the Court's entry of the Preliminary Approval Order. Dkt. No. 91 at 14. And the Settlement Administrator will update the mailing address of the members that did not receive the notices via email and send them a short form notice via regular mail. Id. at 15. The mailed notices will be sent within 10 days of sending the email notices. Id.

Defendant does not dispute that, based on its records, the AR and RP classes contain approximately 7.53 million and 8.85 million members each. And since these records contain the email and mailing addresses of each of the class members, the class size estimates are presumably accurate. As such, directly notifying class members is feasible and practicable. Additionally, the notices include a short summary of the facts and the causes of action asserted by Plaintiffs, a link to a website with more information about the settlement, options these members have to exclude themselves from the class, and the benefit amount to be paid out to class members. See Dkt. No. 91-1 at 68. Thus, the notice describes the terms of the settlement in sufficient detail. Accordingly, the court finds that the plan meets the goals of Rule 23(c)(2)(B).

13
Case No.: 5:14-cv-00158-EJD; 5:14-cv-02475-EJD
ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### D. Settlement Administration, Settlement Website, and Toll-Free Number

The Settlement Administrator shall also create a website "no later than the first date that any Short Form Notices are sent to Class members" and operate a toll-free number, both of which will give class members the chance to obtain additional information about the settlement. Settlement Agreement at ¶ 9. Additionally, Defendant shall serve the appropriate State official of each State in which a class member resides and the United States Attorney General with a notice of the proposed settlement in accordance with 28 U.S.C. § 1715 within 10 days of the filing of the motion for preliminary approval. Id. at ¶ 12. A copy of this notice shall also be given to class counsel and filed with the Court. Id.

The parties have selected Angeion Group as the Settlement Administrator. The administrator will be receive payment from Defendant and will be responsible for dissemination of class notice, processing of Cash Elections, and dissemination of the Settlement Benefits as set forth in Section VI of the Settlement Agreement. Id. at ¶ 5.

## IV. CONCLUSION

Based on review of the Settlement Agreement and subsequent to the hearing held on **August 18, 2016**, the Court finds that the terms of settlement fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). For the reasons stated herein, the Motion for Preliminary Approval of Settlement is GRANTED as follows:

1. The proposed Auto-Renewal class and Reference Price class are certified as classes for settlement purposes only as per subsections (a) and (b)(3) of Rule 23 and 29 U.S.C. § 216(b).
2. Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, P.C. are appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).
3. Plaintiffs' Sam Williamson and Samantha Kirby are approved to act as class

1 representatives for settlement purposes only.

2   4. The Notice Plan and the contents of the forms of Notice to the Settlement Agreement as set forth in Settlement Agreement ¶¶ 8-13, and in Exhibits 2 through 5 to the Heller Declaration are approved pursuant to subsections (c)(2)(B) and (e) of Rule 23.

3   5. Angeion Group is appointed as Settlement Administrator and hereby directed to carry out the duties and responsibilities of the Administrator as specified in the Settlement Agreement;

4   6. The parties' proposed Cash Election Form, the procedures set forth in the Settlement Agreement for submission of and exclusion from Cash Elections, and the procedures for Class Members to object to the Settlement are hereby approved;

5   7. All non-settlement related proceedings in the litigation is hereby stayed pending Final Approval of the Settlement Agreement; and

6   8. A hearing on the final approval of class action settlement shall be held before this court on January 26, 2017, at 10:00 a.m.  Class Counsel shall file brief(s) requesting final approval of the Settlement Agreement, Attorneys' Fees Award, and Incentive Award, no later than 35 calendar days before the final approval hearing. All other applicable dates shall be established by the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: August 30, 2016



EDWARD J. DAVILA
United States District Judge

15
Case No.: 5:14-cv-00158-EJD; 5:14-cv-02475-EJD
ORDER GRANTING MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT