1    Michael W. Sobol (State Bar No. 194857)
     Roger N. Heller (State Bar No. 215348)
2    LIEFF CABRASER HEIMANN &
     BERNSTEIN LLP
3    275 Battery Street, 29th Floor
     San Francisco, CA  94111
4    Telephone:  (415) 956-1000
     Facsimile:  (415) 956-1008
5    msobol@lchb.com

6    Daniel M. Hattis (State Bar No. 232141)
     HATTIS LAW
7    9221 NE 25th Street
     Clyde Hill, WA 98004
8    Telephone: (650) 980-1990
     dan@hattislaw.com
9

10   Tina Wolfson (State Bar No. 174806)
     Robert Ahdoot (State Bar No. 172098)
11   Theodore W. Maya (State Bar No. 223242)
     AHDOOT & WOLFSON, P.C.
12   10850 Wilshire Boulevard, Suite 370
     Los Angeles, California 90024
13   Telephone: (310) 474-9111
     Facsimile:  (310) 474-8585
14   twolfson@ahdootwolfson.com

15   *Class Counsel*

16

17

18                 UNITED STATES DISTRICT COURT

19                NORTHERN DISTRICT OF CALIFORNIA

20

21   SAM WILLIAMSON, individually and on        Case No.  5:14-cv-00158-EJD
     behalf of all others similarly situated,
22                                              **NOTICE OF MOTION AND MOTION FOR
                      Plaintiff,                FINAL APPROVAL OF CLASS
23                                              SETTLEMENT; MEMORANDUM OF
     v.                                         POINTS AND AUTHORITIES**
24
     MCAFEE, INC.,
25                                              Date:  January 26, 2017
                      Defendant.                Time: 10:00 a.m.
26                                              Honorable Edward J. Davila

27

28

1

SAMANTHA KIRBY, individually and on behalf of all others similarly situated,

Case No.  5:14-cv-02475-EJD

2

Plaintiff,

3

v.

4

MCAFEE, INC.,

5

Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

I.      INTRODUCTION ...................................................................................................... 3

II.     BACKGROUND ........................................................................................................ 4

     A.    Procedural History ......................................................................................... 4

     B.    Class Counsel's Investigation and Discovery .......................................... 5

     C.    Settlement Negotiations ................................................................................ 6

     D.    Preliminary Settlement Approval and Implementation of the Notice
           Program ........................................................................................................... 6

III.    THE SETTLEMENT ................................................................................................. 7

     A.    The Settlement Classes ................................................................................. 7

     B.    Benefits to Class Members .......................................................................... 7

           1.    $11.50 Settlement Benefit for All Auto-Renewal Class Members ............ 7

           2.    Practice Changes ................................................................................. 8

     C.    Opt-Out Procedure ....................................................................................... 9

     D.    Objection Procedure ..................................................................................... 9

     E.    Separate Payment of Attorneys' Fees, Costs, and Service Awards ...... 9

     F.    Separate Payment of Administrative Costs .............................................. 9

     G.    Release ........................................................................................................... 10

IV.   NOTICE HAS BEEN DISSEMINATED TO CLASS MEMBERS PURSUANT
      TO THE COURT-APPROVED NOTICE PROGRAM ..................................... 10

     A.    Direct Notice to Class Members ............................................................... 10

     B.    Settlement Website and Toll-Free Number ............................................. 10

V.     THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE ........ 11

VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........ 11

     A.    The Class Action Settlement Approval Process ..................................... 11

     B.    Final Approval of the Settlement Is Appropriate .................................. 12

           1.    The Strength of Plaintiffs' Case and the Risk, Expense,
               Complexity, and Likely Duration of Further Litigation ......................... 12

           2.    The Risk of Maintaining Class Action Status Throughout the Trial ........ 14

           3.    The Benefits of the Settlement ................................................................... 14

           4.    The Extent of Discovery and the Stage of Proceedings ........................... 15

           5.    The Experience and Views of Counsel ..................................................... 16

           6.    The Presence of a Government Participant ............................................... 17

           7.    The Class Response to Date Favors Final Approval ................................ 17

           8.    Lack of Collusion Between the Parties ..................................................... 17

**TABLE OF CONTENTS**
**(continued)**

Page

VII.   CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)........................................................................ 12, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)...................................................................... 12, 18

*Garner v. State Farm Mut. Auto Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................. 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................... 12, 13

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)............................................................................ 16

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................. 12

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008)......................................................................... 12

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................... 17

*Linney v. Cellular Alaska Partnership*,
  1997 WL 450064 (N.D. Cal. July 18, 1997)................................................... 17

*Perkins v. LinkedIn Corp.*,
  No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. 2016)....................... 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)............................................................................ 12

**Statutes**

28 U.S.C. § 1715 ...................................................................................................... 17

**Treatises**

4 Newberg on Class Actions (4th ed. 2002),
  § 11.22 *et seq.* .................................................................................................. 12

4 Newberg on Class Actions,
  § 11.41.............................................................................................................. 18

4 Newberg on Class Actions,
  § 11.50.............................................................................................................. 13

