1  Michael W. Sobol (State Bar No. 194857)
   Roger N. Heller (State Bar No. 215348)
2  LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111
4  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
5  msobol@lchb.com

6  Daniel M. Hattis (State Bar No. 232141)
   HATTIS LAW
7  9221 NE 25th Street
   Clyde Hill, WA 98004
8  Telephone: (650) 980-1990
   dan@hattislaw.com
9

10 Tina Wolfson (State Bar No. 174806)
   Robert Ahdoot (State Bar No. 172098)
11 Theodore W. Maya (State Bar No. 223242)
   AHDOOT & WOLFSON, P.C.
12 1016 Palm Avenue
   West Hollywood , California 90069
13 Telephone: (310) 474-9111
   Facsimile:  (310) 474-8585
14 twolfson@ahdootwolfson.com

15 *Class Counsel*

16

17

18                UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20

21 SAM WILLIAMSON, individually and on      Case No.  5:14-cv-00158-EJD
   behalf of all others similarly situated,
22                                          **NOTICE OF MOTION AND MOTION FOR**
                  Plaintiff,                **AWARD OF ATTORNEYS' FEES AND**
23                                          **COSTS AND FOR SERVICE AWARDS;**
   v.                                       **MEMORANDUM OF POINTS AND**
24                                          **AUTHORITIES**
   MCAFEE, INC.,
25
                  Defendant.                 Date:  January 26, 2017
26                                           Time: 10:00 a.m.
                                             Honorable Edward J. Davila
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMANTHA KIRBY, individually and on behalf of all others similarly situated,

               Plaintiff,

v.

MCAFEE, INC.,

               Defendant.

Case No.  5:14-cv-02475-EJD

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

  **PLEASE TAKE NOTICE** that on January 26, 2017, at 10:00 a.m., in the courtroom of

4

the Honorable Edward J. Davila, United States District Judge for the Northern District of

5

California, 280 South 1st Street, San Jose, CA 95113, plaintiffs Sam Williamson and Samantha

6

Kirby ("Plaintiffs") and Class Counsel[1] will and hereby do move the Court for an Order: (a)

7

awarding Class Counsel attorneys' fees in the amount of $2,321,225.92, plus reimbursement of

8

$78,774.08 in litigation costs; and (b) awarding Plaintiffs service awards in the amount of $1,250

9

each to compensate them for their commitment on behalf of the class members, with all such

10

attorneys' fees, costs, and service awards to be paid separately by Defendant McAfee, Inc. in

11

addition to (*i.e.*, on top of) the other settlement benefits provided to the class members.

12

  As discussed in the accompanying memorandum, the amounts requested are fair,

13

reasonable and appropriate under applicable law, and are well-justified under the circumstances

14

of this matter.

15

  This motion is based upon this notice of motion and motion; the accompanying

16

memorandum of points and authorities; the accompanying declarations of Sam Williamson

17

("Williamson Decl."), Samantha Kirby ("Kirby Decl."), Roger N. Heller ("Heller Decl."), Daniel

18

M. Hattis ("Hattis Decl."), Tina Wolfson ("Wolfson Decl."), and Brian Devery ("Devery Decl.");

19

the Corrected Class Action Settlement and Release (the "Settlement") previously filed with the

20

Court[2] and all papers filed in support thereof; the argument of counsel; all papers and records on

21

file in this matter; and such other matters as the Court may consider.

22

23

24

25

26

27

[1] The "Class Counsel" firms are Lieff Cabraser Heimann & Bernstein LLP, Hattis Law, and

28

Ahdoot & Wolfson, P.C. *Williamson* Dkt. 96 at p. 14.
[2] The Settlement is on file at *Williamson* Dkt. 95.

1   Dated:  October 29, 2016

                    By:  */s/ Roger N. Heller*

2

                    Michael W. Sobol
3                    Roger N. Heller
                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                    275 Battery Street, 29th Floor
4                    San Francisco, CA  94111-3336
                    Telephone: (415) 956-1000

5

                    By:  */s/ Daniel M. Hattis*
6

                    Daniel M. Hattis
7                    HATTIS LAW
                    9221 NE 25th Street
8                    Clyde Hill, WA 98004
                    Telephone: (650) 980-1990

9

                    By:  */s/ Tina Wolfson*
10

                    Tina Wolfson
11                    Robert Ahdoot
                    Theodore W. Maya
12                    AHDOOT & WOLFSON, P.C.
                    1016 Palm Avenue
13                    West Hollywood , California 90069
                    Telephone: (310) 474-9111
14

15                    *Class Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

    A.   Class Counsel Achieved a Strong Result for the Class ........................... 2

        1.   $11.50 Settlement Benefit for All Auto-Renewal Class Members ............ 2

        2.   Practice Changes ................................................................... 3

        3.   Robust Notice Program ........................................................ 4

        4.   Separate Payment by McAfee of Attorneys' Fees and Costs and Administrative Costs. .......................................................... 4

    B.   Class Counsel Expended Considerable Time and Resources in Achieving the Strong Results Here. .......................................................... 4

III. ARGUMENT ......................................................................................................... 6

    A.   The Requested Fee is Fair, Reasonable, and Justified. ........................... 6

        1.   The Requested Fee is Reasonable Under the Percentage-of-the-Fund Method. .......................................................... 6

            a.   Class Counsel Achieved a Strong Monetary Result. ..................... 8

            b.   Class Counsel Also Achieved Important Additional Benefits. .......................................................... 9

            c.   Class Counsel Assumed Considerable Risk Litigating on a Purely Contingent Basis. .......................................................... 10

            d.   Successfully Prosecuting This Matter Required Significant Skill and Effort on the Part of Class Counsel. ............................ 11

