Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCAFEE, INC.,<br><br>Defendant. | Case No. 5:14-cv-00158-EJD |
| SAMANTHA KIRBY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCAFEE, INC.,<br><br>Defendant. | Case No. 5:14-cv-02475<br><br>The Honorable Edward J. Davila |

**REPLY OF OBJECTOR AMIRALI JABRANI TO PLAINTIFFS' MEMORANDUM RESPONDING TO OBJECTIONS; ALTERNATIVELY, MOTION FOR LEAVE TO FILE SUR-REPLY**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

I.  Class Counsels' Character Assassinations, Premised on False Assertions to this
    Court, are an Improper Attempt to Distract the Court. ...........................................................2

II. CAFA Precludes Class Counsels' Fee Request.......................................................................5

III. Even Without Applying CAFA, Class Counsels' $2.3 Million Fee Request is
     Excessive..................................................................................................................................8

IV. Class Counsel Failed the Reference Price Class. ..................................................................11

V.  The Relatively Low Number of Objections Should Not be Construed as Class
    Assent to this Unfair Settlement. ..........................................................................................12

Conclusion ....................................................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-CV-0248 JAH (WVG) (S.D. Cal.) .................................................................................................................4

*Banks v. Nissan N. Am., Inc.*, 11-CV-2022-PJH, 2015 WL 7710297 (N.D. Cal. Nov. 30, 2015) ..................................................................................................13

*Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011) ....................................................................................5

*Buckler v. Rader*, 56 F. Supp. 3d 1371 (N.D. Ga. 2014) ...................................................4

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481 (9th Cir. 1988) ..............................11

*Davis v. Cole Haan, Inc.*, C 11-01826 JSW, 2013 WL 5718452, (N.D. Cal. Oct. 21, 2013) ......................................................................................................6, 7

*Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013) ........................4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) .......................................................5

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) ................................................11

*Duncan v. JPMorgan Chase, N.A.*, No. 5:14-cv-00912-FB-JWP (W.D. Tex.) .................2

*Embry v. ACAm. Corp.*, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) ..........................4

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ......................................................5

*In re Abbott Labs. Norvir Anti-Trust Litig.*, C 04-1511 CW, 22007 WL 1689899 (N.D. Cal. June 11, 2007) .................................................................................12

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ..................................5

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)..................................................................................................13

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015)..................................................................................................................9

*In re Literary Works,* 654 F.3d 242 (2d Cir. 2011) ...................................................11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)......................7

*In re TD Ameritrade Accountholder Litig.,* 266 F.R.D. 418 (N.D. Cal. 2009) ..............9

*Kawitt v. United States,* 842 F.2d 951 (7th Cir.1988) ..................................................4

*Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328 (Cal. App. 2d Dist. 2014),.....................................................................................................................5

*Litwin v. Irenew Bio Energy Solutions*, LLC, 226 Cal. App. 4th 877 (2014) ...............3

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ..................................................................................................13

*In re Magsafe Apple Power Adapter Litig.*, 5:09-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) .......................................................................9

*Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) .......................................................................................3

*Rose v. Bank of Am. Corp.*, 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................................................................................11

*Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016) ..............................................................................................6

*Shames v. Hertz Corp.*, 07-CV-2174-MMA WMC, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ...............................................................................................6

*True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052 (C.D. Cal. 2010).................................5

**Other Authorities**

Advisory Committee Notes on 2003 Amendments to Rule 23(h).................................................8

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).................................13

*In re Magsafe Apple Power Adapter Litig.*, 5:09-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015).................................10

Class member Amirali Jabrani filed a timely objection on November 28, 2016. Class counsel filed a response to his and other objections on January 12, 2017, which they styled as a reply in support of their motion for final approval of the settlement and for attorneys' fees.

To the extent the Court interprets this document filed by Mr. Jabrani as a sur-reply, he moves based on good cause for leave to file it to correct numerous factual and legal misrepresentations made by class counsels.

## INTRODUCTION

As noted in Mr. Jabrani's objection, this Court has already questioned the modest $11.50 benefit for the Auto-Renewal Class, which "will deprive class members of a significant percentage of the amount overcharged."[1] This "less than ideal" settlement does not square with class counsels' $2.3 million fee request.