Manual for Complex Litigation (Fourth)
  §§ 21.63 *et seq.* (Fed. Jud. Center 2004)......................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 26, 2017, at 10:00 a.m., in the Courtroom of the Honorable Edward J. Davila, United States District Judge for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, plaintiffs Sam Williamson and Samantha Kirby ("Plaintiffs"), will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

a.      Approving the proposed Corrected Class Action Settlement Agreement and Release (the "Settlement")[1] as fair, reasonable, and adequate to Plaintiffs and the class members, and directing the Settlement's consummation according to its terms;

b.      Finding that the form and manner of class notice implemented pursuant to the Settlement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise class members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Auto-Renewal Class and the Reference Price Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

c.      Finding that all class members shall be bound by the Settlement as it relates to the class(es) in which each is a member, including the release provisions and covenant not to sue;

d.      Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

e.      Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the McAfee Released Parties;

---

[1] The Settlement is on file at *Williamson* Dkt. 95.

1           f.      Approving payment of the benefits to the class members consistent with

2  the Settlement; and

3           g.      Retaining jurisdiction of all matters relating to the interpretation,

4  administration, implementation, and enforcement of the Settlement.

5      As discussed in the accompanying memorandum, approval of the Settlement and the

6  related relief requested herein is appropriate under applicable law and well justified under the

7  circumstances of this matter.

8      This motion is based on this notice of motion and motion; the accompanying

9  memorandum of points and authorities; the Settlement, including all exhibits thereto, and all

10  papers filed in support thereof; the accompanying declarations of Sam Williamson ("Williamson

11  Decl."), Samantha Kirby ("Kirby Decl."), Roger N. Heller ("Heller Decl."), Daniel M. Hattis

12  ("Hattis Decl."), Tina Wolfson ("Wolfson Decl."), and Brian Devery ("Devery Decl."); the

13  argument of counsel; all papers and records on file in these cases; and such other matters as the

14  Court may consider.

15

16  Dated:  October 29, 2016         By:  */s/ Roger N. Heller*

17                                  Michael W. Sobol
Roger N. Heller

18                                  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336

19                                  Telephone: (415) 956-1000

20                                  Daniel M. Hattis

21                                  HATTIS LAW
9221 NE 25th Street

22                                  Clyde Hill, WA 98004
Telephone: (650) 980-1990

23                                  Tina Wolfson

24                                  Robert Ahdoot
Theodore W. Maya

25                                  AHDOOT & WOLFSON, P.C.
10850 Wilshire Boulevard, Suite 370

26                                  Los Angeles, California 90024
Telephone: (310) 474-9111

27

28                                  *Class Counsel*

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

I.      <u>INTRODUCTION</u>

3        The Court has preliminarily approved the proposed Settlement reached by the parties in

4  this litigation, and approved the parties' proposed notice program.  *See Williamson* Dkt. 96.

5  Notice has been, and continues to be, disseminated to the class members in accordance with the

6  notice program approved by the Court.  By this motion, Plaintiffs respectfully request that the

7  Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable and

8  adequate.

9        The Settlement is the product of extensive arms-length negotiations between the parties

10  and their experienced and informed counsel, and is absolutely fair, reasonable, and adequate

11  given the claims and relief sought, the alleged harm, and the parties' respective litigation risks.

12        Pursuant to the Settlement, McAfee will provide an $11.50 Settlement Benefit to all

13  members of the Auto-Renewal Class—each of whom may choose to receive such benefit as cash

14  by submitting a simple cash election form, or otherwise will receive it as a McAfee value

15  certificate to use toward the purchase of McAfee or Intel Security consumer products.  The

16  $11.50 amount represents approximately one-half of the average alleged overcharge for auto-

17  renewal transactions during the class period, as estimated by Plaintiffs.  In the aggregate, the

18  $11.50 Settlement Benefits total approximately $86 million.  In addition, McAfee has agreed to

19  implement important changes regarding both auto-renewal transactions and its advertising of

20  reference prices.

21        Moreover, the Settlement provides for a robust, multi-pronged notice program and user-

22  friendly cash election process, which have been, and are being, implemented by the Settlement

23  Administrator.  The costs of class notice and the other costs of the Settlement Administrator, and

24  any Court-awarded attorneys' fees, costs, and service awards, will be paid separately by McAfee

25  and will thus not reduce the other benefits for the class members under the Settlement.

26        Notably, the reaction from class members thus far has been very positive.  The deadline

27  for class members to opt-out or object is November 28, 2016.  As of October 28, 2016, only 143

28  persons have asked to be excluded, and just 1 objection has been submitted.  By contrast, as of

1   October 28, 2016, 143,384 cash elections have already been submitted by Auto-Renewal Class

2   members, with nearly two months to go until the cash election deadline of December 23, 2016.[2]

3      For the foregoing reasons and the others detailed below, the Settlement meets the

4   standards for final settlement approval and should be approved.