        2.   The Requested Fee is Also Reasonable Under the Lodestar-Multiplier Method. .......................................................... 12

            a.   Class Counsel's Hourly Rates are Reasonable. ........................... 13

            b.   The Number of Hours Class Counsel Have Worked is Reasonable. .......................................................... 14

            c.   The Fee Requested Represents a Modest 1.449 Multiplier. .......... 14

    B.   Class Counsel's Reasonable Litigation Costs are Recoverable. ............. 16

    C.   The Requested Service Awards for Plaintiffs are Reasonable and Well-Justified. .......................................................... 17

IV.  CONCLUSION ..................................................................................................... 17

- i -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

# TABLE OF AUTHORITIES

Page

**Cases**

*Blum v. Stenson*,
   465 U.S. 886 (1984) ................................................................................................. 13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................... 7

*Caudle v. Bristow Optical Co.*,
   224 F.3d 1014 (9th Cir. 2000) ................................................................................. 14

*Gould v. Rosetta Stone, Ltd.*,
   2013 WL 5402120 (N.D. Cal. Sep. 26, 2013) ........................................................ 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................... 6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................... 8

*Hopson v. Hanesbrands Inc.*,
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ............................................................. 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................................... 6

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. Jun. 10, 2005) ...................................... 11

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) ....................................................................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 7, 8, 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................. 7, 8

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................... 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................. 6, 10, 13, 15

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ............................................................................... 15, 16

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ......................................................... 17

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ............................................................ 9

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................................................. 16

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................... 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................... 6, 9, 16, 17

- ii -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016) ................................................................. 16

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ..................................................... 15, 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ......................................................... passim

*Williams v. MGM-Pathe Communs. Co.*,
129 F.3d 1026 (9th Cir. 1997) ................................................................... 7

**Rules**

Fed. R. Civ. P. 23(e) .................................................................................... 6

**Treatises**

3 *Newberg on Class Actions*
§ 14.03 .................................................................................................... 16

Federal Judicial Center, Manual for Complex Litigation,
§ 27.71 (4th ed. 2004) ............................................................................... 8

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   <u>INTRODUCTION</u>

3
4
5
6
7
8

Having achieved substantial benefits for the class members through their extensive pre-filing and continuing investigative efforts and their vigorous prosecution of this matter, Class Counsel respectfully move the Court for an award of reasonable attorneys' fees in the amount of $2,321,225.92, plus reimbursement of $78,774.08 in litigation costs.  The fees and costs awarded will be paid by McAfee on top of (*i.e.*, in addition to) the other benefits class members will receive under the Settlement that has been submitted for the Court's approval.

9
10
11
12
13

The requested fee represents less than 3% of the approximately $86 million in Settlement Benefits that will be provided to Auto-Renewal Class members under the Settlement—even before considering the important practice changes achieved—and represents a modest 1.449 multiplier on Plaintiffs' counsels' collective lodestar in this matter.  The requested fee is absolutely reasonable under the circumstances here.

14
15
16
17
18
19
20
21
22
23

The result achieved here represents a strong result.  McAfee will provide an $11.50 Settlement Benefit to all members of the Auto-Renewal Class—each of whom may choose to receive such benefit as cash, or otherwise will receive it as a McAfee value certificate good towards the purchase of McAfee or Intel Security consumer products.  In the aggregate, the $11.50 Settlement Benefits total approximately $86 million.  In addition, McAfee has agreed to implement important changes regarding both auto-renewal transactions and its advertising of reference prices, which will benefit class members and other McAfee customers going forward.  The Settlement also provides for a robust, multi-pronged notice program which has been implemented, and is being implemented, as approved by the Court, and which McAfee will pay for separately.

24
25
26
27
28

The strong result here would not have been possible but for the hard work and dedication of Class Counsel.  Of particular note in this case, is Class Counsel's pre-filing and continuing factual investigation, which was conducted on a purely contingent basis, and which went well beyond what occurs in a typical class case.  Among other things, Class Counsel utilized a sophisticated, self-developed mechanism to track pricing and discount information—on a daily

- 1 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

basis for approximately two years before filing suit, and continuing throughout the litigation—from McAfee's website and the websites of other retailers of McAfee software. These efforts were critical to establishing a basis for Plaintiffs' claims, and, along with the detailed analysis Class Counsel conducted of the class-wide transactional data obtained in discovery, informed Plaintiffs' evaluation of their claims and their negotiation of the Settlement. There was also considerable litigation and other discovery in the case, requiring substantial commitments of resources. In all, Plaintiffs' counsel have already devoted more than 2,612.95 hours to the investigation, discovery, prosecution, and settlement of this litigation, for a total combined lodestar to date of $1,601,801.85, with significant work still to be done in connection with obtaining final settlement approval and implementing the Settlement should the Court approve it.

Notably, the reaction from class members has been very positive thus far. The deadline for class members to exclude themselves or object is November 28, 2016. As of October 28, 2016, only 143 persons have asked to be excluded, and just one objection has been submitted. These numbers stand in stark contrast to the more than 143,000 cash elections that have already been submitted by Auto-Renewal Class members, with nearly two months to go before the submission deadline.[3]

For the foregoing reasons and the others detailed below, Class Counsel respectfully request that the Court grant their motion for attorneys' fees and costs, and grant service awards in the amount of $1,250 each for the Plaintiffs, to compensate them for their commitment and efforts on behalf of the class members.