Class counsel cling to the absurd notion that this settlement is worth $86 million on the false assumption that every class member filed a claim for cash or redeemed their certificate, and that the certificates are actually worth $11.50 even though they must be used to purchase additional McAfee products, are valid for "150 days after issuance, must be used in a single purchase, are not redeemable for cash, and cannot be transferred[.]"[2]

Only 263,261 (3.4%) of the 7.53 million Auto-Renewal class members filed claims for cash.[3] So, the total cash benefit is $3,027,501.50. The remaining 7.2 million Auto-Renewal members receive certificates. In all likelihood, only a miniscule percentage will redeem them.

As Mr. Jabrani's objection observed, a 3% redemption rate would result in a $1.68

---

[1] Order Granting Preliminary Approval, ECF Doc. 96, at 11.

[2] Settlement Agreement, ECF Doc. 95, at 22.

[3] Plaintiffs' Reply in Support of Motion for Final Approval of Class Settlement and Motion for Award of Attorneys' Fees and Costs and for Service Awards, ECF Doc. 111, at 1.

million total certificate value based on a generous 2/3 cash value of the $11.50 certificates. This places the total settlement value at $4.7 million (class counsel still offer no estimate of the value of the two year practice changes).

$2.3 million in fees and costs is nearly half the settlement value of $4.7 million. Despite class counsels' insistence to the contrary, this *is* a disproportionate fee request. The other two *Bluetooth* factors are present, suggesting collusion and a settlement that should not be approved.

The fee request is improper as a matter of law. The Class Action Fairness Act clearly applies to this settlement in which nearly 97% of the class will receive coupons. Class counsel invite legal error by suggesting this Court decline to apply it because 3% of the class will receive cash. CAFA requires that any award based on the coupon relief must be based on coupons actually redeemed. Approval of fees should not take place until the redemption rates are available.

Even if CAFA is disregarded and the coupons are taken out of the equation, class counsels' $2.3 million fee request is excessive and should be rejected.

I. **Class Counsels' Character Assassinations, Premised on False Assertions to this Court, are an Improper Attempt to Distract the Court.**

Given the threat to their fees, class counsel resort to *ad hominem* attacks on Mr. Jabrani and his attorneys Timothy Hanigan and Christopher Bandas. The attacks are replete with factual misrepresentations.

Though some of their objections have been overruled, Mr. Jabrani and his wife have never filed a meritless objection. In fact, recently in *Duncan v. JPMorgan Chase, N.A.*, No. 5:14-cv-00912-FB-JWP (W.D. Tex.), a case cited by class counsel,[4] Mr. Jabrani's objections played an instrumental role in reducing an excessive fee like the one requested in this case. *Id.* at ECF

---

[4] Reply, ECF Doc. 111, at 6 n. 5.

2

Docs. 85, 93, 94 (the court reduced class counsels' fees by $1.2 million, which resulted in a direct benefit to the class).

Class counsel claim Mr. Jabrani's counsel Timothy Hanigan "has a history of . . . attempting to extract a payment without any corresponding benefit to the class or judicial scrutiny."[5] That is categorically false. Mr. Hanigan receives hourly compensation in representing class members, and takes no financial benefit from any settlement. He has *never* received financial benefit from settling an objection or an appeal of an objection. Further, in 2014, Mr. Hanigan succeeded in obtaining a reversal of district court's approval of an unfair class action settlement where the class notice violated his client's due process rights. *Litwin v. Irenew Bio Energy Solutions*, LLC, 226 Cal. App. 4th 877 (2014).