5   **II.**  **BACKGROUND**

6      **A.**  **Procedural History**

7      This litigation began in early 2014.  The first-filed *Williamson* case was filed in this Court

8   on January 10, 2014, alleging claims on behalf of two nationwide classes of McAfee customers:

9   (1) a "Class" of customers who incurred charges for the automatic renewal of their McAfee

10  software ("auto-renewal"); and (2) a "Reference Price Class" consisting of customers who made

11  purchases of McAfee software where McAfee advertised a "reference price" for the product.

12  Plaintiff Williamson alleged that the auto-renewal prices McAfee charged were higher than its

13  disclosures indicated they would be, and that McAfee's advertised reference prices were

14  misleading in that they did not represent McAfee's true former selling prices. Plaintiff sought

15  damages, restitution, and injunctive relief on behalf of the Class of auto-renewal customers, and

16  injunctive relief on behalf of the Reference Price Class. (*Williamson* Dkt. 1.)

17     On March 7, 2014, McAfee filed a motion to dismiss the initial complaint in the

18  *Williamson* case.  (*Williamson* Dkt. 21.)  Plaintiff Williamson filed an opposition to McAfee's

19  motion on April 11, 2014, and McAfee filed its reply on May 2, 2014. (*Williamson* Dkt. 25, 27.)

20     The *Kirby* case was filed on May 29, 2015 on behalf of a nationwide class of McAfee

21  auto-renewal customers, alleging claims that overlapped in significant part with certain of the

22  claims alleged in the *Williamson* case.  (*Kirby* Dkt. 1.)  On July 1, 2015, the *Kirby* case was

23  formally related to the *Williamson* case, and assigned to this Court, pursuant to Civil Local Rule

24  3-12.  (*Kirby* Dkt. 16.)

25     On August 22, 2014, the Court entered an Order in the *Williamson* case granting in part

26

27  [2] Devery Decl.,¶¶ 17-18.  The final numbers of timely cash elections, opt-outs, and objections
   will be reported to the Court in advance of the January 26, 2017 Final Fairness Hearing.  The

28  parties and Class Counsel will address in their reply papers any timely objections that may be
   submitted before the November 28, 2016 objection deadline.

NOTICE OF MOT. AND MOT. FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1   and denying in part McAfee's motion to dismiss. (*Williamson* Dkt. 40.) On September 8, 2014,

2   Plaintiff Williamson filed a First Amended Complaint ("FAC"). (*Williamson* Dkt. 42.) On

3   October 9, 2014, McAfee filed a motion to dismiss the FAC. (*Williamson* Dkt. 48.) Plaintiff

4   Williamson filed an opposition to McAfee's motion on November 4, 2014, and McAfee filed its

5   reply on November 25, 2014. (*Williamson* Dkt. 54, 59.) On March 2, 2015, the Court took

6   McAfee's motion to dismiss the FAC under submission. (*Williamson* Dkt. 66.)

7        On July 8, 2015, the parties in the *Williamson* and *Kirby* cases notified the Court that they

8   had reached an agreement in principle on certain deal terms for a class settlement and, on July 9,

9   2015, at the parties' request, the Court entered an Order staying proceedings in the two cases

10   pending the filing of a proposed class settlement. (*Williamson* Dkt. 69, 70.)

11        **B.    Class Counsel's Investigation and Discovery**

12        Class Counsel here conducted a particularly extensive investigation prior to filing suit.

13   Among other efforts, counsel used a sophisticated, self-developed tracking mechanism to compile

14   daily pricing and discount information directly from McAfee's and other retailers' websites.

15   Every day for approximately two years before the initial *Williamson* complaint was filed, and

16   continuing throughout the litigation, Class Counsel collected daily screenshots and pricing and

17   discount information from McAfee's website for the software products at issue in this litigation,

18   as well as similar information from the websites of other retailers. Hattis Decl., ¶¶ 10-11. Class

19   Counsel also spoke with numerous McAfee customers about their experiences, carefully analyzed

20   McAfee's consumer agreements and pertinent disclosures, and conducted extensive legal research

21   regarding potential legal claims. Class Counsel's investigation and research continued after

22   Plaintiffs filed suit, including continuing to track the information from McAfee's website and

23   ongoing extensive legal research. Heller Decl., ¶ 5; Hattis Dec., ¶¶ 9-11.

24        Further, Class Counsel engaged in significant discovery, including: reviewing and

25   conducting a detailed analysis of McAfee's class-wide transactional data for the products at issue

26   for the class period (which included millions of individual transaction records); reviewing

27   McAfee's historical consumer agreements and other important documents; propounding and

28   responding to written discovery requests; and engaging in numerous meet and confer sessions

1   regarding McAfee's electronic document and data systems and Plaintiffs' requests for production

2   of documents.  Heller Decl., ¶ 6; Hattis Decl., ¶ 11.

3         **C.**      **Settlement Negotiations**

4        The Settlement Agreement here is the product of hard-fought, arms-length negotiations

5   between the parties.  The parties engaged in a full-day mediation session with Professor Eric D.

6   Green of Resolutions, LLC on April 8, 2015.  Following that session, the parties continued to

7   negotiate through Prof. Green and, with his assistance, were able to reach an agreement in

8   principle on certain terms in July 2015.  During the subsequent months, the parties continued to

9   negotiate through the mediator, holding numerous teleconferences with Prof. Green.  With Prof.