## II.   BACKGROUND

### A.   Class Counsel Achieved a Strong Result for the Class

#### 1.   $11.50 Settlement Benefit for All Auto-Renewal Class Members

Pursuant to the Settlement, *all* class members in the Auto-Renewal Class will receive an $11.50 Settlement Benefit. They each have the option of receiving the $11.50 benefit as:

---

[3] Devery Decl.,¶¶ 17-18. The final numbers of timely cash elections, opt-outs, and objections will be reported to the Court in advance of the January 26, 2017 Final Fairness Hearing. The parties and Class Counsel will address in their reply papers any timely objections that may be submitted before the November 28, 2016 objection deadline.

1  (a) cash; or (b) an $11.50 McAfee value certificate.  They can choose the cash option by

2  submitting a simple cash election form, and may submit cash election forms electronically via the

3  Settlement Website or by mail.  The deadline to submit cash election forms is December 23,

4  2016.  As of October 28, 2016, 143,384 cash elections have already been filed.[4]  Class members

5  in the Auto-Renewal Class who do not submit a timely cash election will still receive the

6  Settlement Benefit, in the form of an $11.50 McAfee value certificate good towards the purchase

7  of McAfee or Intel Security consumer products. (Settlement, ¶¶ 28-35)

8      The $11.50 benefit amount represents approximately one-half of the average alleged

9  overcharge for auto-renewal transactions during the class period, a strong result particularly given

10  the substantial challenges and risks these class members faced in the litigation.  *See infra* section

11  III.A.1.a.  In the aggregate, the $11.50 Settlement Benefits that McAfee will provide, for the

12  approximately 7.53 million members of the Auto-Renewal Class, total approximately $86

13  million.

14          2.      **Practice Changes**

15      McAfee has also agreed to implement important changes addressing both the auto-renewal

16  pricing and reference price allegations in the litigation. Specifically, McAfee has agreed to

17  implement the following for two years after the Settlement receives final approval by the Court:

18      (1) McAfee will include at the point of sale in any sales process involving sales made by

19  McAfee at a discount off a reference price and subject to automatic renewal (including for sales

20  made through the McAfee website and through the in-software purchase path), the following or

21  materially similar language:  "Your subscription(s) will be automatically renewed at the

22  undiscounted subscription price in effect at the time of renewal.  The subscription price is subject

23  to change."  A hyperlink will be provided that links to a webpage that includes the current

24  undiscounted subscription price for the applicable McAfee software or McAfee will display the

25  undiscounted subscription price (labeled the "undiscounted subscription price") for the applicable

26  McAfee software on the point of sale webpage.  Substantially similar disclosures will be added to

27

28  [4] Devery Decl., ¶ 17. For cash elections submitted online, class members have the choice of receiving their payment either as a check or as a direct credit to their PayPal account.  For cash elections submitted by mail, payments will be by check.

- 3 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1   a FAQ or informational page on McAfee's website, to notices sent by McAfee to subscribers in
2   connection with automatic-renewal, and to McAfee's End User License Agreement.

3       (2) Where McAfee includes a reference price in its promotions, notices, advertisements or
4   at the point-of-sale (including through the McAfee homepage and through the in-software
5   purchase path), for any McAfee software product offered by McAfee to United States consumers:
6   (a) McAfee will use as such reference price only a price at which McAfee has offered that
7   software product on the McAfee homepage to the public for at least 45 days within the preceding
8   calendar quarter; and (b) McAfee will offer that software product on the McAfee homepage to the
9   public at a non-sale price for at least 45 days within the current calendar quarter.
10  (Settlement, ¶ 37; *see also* Dkt. No. 97 (clarifying notice))

### 3.   Robust Notice Program

12      The Settlement also provides for a robust notice program, which has been, and is being,
13  implemented by the Settlement Administrator.  Such program includes: (a) direct email/mail
14  notice to all class members; (b) a dedicated Settlement Website where class members can get
15  additional information, view key case documents, and file online cash elections; and (c) an
16  informational Toll-Free Number.  (Settlement, § III)

### 4.   Separate Payment by McAfee of Attorneys' Fees and Costs and Administrative Costs.

19      All attorneys' fees and costs awarded to Class Counsel, and the costs of notice and other
20  costs of the Settlement Administrator, will be paid separately by McAfee on top of (*i.e.*, in
21  addition to) the other benefits provided under the Settlement, and thus will not reduce the other
22  benefits received by class members.  The same is true of any service awards granted to the
23  Plaintiffs.  (Settlement, § VII)

### B.   Class Counsel Expended Considerable Time and Resources in Achieving the Strong Results Here.

26      Class Counsel have worked very hard, over multiple years, to achieve the results delivered
27  under the proposed Settlement.  Their efforts began long before the first of these actions was filed
28  in January 2014.  Every day for approximately two years before the initial *Williamson* complaint

1   was filed, and continuing throughout the litigation, Class Counsel utilized a sophisticated, self-

2   developed mechanism to collect daily screenshots and pricing and discount information from

3   McAfee's website for the software products at issue in this litigation, as well as similar

4   information from the websites of other retailers.  Class Counsel conducted analyses of the

5   information gathered through this means.  These efforts were expended on a purely contingent

6   basis, with no guarantee of any reimbursement whatsoever.  Class Counsel also spoke with more

7   than two dozen McAfee customers about their experiences, carefully analyzed McAfee's

8   consumer agreements and pertinent disclosures, and conducted extensive legal research regarding

9   potential legal claims.  Class Counsel's investigation and research have continued since Plaintiffs

10  filed suit, including continuing to track pricing and discount information from McAfee's website

11  and ongoing extensive legal research.  Heller Decl., ¶ 5; Hattis Decl., ¶¶ 9-11.