Class counsel then mislead this Court by citing *Roberts v. Electrolux Home Prods.*, 2014 WL 4568632, at *11 (C.D. Cal. Sept. 11, 2014) for their claim that the district court described Mr. Hanigan as a "serial objector" and indicated that an objection which he filed "misunderst[ood] or misread the Settlement Agreement. . . ."[6] Significantly, after issuing that order, the court issued two separate amended orders replacing the original order *nunc pro tunc* and removing the passage quoted by class counsel.[7]

To the extent class counsel were aware of the *nunc pro tunc* orders, but failed to inform the Court, they are in violation of the California Rules of Professional Conduct and should be sanctioned. *See* CAL. R. PROF. C. 5-2000 ("in presenting a matter to a tribunal, a member: . . . (B) [s]hall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of . . . law; . . . [and] (D) [s]hall not, knowing its invalidity, cite as authority a decision that has been

---

[5] Plaintiffs' Reply, at 6.
[6] *Id.*
[7] ECF Doc. 271, at 10.

overruled or a statute that has been repealed or declared unconstitutional. . . .); *Kawitt v. United States,* 842 F.2d 951, 954 (7th Cir.1988) (citation of vacated case warranted sanctions against attorney on appeal); *Buckler v. Rader,* 56 F. Supp. 3d 1371, 1376 (N.D. Ga. 2014) ("In what is clearly sanctionable behavior, . . . counsel for Plaintiffs entirely failed to note that this specific holding was abrogated by the Third Circuit"). To the extent class counsel were unaware, they failed to conduct a reasonable inquiry before filing their Reply and are subject to sanctions under Rule 11.

Additionally, neither Mr. Bandas nor Mr. Hanigan took any improper actions in *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 08-CV-0248 JAH (WVG) (S.D. Cal.), as suggested. Class counsel rely on pleadings filed by class attorneys to support this false representation.[8] Their rank speculation that the objection in *Adams* was withdrawn based on any alleged impropriety is false.

Class counsel also attack Mr. Bandas with half-truths. They claim he has been "repeatedly" sanctioned for abuse of the objection process, citing exactly two cases. They discuss a contempt order in *Embry v. ACAm. Corp.,* 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012), but omit reference to a subsequent order concluding Mr. Bandas was in compliance with its previous order. *Id.* at ECF Doc. 282. Admittedly, in *Dennings v. Clearwire Corp.,* 928 F. Supp. 2d 1270 (W.D. Wash. 2013), Mr. Bandas's *pro hac* admission was revoked after he missed a deadline for filing an appellate bond by three days. There have been no other sanctions against Mr. Bandas.

Of course, class counsel fail to mention that numerous clients represented by Mr. Bandas have succeeded in overturning unfair settlements and excessive fee awards. *See, e.g., Eubank v.*

---

[8] Reply, ECF Doc. 111, at 6.

*Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings"); *Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed").

Regardless, prior representation of objecting class members "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) (emphasis added). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011). Ultimately, it is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.

## II. CAFA Precludes Class Counsels' Fee Request.

CAFA clearly applies to this settlement, which provides only coupon relief to more than 96% of the Auto-Renewal Class members. Class counsels' proposed fee invites legal error by asking this Court to ignore CAFA's requirements.

5

The certificates are unquestionably coupons as defined by CAFA, and class counsel advance no argument explaining how they are not. Instead, they argue that by providing a cash option, the settlement is removed from the ambit of the statute. This position has been rejected by courts in the Ninth Circuit and elsewhere.

Where coupons are the "primary" benefit of a settlement, CAFA applies and fees must be calculated based on the value of the coupons actually redeemed. *See True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010); *see also Davis v. Cole Haan, Inc.*, C 11-01826 JSW, 2013 WL 5718452, at *3 (N.D. Cal. Oct. 21, 2013); *see also HP Inkjet*, 716 F.3d at 1175-76 ("[w]hen a settlement provides for coupon relief, *either in whole or in part*, any attorney's fee 'that is attributable to the award of coupons' must be calculated using the redemption value of the coupons. § 1712(a). Since the district court awarded fees that were "attributable to" the coupon relief, but failed to first calculate the redemption value of those coupons, we reverse the orders of the district court and remand for further proceedings consistent with this opinion") (emphasis original); *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320, at *1 (E.D. Pa. July 29, 2016)(applying CAFA to a settlement that provided cash, but paid over 95% of the settlement through *de facto* coupons and noting that "[t]he only consistent reading of the Act is Congress intended to address mixed settlements, such as ones where counsel contemplate offering 5% in cash and 95% in coupons").[9]

The fact that a miniscule percentage of the class may receive a cash benefit does not remove the settlement from the ambit of CAFA. Such a holding would undermine the efficacy of

---

[9] The *Shames v. Hertz Corp.*, 07-CV-2174-MMA WMC, 2012 WL 5392159, at *16 (S.D. Cal. Nov. 5, 2012) opinion cited by class counsel is inapposite. There was no indication in *Shames* that the majority of the benefit was coupon based as it is here. Further, the option was between vouchers, which unlike the certificates here, did not require the class members to spend more with the defendant, and cash.