10   Green's assistance, the parties ultimately were able to reach an agreement in principle on deal

11   terms.  After an agreement in principle was reached on the merits, the parties, with the further

12   assistance of Prof. Green, reached an agreement regarding Class Counsel's request for attorneys'

13   fees and costs.  Subsequently, the parties worked hard on finalizing the settlement papers,

14   including the forms of notice and other exhibits, and selecting a proposed Settlement

15   Administrator.  Heller Decl., ¶ 7.

16         **D.**      **Preliminary Settlement Approval and Implementation of the Notice Program**

17        Plaintiffs filed a motion for preliminary approval of the Settlement on July 14, 2016, and

18   the Court held a hearing on that motion on August 18, 2016.  (*Williamson* Dkt. 91, 94.)  The

19   parties filed a corrected version of the Settlement on August 22, 2016, which corrected a

20   scrivener's error as described in the notice accompanying the corrected document.  (*Williamson*

21   Dkt. 95.)  On August 30, 2016, the Court granted preliminary approval of the Settlement.

22   (*Williamson* Dkt. 96.) ("Preliminary Approval Order").  On September 30, 2016, the parties filed

23   a joint notice clarifying the meaning of a phrase in the Settlement. (*Williamson* Dkt. 97.)

24   Following the entry of the Preliminary Approval Order, Class Counsel have worked closely with

25   the Settlement Administrator and counsel for McAfee regarding implementation of the notice

26   program and cash election process.  Heller Decl., ¶ 14.

27

28

III.    **THE SETTLEMENT**

    A.    **The Settlement Classes**

In the Preliminary Approval Order, the Court certified two classes for settlement purposes only.  The "Auto-Renewal Class" is defined as:

> All persons in the United States who paid McAfee for the automatic renewal of a subscription license for any McAfee software (including software branded under the "McAfee" or "Intel Security" names) from January 10, 2010 to February 10, 2015, and whose first auto-renewal charge was at a price greater than the price paid to McAfee for the initial subscription license.  The Auto Renewal Class shall not include any person whose charges as described above were fully refunded by McAfee or fully charged back through such person's credit or debit card issuer.

The "Reference Price Class" is defined as:

> All persons in the United States (1) who initially purchased from McAfee or manually renewed through McAfee a subscription license for any McAfee software (including software branded under the "McAfee" or "Intel Security" names) from January 10, 2010 to February 10, 2015, and (2) whose subscription license was initially purchased or manually renewed at a discounted price.

Excluded from both classes are employees of McAfee and its parents and affiliates, counsel for all parties, the Court, and the Court's staff.  (Settlement, ¶¶ 1-2; *Williamson* Dkt. 96 at p. 14)

    B.    **Benefits to Class Members**

        1.    **$11.50 Settlement Benefit for All Auto-Renewal Class Members**

Under the terms of the Settlement, *all* class members in the Auto-Renewal Class will receive an $11.50 Settlement Benefit.  They each will have the option of receiving the $11.50 benefit as: (a) cash; or (b) an $11.50 McAfee value certificate.  They can choose the cash option by submitting a simple cash election form, and may submit cash election forms electronically via the Settlement Website or by mail.  The deadline to submit cash elections is December 23, 2016.  As of October 28, 2016, 143,384 cash elections have already been filed.[3]  Class members in the Auto-Renewal Class who do not submit a timely cash election will still receive the Settlement Benefit, in the form of an $11.50 McAfee value certificate to use toward the purchase of McAfee

---

[3] Devery Decl., ¶ 17.  For cash elections submitted online, class members have the choice of receiving their cash payment either as a check or as a direct credit to their PayPal account.  For cash elections submitted by mail, payments will be by check.

or Intel Security consumer products. (Settlement, ¶¶ 28-35)

The $11.50 benefit amount represents approximately one-half of the average alleged overcharge for auto-renewal transactions during the class period—a strong result, particularly given the substantial challenges and risks these class members faced in the litigation.  *See infra* sections VI.B.1-3.  In the aggregate, the $11.50 Settlement Benefits that McAfee will provide total approximately $86 million for the approximately 7.53 million members of the Auto-Renewal Class.

### 2.    **Practice Changes**

McAfee also agreed to implement important changes addressing both the auto-renewal pricing and reference price allegations in the litigation.  Specifically, McAfee agreed to implement the following for two years after the Settlement receives final approval by the Court:

(1) McAfee will include at the point of sale in any sales process involving sales made by McAfee at a discount off a reference price and subject to automatic renewal (including for sales made through the McAfee website and through the in-software purchase path), the following or materially similar language:  "Your subscription(s) will be automatically renewed at the undiscounted subscription price in effect at the time of renewal.  The subscription price is subject to change."  A hyperlink will be provided that links to a webpage that includes the current undiscounted subscription price for the applicable McAfee software or McAfee will display the undiscounted subscription price (labeled the "undiscounted subscription price") for the applicable McAfee software on the point of sale webpage.  Substantially similar disclosures will be added to a FAQ or informational page on McAfee's website, to notices sent by McAfee to subscribers in connection with automatic-renewal, and to McAfee's End User License Agreement.