12      Further, Class Counsel engaged in significant discovery, including:  reviewing and

13  conducting a detailed analysis of McAfee's class-wide transactional data for the products at issue

14  for the class period (which included millions of individual transaction records); reviewing

15  McAfee's historical consumer agreements and other important documents; propounding and

16  responding to written discovery requests; and engaging in numerous meet and confer sessions

17  regarding McAfee's electronic document and data systems and Plaintiffs' requests for production

18  of documents.  Heller Decl., ¶ 6; Hattis Decl., ¶¶ 10-11.  There has also been substantive motions

19  practice in this matter, including two fully-briefed motions to dismiss filed by McAfee, which

20  required extensive legal research.  *See* Dkt. Nos. 21, 25, 27, 48, 54, 59.

21      Additionally, Class Counsel have devoted considerable time and resources to negotiating,

22  documenting, and seeking approval of, the proposed Settlement.  The parties engaged in a full-

23  day mediation session with Eric D. Green of Resolutions, LLC on April 8, 2015.  Following that

24  session, the parties continued to negotiate through Prof. Green and, with his assistance, were able

25  to reach an agreement in principle on certain terms in July 2015.  During the subsequent months,

26  the parties continued to negotiate through the mediator, holding numerous teleconferences with

27  Prof. Green.  With Prof. Green's assistance, the parties ultimately were able to reach an

28  agreement in principle on deal terms.  After an agreement in principle was reached on the claims,

1   the parties, with the further assistance of Prof. Green, reached an agreement regarding Class

2   Counsel's request for attorneys' fees and costs.  Subsequently, the parties worked diligently on

3   finalizing the settlement papers, including the forms of notice and other exhibits, and selecting a

4   proposed Settlement Administrator.  Heller Decl., ¶ 7.  Following the entry of the Court's

5   preliminary approval order, Class Counsel have worked closely with the Settlement

6   Administrator and counsel for McAfee regarding the implementation of the notice program and

7   cash election process.  Heller Decl., ¶ 14.

8   **III.**   **ARGUMENT**

9       **A.**   **The Requested Fee is Fair, Reasonable, and Justified.**

10          In deciding whether the requested fee amount is appropriate, the Court's role is to

11  determine whether such amount is "fundamentally 'fair, adequate, and reasonable.'"  *Staton v.*

12  *Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *In re Wash. Pub.*

13  *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 n.2 (9th Cir. 1994) (overriding principle is

14  that the fee award be "reasonable under the circumstances").

15          Where a class settlement results in the creation of common benefits, courts in the Ninth

16  Circuit may use either (or both) the "percentage-of-the-fund" method or the "lodestar-multiplier"

17  method to determine a reasonable fee.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

18  1998); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Regardless

19  of which approach is used, the ultimate objective is to ensure that the fee awarded to class counsel

20  is "reasonable under the circumstances."  *Wash. Pub. Power*, 19 F.3d at 1295.  The requested fee

21  here is reasonable and appropriate under both approaches.

22       **1.**   **The Requested Fee is Reasonable Under the Percentage-of-the-Fund**
                  **Method.**
23
24          Under the percentage-of-the-fund approach, class counsel's fees are calculated as a

25  percentage of the common benefits generated through their efforts.  *Hanlon*, 150 F.3d at 1029.  In

26  the Ninth Circuit, the "benchmark" percentage is 25 percent, which may be adjusted based on the

27  circumstances of the case.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir.

28  2002).  Courts consider a number of factors to determine the appropriate percentage to apply,

1   including:  (1) the results achieved; (2) the contingent nature of the fee; (3) the complexity of the

2   issues involved; and (4) the skill required of class counsel.  *Id.*; *In re Omnivision Techs., Inc.*, 559

3   F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

4        Here, Class Counsel's efforts have generated: (a) the $11.50 Settlement Benefit for all

5   members of the Auto-Renewal Class; and (b) important practice changes.  With respect to the

6   former, there are approximately 7.53 million members of the Auto-Renewal Class, meaning the

7   aggregate dollar amount is approximately $86 million.  The $2,321,225.92 fee requested

8   represents less than 3% of that amount, significantly below the 25% benchmark.  When litigation

9   costs and administrative costs—which are being paid separately by McAfee—are included in the

10  denominator, the fee percentage here is even lower.  *See In re Online DVD-Rental Antitrust Litig.*,

11  779 F.3d 934, 953 (9th Cir. 2015) (appropriate to include litigation costs and administrative costs

12  in denominator in applying percentage-of-the-fund method).

13       Moreover, while it is appropriate to consider the full approximately $86 million in

14  applying the percentage-of-the-fund method here,[5] it should be noted that the initial cash election

15  figures indicate that the number of cash elections, and thus the amount of benefits that will be

16  paid out as cash pursuant to the Settlement (in addition to the value certificates that will be

17  provided to non-electors), will be substantial.  The period for submitting cash elections runs

18  through December 23, 2016.  As of October 28, 2016, 143,384 cash elections have already been

19  submitted online or by mail, with that number certain to grow between now and the deadline.