6

CAFA, and allow class action attorneys to avoid it in cases like this by orchestrating a coupon settlement while including cash options which they know will result in diminutive claims. *Rougvie*, 2016 WL 4111320, at *27 (explaining that reading CAFA not to apply simply because cash was provided as an option "would render the Act meaningless when over 95% of the settlement is paid in vouchers").

In *True*, as here, a subset of the settlement class was entitled to receive a cash payment ($100). *True*, 749 F.Supp.2d at 1061. It also provided rebate relief to all class members—a $500 or $1,000 rebate off the purchase of a new car. *Id.* at 1060. The *True* court determined that the "primary relief" offered was the rebate, and thus "the settlement is largely a coupon settlement." *Id.* at 1069. As such, CAFA controlled the fee award, and the court analyzed approval of the settlement under section 1712(e). *Id.*

Likewise, in *Davis v. Cole Haan, Inc.*, No. C 11-01826 JSW, 2013 WL 5718452, at *2 (N.D. Cal. Oct. 21, 2013), the court applied CAFA even though the class members had the option of receiving a voucher for $20 or 30% off new merchandise. *Id.* at *2. The court observed that even if the $20 voucher option were not a coupon, less than 1% of the class would actually receive that relief. *Id.* at *3. Due to the "practical reality . . . that almost the entire class will be receiving an undisputed coupon[,]" CAFA controlled and precluded the court from entering a lodestar award. *Id.* at *3. Further, the court was could not award a contingency fee award "in the absence of evidence showing the actual redemption value of the coupons[.]" *Id.*

The Ninth Circuit recently considered the question of whether a settlement involving a gift card was subject to the strictures of CAFA. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–52 (9th Cir. 2015). The Court declined to apply CAFA because the gift cards were tantamount to cash — they were "freely transferrable . . . and do not expire, and do not require

consumers to spend their own money." Notably, the settlement also offered the class members the option of cash. If the cash option precluded application of CAFA, then there was no reason for the NinthCircuit to engage in the analysis of whether the gift card was a voucher.

The simple fact is including a cash option in an otherwise primarily coupon-based settlement does not and should not relieve class attorneys from submitting to the protections afforded absent class members by CAFA. Class counsels' fee request invites legal error by urging the Court not to apply it.

Under CAFA, "the [C]ourt must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded." *HP Inkjet*, 716 F.3d at 1184. Alternatively, the Court should treat the Settlement as "mixed" and award a percentage-based fee for the coupon relief and a lodestar-based fee for the cash relief. *HP Inkjet*, 716 F.3d at 1187. Either way, the district court "may not award attorneys' fees to class counsel that are 'attributable to' an award of coupons without first considering the redemption value of the coupons." *Id.* And since the overwhelming majority of the relief provided in this settlement is coupon based, no fee award can be entered here based on the coupon relief without considering the actual redemption rates. To the extent this Court awards any fee based on the certificates, the Court must wait until class counsel provide the value of the settlement based on the actual redemption of the certificates. *Baby Prods.*, 708 F.3d at 179; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1187 n.19 (9th Cir. 2013); Advisory Committee Notes on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payments to class members are known.").