(2) Where McAfee includes a reference price in its promotions, notices, advertisements or at the point-of-sale (including through the McAfee homepage and through the in-software purchase path), for any McAfee software product offered by McAfee to United States consumers: (a) McAfee will use as such reference price only a price at which McAfee has offered that software product on the McAfee homepage to the public for at least 45 days within the preceding calendar quarter; and (b) McAfee will offer that software product on the McAfee homepage to the

public at a non-sale price for at least 45 days within the current calendar quarter. (Settlement, ¶ 37; *Williamson* Dkt. 97 (clarifying notice))

### C.        Opt-Out Procedure

Any person within the Auto-Renewal Class definition may request to be excluded from the Auto-Renewal Class by sending a written request stating their desire to be excluded to the Settlement Administrator.  Likewise, any person within the Reference Price Class definition may request to be excluded from the Reference Price Class by sending a written request stating their desire to be excluded to the Settlement Administrator.  The deadline to request exclusion is November 28, 2016. (Settlement, § IV; *Williamson* Dkt. 96)

### D.        Objection Procedure

Any class member may object to the Settlement (except to the extent it relates only to a class in which the class member in question is not included or from which the class member in question has timely and validly requested exclusion), Class Counsel's application for attorneys' fees and costs, and/or the request for Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to Class Counsel and McAfee's counsel, at the addresses listed in the Long Form Class Notice, and must include the information proscribed by the Long Form Class Notice.  The deadline to object is November 28, 2016.  (Settlement, § IV; *Williamson* Dkt. 96)

### E.        Separate Payment of Attorneys' Fees, Costs, and Service Awards

Concurrently with this motion, Class Counsel are filing an application for an award of reasonable attorneys' fees and costs.  Class Counsel are requesting attorneys' fees in the amount of $2,321,225.92, plus reimbursement of $78,774.08 in litigation costs.  Class Counsel's fee application also requests service awards of $1,250 for each of the two Plaintiffs.  Any such attorneys' fees, costs, and service awards that are granted by the Court will be paid by McAfee in addition to (*i.e.*, on top of) the settlement benefits provided to the class members (Settlement, § VII)

### F.        Separate Payment of Administrative Costs

Notice costs and the other fees and costs of the Settlement Administrator will likewise be

1   paid by McAfee in addition to (*i.e.*, on top of) the settlement benefits provided to the class

2   members.  (Settlement, ¶ 5)

3       **G.       Release**

4       In exchange for the benefits provided by the Settlement, class members will release

5   McAfee and related entities from any claims they may have related to the issues in these cases.

6   (Settlement, § VIII)

7   **IV.    NOTICE HAS BEEN DISSEMINATED TO CLASS MEMBERS PURSUANT TO
        THE COURT-APPROVED NOTICE PROGRAM**

8

9       The robust notice program approved by the Court in the Preliminary Approval Order has

10  been, and continues to be, implemented by the parties and the Settlement Administrator.  This

11  program—which includes direct email/mail notice to all class members, a dedicated Settlement

12  Website, and an informational Toll-Free Number—is well-designed to give the best notice

13  practicable.  *See generally* Devery Decl.

14      **A.       Direct Notice to Class Members**

15      Pursuant to the Court-approved notice program, McAfee's customer records were utilized

16  to provide direct email and mailed notice to the class members.  McAfee provided the Settlement

17  Administrator with a Class List that included the last known email address and mailing address

18  for each class member.  The Settlement Administrator then sent the appropriate email notices to

19  class members at the email addresses included in the Class List.  For any class member with

20  respect to whom the Settlement Administrator received notice that the email notice was not

21  received, the Settlement Administrator updated the mailing address for that class member in the

22  Class List, through the U.S. Postal Service National Change of Address Database, and then

23  mailed the appropriate notice to that class member at their mailing address as updated.  For

24  mailed notices returned with forwarding address information, the Settlement Administrator is

25  promptly re-mailing the appropriate notice to the new address indicated.  Devery Decl., ¶¶ 7-14;

26  Settlement, § III.

27      **B.       Settlement Website and Toll-Free Number**

28      As directed by the Court, the Settlement Administrator established and is maintaining a

1   Settlement Website, www.McafeeWilliamsonSettlement.com, where cash elections can be

2   submitted electronically and where class members can obtain additional information and access

3   copies of the Settlement, the Long Form Class Notice, the operative complaints, Class Counsel's

4   application for attorneys' fees and costs, and other case documents. The Settlement Administrator

5   also established and is maintaining a toll-free telephone number where class members can obtain

6   additional information.  Devery Decl., ¶¶ 15-16; Settlement, ¶ 9.