20  Moreover, many Auto-Renewal Class members who do not elect the cash option will use the

21  McAfee value certificates they are sent, resulting in substantial further realized value for the

22  _____

23  [5] All Auto-Renewal Class members have the option to receive the $11.50 as cash, and those who do not elect the cash option will still receive the full benefit in the form of an $11.50 McAfee value certificate, making it appropriate to consider the full $86 million amount.  Indeed, even if those who did not elect the cash option were *not* provided the full benefit, which they *will* be under Settlement here, it would still be appropriate, under Ninth Circuit law, to consider the full amount made available to the Auto-Renewal Class in applying the percentage-of-the-fund method.  *See Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1026-27 (9th Cir. 1997) (holding that it was an abuse of discretion for a district court to award fees based on the value of claims made under a settlement, rather than the amount made available) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980)); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, *11 (N.D. Cal. Apr. 3, 2009) ("The appropriate measure of the fee amount is against the potential amount available to the class, not a lesser amount reflecting the amount actually claimed by the members.").

class.  Finally, the administrative costs (currently estimated to be over $1.5 million) and litigation costs ($78,774.08) are being separately paid by McAfee as well, providing further benefit to the class.[6]

Consideration of the "enhancement" factors confirms that the fee requested is absolutely reasonable under the circumstances.

### a. Class Counsel Achieved a Strong Monetary Result.

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case.  *See Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983); *Vizcaino*, 290 F.3d at 1049; *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members").

Here, the $11.50 Settlement Benefit represents a strong result given, *inter alia*, the nature of the claims, the potential damages, and the substantial risks of litigation.  The $11.50 amount represents approximately one-half (1/2) of the average alleged overcharge for auto-renewal transactions during the class period as estimated by Plaintiffs, a strong result particularly when one considers the substantial risks and uncertainty of ongoing litigation.[7]  Among other arguments that McAfee has made and/or indicated it would make if the litigation proceeded are: (a) its disclosures regarding auto-renewal pricing would not mislead a reasonable consumer; (b) the prices charged for auto-renewals were charged to millions of auto-renewal customers and to a significant number of non-auto-renewal customers as well; (c) its policies regarding auto-renewal

---

[6] *See In re Online DVD-Rental*, 779 F.3d at 953 (appropriate to include litigation costs and administrative costs in denominator in applying percentage-of-the-fund method).

[7] While some members of the Auto-Renewal Class had their annual subscriptions auto-renewed more than once during the class period, and while Plaintiffs believe they would have a credible basis for seeking, at trial, damages based on all such auto-renewals, McAfee has argued that even if Plaintiffs' auto-renewal claims had merit (which McAfee disputes), customers would have at least been on notice of McAfee's auto-renewal pricing after incurring their first auto-renewal charge. Thus, there is uncertainty regarding whether Plaintiffs could have recovered damages per customer beyond a single auto-renewal transaction even in the proverbial "home run" scenario. Plaintiffs estimate that, on average, class members in the Auto-Renewal Class had their subscriptions auto-renewed a little over two times during the class period.  Even if every one of these transactions were hypothetically subject to recovery, the $11.50 benefit amount would still represent approximately one-quarter (1/4) of the average alleged total overpayments per class member.

- 8 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1   pricing (and, specifically, the exclusion of "promotional" and "discount" pricing) were disclosed

2   in its form consumer agreements and elsewhere; and (d) auto-renewal customers were sent

3   advance notice of the prices they would be charged and could cancel their renewed subscriptions

4   within 60 days after being charged.  Moreover, McAfee has a second motion to dismiss pending

5   in the *Williamson* case.  Further, McAfee disputes whether a class trial would be manageable.

6        While Plaintiffs believe they could overcome these challenges, any of these arguments by

7   McAfee, if successful, could end the case entirely and result in the class members receiving

8   nothing at all.  Moreover, even if Plaintiffs could overcome *all* of these challenges, the Settlement

9   allows class members to promptly receive benefits, without the significant delays that would

10  come from continued litigation, both in this Court and, if Plaintiffs prevailed at trial, on an

11  inevitable appeal.

12              **b.       Class Counsel Also Achieved Important Additional Benefits.**

13       The Ninth Circuit and other courts have repeatedly held that where, as here, class counsel

14  achieves significant non-monetary benefits, the court "should consider the value of [such] relief

15  as a relevant circumstance in determining what percentage of the common fund class counsel

16  should receive as attorneys' fees."  *Staton*, 327 F.3d at 974; *see also, e.g.*, *Vizcaino*, 290 F.3d at

17  1049 (affirming enhanced fee award where "the court found that counsel's performance generated

18  benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, *

19  7-8 (N.D. Cal. July 18, 1997) (granting fee award of 1/3 of common fund where settlement

20  provided additional non-monetary relief); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.

21  Supp. 2d 503, 525 (E.D.N.Y. 2003) ("I agree that the substantial injunctive relief here should

22  inform [the court's] decision on awarding fees, and it has.").

23       In addition to the approximately $86 million of Settlement Benefits, Class Counsel also

24  achieved important changes by McAfee, addressing both the auto-renewal pricing and reference

25  price claims in the litigation.  *See supra* section II.A.2.  For the auto-renewal claims, the

26  improved disclosures provided for in the Settlement will make McAfee's auto-renewal pricing

27  policies significantly clearer, helping customers to make informed choices regarding their

28  software subscriptions and whether to enroll in auto-renewal.  With respect to the reference price

claims, the Settlement provides clear, objective terms governing the circumstances in which McAfee may advertise a reference price, helping to ensure that McAfee will not advertise reference prices without an appropriate basis in its actual prices, and thus closely tracking the relief sought with respect to these claims.[8]  These important additional benefits militate strongly in favor of granting the requested fee.