III. **Even Without Applying CAFA, Class Counsels' $2.3 Million Fee Request is Excessive.**

Class counsel argue alternatively that even if the certificates are taken out of the equation, their $2.3 million fee request is only 29.65% of the total of the cash, costs of notice

administration, out-of-pocket costs, and fee award. However, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1135 (N.D. Cal. 2015). Further, costs of notice and costs of the settlement administrator, which will be paid separately by McAfee, should not be considered in calculating the 25% benchmark. *See In re Magsafe Apple Power Adapter Litig.*, 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) ("the requested attorneys' fees, expenses, and service awards are not included because that is determined separately, and the cost of notice is also not included because that was Apple's expense in order to comply with the notice requirement"); *see also Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e) ] is not how much money a company spends on purported benefits, but the value of those benefits to the class") (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

Properly calculated without these costs, class counsels' requested $2.3 million in fees results in a 42% recovery,[10] which exceeds the 38.9% that the Ninth Circuit calls "clearly excessive." *Kellogg Co.*, 697 F.3d at 868. Twenty-five percent would be $1,356,875.38, which more closely corresponds with class counsels' $1.6 lodestar.

As Mr. Jabrani already noted, there is no basis to go above the Ninth Circuit 25% benchmark for this settlement, which this Court has noted "is less than ideal" and "deprive[s] class members of a significant percentage of the amount overcharged."[11] This is particularly so

---

[10] $3,027,501.50 (the cash to be distributed to cash electors) + $2,321,225.92 (the requested fee award) + $78,774.08 (class counsel's out-of-pocket litigation costs) = $5,427,501.50. $2,321,225.92 is approximately 42% of $5,427,501.50.

[11] Order Granting Preliminary Approval, ECF Doc. 96, at 11.

where class counsel secured no relief for the Reference Price Class, yet propose to release all of their claims including claims for damages.

Further, to the extent this Court is inclined to apply the lodestar method for calculating attorneys' fees (since this is not a true common fund), either no multiplier or a negative multiplier is appropriate for class counsels' $1.6 million lodestar based on the dubious class relief. Further, as noted in Mr. Jabrani's objection, the base lodestar is clearly inflated and should be reduced.

Partner Michael Sobol's $875 hourly fee, paralegal Jennifer Rudnick's $345 hourly fee, and the $670 hourly fee for two of-counsel attorneys for Ahdoot and Wolfson, P.C. (primarily for conducting legal research) do not comport with this Court's 2015 opinion in *In re Magsafe Apple Power Adapter Litig.*, 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015). There, the Court observed, "[i]n the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240." *Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *12 (citations omitted). Class counsel claim that these were for rates approved in 2010 and 2011, yet this Court's 2015 opinion fails to make this claimed distinction.[12]

At the same time, Class counsels' reference to fees approved in the Northern District of Georgia, the Eastern District of Pennsylvania, and in a Superior Court in Los Angeles are of no consequence.[13] The relevant community for determining the appropriate lodestar is the Northern

---

[12] Reply, ECF Doc. 111, at 21 n.25.

[13] Reply, ECF Doc. 111, at 22 (citing *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, Dkt. 257 (N.D. Ga.) (approving $650 rate for Custis); *Levenhagen vs. PacWest Bancorp, et al.*, Case No. BC581367 (Los Angeles Cty.Super. Ct. Dec. 16, 2015) (approving $650 rate for Custis in 2015); *In re: Bank of America Credit Protection Marketing & Sales Practices Litig.*, Case No. 3:11-md-02269-TEH, Dkt. 96 (N.D. Cal.)

District of California.

The inflated $1.6 lodestar should, accordingly, be reduced to reflect reasonable rates. Further, class counsel should not be indulged a positive multiplier. The lodestar figure is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988); *Rose v. Bank of Am. Corp.*, 5:11-CV-02390-EJD, 2014 WL 4273358, at *6 (N.D. Cal. Aug. 29, 2014).

## IV. Class Counsel Failed the Reference Price Class.

Class counsel assurances aside, their joint representation of both the Auto-Renewal Class and the Reference Price Class was not adequate. Class counsel secured injunctive and monetary relief for the Auto-Renewal Class and injunctive relief only for the Reference Price Class. Yet, the settlement releases all claims, including claims for damages, for *both* classes.[14] *Dewey v. Volkswagen AG*, 681 F.3d 170, 184 (3d Cir. 2012) ("A conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate"); *In re Literary Works*, 654 F.3d 242, 249-57 (2d Cir. 2011); *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 569–70 (N.D. Cal. 2015) ("[c]lass counsel may be inadequate under Rule 23 if they seek to represent class members with different interests").