7   **V.      THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE**

8           The response from class members thus far has been very positive.  The deadline for class

9   members to opt-out or object is November 28, 2016.  As of October 28, 2016, only 143 persons

10  have asked to be excluded and just 1 objection has been submitted.  Devery Decl., ¶ 18.[4]

11          By contrast, the Settlement Administrator reports that, as of October 28, 2016, 143,384

12  cash elections already have been submitted by Auto-Renewal Class members, with nearly two

13  months to go until the December 23, 2016 cash election deadline.  Devery Decl., ¶ 17.

14  **VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

15          **A.      The Class Action Settlement Approval Process**

16          Proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step

17  procedure for approval of class action settlements:

18                  (1)     Certification of a settlement class and preliminary approval
                    of the proposed settlement after submission to the Court of a written
19                  motion for preliminary approval.

20                  (2)     Dissemination of notice of the proposed settlement to the
                    affected class members.
21

22                  (3)     A formal fairness hearing, or final settlement approval
                    hearing, at which evidence and argument concerning the fairness,
                    adequacy, and reasonableness of the settlement are presented.
23

24  *See* Manual for Complex Litigation (Fourth) §§ 21.63 *et seq*. (Fed. Jud. Center 2004).  This

25  procedure safeguards class members' procedural due process rights and enables the Court to

26  fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq.* (4th

27  _____

28  [4] The parties will address all timely submitted objections in advance of the Final Fairness
    Hearing.

1    ed. 2002) (hereinafter "Newberg").

2         The Court completed the first step in the settlement approval process when it issued the

3    Preliminary Approval Order (*Williamson* Dkt. 96), and the second step—dissemination of notice

4    to the class members—has been, and continues to be, implemented by the Settlement

5    Administrator.  *See* Devery Decl.  By this motion, Plaintiffs respectfully request that the Court

6    take the third and final step and grant final approval of the Settlement.

7         **B.      Final Approval of the Settlement Is Appropriate**

8         Public policy "strong[ly] . . . favors settlements, particularly where complex class action

9    litigation is concerned."  *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008);

10   *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City

11   of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at

12   *3 (N.D. Cal. Mar. 18, 2013).

13        In weighing final approval of a class settlement, the Court's role is to determine whether

14   the settlement, taken as a whole, is fair, reasonable, and adequate.  *Staton v. Boeing Co.*, 327 F.3d

15   938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

16   The Ninth Circuit has established a list of factors to consider when assessing whether a proposed

17   settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk,

18   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

19   action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of

20   discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

21   (7) the presence of a governmental participant; and (8) the reaction of the class members to the

22   proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.

23   Application of these factors here supports the conclusion that the Settlement is fundamentally

24   fair, reasonable, and adequate, and should be finally approved.

25        **1.      The Strength of Plaintiffs' Case and the Risk, Expense, Complexity,
              and Likely Duration of Further Litigation**

26

27        The Settlement here appropriately balances the costs, risks, and likely delay of further

28   litigation, on the one hand, against the benefits provided, on the other hand.  *See* 4 Newberg on

1    Class Actions § 11.50 at 155 ("In most situations, unless the settlement is clearly inadequate, its

2    acceptance and approval are preferable to lengthy and expensive litigation with uncertain

3    results.").  The result here is a strong one, given the significant challenges and risks that Plaintiffs

4    and the class members continue to face in the litigation—risks that Plaintiffs and Class Counsel

5    were well-positioned to evaluate based on their extensive investigation, discovery, and analysis of

6    the pertinent pricing and sales data.

7            With respect to the auto-renewal claims, among other arguments that McAfee has made

8    and/or indicated it would make if the litigation proceeded are: (a) its disclosures regarding auto-

9    renewal pricing would not mislead a reasonable consumer; (b) the prices charged for auto-

10   renewals were charged to millions of auto-renewal customers and to a significant number of non-

11   auto-renewal customers as well; (c) its policies regarding auto-renewal pricing (and, specifically,

12   the exclusion of "promotional" and "discount" pricing) were disclosed in its form consumer

13   agreements and elsewhere; and (d) auto-renewal customers were sent advance notice of the prices

14   they would be charged and could cancel their renewed subscriptions within 60 days after being

15   charged.  With respect to the reference price claims, among other arguments that McAfee has

16   made and/or indicated it would make if the litigation proceeded are: (a) its advertised reference

17   prices were sufficiently based on millions of actual auto-renewal sales and on non-auto-renewal

18   sales as well; (b) customers got software products worth what they paid for them; and (c) its

19   reference prices would not mislead a reasonable customer.  Moreover, McAfee's second motion

20   to dismiss was pending in the *Williamson* case when the Settlement was reached.

21           While Plaintiffs believe they could overcome these challenges, they are indicative of the

22   serious risks that Plaintiffs and the proposed classes would face if the litigation were to continue.

23   Indeed, several of McAfee's arguments, if successful, would threaten class members' entitlement

24   to any relief at all.  The Settlement provides considerable relief while allowing class members to

25   avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

26           Having conducted a thorough investigation and analysis of the pricing and class-wide

27   sales data for the products at issue, and of other pertinent facts, and Class Counsel having

28   significant experience litigating cases involved alleged misleading pricing and other alleged

- 13 -

1  misleading advertising, Plaintiffs and Class Counsel were well-positioned to evaluate the

2  strengths and challenges of their claims in this matter and to make an informed decision that the

3  favorable settlement here represented a good deal for the class members in light of the real

4  challenges faced.  The Settlement also provides another significant benefit not available if the

5  litigation were to go to trial—prompt relief.  Proceeding to trial, even if successful, would likely

6  add years to the resolution of this litigation, given the legal and factual issues raised and

7  likelihood of appeals.