### c.     Class Counsel Assumed Considerable Risk Litigating on a Purely Contingent Basis.

Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.  *See Wash. Pub. Power*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency case "by paying them a premium over their normal hourly rates").  This factor deserves particular weight under the unique circumstances of this matter.

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and that they would only receive a fee if there was a recovery.[9]  Class Counsel's outlay of resources has been particularly significant here, including nearly two years of pre-filing, daily collection of pricing and discount data from McAfee's website and the websites of other retailers, and ongoing collection and analysis of such data throughout the litigation, in addition to Class Counsel's analysis of class-wide transactional data produced by McAfee in discovery, among many other things.  Class Counsel's extensive pre-filing efforts here went far beyond what is done in a typical class case and, alone, could fully support the requested fee here.

Class Counsel expended all of these resources despite the very real risk that they may

---

[8] The claims pled regarding McAfee's reference prices sought injunctive relief only.  (*Williamson* Dkt. 42, ¶¶ 7, 150, 160)  The practice changes obtained for the Reference Price Class pursuant to the Settlement Agreement appropriately track the relief sought for these claims.

[9] Heller Decl., ¶ 20; Hattis Decl., ¶ 22; Wolfson Decl., ¶ 5.

1   never be compensated at all.  Indeed, the risk assumed was magnified in this case, given the novel

2   nature of some of the issues involved, the difficulty of successfully prosecuting these sorts of

3   actions generally, and the formidable defenses and challenges specifically presented in this case.

4   Class Counsel's "substantial outlay, when there is a risk that that none of it will be recovered,

5   further supports the award of the requested fees" here.  *Omnivision*, 559 F. Supp. 2d at 1047.[10]

6                    **d.    Successfully Prosecuting This Matter Required Significant Skill
                             and Effort on the Part of Class Counsel.**

7

8           The "prosecution and management of a complex national class action requires unique

9   legal skills and abilities" that are to be considered when determining a reasonable fee.  *In re*

10  *Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted); *see also Vizcaino*, 290 F.3d at 1048 (the

11  complexity of the issues involved and skill and effort displayed by class counsel are additional

12  factors used in determining the proper fee under the percentage-of-the-fund approach).

13          Class Counsel in this matter are experienced litigators who have successfully prosecuted

14  and resolved numerous large consumer class actions and other complex matters, including cases

15  regarding false advertising and unfair business practice claims.[11]  Class Counsel's skill and

16  relevant experience were critical to achieving the Settlement here.

17          Moreover, investigating, prosecuting and settling this matter required considerable

18  commitments of time and resources by Class Counsel.  Among other important tasks, Class

19  Counsel have done the following:

20      •   Conducted extensive pre-filing investigation, including approximately two years of daily

21          collection of pricing and discount information and analysis of same;

22      •   Drafted complaints;

23      •   Conducted ongoing factual investigation and legal research;

24      •   Propounded and responded to written discovery requests;

25  _____

26  [10] Further, Class Counsel had to turn down opportunities to work on other cases in order to devote
     the appropriate amount of time and resources necessary to handle this matter.  Heller Decl., ¶ 19;
27  Hattis Decl., ¶ 22.  Class Counsel's devotion to this matter in lieu of other opportunities further
     supports the requested fee award here.  *See Vizcaino*, 290 F.3d at 1050; *In re Heritage Bond*
28  *Litig.,* 2005 U.S. Dist. LEXIS 13555, *69 (C.D. Cal. Jun. 10, 2005).
    [11] Heller Decl., ¶¶ 2-4, 15-18; Hattis Decl., ¶¶ 3-7; Wolfson Decl., ¶¶ 3-4, Ex. A.

- Engaged in extensive meet and confer regarding McAfee's electronic document and data systems and Plaintiffs' requests for production of documents;

- Analyzed class-wide transactional data for the products at issue for the class period, and reviewed documents produced in discovery;

- Briefed two motions to dismiss filed by McAfee;

- Prepared for and engaged in mediation and continuing settlement negotiations;

- Worked on drafting the Settlement and the exhibits thereto;

- Worked closely with the Settlement Administrator and McAfee on implementation of the class notice program and cash election process; and

- Prepared settlement approval papers.

The skill and effort displayed by Class Counsel here further justifies the requested fee award.

### 2. The Requested Fee is Also Reasonable Under the Lodestar-Multiplier Method.

Application of the lodestar-multiplier method, either as the primary method or as a "cross-check," confirms the reasonableness of the fee requested.

The accompanying declarations set forth the hours of work and billing rates used to calculate the lodestars here.  As described in those declarations, Plaintiffs' counsel and their staffs have devoted a total of approximately 2,612.95 hours to this litigation, and have a total unadjusted lodestar to date of approximately $1,601,801.85.[12]  These hours are broken down by task category in the following chart:

| Category | Total Hours (All Plaintiffs' Counsel) |
|---|---|
| Factual Investigation and Price Tracking | 332.12 |
| Legal Research | 305.23 |
| Complaints | 250.48 |

---

[12] Heller Decl., ¶ 21, Ex. A; Hattis Decl., ¶ 23, Ex. A; Wolfson Decl., ¶ 19, Ex. B.  These numbers include the time expended by the Class Counsel firms as well as time expended by two Of Counsel for Ahdoot & Wolfson, P.C. ("AW"), Francis Flynn and Keith Custis, who assisted AW in the litigation (*see* Wolfson Decl., ¶¶ 9, 14-16), and who will receive their fee allocation from any fee awarded to Class Counsel.