Separate counsel for the classes would have produced better relief for the Reference Price Class. Presumably, it would have also resulted in the notice and papers filed by class counsel addressing the results for this subclass. Class counsel provided no estimation of the value of the

---

(approving $600 rate for Flynn in 2012); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 2:10-cv-03213-BMS, Dkt. 139 (E.D. Pa.) (same).

[14] Settlement Agreement, ECF Doc. 95, at 27-29.

settlement as it pertains to the Reference Price Class.[15] The class notice does not inform the Reference Price Class that they are not entitled to cash or a certificate. Under the "Summary of Your Options and Legal Rights in this Settlement," the notice instructs Auto-Renewal Class members that they must file a cash election form if they want $11.50 instead of a McAfee certificate.[16] Reference Price Class members must read between the lines to discover they get neither cash nor certificates.

This Court should deny approval of the settlement based on the apparent joint representation of counsel of the two classes. *Dewey*, 681 F.3d at 187 ("The structure of the settlement agreement itself, which divides a single class into two groups of plaintiffs that receive different benefits, supports the inference that the representative plaintiffs are inadequate"); *In re Abbott Labs. Norvir Anti-Trust Litig.*, C 04-1511 CW, 22007 WL 1689899, at *7 (N.D. Cal. June 11, 2007) ("[b]ecause separate counsel for the different types of class members is present, the Court concludes that Doe 1 and SEIU will fairly and adequately protect the interests of the class, as will their counsel") (quoting *Warfarin*, 391 F.3d at 532) (which found that the existence of separate counsel "provided adequate structural protections to assure that differently situated plaintiffs negotiate for their own unique interests").

## V. The Relatively Low Number of Objections Should Not be Construed as Class Assent to this Unfair Settlement.

Class counsel place considerable emphasis on the relatively low number of class

---

[15] Given class counsels' failure to provide any estimate of the value of the injunctive relief and the absence of any other relief provided to the Reference Price Class, Objector urges that Class counsel receive no fees in connection with their representation of the Reference Price Class. They should further be required to segregate work performed for the Reference Price Class in their lodestar, and it should be excluded from consideration in awarding fees. There is also confusion as to the size of the Reference Price Class.

[16] Class Notice, at 2.

members who filed objections to the settlement. However, the class members' "[a]cquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). This is particularly the case here where the class notice fails to clearly inform Reference Price class members that they receive neither cash nor certificates.

As noted by Judge Hamilton from the Oakland Division of the Northern District, "while some courts have held that 'silence constitutes tacit consent to the agreement,' 'a combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement.'" *Banks v. Nissan N. Am., Inc.*, 11-CV-2022-PJH, 2015 WL 7710297, at *10 (N.D. Cal. Nov. 30, 2015) (citing *General Motors*, 55 F.3d at 785).

"[W]here notice of the class action is . . . sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

No inference in favor of the settlement should be made here, particularly taking into account the vociferousness of the objections raised. *General Motors*, 55 F.3d at 813 ("[a]lthough the absolute number of objectors was relatively low, there are other indications that the class

reaction to the suit was quite negative . . . those who did object did so quite vociferously").

## CONCLUSION

Objector Amirali Jabrani thus finds nothing in class counsels' response that diminishes his objection in any respect. Mr. Jabrani reiterates his request that the settlement not be approved, that no fees be awarded until the value of the redeemed certificates can be ascertained, and that class counsels' requested $2.3 million in attorneys' fees be substantially reduced.

DATED: January 19, 2017

Respectfully submitted,
/s/ *Timothy R. Hanigan*
Timothy R. Hanigan (125791)
LANG, HANIGAN &
CARVALHO, LLP,
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

Attorney for Objectors/Class Members

### Certificate of Service

The undersigned certifies that today he filed the foregoing document on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: January 19, 2017

/s/ *Timothy R. Hanigan*
Timothy R. Hanigan