8        **2.        The Risk of Maintaining Class Action Status Throughout the Trial**

9        McAfee disputes whether a class trial would be manageable, and has made clear that it

10  would likely oppose a motion for class certification on that basis.  While Plaintiffs believe they

11  would have a strong argument for certifying litigation classes here, obtaining and maintaining

12  class action status throughout the trial is always a challenge, and is far from guaranteed, in a

13  complex case like this one.

14        **3.        The Benefits of the Settlement**

15        The Settlement provides substantial, valuable relief, including the $11.50 Settlement

16  Benefit to all members of the Auto-Renewal Class and important changes that will benefit the

17  class members and millions of McAfee customers going forward.

18        All members of the Auto-Renewal Class will receive an $11.50 Settlement Benefit

19  without having to take any action.  They each have the choice of receiving the $11.50 as cash by

20  filing a Cash Election form, or, if they do not file a cash election form, they will still receive the

21  benefit in the form of an $11.50 McAfee value certificate.  The cash election form and

22  submission process are straightforward and user-friendly, and are designed to make submitting

23  forms and receiving payments convenient, including by providing an online claim submission

24  option and the option of receiving payments in the form of a check or a direct PayPal credit.  As

25  of October 28, 2016, 143,384 cash elections have already been submitted, with nearly two months

26  remaining until the submission deadline.

27        The $11.50 Settlement Benefit amount represents approximately one-half (1/2) of the

28  average alleged overcharge for auto-renewal transactions during the class period as estimated by

- 14 -

1    Plaintiffs,[5] which is a particularly strong result when one considers the relative strengths and

2    weaknesses of the parties' positions and the substantial risks and uncertainty of ongoing

3    litigation.  *See supra* section VI.B.1.  Given the not insubstantial risk that the members of the

4    Auto-Renewal Class might have received nothing at all had the litigation proceeded to trial, a

5    50% recovery of the average overcharge is a very good achievement here, and certainly

6    represents a reasonable compromise warranting Court approval.  That is particularly so given that

7    the Settlement would provide prompt payment, while further litigation, even if successful, would

8    likely require years before these class members saw any benefits.

9         Moreover, the Settlement includes important changes by McAfee addressing both the

10   auto-renewal pricing and reference price claims in the Litigation.  *See supra* section III.B.2.  For

11   the auto-renewal claims, the improved disclosures provided for in the Settlement will make

12   McAfee's auto-renewal pricing policies significantly clearer, helping customers to make informed

13   choices regarding their software subscriptions.  With respect to the reference price claims, the

14   Settlement provides clear, objective terms governing the circumstances in which McAfee may

15   advertise a reference price, helping to ensure that McAfee will not advertise reference prices

16   without an appropriate basis in its actual prices, and thus closely tracking the relief sought with

17   respect to these claims.[6]

18        **4.    The Extent of Discovery and the Stage of Proceedings**

19        For this factor, courts look to whether the parties have sufficient information to make an

20   informed decision with respect to the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

---

[5] While some members of the Auto-Renewal Class had their annual subscriptions auto-renewed more than once during the class period, and while Plaintiffs believe they would have a credible basis for seeking, at trial, damages based on all such auto-renewals, McAfee has argued that even if Plaintiffs' auto-renewal claims have merit (which McAfee disputes), customers would have at least been on notice of McAfee's auto-renewal pricing after incurring their first auto-renewal charge. Thus, there is uncertainty regarding whether Plaintiffs could have recovered damages per customer beyond a single auto-renewal transaction even in the proverbial "home run" scenario. Plaintiffs estimate that, on average, class members in the Auto-Renewal Class had their subscriptions auto-renewed a little over two times during the class period.  Even if every one of these transactions were hypothetically subject to recovery, the $11.50 benefit amount would still represent approximately one-quarter (1/4) of the average alleged total overpayments per class member, still a very reasonable result under the circumstances.

[6] The claims pled regarding McAfee's reference prices sought injunctive relief only.  (*Williamson* Dkt. 42, ¶¶ 7, 150, 160.)  The practice changes obtained for the Reference Price Class pursuant to the Settlement Agreement appropriately track the relief sought for these claims.

1  454, 459 (9th Cir. 2000).