- 12 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

| Category | Total Hours (All Plaintiffs' Counsel) |
|---|---|
| First Motion to Dismiss | 184.34 |
| Second Motion to Dismiss | 184.06 |
| Other Pleadings | 150.31 |
| Class Members Correspondence | 60.36 |
| Data Analysis | 154.76 |
| Mediation and Settlement | 599.81 |
| Litigation Strategy | 75.46 |
| Discovery | 316.02 |
| **Total Hours** | **2,612.95** |

These amounts do not include the additional time that Class Counsel will have to spend going forward in obtaining approval of, and implementing, the Settlement.

### a.     Class Counsel's Hourly Rates are Reasonable.

In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).  Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment. *Wash. Pub. Power*, 19 F.3d at 1305.

Class Counsel here are experienced, highly regarded members of the bar.  They have brought to this case extensive experience in the area of consumer class actions and complex litigation.[13]  Class Counsel's customary rates, which were used in calculating the lodestar here, are in line with prevailing rates in this District, have been approved by courts in this District and other courts and/or are paid by hourly-paying clients of the firms.[14]

---

[13] Heller Decl., ¶¶ 2-4, 15-18; Hattis Decl., ¶¶ 3-7; Wolfson Decl., ¶¶ 3-4, Ex. A.
[14] Heller Decl., ¶¶ 24-25; Hattis Decl., ¶ 26; Wolfson Decl., ¶¶ 21-22.

- 13 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1

2

### b.       The Number of Hours Class Counsel Have Worked is Reasonable.

The number of hours that Class Counsel have billed is reasonable.  *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (counsel entitled to recover for all hours reasonably expended).  In order to be in a position to file and pursue this action, Class Counsel were required to spend considerable time, *inter alia*:  investigating the factual issues involved (including performing nearly two years of pre-filing collection and analysis of pricing information, which continued throughout the litigation), researching and analyzing applicable law and the potential legal claims, speaking with class members, and carefully analyzing McAfee's consumer agreements and pertinent disclosures.  Class Counsel's investigation and research continued after Plaintiffs filed suit, including continuing to track the information from McAfee's website and ongoing extensive legal research.  Moreover, Class Counsel engaged in considerable discovery—including analyzing class-wide transactional data for the products at issue—which was essential to their evaluation of Plaintiffs' claims and to negotiating the Settlement.  Class Counsel also briefed two dispositive motions to dismiss filed by McAfee.  Further, Class Counsel committed considerable time and resources to preparing for settlement negotiations and to negotiating and documenting the Settlement and the exhibits thereto.  Following the entry of the Court's preliminary approval order, Class Counsel have worked closely with the Settlement Administrator and McAfee regarding the implementation of the notice program and the cash election process.  These tasks were performed for the benefit of the class members, and contributed to the success achieved.  Moreover, Class Counsel made every reasonable effort to prevent the duplication of work or inefficiencies.[15]

### c.       The Fee Requested Represents a Modest 1.449 Multiplier.

Under the lodestar-multiplier method, courts may adjust the raw lodestar amount based upon consideration of many of the same factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of other employment due to acceptance of the case; and (5)

---

[15] Heller Decl., ¶¶ 11-12; Hattis Decl., ¶ 15; Wolfson Decl., ¶ 6.

- 14 -

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1    the experience, reputation, and ability of the attorneys.  *See Kerr v. Screen Extras Guild, Inc.*,

2    526 F.2d 67, 70 (9th Cir. 1975).

3         Class Counsel request a fee of $2,321,225.92 million, which represents a multiplier of

4    approximately 1.449 on the total lodestar of $1,601,801.85 incurred by Plaintiffs' counsel in this

5    litigation.  Such a multiplier is well within the range of multipliers that courts in the Ninth Circuit

6    and elsewhere regularly approve.  *See* 3 *Newberg on Class Actions* § 14.03 (multipliers "ranging

7    from one to four are frequently awarded in common fund cases when the lodestar method is

8    applied"); *see also, e.g., Vizcaino*, 290 F.3d at 1051 and Appendix (approving multiplier of 3.65

9    and citing cases with multipliers ranging from 0.6 to 19.6, with most of the cases ranging from

10   1.0 to 4.0); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995)

11   (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class

12   action litigation").

13        Moreover, the circumstances here fully support the application of a reasonable multiplier.

14   Of particular note is the unique, extensive pre-filing investigation that Class Counsel performed

15   on a completely contingent basis.  Every day for approximately two years before the initial

16   *Williamson* complaint was filed, and continuing throughout the litigation, Class Counsel used a

17   sophisticated, self-developed mechanism to collect daily screenshots and pricing and discount

18   information from McAfee's website for the software products at issue in this litigation, as well as

19   similar information from the websites of other retailers.  Class Counsel conducted analyses of the

20   information gathered through this means.  Such information was critical to Plaintiffs' ability to

21   bring this case in the first place and, together with the analysis Class Counsel performed of the

22   class-wide transactional data produced in discovery, greatly informed Plaintiffs in evaluating the

23   claims and negotiating the Settlement.  Class Counsel respectfully submit that these unique,

24   extensive efforts over multiple years on a completely contingency basis would, alone, support

25   application of a reasonable multiplier here.

26        And more generally, the fact that Class Counsel investigated and litigated this matter on a

27   completely contingent basis supports the application of a reasonable multiplier.  *See Wash. Pub.*

28   *Power*, 19 F.3d at 1300 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-

1  payment in common fund cases."); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir.

2  2016) (risk multiplier must be applied where "(1) attorneys take a case with the expectation they

3  will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and

4  (3) there is evidence the case was risky.").

5  In addition to the contingent nature of the fee, the additional *Kerr* factors further support

6  that the fee requested is reasonable, including:  the strong monetary result (*i.e.*, the approximately

7  $86 million in Settlement Benefits); the important practice changes achieved; the significant

8  challenges Class Counsel faced; the complexity of the issues involved; and the skill and effort

9  demonstrated by Class Counsel.  *See supra* sections III.A.1 (discussing the relevant factors in

10  connection with percentage-of-the-fund analysis); *Kerr*, 526 F.2d at 70.

11  **B.**      **Class Counsel's Reasonable Litigation Costs are Recoverable.**

12  Under well-settled law, Class Counsel are entitled to reimbursement of the expenses they

13  reasonably incurred investigating and prosecuting this matter.  *See Staton*, 327 F.3d at 974; *In re*

14  *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric*

15  *Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).  To date, Class Counsel have collectively incurred

16  more than $78,774.08 in unreimbursed litigation costs.  This includes costs associated with,

17  among other things, consultant fees for consultants who assisted Plaintiffs' extraction and

18  analysis of pricing information and analysis of transactional data, mediation, computer research,

19  filing fees, and postage.  This amount does not include significant internal and other additional

20  costs that Class Counsel incurred in this litigation but, in an exercise of discretion, do not seek to

21  recover.[16]

22  The expenses for which Class Counsel seek reimbursement were reasonably necessary for

23  the continued prosecution and resolution of this litigation, and were incurred by Class Counsel for

24  the benefit of the class members with no guarantee that they would be reimbursed.  They are

25  reasonable in amount and the Court should approve their reimbursement.

26

27

28

---

[16] Heller Decl., ¶¶ 26-28, Ex. B; Hattis Decl., ¶¶ 27-28, Ex. B; Wolfson Decl., ¶¶ 23-24.

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1

2

**C.      The Requested Service Awards for Plaintiffs are Reasonable and Well-
Justified.**

3       As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class

4  members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*,

5  327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

6  awards "are fairly typical in class action cases").  Such awards are "intended to compensate class

7  representatives for work done on behalf of the class [and] make up for financial or reputational

8  risk undertaken in bringing the action."  *Id.*; *see also Van Vranken*, 901 F. Supp. at 299-300.

9       The requested service awards here are reasonable and justified.  In addition to lending

10  their names to these cases, and thus subjecting themselves to public attention, the named

11  Plaintiffs here were engaged.  Among other things, they provided information to Class Counsel,

12  gathered documents, reviewed pleadings, stayed updated about the litigation, and reviewed and

13  approved the proposed Settlement.[17]  Their commitment is notable given the relatively modest

14  size of their personal financial stakes in this matter.  *See Van Vranken*, 901 F. Supp. at 299 ("In

15  exchange for his participation, Van Vranken will not receive great personal benefit.  He owns a

16  moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

17       Moreover, the modest $1,250 awards requested here are well within the range of service

18  awards that courts have granted in similar circumstances.  *See, e.g., Larsen v. Trader Joe's Co.*,

19  2014 WL 3404531, *10  (N.D. Cal. Jul. 11, 2014) (granting $2,500 service awards); *Gould v.

20  Rosetta Stone, Ltd.*, 2013 WL 5402120, *6-7 (N.D. Cal. Sep. 26, 2013) (approving service awards

21  of $5,000 and stating that "[i]n this district, a $5,000 payment is presumptively reasonable")

22  (citing cases).

23  **IV.      CONCLUSION**

24       For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

25  enter an Order: (a) awarding Class Counsel attorneys' fees in the amount of $2,321,225.92

26  million, plus reimbursement of litigation costs in the amount of  $78,774.08; and (b) awarding the

27  Plaintiffs service awards in the amount of $1,250 each for their efforts and commitment on behalf

28

---

[17] *See* Declarations of Sam Williamson and Samantha Kirby, filed herewith.

NOTICE OF MOT. AND MOT. FOR ATTORNEYS'
FEES AND COSTS AND SERVICE AWARDS; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1  of the class members, with all such attorneys' fees, costs and service awards to be paid separately

2  by McAfee in addition to (*i.e.*, on top of) the other benefits provided under the Settlement.

3

4  Dated:  October 29, 2016         By:  */s/ Roger N. Heller*

5                                  Michael W. Sobol
                                   Roger N. Heller
                                   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
6                                  275 Battery Street, 29th Floor
                                   San Francisco, CA  94111-3336
7                                  Telephone: (415) 956-1000

8                                  By:  */s/ Daniel M. Hattis*

9                                  Daniel M. Hattis
                                   HATTIS LAW
10                                 9221 NE 25th Street
                                   Clyde Hill, WA 98004
11                                 Telephone: (650) 980-1990

12                                 By:  */s/ Tina Wolfson*

13
                                   Tina Wolfson
14                                 Robert Ahdoot
                                   Theodore W. Maya
15                                 AHDOOT & WOLFSON, P.C.
                                   1016 Palm Avenue
16                                 West Hollywood , California 90069
                                   Telephone: (310) 474-9111
17

18                                 *Class Counsel*

19

20

21

22

23

24

25

26

27

28

- 18 -

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing document.  In compliance with General Order 45, I hereby attest that the signatories indicated above via a conformed signature have concurred in this filing.


By:    */s/ Roger N. Heller*


1322231.6