2    This factor weighs particularly heavily in favor of approving the Settlement here.  As

3  explained in more detail above (*see supra* section II.B), Class Counsel conducted a particularly

4  extensive factual investigation in this matter, including, *inter alia*: (a) tracking on a daily basis

5  and analyzing—for approximately two years before filing suit, and continuing throughout the

6  litigation—the pricing and discount information for the products at issue from McAfee's website

7  and the websites of other retailers; (b) analyzing class-wide transactional data, produced by

8  McAfee in discovery, for the products at issue (which included millions of transactional records);

9  and (c) reviewing and analyzing the pertinent disclosures and other documents.  As a result of

10  these extensive efforts, Plaintiffs were well-informed in evaluating their claims and in negotiating

11  the Settlement that is presented to the Court for approval. Moreover, the two fully-briefed

12  motions to dismiss filed by McAfee significantly informed Plaintiffs' evaluation of the relative

13  strength of their legal claims. Accordingly, Plaintiffs and Class Counsel had sufficient

14  information to make an informed decision about the Settlement and to determine that it

15  represented a favorable and fair result for the class members.

16       **5. The Experience and Views of Counsel**

17    In considering a class settlement, "[t]he recommendations of plaintiffs' counsel should be

18  given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at

19  \*4 (N.D. Cal. Feb. 2, 2009); *see also Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016

20  WL 613255, at \*3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel, [including some of Class

21  Counsel in this action,] who are experienced in litigating and settling complex consumer class

22  actions, weigh in favor of final approval.") (citing *Linney v. Cellular Alaska Partnership*, 1997

23  WL 450064, at \*5 (N.D. Cal. July 18, 1997)).  Here, counsel for all parties endorse the Settlement

24  Agreement as fair, adequate, and reasonable.  Heller Decl., ¶ 29; Hattis Decl., ¶ 29; Wolfson

25  Decl., ¶ 26.

26    Class Counsel have extensive experience litigating and settling consumer class actions and

27  other complex matters.[7]  They have conducted an extensive investigation into the factual and

28

---

[7] Heller Decl., ¶¶ 2-4, 15-18; Hattis Decl., ¶¶ 3-7; Wolfson Decl., ¶¶ 3-4, Ex. A.

legal issues raised in this litigation.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement.

### 6. The Presence of a Government Participant

Notice has been issued pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 (*see Williamson* Dkt. 92).  To date, no governmental entity has intervened.

### 7. The Class Response to Date Favors Final Approval

While it is premature to fully evaluate this factor, the response thus far has been very positive.  The deadline for class members to opt-out or object is November 28, 2016.  As of October 28, 2016, only 143 persons have asked to be excluded and just 1 objection has been submitted.  Devery Decl., ¶ 18.  By contrast, the Settlement Administrator reports that as of October 28, 2016, 143,384 cash elections have already been submitted, with nearly two months to go until the December 23, 2016 cash election deadline.  Devery Decl., ¶ 17.[8]

### 8. Lack of Collusion Between the Parties

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties."  *City of Seattle*, 955 F.2d at 1290 (citations omitted).  "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."  *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see also See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2-3 (C.D. Cal. June 10, 2005).

The Settlement here is the product of hard-fought, arms-length negotiations between the parties and their well-qualified counsel.  The parties participated in a full-day mediation session and extensive ongoing negotiations through an experienced and well-respected mediator,

---

[8] The final numbers of timely cash elections, opt-outs, and objections will be reported to the Court in advance of the January 26, 2017 Final Fairness Hearing.  The parties and Class Counsel will address in their reply papers any timely objections that may be submitted before the November 28, 2016 objection deadline.

Professor Eric D. Green of Resolutions LLC, and were able to reach an agreement with the help of Prof. Green.  Subsequently, the parties worked hard to finalize the settlement papers and to select a proposed Settlement Administrator.  Heller Decl., ¶ 7.  Throughout these negotiations, the parties were represented by counsel experienced in the prosecution, defense and settlement of complex class actions.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

a.    Approving the proposed Settlement as fair, reasonable, and adequate to Plaintiffs and the class members, and directing the Settlement's consummation according to its terms;

b.    Finding that the form and manner of class notice implemented pursuant to the Settlement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise class members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Auto-Renewal Class and the Reference Price Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

c.    Finding that all class members shall be bound by the Settlement as it relates to the class(es) in which each is a member, including the release provisions and covenant not to sue;

d.    Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

e.    Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the McAfee Released Parties;

f.    Approving payment of the benefits to the class members consistent with the Settlement; and

1          g.      Retaining jurisdiction of all matters relating to the interpretation,

2   administration, implementation, and enforcement of the Settlement.

3

4

5   Dated:  October 29, 2016          By:  */s/ Roger N. Heller*

6                                     Michael W. Sobol
                                      Roger N. Heller
7                                     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                      275 Battery Street, 29th Floor
8                                     San Francisco, CA  94111-3336
                                      Telephone: (415) 956-1000

9                                     Daniel M. Hattis
                                      HATTIS LAW
10                                    9221 NE 25th Street
                                      Clyde Hill, WA 98004
11                                    Telephone: (650) 980-1990

12                                    Tina Wolfson
                                      Robert Ahdoot
13                                    Theodore W. Maya
                                      AHDOOT & WOLFSON, P.C.
14                                    10850 Wilshire Boulevard, Suite 370
                                      Los Angeles, California 90024
15                                    Telephone: (310) 474-9111

16                                    *Class Counsel*

17

18   1326974.3

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. AND MOT. FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD